## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.

HEAD KANDY LLC,

                      Plaintiff,

      - against -

KAYLA MARIE MCNEILL,

                      Defendant.

## **COMPLAINT**

Plaintiff, Head Kandy LLC ("Head Kandy"), by its attorneys, for its Complaint against Defendant, Kayla Marie McNeill ("McNeill"), alleges as follows:

## **NATURE OF THE ACTION AND RELIEF SOUGHT**

1.　　This is an action in law and in equity for damages, injunctive relief and declaratory relief against McNeill for material breaches of her Executive Employment Agreement with Head Kandy, and for fraud, unjust enrichment, tortious interference with business relationship and breach of fiduciary duty under Florida law.[1] As set forth herein, McNeill has caused substantial harm to Head Kandy by undertaking a years-long scheme to enrich herself and defraud the Company by using it as a personal piggybank for unauthorized payroll and personal expenses in an amount exceeding $1,000,000; engaging in self-dealing by creating a competing business while she was an Officer and owner of Head Kandy; disparaging Head Kandy, its owners and product lines to third-parties and

---

[1] Head Kandy intends to add a claim for Civil Theft under Fla. Stat. § 772.11 upon expiration of the requisite notice period to McNeill should compliance with Head Kandy's demand not be made.

1

encouraging customers to buy competitive products; and intentionally sabotaging the business of Head Kandy through actions directed at Company employees, affiliate influencers and valuable suppliers. McNeill's actions demonstrate a clear and consistent pattern of behavior to: (i) abuse her position of trust as a Company Officer; (ii) materially breach her Employment Agreement as a Company Executive; and (iii) breach her fiduciary duty as a Company owner.

## THE PARTIES

2.      Plaintiff, Head Kandy LLC, is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 6100 Hollywood Blvd., 7th Floor, Hollywood, Florida 33024.  As set forth *infra*, the Managing Member of Head Kandy, Jerome Falic ("Managing Member"), authorized a resolution divesting McNeill of her 20% ownership share of the Company on February 17, 2023.  As such, presently all of the Members of Head Kandy LLC are citizens of the State of Florida.

3.      Upon information and belief, Defendant, Kayla Marie McNeill is a citizen of the State of Colorado, residing at 11905 Highland Circle, Salida, Colorado 81201.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds the sum of $75,000.

5.      This Court may exercise personal jurisdiction over McNeill because, upon information and belief, McNeill: (i) has purposely directed substantial activities at the residents of Florida and this Judicial District and derives substantial revenue from interstate commerce; and/or (ii) has committed tortious acts (namely, and without limitation, the acts

of common law fraud, conversion, unjust enrichment, tortious interference with business relationships, and breach of fiduciary duty alleged herein) directed at persons located in this State and this Judicial District; and/or (iii) has entered into an Executive Employment Agreement with Head Kandy that gives rise to the breach of contract claims alleged herein and in which she submitted to the exclusive jurisdiction of the State or Federal Courts of Florida with respect to the interpretation and enforcement of the Executive Employment Agreement.

6.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO THE COUNTS

7.      Head Kandy is a consumer products company that produces and sells haircare and beauty items. The Company was started in 2015 by Kayla McNeill, but the current majority owners of Head Kandy acquired an 80% interest in the Company from McNeill in 2018, leaving McNeill as a 20% owner.

8.      At the time of the acquisition, McNeill executed an Executive Employment Agreement with Head Kandy, effective May 3, 2018 ("Executive Employment Agreement" and/or "Employment Agreement") (a true and complete copy of the Employment Agreement is attached hereto as Exhibit A). Under the Employment Agreement, Head Kandy named McNeill as "Creative Director," an Officer position, for which she was paid an annual salary of $200,000, eligible for an annual bonus and given generous benefits. (§ 4)

9.      The Employment Agreement provides for McNeill to have broad responsibility for "general operational activities of the Company." (§ 2). The Managing Member of Head Kandy placed great trust in McNeill to run the Company.  From May of

2018 through December of 2022, while McNeill operated as the Company's *de facto* CEO and had full operational control over all aspects of the business of Head Kandy, she had never been appointed as CEO of Head Kandy. Upon information and belief, McNeill assigned that title to herself and began using it in her email signature block and on the business platform, LinkedIn:



10.     Importantly, McNeill also served as the Company's public face for marketing and promotion of Head Kandy's product line to consumers.  She was the Company's most important social media influencer, with more than 100,000 followers on leading social media platforms, including Facebook and Instagram, who formed Head Kandy's core customer base. McNeill's popularity on social media derived from her ability to connect with customers in a personal way. Her posts emphasized her small-town roots, often featured her children, and contained positive and uplifting messages which resonated with Head Kandy's customers. Unfortunately, Head Kandy's owners would eventually discover that McNeill's wholesome public image was a total fabrication, as in reality McNeill engaged in a years-long scheme to enrich herself at the Company's expense, and more recently has intentionally sought to harm the Company.

Head Kandy's Owners Discover McNeill's Acts of Self-Dealing and Fraud

11.     In July 2022, Head Kandy's Managing Member retained a consultant to undertake an exhaustive review of the Company's operations, finances and books and

records.  Almost immediately, the consultant discovered that McNeill had mismanaged Company operations for years. The Company's warehouse and customer service were not functioning properly, and McNeill had not properly managed product orders, such that the Company had far too much existing product inventory on hand for a Company of its size. The consultant then set out on a plan to streamline Head Kandy's business and operations to make the Company more efficient.

12.     Upon information and belief, McNeill saw the consultant's work as a threat to her management role, and she began to plot a course for her exit from Head Kandy.

13.     In November 2022, the consultant discovered evidence that McNeill had formed a new business called "White Pineapple" to compete with Head Kandy and had ordered product inventory. McNeill promoted her new business on social media pages that the Company owned and operated.  The consultant also learned that McNeill intended to leave Head Kandy in early 2023 and take key Company personnel with her.  The Company sent McNeill a Notice of Material Breach of the Employment Agreement and Notice of Breach of Fiduciary Duty on November 28, 2022 (a true and complete copy of the November 28, 2022 letter is attached hereto as Exhibit B).

14.     As part of the consultant's examination of the books and records of Head Kandy, in November 2022 the Company discovered that McNeill had arranged for unauthorized payroll expenses for employees and contractors at the Company's expense that were in fact performing personal services for her and her family. The unauthorized payroll included services such as nannies for her children, housekeepers and people to help support her children in their travel for junior car races. The Company calculated the improper payroll expenses that it had paid for McNeill's personal services to be in excess

of $100,000. By email to the Company dated December 2, 2022, McNeill acknowledged and admitted that her actions were wrongful and "unethical," and she apologized for them.

15. At this same time, Head Kandy's consultant retained an outside accounting firm, K2 Integrity, to examine the company's books and records going back to 2018. K2 identified hundreds of unauthorized credit card charges that McNeill and her husband, Dusty (who was also employed by the Company) had expensed to the Company from 2018-2022 that were of a personal nature in excess of $1,000,000. A summary of the figures for McNeill and her husband from the K2 report are reproduced herein: [2]

**Expenditures with No Apparent Business Purpose by Year and Cardholder**

| Cardholder | 2018 | 2019 | 2020 | 2021 | 2022 | Grand Total |
|---|---|---|---|---|---|---|
| Kayla McNeil | 255,610.14 | 162,302.56 | 148450.83 | 200,267.88 | 326,212.43 | 1,092,843.84 |
| Dustin McNeil | 81,174.98 | 76,000.82 | 52,817.51 | 59,910.56 | 60,095.85 | 329,999.72 |
| Ryan Thompson | - | 81,484.13 | 25,875.95 | 47,710.51 | 117,828.40 | 272,898.99 |
| Rhonda Batthelor | - | 4,223.17 | 13,560.40 | 2,885.97 | - | 20,669.54 |
| Grand Total | 336,785.12 | 324,010.68 | 240,704.69 | 310,774.92 | 504,136.68 | 1,716,412.09 |

16. The personal charges included a gastro bypass plastic surgery for McNeill herself that cost $ 35,000, substantial personal travel for her and her family, the purchase of personal consumer merchandise, and more than four years' worth of meals at fast-food and other restaurant chains. McNeill charged these items to her credit card and the Company then paid these expenses in full. The Company then sent the statements to McNeill so that she could identify and submit reimbursement for any personal expenses. She knowingly failed to identify, report and submit reimbursement for hundreds of personal expenses.

---

[2] Ryan Thompson is an employee of the Company. Rhonda Batthelor is a photographer whom McNeill improperly placed on the Company payroll. The Company reserves all rights to pursue claims against Dustin McNeill and any other persons who may have engaged in unlawful conduct or assisted in Kayla McNeill's unlawful conduct.

17.     On December 16, 2022, the Company issued a Notice of Suspension of Employment due to Fraud and Dishonestly to McNeill based on the aforementioned unauthorized payroll and credit card charges (a true and complete copy of the letter is attached hereto as Exhibit C).  The Company informed McNeill that it was placing her on paid leave pending the final outcome of the K2 investigation.

18.     The Company furnished copies of the K2 report to McNeill on December 23, 2022 and January 5, 2023, and invited her to substantiate or explain the apparent personal expenses listed therein. As of this date, McNeill never formally responded to the allegations in the K2 report, so the Company accepts them as true and the Company's outside accounting firm will now move forward to re-state the Company's prior tax filings and issue K-1 forms to McNeil and the IRS for the prior years so that the unauthorized personal charges can be attributed as income to McNeill.

19.     As a separate and further violation, the Company also discovered that McNeill, working with former employee Jennifer Shea and possibly others, created discount codes that were given to friends and family, including from McNeill's former beauty salon and friends from her children's car racing circuit, which when used were in an amount of at least $115,000 in Head Kandy suggested retail pricing. The Company never approved or authorized these discount codes.

McNeill's Intentional Acts to Harm Head Kandy and its Owners

20.     Head Kandy's Managing Member met with McNeill and her husband in New York in mid-December, 2022. While McNeill acted with contrition during her meeting and pledged to resolve the Company's concerns to its satisfaction, the Company

later discovered that McNeill's words were hollow, as she in fact began to take a series of malicious and willful actions to harm the Company almost immediately.

21.     Shortly after the meeting in New York, after having been warned on several occasions not to have further contact with Company employees and not to harm the Company, McNeill made false and damaging statements to Company employees in the warehouse and in the customer service department with the intent to harm the Company, *to wit*, that Company owners were planning to liquidate the business and the Company would cease operations. This resulted in substantial damage to the Company, as employees thought the Company would soon go out of business and chaos ensued: (i) warehouse employees failed to properly fulfill orders and/or failed to ship items on time; and (ii) customer service failed to respond to more than 4,000 complaints in the Company's customer service software, ZenDesk. All of this occurred during the final stages of the critical December holiday selling season, which is the Company's busiest and most important selling period of the year. The Company remains in the process of trying to calculate the damage that Ms. McNeill's intentional and malicious actions to sabotage the Company have caused.

22.     In early January 2023, the parties once tried to resolve Head Kandy's concerns. The parties appeared to be on a positive track towards a resolution, as the parties were able to agree on the form of a public statement announcing McNeill's reduced role at the Company. However, once again, McNeill thwarted all attempts at a negotiated outcome by setting out to harm the Company by interfering with key relationships with the Company's social media affiliate influencers, a critical sales force for the Company's products.

23.     On January 6, 2023, Jennifer Shea, the Company's former head of customer service and a longtime friend of McNeill's, arranged for McNeill to secretly listen to a phone conversation between a Company employee and one of the Company's important affiliate influencers. During that conversation, the Head Candy employee explained McNeill's departure from the Company and stated the Company would become more brand focused and less founder focused, which was entirely consistent with the language of the joint public statement that McNeill herself had approved on January 6, 2023.

24.     After McNeill surreptitiously listened to the aforementioned phone call, she proceeded to call several of the Company's most important affiliate influencers and made the following false and defamatory statements:

     (a)   That she was forced out of Head Kandy against her will by Head Kandy's new owners;

     (b)   That she was being fired for "money reasons";

     (c)   That she was being "treated awfully by" the new owners;

     (d)   That she intended to launch her own hair care company on February 1, 2023 and she asked the affiliates to stop working for Head Kandy and join her new hair care business instead.

25.     Head Kandy sent a further Notice of Material Breach to McNeill on January 10, 2023 about this conduct, a true and correct copy of which is attached hereto at Exhibit D.

26.     On January 27, 2023, at a time when McNeill was still an Officer at Head Kandy, she went live on a Facebook group called HK B/S/T (Head Kandy Buy/Sell/Trade) to instruct customers to stop doing business with Head Kandy and its owners, and she

indicated that she would no longer purchase Head Kandy products. As a result, the Company received considerable negative reviews and feedback from customers, which is causing ongoing damage to the Company. Many customers have said they will never do business with Head Kandy again.  At a time when McNeill should have supported Head Kandy and its owners (her partners) publicly, McNeill instead disparaged Head Kandy and its owners and stated that she would no longer buy products from the Company, in further violation of her duty of loyalty as a shareholder.

27.     In February 2023, as shown in the screen shot below, McNeill posted on her "Full Circle with Kayla" Facebook page a message directing Head Kandy's customers and clients to a competing hair care product, thereby encouraging them to terminate or reduce their relationship with Head Kandy, in violation of the Executive Employment Agreement § 5(b).



28.     In February 2023, as shown in the screen shot below, McNeill again posted a Facebook message directing Head Kandy's customers and clients to a competing hair care product, thereby encouraging them to terminate or reduce their relationship with Head Kandy, in violation of the Executive Employment Agreement § 5(b).



29.     Yet again in February 2023, as shown in the screen shot below, posting as "Full Circle with Kayla," McNeill posted a Facebook message directing Head Kandy's customers and clients to a competing hair care product, thereby encouraging them to terminate or reduce their relationship with Head Kandy, in violation of the Executive Employment Agreement § 5(b).



30.     In February 2023, as shown in the screen shot below, posting as "Full Circle with Kayla," McNeill posted a message from Amazon.com directing Head Kandy's customers and clients to a competing hair care product, thereby encouraging them to terminate or reduce their relationship with Head Kandy, in violation of the Executive Employment Agreement § 5(b).



31.     Finally, Head Kandy management recently learned that McNeill contacted the Company's important product supplier, Cagri, for two reasons. First, McNeill attempted to purchase the same products for her new business that Cagri sells to Head Kandy. McNeill told Cagri that she could guarantee him $50,000 per year in product purchases. Cagri declined McNeill's offer out of loyalty to Head Kandy.  Second, McNeill attempted to interfere with Cagri's relationship with Head Kandy by violating the Executive Employment Agreement's Confidentiality provision and falsely stating to Cagri that Head Kandy reverse engineers the products that Head Kandy purchases from Cagri, thereby suggesting to Cagri that Head Kandy would look to cancel its business with Cagri in the future.  McNeill's statements to Cagri were untrue and defamatory.

32.     As a result of these wrongful actions and others, Head Kandy's Managing Member recently authorized the following actions:

(a) Head Kandy terminated McNeill's Employment with the Company for cause on January 30, 2023 (a true and correct copy of the Notice of Termination is attached hereto at Exhibit E);

(b) the majority owners exercised their right to acquire McNeill's 20% ownership stake in Head Kandy on February 17, 2023 as a result of the for cause termination of her Employment Agreement, thereby divesting McNeill of her ownership stake in Head Kandy (a true and correct copy of the Head Kandy LLC February 17, 2023 Resolution is attached hereto at Exhibit F).

33.     All conditions precedent to the maintenance of the causes of action set forth herein have occurred, been waived or excused.

## FIRST CAUSE OF ACTION
### Breaches of Contract

34.　　Head Kandy repeats and reincorporates the allegations contained in paragraphs 1-33 as though set forth in full herein.

35.　　The Executive Employment Agreement dated May 3, 2018 is a valid and binding contract entered into between Head Kandy and McNeill.

36.　　As set forth supra, McNeill materially breached this contract on numerous occasions in at least the following ways:

(a) McNeill made disparaging statements about Head Kandy, its products and majority owners, to Head Kandy employees, affiliates and customers;

(b) McNeill promoted her own competing business for consumer products called "White Pineapple" on Head Kandy social media sites;

(c) McNeill intentionally sought to steer customers away from Head Kandy products and towards competing products; and

(d) McNeill contacted one of Head Kandy's important suppliers to order products for her competing business and to convince the supplier to cease doing business with Head Kandy.

37.　　The Executive Employment Agreement § 5(a) contains "Non-Compete Provisions" that prohibit McNeill from engaging in "the manufacture, sale and distribution of hair-related products" (the "Restricted Business") and "the provision of management, business planning, sales, marketing, financial planning or other services similar to the service the Executive provided to the Company during her employment with the Company" (the "Restricted Services") for a period of 36 months from and after her date of termination of employment.

38.     McNeill materially breached Executive Employment Agreement § 5(a) by engaging in Restricted Business and Restricted Services by attempting to procure at least $50,000 of hair care product from Head Kandy's hair product manufacturer Cagri for resale in her own business and as set forth above.

39.      The Executive Employment Agreement § 5(b) contain a "No Solicitation of Customers" provision that, for a period of 36 months after her termination of employment, prohibits McNeill from, *inter alia*, (i) soliciting business "related to the Restricted Business" from Head Kandy's customers and suppliers and (ii) "solicit[ing] or encourage[ing] any client, customer, supplier, licensee or licensor of the Company to terminate or reduce such Person's relationship with the Company (including any Person engaged in discussions with the Company related to such Person becoming a client, customer, supplier, licensee or licensor of the Company)."

40.     Through social media posts and other means, McNeill has repeatedly and materially breached Executive Employment Agreement § 5(b) by soliciting business related to the Restricted Business from Head Kandy's customers and suppliers, and by encouraging Head Kandy's clients, customers and suppliers to terminate or reduce their relationships with Head Kandy.

41.     The Executive Employment Agreement § 5(d) contains a "non-Disparagement" provision in which McNeill has agreed and covenanted that she "will not, at any time, make, publish or communicate to any Person or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Company."

42.     McNeill has repeatedly and materially breached Executive Employment Agreement § 5(d) by making defamatory and disparaging remarks about Head Kandy,

including (i) false and defamatory statements to Head Kandy's warehouse and customer service employees that Head Kandy was planning to liquidate its business and cease operations, causing these employees to fail to fulfill orders and respond to customer complaints; (ii) disparaging Head Kandy by telling its supplier Cagri that Head Kandy reverse engineers its products; (iii) falsely telling Head Kandy's business affiliates that she was being terminated for "money reasons" and that she was being mistreated by Head Kandy owners; (iv) making defamatory and disparaging statements about Head Kandy on social media, including false statements that "she created everything" in Head Kandy's business when in fact numerous products, assets and goodwill were not created by her, including as recently as in an hour-long video on Facebook live posted on February 16, 2023:https://www.facebook.com/fullcirclewithkayla/videos/nail-chat-/1698849380532171/.

43.    The Executive Employment Agreement § 6(a) requires Defendant during her employment and for a period of five years' thereafter to hold in confidence all Trade Secrets and Confidential Information of Head Kandy.

44.    The Executive Employment Agreement § 6(a) defines Confidential Information to include, *inter alia*, "information relating to the business of the Company…which is or has been disclosed to the Executive or of which the Executive has become aware as a consequence of her relationship with the Company and which has value to the Company, is not generally known to the Company's competitors, and is subject to reasonable efforts by the Company to prevent disclosure."

45.     Head Kandy's internal uses of products supplied by its manufacturers constitute "Confidential Information" as defined by the Executive Employment Agreement.

46.     By telling Head Kandy's product manufacturer Cagri that Head Kandy reverse engineers its products, McNeill materially breached the Executive Employment Agreement § 6(a)'s Confidentiality provision.

47.     Each of McNeill's breaches of the Executive Employment Agreement has caused Head Kandy to suffer damages in an amount to be proven at trial.

48.     Head Kandy has no adequate remedy at law for each of McNeill's breaches of the Executive Employment Agreement.

## SECOND CAUSE OF ACTION
### Common Law Fraud By Omission

49.     Head Kandy repeats and reincorporates the allegations contained in paragraphs 1-33 as though set forth in full herein.

50.     Each month from 2018 through November 30, 2022, the Company paid McNeill's American Express bill in full.  The Company then submitted each bill to McNeill for reimbursement of any personal expenses.  As an employee and officer of the Company, McNeill had a duty to identify and report each personal expense requiring reimbursement.

51.      Attached hereto as Exhibit G is a true and correct copy of an audit report from K2 Integrity dated January 5, 2023. As detailed in this report, on hundreds of occasions, McNeill knowingly failed to identify and report personal expenses and knowingly failed to reimburse the Company for these personal expenses.

52.     McNeill knew or should have known that her personal expenses should have been disclosed to the Company, and she knowingly made these material omissions of fact

in bad faith with the intention of inducing Head Kandy to pay for the full amount of the American Express bill without obtaining reimbursement for McNeil's improper personal expenses.

53.     Head Kandy reasonably relied on each of McNeill's material omissions by paying each American Express bill in full and by failing to obtain reimbursement for improper personal expenses, thereby incurring damage in the amount of at least $1.3 million.

54.     McNeill arranged for unauthorized payroll expenses for employees and contractors at the Company's expense that were in fact performing personal services for her and her family. The unauthorized payroll included services such as nannies for her children, housekeepers and people to help support her children in their travel for junior car races. The Company calculated the improper payroll expenses for McNeill's personal services to be in excess of $100,000.  McNeill knew these to be personal expenses at the time she submitted the payroll expenses to Head Kandy.  She knowingly made these false statements that the expenses were for the benefit of Head Kandy with the intention of deceiving Head Kandy and causing Head Kandy to pay for her personal and family expenses.  Head Kandy reasonably relied on each of McNeill's false statements that the payroll expenses were legitimate business expenses, and it paid the expenses in full, thereby incurring damage in the amount of at least $100,000.

### THIRD CAUSE OF ACTION
**Conversion**

55.     Head Kandy repeats and reincorporates the allegations contained in paragraphs 1-33 as though set forth in full herein.

56.     From time to time in the course of its business, Head Kandy creates discount codes that it strategically uses to increase sales, move targeted inventory, and build customer loyalty.

57.     All of Head Kandy's discount codes are assets of the Company.

58.     Upon information and belief, while employed as Creative Director of Head Kandy, acting without approval or authorization of Head Kandy, McNeill created or caused to be created a set of discount codes which when used were valued at least $115,000 (the "Unauthorized Discount Codes").

59.     After creating or causing the Unauthorized Discount Codes to be created, McNeill was in possession of the Unauthorized Discount Codes.

60.     The Unauthorized Discount Codes were assets of the Company.

61.     In her role as Creative Director, McNeill had a responsibility to hold all discount codes in her possession for the benefit of the Head Kandy and to issue them to customers solely in furtherance of the Head Kandy's business objectives.

62.     Without authorization from Head Kandy, McNeill intentionally issued the Unauthorized Discount Codes to her personal friends and family solely for her benefit and their benefit and not in furtherance of Head Kandy's business objectives, thereby permanently or indefinitely depriving Head Kandy of the value of these assets. Head Kandy suffered damage as a result of McNeill's actions in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**

63.     Head Kandy repeats and reincorporates the allegations contained in paragraphs 1-33 and 49-54 as though set forth in full herein.

64.     In each aforesaid instances where McNeill failed to identify and report a personal expense on the American Express bills that Head Kandy paid, Head Kandy conferred a benefit on McNeill in the amount of the personal expenses, by paying the bills in full and failing to obtain reimbursement.  McNeill knew of this benefit and retained the benefit, and it would be inequitable for McNeill to retain this benefit without paying for it.

65.     In each aforesaid instance where McNeill submitted a payroll expense containing improper personal expenses to Head Kandy, Head Kandy conferred a benefit on McNeill in the amount of the improper personal expenses, by paying the payroll expense.  McNeill knew of this benefit and retained the benefit, and it would be inequitable for McNeill to retain this benefit without paying for it.

66.     Head Kandy has been damaged by McNeill's actions in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### Breach of Fiduciary Duty

67.     Head Kandy repeats and reincorporates the allegations contained in paragraphs 1-62 as though set forth in full herein.

68.     As Creative Director and Officer of Head Kandy LLC, Head Kandy owed a fiduciary duty to McNeill, including duties of care and loyalty.

69.     This duty is also reflected in the Heady Candy LLC Amended and Restated Operating Agreement § 7.2(b), which provides that Officers of the Company owe duties of care and loyalty to the Company.

70.     McNeill breached her fiduciary duty by promoting her own competing products while employed by Head Kandy, including through her White Pineapple brand that she promoted using Head Kandy's social media platforms.

71.    McNeill breached her fiduciary duty by failing to devote her full time and effort to her employment duties, by soliciting customers for her new personal ventures while still employed at the Company, and by using Head Kandy's resources, including its social media platforms, to promote those ventures.

72.    McNeill breached her fiduciary duty by making defamatory and disparaging statements to Head Kandy's customers, affiliates, and employees, including (i) false and defamatory statements to Head Kandy's warehouse and customer service employees that Head Kandy was planning to liquidate its business and cease operations, causing these employees to fail to fulfill orders and respond to customer complaints; (ii) falsely telling Head Kandy's business affiliates that she was being terminated for "money reasons" and that she was being mistreated by the Head Kandy owners; (iii) making defamatory and disparaging statements about Head Kandy on social media, including false statements that "she created everything" in Head Kandy's business when in fact numerous products, assets and goodwill were not created by her.

73.    McNeill breached her fiduciary duty by improperly issuing Unauthorized Discount Codes for Head Kandy's products to her friends and family.

74.    McNeill breached her fiduciary duty by failing to identify and report personal expenses on her American Express bill that were paid for by the Company, and by failing to reimburse the Company for these personal expenses.

75.    McNeill breached her fiduciary duty by improperly submitting to Head Kandy payroll expenses that covered personal and family expenses, under the false pretense that these were legitimate business expenses.

76.     McNeill breached her fiduciary duty by surreptitiously listening in to conversations between Head Kandy's employees and affiliates, with the intent to use her knowledge of the content of those conversations for her own benefit and to the detriment of Head Kandy.

77.     McNeill's breaches of her fiduciary duty were intentional and were designed to, and did, damage Head Kandy by causing it to waste its assets, by causing it to lose sales and customers, and by harming its good will with customers.

78.     Head Kandy has been damaged by McNeill's actions in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### Intentional Interference with Business Relationship

79.     Head Kandy repeats and reincorporates the allegations contained in paragraphs 1-33 and 42-46 as though set forth in full herein.

80.     Head Kandy has a valuable business relationship with its important product supplier, Cagri.  McNeill contacted Cagri with the intent to interfere with Head Kandy's relationship with Cagri by falsely stating to Cagri that Head Kandy reverse engineers the products that Head Kandy purchases from Cagri, thereby suggesting to Cagri that Head Kandy was re-creating Cagri's formulas for itself and would look to cancel its business with Cagri in the future.  McNeill's statements to Cagri were patently false and defamatory.

81.     Head Kandy has a valuable business relationship with its important social media affiliate influencers, who act as a sales force for the Company's products. On or after January 6, 2023, McNeill contacted several of Head Kandy's important affiliate influencers with the intent to interfere with Head Kandy's relationship with them by making the following false and defamatory statements:

(a) That she was forced out of Head Kandy against her will by Head Kandy's new owners;

(b) That she was being fired for "money reasons";

(c) That she was being "treated awfully by" the new owners;

(d) That she intended to launch her own hair care company on February 1, 2023 and she asked the affiliates to stop working for Head Kandy and join her new hair care business instead.

82.     Head Kandy has been damaged as a result of McNeill's actions in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### Declaratory Relief

83.     Head Kandy repeats and reincorporates the allegations contained in paragraphs 1-82 as though set forth in full herein.

84.     This Court has jurisdiction over the subject matter of this declaratory judgment claim pursuant to 28 U.S.C. §§ 2201(a), 2202.

85.     An actual and justiciable controversy exists between Head Kandy and McNeill regarding McNeill's claim that she remains entitled to a bonus pursuant to Section 3(b) of the Employment Agreement.

86.     On February 3, 2023, counsel for McNeill wrote to counsel for Head Kandy demanding that Head Kandy pay to McNeill the sum of $84,554.39, which McNeill claims is due and owing as annual bonus payments under Section 3(b) of the Employment Agreement.

87.     The Employment Agreement Section 3(b) provides, "In order to receive and retain the Annual Bonus, the Executive must (x) be employed by the Company on the date

on which the Annual Bonus is paid; and (y) fully comply with the terms of Section 5, Section 6, and Section 8 of this Agreement."

88.     The Employment Agreement Section 3(b) provides that the date on which the Annual Bonus shall be paid is "within ten (10) business days after the date on which the Managing Member receives the Company's audited financial statements for the applicable fiscal year and determines whether and to what extent the Annual Bonus has been achieved."

89.     Prior to the January 30, 2023 date of McNeill's termination, the Managing Member had not yet received Head Kandy's audited financial statements for the 2022 fiscal year.  McNeill was therefore not "employed by the Company on the date on which the Annual Bonus is paid" and is not entitled to an Annual Bonus.

90.     Additionally, and without limitation, McNeill is in violation of the terms of Section 5 and Section 6 of the Employment Agreement and is therefore not entitled to any bonus under the Employment Agreement.

91.     Head Kandy further maintains that any bonus due to McNeill pursuant to the Employment Agreement should be offset and negated by the substantially greater amount of damage that McNeill has caused to Head Kandy.

92.     Accordingly, Head Kandy is entitled to a declaratory judgment from this Court that McNeill is not entitled to any bonus under Section 3(b) of the Employment Agreement, or in the alternative, that any bonus to which McNeill is entitled under Section 3(b) of the Employment Agreement is offset and voided by the greater damage that McNeill has caused Head Kandy by her actions as set forth above.

**PRAYER FOR RELIEF**

WHEREFORE, Head Kandy prays that this Court enter judgment in its favor on each and every cause of action set forth above and award it relief including, but not limited to, the following:

A.      Preliminarily and permanently enjoining and restraining McNeill from any of the foregoing:

1.  From breaching the Non-Compete provision of the Executive Employment Agreement (§ 5(a)).

2.  From breaching the Non-Solicitation provision of the Executive Employment Agreement (§ 5(b)).

3.  From breaching the Non-Disparagement provision of the Executive Employment Agreement (§ 5(d)).

4.  From breaching the Confidentiality provision of the Executive Employment Agreement (§ 6(a)).

B.      Ordering McNeill to account for and pay over to Head Kandy all profits, monies, accruals, increments, or other benefits derived or received by McNeill as a result of the breaches of contract alleged herein, as provided in the Executive Employment Agreement § 5(f).

C.      For an award of compensatory damages in an amount to be proven at trial on Claims One through Six as set forth herein.

D.      For an award of punitive damages to the extent permitted under Florida law.

E.      Awarding Head Kandy pre-judgment and post-judgment interest to the

maximum extent provided by law.

   F. Awarding Head Kandy its reasonable attorney's fees on the Fifth Cause of

Action under Heady Candy LLC Amended and Restated Operating Agreement Operating

Agreement § 12.4.

   G. Declaring that Head Kandy's obligation to pay a bonus to McNeil under

Section 3(b) of the Employment Agreement is void and cancelled.

   H. Awarding Head Kandy such other and further relief as the Court may

deem just and proper.


Dated: February 22, 2023.    Respectfully submitted,

           By: */s/ Beth-Ann E. Krimsky*
           BETH-ANN E. KRIMSKY
           Fla. Bar No. 968412
           Email: beth-ann.krimsky@gmlaw.com
           Email: clemencia.corzo@gmlaw.com
           JESSICA SANDER
           Fla. Bar No. 43154
           Email: jessica.sander@gmlaw.com
           Email: gabby.mangar@gmlaw.com
           Email: mor.avin@gmlaw.com
           **GREENSPOON MARDER LLP**
           200 East Broward Blvd., Suite 1800
           Fort Lauderdale, Florida 33301
           Tel: (954) 527-6296
           Fax: (954) 333-4027

           Jed Ferdinand
           *Pro Hac Vice Admission Anticipated*
           jferdinand@fiplawgroup.com
           **FERDINAND IP LAW GROUP**
           450 Seventh Avenue, Suite 2300
           New York, New York 10123
           Phone: (212) 220-0523

           *Attorneys for Head Kandy, LLC*

53434787.1          26

John Olsen, Esq.
Kathleen B. Moore, Esq.
Grace Monroy, Esq.
450 Seventh Avenue, Suite 2300
New York, New York 10123
(p) (212) 220-0523
JFerdinand@FIPLawGroup.com
JOlsen@FIPLawGroup.com
KMoore@FIPLawGroup.com

*Pro Hac Admission to be Requested*
*Attorneys for Plaintiff,*
*Head Kandy LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Complaint has been furnished electronically on February 22, 2023 with the Clerk of the Court using CM/ECF.

By: */s/ Beth-Ann E. Krimsky*
        Beth-Ann E. Krimsky