UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60345-RUIZ/STRAUSS

HEAD KANDY, LLC, a Delaware limited liability company,

    Plaintiff,

v.

KAYLA MCNEILL,

    Defendant.

_____/

**OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Defendant Kayla McNeill ("Ms. McNeill"), by and through her undersigned counsel, pursuant to 28 U.S.C. § 636(b)(1), hereby respectfully submits the following objections to the Report and Recommendation entered September 12, 2023 by the Honorable Jared M. Strauss, U.S. Magistrate Judge, (the "Report") [ECF No. 133], which recommends granting of Plaintiff's Expedited Motion for Preliminary Injunction and Incorporated Memorandum of Law (the "PI Motion") [ECF No. 47]. In support of her objections, Ms. McNeill states as follows:

**LEGAL STANDARD**

Pursuant to 28 U.S.C. § 636, "any party may serve and file written objections to . . . proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The

judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

## OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

**I.  Ms. McNeill Objects to Magistrate Judge Strauss' Finding that No Consideration should be Given to Defenses to Head Kandy's Claim for Breach of Contract**

The PI Motion is exclusively premised upon Head Kandy's First Cause of Action for breach of the restrictive covenants within its Executive Employment Agreement with Ms. McNeill (the "Employment Agreement") [ECF No. 73-3, Plaintiff's Exhibit 2].  [ECF No. 133 at 2, 14; PI Motion at 12-16].  As noted in the Report, "[t]o obtain a preliminary injunction, a movant must establish: (1) a substantial likelihood of success on the merits of its claim at trial . . ." [ECF No. 133 at 13 (citing *Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011))].  "Likelihood of success on the merits is generally the most important of the four factors."  [*Id*. (quoting *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1124 (11th Cir. 2022)) (internal quotations omitted)].

Under Florida law, a trial court is required to consider defenses to the enforcement of a restrictive covenant in at least two respects.  First, "in determining the enforceability of a restrictive covenant, the court, [pursuant to Section 542.335(g)(3)] 'shall consider all other pertinent legal and equitable defenses.'"  *Benemerito Flores v. Roche*, 751 So. 2d 91, 93 (Fla. 4th DCA 1999) (quoting Fla. Sta. § 542.335(g)(3)).  In addition, "a party seeking a temporary restraining order must prove that the party has a clear legal right to the relief requested."  *Id*. (quoting *Verduci v. Gold Coast Chemical Corp.*, 578 So.2d 41 (Fla. 4th DCA 1991).  Thus, a trial court is "required to consider [a non-movant's] breach of contract defense in determining whether the [movant has] a substantial likelihood of success on the merits."  *Id*. (citing *Cordis v. Prooslin*, 482 So. 2d 486 (Fla. 3d DCA 1986)).

However, the conclusion arrived at in the Report is that "where Defendant has contractually agreed not to raise a prior breach (or other equitable) defense, such a defense is no longer a 'pertinent' or viable one and it need not be considered." [ECF No. 133 at 25 (citing *Reliance Wholesale, Inc. v. Godfrey*, 51 So. 3d 561, 565 (Fla. 3d DCA 2010))]. For the reasons set forth in the following section, Ms. McNeill objects to this conclusion. In addition, there is neither assertion by Head Kandy nor conclusion in the Report that Ms. McNeill waived any defenses to Head Kandy's claim for breach of contract. Thus, thorough and proper analysis of Head Kandy's likelihood of success <u>on the merits</u> necessarily requires the Court to consider defenses to enforcement of the Employment Agreement. *Benemerito*, 751 So. 2d at 93. Without such consideration, a determination that Head Kandy has a substantial likelihood of success on the merits of its breach of contract claim is deficient as a matter of law.

Moreover, requiring consideration of defenses to enforcement of a contract avoids absurd results; as would occur in this case. Here, the party seeking enforcement of the restrictive covenants has admitted, through its Chief Financial Officer, that it failed to pay the non-movant bonuses she earned as they became due under the Employment Agreement. [ECF No. 84, Defendant's Exhibit A]. Head Kandy's failure to pay Ms. McNeill all compensation owed to her[1], as it became due, occurred prior to any of the conduct identified in the Report as supporting the imposition of an injunction against Ms. McNeill. *Compare* ECF No. 84 *with* ECF No. 133 at 7-11. Under Florida law, Head Kandy's prior material breach of the Employment Agreement is an absolute bar to enforcement of the restrictive covenants. *See Bradley v. Health Coalition, Inc.*, 687 So. 2d 329, 333 (Fla. 3d DCA 1997); *Seaboard Oil Co. v. Donovan*, 99 Fla. 1296, 1305 (1930); *Hearn v. Board of Public Education*, 191 F.3d 1329, 1335 (11th Cir. 1999); *Popular*

---

[1] Ms. McNeill maintains that she is entitled to additional compensation beyond the admittedly unpaid bonuses. *See* ECF No. 99, ¶ 4.

3

*Bank v. R.C. Asesores*, 797 So. 2d 614, 622 (Fla. 3d DCA 2001).[2]  Thus, failure to consider defenses to enforcement of a restrictive covenant would, in this case, allow a party, who has admitted to materially breaching the subject agreement, to obtain an injunction even though its claim will likely be barred once the merits of the claim are considered.  This result would also permit Head Kandy to receive the benefit of certain provisions within the Employment Agreement without providing Ms. McNeill the very consideration negotiated by the parties for inclusion of such provisions.  Consequently, a determination as to a party's likelihood of success on the merits, without considering defenses available to the non-movant, is necessarily deficient and allows for an absurd result.  *See Forsyth Cnty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) ("preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites.").

        **A.**        **Prior Breach Defense Applies to Dependent Covenants under Floria Law**

In determining that Ms. McNeill is barred from raising a prior breach defense to the enforcement of the restrictive covenants, the Report relies upon *Reliance Wholesale, Inc. v. Godfrey*, 51 So. 3d 561, 565 (Fla. 3d DCA 2010).  ECF No. 133 at 24 ("one Florida appellate court has expressly held that an employee may waive their right assert a prior breach defense to the enforcement of an employment agreement.").  However, *Godfrey* is inapposite to the present action because the restrictive covenants at issue in *Godfrey* were independent covenants. *Godfrey*, 51 So. 3d at 565 ("A plain reading of the non-compete clause of the 2005 Agreement demonstrates that they are independent, not dependent.").  Florida law recognizes two types of restrictive covenants within contracts: independent and dependent.  *See Hand v. Grow*

---

[2] In addition to Head Kandy's breach of the Employment Agreement for failing to pay the agreed upon consideration, the Report did not consider other possible defenses, such as retaliation for reporting sexual misconduct in November 2022 and Head Kandy inducing McNeill to breach the restrictive covenants. [Tr. 68:21-70:9; 145:8-16].

*Construction, Inc.*, 983 So. 2d 684 (Fla. 1st DCA 2008)   The court in *Godfrey* premised its decision upon its conclusion that "Florida law limits this [prior breach] defense to 'dependent covenants.'" *Id*. (quoting *Cordis Corp. v. Prooslin*, 482 So.2d 486, 490 (Fla. 3d DCA 1986)).  In contrast, the restrictive covenants within the Employment Agreement are dependent because they do not contain any express language to the contrary. [ECF No. 73-3 § 5]; *Hand*, 983 So. 2d at 687 (quoting *Reider v. P-48, Inc.*, 362 So.2d 105, 109 n. 4 (Fla. 1st DCA 1978) ("covenants in a contract are 'always considered dependent unless the contrary intention appears' in the document.")).  Thus, Ms. McNeill's prior breach defense is valid under Florida law and must be considered prior to the issuance of an injunction.

Furthermore, Ms. McNeill did not consent to the imposition of the contemplated equitable relief under the current circumstances.  Pursuant to the terms of the Employment Agreement, Ms. McNeill only agreed to the equitable relief considered therein if she breached the Executive Agreement.  [ECF No. 73-3 § 5(f)(i) ("the Executive agrees that in the event of any . . . breach by her of any of the provisions contained in Section 5 and Section 6, the Company will be entitled to seek . . . such injunctive and other equitable relief as may be deemed necessary or appropriate by a court of competent jurisdiction[.]")].  Under Florida law, "a material breach of the Agreement allows the non-breaching party to treat the breach as a discharge of his contract liability."  *Bradley*, 687 So. 2d at 333.  Thus, Ms. McNeill had no obligations to Head Kandy at the time of the alleged breaches and, therefore, cannot be in breach of the Employment Agreement as a matter of law.

    **B.**    **Sections 542.335(a)-(g) Set Forth Requirements Upon Courts to Protect Public Policy, Not Individual Rights which may be Waived**

In promulgating Florida Statute § 542.335, the Florida legislature imposed certain obligations upon courts when considering enforcement of restrictive covenants.  In the Report,

Magistrate Judge Strauss determines that "if the Legislature wanted to prevent employees from waiving defenses to the enforcement of restrictive covenants in employment contracts as a matter of public policy, it would have instructed courts not to enforce those provisions, as it did in subsections (j) and (k) notes that Section 542.335(g)(3) does not include an express waiver." [ECF No. 133 at 25]. However, also absent from Sections 542.335(1)(a)-(f) is a similar prohibition on waiver of the requirements imposed in those Sections. Thus, under the interpretation adopted in the Report, employers would, for example, be able to include provisions within employment agreements which obviate the need for restrictive covenants to be reasonable (§ (1)(a)) or in furtherance of a legitimate business interest (§ (1)(b)). Applying such an interpretation would frustrate the entire purpose of the Statute.

  A. **Head Kandy did Not Present Sufficient Evidence that it Lost Customers due to Ms. McNeill's Allegedly Infringing Conduct**

The financial submitted by Plaintiff do not support or show what the Report states they do. [ECF No. 133 at 11]; *see also* ECF No 133 at 12 (citing Tr. at 209-11 and ECF No. 76-12) ("While Plaintiff began to see a decline in its sales in February 2023, just after Defendant was terminated, this decline accelerated in March and April when Defendant's videos and posts became increasingly negative").

While the exact numbers in ECF No. 76 filings are sealed with the court and marked confidential, a charting of the numbers provided for Plaintiff's Exhibit 162 [daily sales data from January 1, 2023 to June 25, 2023], do not show this finding of fact found in the Report. There is no "acceleration" in March and April 2023. A charting of the daily data (net sales) in fact shows what is supported in the Record by Ms. McNeil, that Head Kandy ran a large holiday sale in December 2022. [ECF No. 93 at ¶ 33]. Head Kandy customers stocked up on product during that holiday sale. *See e.g.* [ECF No. 86-13 through 31; and ECF No. 96-1 through 10]. As a

6

result, the charted daily data pulled from the Plaintiff's daily financials for 2023 only show that there was a rise in sales up to approximately January 10, 2023 (which is prior to Ms. McNeill's termination with Head Kandy and the videos relied upon to claim Ms. McNeill breached the Executive Employment Agreement). Then, one of the lowest points of sale was January 15, 2023 (again prior to Ms. McNeill's termination on January 30, 2023 [ECF No. 93 at ¶ 12; ECF No. 85-12; ECF 133 at 7]. Then, the net sales number essentially hover around a fairly consistent amount (noting a spike in sales around February 23, 2023, after alleged "breaching" content was posted, and noting March 15, 2023 net sales are approximately the same as February 14, 2023 net sales, with March 15, 2023 actually being higher than February 23, 2023). Also February 2, 2023, May 5, 2023, May 23, 2023, June 5, 2023, June 21, 2023, and June 23, 2023 daily net sales also all hit around the same daily net sales, with February 27, 2023 actually being a lower value. Contrary to the statement in the Report, there was no "accelerated" "decline." Additionally, contrary to that Head Kandy lost "two-thirds" of its customers after Ms. McNeill's purported violating conduct, which approximately the earliest date cited in the Report would be around February 9, 2023, there is no point from the date of termination of Ms. McNeill (January 30, 2023) where there is a decline of 66% (noting June 25, 2023 daily sale was only down 17.5% daily net sales from January 30, 2023, and yet June 23, 2023 had daily sales 171% higher than January 30, 2023 and June 24, 2023 had daily sales 87% higher than January 30, 2023). The monthly sales chart is misleading because it shows a steep decline from January to February 2023, however this does not account for the fact that the daily sales breakdown information shows that daily sales for the second half of January 2023 were already in the same range approximately as the February 2023 to June 2023 period. As such, to state there was a 66% decline from January 2023 to June 2023 is misleading because that decline happened

approximately two weeks before Ms. McNeill's termination and also appears to be a clear consequence of the end of a large holiday sale product push.  It was also not regarded in the Report that many customers has issues with their holiday sales orders that made the customers unhappy with Head Kandy. *See e.g.* [ECF No. 86-13 through 31; and ECF No. 96-1 through 10].

Florida law treats relationships with customers as legitimate business interests only when those relationships are substantial and with specific prospective or existing customers. Fla. Stat. § 542.335(1)(b)(3). Fla. Stat. § 542.335(1)(b).  *Vital Pharm., Inc. v. Alfieri*, 23 F.4th 1282, 1285 (11th Cir. 2022).  It follows from the statutory text that "a party seeking enforcement of a restrictive covenant cannot rely on customer relationships as a legitimate interest unless the party "plead[s] and prove[s]" the identity of *specific* customers and the substantiality of the relationship with those customers". *Id.* § 542.335(1)(b); *see also Evans v. Generic Sol. Eng'g, LLC*, 178 So. 3d 114, 117-18 (Fla. Dist. Ct. App. 2015) (holding that the record was "insufficient to support the trial court's finding of a substantial business relationship" because "the record d[id] not even contain enough information to meaningfully discuss the relationship"); *Vital Pharm., Inc. v. Alfieri*, 23 F.4th 1282, 1291 (11th Cir. 2022).

Courts have recognized that an employer who seeks to enforce a restrictive covenant may not have a legitimate business interest in clients an employee developed before his employment by that employer began. "Restrictive covenants cannot extend to personal clients of a defendant who came to the firm solely to avail themselves of his services and only as a result of his own independent recruitment efforts, which a plaintiff employer neither subsidized nor otherwise financially supported as part of a program of client development**."** *Deloitte & Touche U.S.A. LLP v. Lamela*, Civil Action No. 1542-N, 2005 Del. Ch. LEXIS 164, at *1 (Ch. Oct. 21, 2005).

**II.     Ms. McNeill Objects to Magistrate Judge Strauss' Conclusions of Law Pertaining to the Reasonableness of the Restrictive Covenants**

### A. The Restrictive Covenants are Not Reasonable in Duration

Florida's statutory framework for evaluating restrictive covenants imposes presumptions upon the reasonableness in time of restraints depending upon the relevant circumstances. The two provisions considered in the Report are Sections 542.335(1)(d)1. and (d)3., Florida Statutes. The former applies to restrictive covenants against prior employees, in general. Fla. Stat. § 542.335(1)(d)1. The latter is to be applied when "a restrictive covenant [is] sought to be enforced against **the seller** of all or a part of: a. The assets of a business[.]" Fla. Stat. § 542.335(1)(d)3.a. (emphasis added). The sale relied upon in the Report is an asset sale by Ms. McNeill's former company, Lashed Out, LLC ("Lashed Out"), to Head Kandy. Although Ms. McNeill was not a party to that asset sale, the Report nonetheless concludes, without authority, that "any practical view of the transaction suggests that, for purposes of evaluating what is a 'reasonable' restrictive covenant, it is reasonable to treat Defendant like the seller of the business to Plaintiff." [ECF No. 133 at 15]. For the reasons set forth in the following section, there is no basis for piercing the corporate veil and doing would constitute legal error. Nonetheless, if Section 542.335(1)(d)3. applied, the non-compete provision would be unreasonable in duration.

#### 1. Analysis under Florida Statute § 542.335(1)(d)3.

Section 542.335(1)(d)3. states that "a court shall presume reasonable in time **any restraint** 3 years or less in duration and shall presume unreasonable in time **any restraint** more than 7 years in duration." Fla. Stat. § 542.335(1)(d)3. (emphasis added). The Report states that "[b]ecause Defendant's employment was terminated on January 30, 2023, Plaintiff is seeking to enforce the restrictive covenant well within the time that . . . a three-year provision would have expired." [ECF No. 133 at 16]. However, this ignores the express language of the Employment Agreement which states that the non-compete provision began on May 3, 2018, not the date of

9

Ms. McNeill's termination by Head Kandy. ECF No. 73-3 § 5(a) ("**From and after** the Effective Date [May 3, 2018] **and continuing** for a period of thirty-six (36) months after the Executive's employment terminates[.]") (emphasis added). The date on which the restriction began is critical to the analysis because the statute refers to the entire duration of the restriction, not a particular portion. *See* Fla. Stat. § 542.335(1)(d)3. Thus, the duration of the non-compete would only have been presumptively reasonable until May 2, 2021; three years after it began. Head Kandy has not presented any evidence that the restriction's continuance, more than five years after it began, is reasonable.[3] Furthermore, the restraint is presumptively unreasonable under Section 542.335(1)(d)3. because it is greater than seven years in duration: May 3, 2018 to January 30, 2026. Section 542.335(1)(d)3. ("a court . . . **shall presume unreasonable** in time **any restraint** more than 7 years in duration.").

Moreover, the interest Section 542.335(1)(d)3. seeks to protect is "the preservation of customers and the [buyer's] ability to enter the field of competition unimpaired by the adverse influence of the seller's mercantile presence." *Flatley v. Forbes*, 483 So. 2d 483, 485 (Fla. 2d DCA 1986). Therefore, the only post-termination period potentially relevant under the circumstances is that following Ms. McNeill's employment with Lashed Out, which occurred upon her hiring by Head Kandy on May 3, 2018. That is also when Head Kandy entered the field of competition. Thus, Head Kandy has enjoyed the intended benefit for more than five years since purchasing Lashed Out's assets. The non-compete provision would, therefore, be unreasonable in duration if Florida Statute § 542.335(1)(d)3. applied.

      2.     <u>Analysis under Florida Statute § 542.335(1)(d)1.</u>

---

[3] In addition, any facts or arguments pertaining to Ms. McNeill's employment by Head Kandy would be irrelevant to the reasonableness inquiry under Section 542.335(1)(d)3. because it does not pertain to restrictive covenants against former employees.

The non-competition and non-solicitation provisions are similarly unreasonable under Section 542.335(1)(d)1., Florida Statute. Section 542.335(1)(d)1. provides that "a court shall presume reasonable in time any restraint 6 months or less in duration and shall presume unreasonable in time any restraint more than 2 years in duration." Again, the non-competition restriction began on May 3, 2018. [ECF No. 73-3 § 5(a)]. The non-solicitation restriction began on January 30, 2023 and seeks to be imposed for a "thirty-six (36)-month period." [ECF No. 73-3 § 5 (b)]. As of the date of filing this Objection, both provisions would have been in effect for longer than the presumptively reasonable six-month duration under Section 542.335(1)(d)1. The Report makes no findings as to the reasonableness of the restrictions. *See* ECF No. 133 at 15-16. Instead, the Report states that "[u]nder Section 542.335(d), a two-year restrictive covenant is presumptively reasonable when it is enforced against a former employee." [ECF No. 133 at 16]. However, that is a misapplication of the statute. The statute provides that "a court shall presume reasonable in time any restraint 6 months or less in duration[.]" Fla. Stat. § 542.335(1)(d)1. For the Court to presume any duration less than two years to be reasonable would be contrary to the express language of the statute and constitute error. Moreover, the non-compete provision is presumptively unreasonable under Section 542.335(1)(d)1., as it began more than five years ago on May 3, 2018. ECF No. 73-3 § 5(a); Fla. Stat. § 542.335(1)(d)1. ("a court . . . shall presume unreasonable in time any restraint more than 2 years in duration."). Thus, the non-competition provision is unreasonable in duration under Section 542.335(1)(d)1. and there is neither evidence in the record nor findings in the Report which support its continuation more than five years after it began. Similarly, the non-solicitation provision's three-year duration is presumptively unreasonable under Section 542.335(1)(d)1. and there is no support or findings which support its

11

continuation beyond the presumptively reasonable six-month period, which expired on July 30, 2023.

**III.     Ms. McNeill Objects to Magistrate Judge Strauss' Conclusion that the Lashed Out Corporate Structure should be Disregarded for Purposes of Section 542.335**

Lashed Out is a limited liability company validly formed and operating under the laws of the State of Colorado. [ECF No. 93 § 5, at 1]. Nonetheless, in analyzing whether the time constraints set forth in Section 542.335(1)(d)3. are applicable to the restrictive covenants, the Report provides that:

> Defendant was the sole member of Lashed Out, LLC, and under the APA, that company sold its assets to Plaintiff. Defendant has argued that the APA and Executive Employment Agreement were separate agreements between separate entities. However, any practical view of the transaction suggests that, for purposes of evaluating what is a "reasonable" restrictive covenant, it is reasonable to treat Defendant like the seller of the business to Plaintiff.

[ECF No. 133 at 15]. Under Florida law, a "[c]orporate entity will not be ignored at law or equity simply because the number of stockholders is few, or even one, unless the circumstances are such as would warrant the same disregard of the entity were there ten thousand shareholders." *Sirmons v. Arnold Lumber Co.*, 167 So. 2d 588, 589 (Fla. 2d DCA 1964). "Courts are reluctant to pierce the corporate veil and will do so only in a court of competent jurisdiction, after notice to and full opportunity to be heard by all parties, and upon showing of cause which necessitates the corporate entity being disregarded in order to prevent some injustice." *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984). Moreover, "the burden of proving that the corporate veil can be disregarded is on the party who attempts to negate the existence of the separate corporate entity." *AIG Centennial Ins. Co. v. O'Neill*, No. 09-60551-CIV-ZLOCH, 2013 U.S. Dist. LEXIS 189570, at *82 (S.D. Fla. May 9, 2013) (citing *In re RBGSC Inv. Corp.*, 242 B.R. 851, 858 (Bkrtcy. E.D. Pa. 2000) (citations omitted). There has been no claim to pierce the corporate veil in this case, and no attempt has been made to

satisfy the requisite showing that the existence of Lashed Out, as a separate corporate entity, can be disregarded. Thus, Ms. McNeill objects to the conclusion within the Report that Lashed Out's corporate entity should be disregarded.

### IV. Ms. McNeill Objects to Magistrate Judge Strauss' Conclusion of Law as to the Meaning of "Solicit" within the Employment Agreement

Solicitation requires the accused to "proactively" seek to "entice" an employee or customers to discontinue that person's relationship with the claimant. *Scarbrough v. Liberty Nat'l Life Ins. Co.*, 872 So. 2d 283, 285 (Fla. 1st DCA 2004) (holding "that the term 'solicit' in an agreement prohibited the employee from being 'proactive' in such efforts")." *Massey Servs. v. Sanders*, 312 So. 3d 209, 215 (Fla. Dist. Ct. App. 2021). However, the Report states as a finding of fact that, "After Defendant's termination, [Ms. McNeil] continued to post on her social media pages and do live videos in which [Ms. McNeil] engaged with her followers. [ECF No. 133 at 7]. It is within these "videos" that the Report purports to make the statements that "solicit" away the customers.

After Ms. McNeil's termination from Head Kandy, Ms. McNeil has only been operating the new "Full Circle with Kayla" Facebook page, which was started on December 2, 2022. [ECF No. 133 at 6]. The old page "Kandy Life with Kayla" (a Public figure page), is operated by **Plaintiff**, not Ms. McNeil. [ECF No. 133 at 6]. While the Report acknowledges this distinction between the various social media pages and timeline regarding same (and who operated said pages), the Report fails to address or justify Head Kandy's allegations in its Preliminary Injunction Motion which improperly concludes that Ms. McNeil was making the videos cited on ECF No. 133 at 7 (such as the May 30, 2023 video and June 9, 2023 Facebook videos) on a social media page that had "over 100,000 followers (and HK's core customer base)." [ECF No. 47 at 2]. The page with over 100,000 followers was "Kandy Life with Kayla," which the Report

noted was operated by Plaintiff. [ECF No. 133 at 6, footnote 4]. Despite this, the Report does not adequately or accurately describe who Ms. McNeil's "followers" were on the videos cited to in the Report. This is absolutely critical to the analysis of whether Ms. McNeil ever "solicited" away who Head Kandy purports are its core customers (i.e. the 100,000 followers on "Kandy Life with Kayla"). *See e.g.* ECF No. 4 ("Her posts on "Head Kandy" and "Kandy Life with Kayla" social media sites emphasized….")

The "Full Circle with Kayla" Facebook Page (i.e. "Whipin Life with Kayla"), at the time of the Injunction Hearing only had approximately 15,000 followers. As such, Head Kandy's position that Ms. McNeil "solicited" to 100,000 core customers of Head Kandy [ECF No. 47 at 2, is not supported by the Record. In fact the Record supports the opposite. *See* ECF No. 86-29 (Declaration of Patricia Paquette, ¶¶ 5 – 8: "…Ms. McNeil disappeared for a while from social media. I noticed first that I hadn't seen any Facebook lives from her [Kandy] Life with Kayla page in months on social media and so I went out to search for her. Her page no longer existed, but I saw Ryan had taken her place and that there was a name change on her page. I was very confused. In one of the videos I saw of Ryan, someone commented, not Ms. McNeill, said you could find Ms. McNeill on a page called Full Circle with Kayla…Kayla never reached out to me saying to come follower her on WhipiCo or any other platform. I found her new pages independently from comments on HK videos on Facebook. I was honestly stumpted at one point in time where she went."). The Report, as addressed further in this Objection, afforded little to no weight to the "other declarations or affidavits submitted in support of Defendant" [ECF No. 133 at 11, footnote 7]. However, this is error as Plaintiff never identified anything that would discredit Ms. Paquette. In Plaintiff's Memorandum Regarding Defendant's Declaration [ECF No. 114] and accompanying chart of Declarant's alleged inconsistent statements on social media

14

[ECF No. 114-1], Ms. Paquette is not mentioned nor referenced in the chart attached as Exhibit A to ECF No. 114.  As such, Ms. Paquette's statement that she was never solicited to go to the Full Circle with Kayla/Whipin Life with Kayla page or any other social media page should be given its due weight regarding the analysis of purported solicitation by Ms. McNeil of the "core customer base" of Head Kandy. [ECF No. 47 at 15].

**V.    Ms. McNeill Objects to the Imposition of an Injunction, to Any Extent, Prior to Determination of Her Jurisdictional Challenge to the Court's Authority**

On May 11, 2023, Ms. McNeill filed her Corrected Motion to Dismiss Amended Complaint [ECF No. 34] (the "Motion to Dismiss").  In the Motion to Dismiss, Ms. McNeill argues, in relevant part, that the Court lacks personal jurisdiction over her and, consequently, the Complaint should be dismissed in its entirety.  As previously discussed, the Report recommends that the Court enter a preliminary injunction against Ms. McNeill, enjoining her from taking a broad array of actions, including engaging in speech protected by the First Amendment, U.S. Constitution, and practicing her chosen profession.  As of the filing date of this Objection, Ms. McNeill has an active and substantiated jurisdictional challenge before the Court through her Motion to Dismiss and the supporting documents and briefs submitted to the Court. [ECF Nos. 34, 53].

"Since it is axiomatic that a court cannot act without jurisdiction," the Court cannot presently grant the relief requested in the PI Motion. *JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363, 1364 (S.D. Fla. 1999) (citing *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action.").  Thus, until personal jurisdiction over Ms. McNeill has been ascertained, no injunction may issue against Ms. McNeill.  Ms. McNeill respectfully requests that the Court hold the PI

Motion in abeyance unless and until an order is entered finding that the Court possesses the requisite jurisdiction over Ms. McNeill.

## VI. Ms. McNeill Objects to the Recommendations Limiting her Speech as Lacking the Requisite Specificity

The Report contains a finding that, "in Defendant's live videos, she engaged in discussions with her followers about the progress of this lawsuit." [ECF No. 133 at 7]. It was also found that Head Kandy suffered injury during some of these "lawsuit updates." [*Id*. at 34]. As a result, the Report recommends that Ms. McNeill be enjoined from "making, publishing, or communicating to any person or in any public forum any defamatory, disparaging, or otherwise negative or degrading comments, remarks or statements concerning Plaintiff, or its affiliates, or their businesses or any of their respective employees, officers, existing and prospective clients, suppliers, investors, and other associated third parties," without further specificity. [*Id*. at 42-43]. However, Ms. McNeill made the very same statements under oath during the PI Hearing that she made in her videos. *Compare* ECF No. 75-3 at 3:45-5:20; ECF No. 77-22 at 10:45-23:35; ECF NO. 79-12 at 16:30-33:58 *with* Tr. 67:10-19; 112:5-22; 114:2-115:20; 163:4-170:23; 176:2-178:5. Comments made by Ms. McNeill that relay statements she made during the course of this proceeding are protected speech. Indeed, "[a] trial is a public event, and there is no special perquisite of the judiciary which enables it to suppress, edit or censor events which transpire in proceedings before it, and those who see and hear what transpired may report it with impunity[.]" *State ex Rel. Miami Herald Pub. v. McIntosh*, 340 So. 2d 904, 908-909 (Fla. 1977); *Craig v. Harney*, 331 U.S. 367, 374 (1947) ("A trial is a public event. What transpires in the court room is public property. . . . Those who see and hear what transpired can report it with impunity. There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in

proceedings before it."). Thus, the breadth of the recommended injunction, read in view of the finding within the Report, would serve as a gag order against Ms. McNeill because it would preclude her from discussing her testimony and other actions within this case. *See Delgado v. Miller*, 314 So. 3d 515, 518 (Fla. 3d DCA 2020) (quashing trial court's order prohibiting parties from "engag[ing] in any social media of any nature which comments, directly or indirectly, on the other party's emotional or mental health or personal behavior,' [because it] is so overbroad as to render its boundaries indiscernible.").

"Every order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) described in reasonable detail . . . the act or acts restrained or required." F.R.C.P. 65(d)(1)(A)-(C). Moreover, "a gag order, represents a classic example of a prior restraint on speech: one that prohibits free speech before it is spoken." *Delgado*, 314 So. 3d at 517 (citing *Vrasic v. Leibel*, 106 So. 3d 485, 487 (Fla. 4th DCA 2013 (holding that "[p]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights."))."Where a trial court imposes such restrictions on a party's free speech rights, it must make findings that support the need for these limitations, and the order must be 'narrowly tailored to preclude only extra-judicial statements which are substantially likely to materially prejudice the trial.'" *Id*. at 518 (quoting *Rodriguez v. Feinstein*, 734 So. 2d 1162, 1164 (Fla. 3d DCA 1999)). The Report does not contain any findings that Ms. McNeill's out-of-court statements will materially prejudice the trial. Thus, the injunction recommended in the Report would be an unjustified infringement upon Ms. McNeill's First Amendment rights. Due to its lack of specificity, the injunction would necessarily include statements relaying testimony or filings in this case which contain "defamatory, disparaging, or otherwise negative

or degrading" comments about Head Kandy, its business and related persons given the nature of the allegations and defenses that will be asserted in this case.

### VII. Ms. McNeill Objects to Magistrate Judge Strauss' Finding that Declarations and Affidavits Executed by Current and Former Head Kandy Customers and Entered into Evidence are, as a Group, Unreliable

The Report improperly states that Defendant submitted 19 Declarations into evidence, when in fact 29 declarations were submitted. *See e.g.* [ECF No. 86-13 through 31; and ECF No. 96-1 through 10]. The Report fails to account for the fact that 15 of those Declarations are not in fact attacked by Plaintiff or listed in ECF No. 114 and 114-1 to be "inconsistent." Therefore, the Report disregards and gives little weight to more than half of the affidavits, which remain uncontroverted by Plaintiff. Ms. Patricia Paquette's affidavit is cited in here, *supra*, as further example of this. These affidavits account for many of the reasons why alleged customers of Head Kandy decided to stop purchasing from Head Kandy that are completely unlinked and unrelated to any action of Ms. McNeil.

### VIII. Ms. McNeill Objects to Magistrate Judge Strauss' Finding that Head Kandy Informed Her that She was Going to be Removed from the Company

The Report contains a finding that "[o]n November 28, 2022, Plaintiff informed Defendant that she was going to be removed from the company." [ECF No. 133 at 7]. Instead, on that date, Head Kandy, through its outside counsel, sent Ms. McNeill a letter asserting that her business, Whipi, was a competitor to Head Kandy and that "Head Kandy **would be within its right to remove** [her] as a company officer . . . and to **cancel** [her] ownership Units and **void** any remaining financial obligations owed to [her]."[4] [ECF No. 47-2 at 30 (emphasis added)]. Ms. McNeill was informed that her employment with Head Kandy was suspended on December

---

[4] Head Kandy later acknowledged that it did not possess any information demonstrating that Ms. McNeill's actions were not in violation of the Employment Agreement or her obligations to Head Kandy, and it did not object to her continuing such actions. [ECF No. 85-9 at 3].

20, 2022.  [Tr. 157:1-14].  Ms. McNeill was formally terminated on January 30, 2023.  [ECF No. 93 ¶ 12].

IX. **Ms. McNeill Objects to Magistrate Judge Strauss' Finding that Head Kandy Exercised its Option to Repurchase Her Membership Units in Head Kandy**

The Report contains a finding that "[o]n February 17, 2023, Plaintiff exercised its option to repurchase all of the membership units belonging to Defendant, though Defendant has not received any amount for the repurchase of her units." [ECF No. 133 at 7].  This appears to be a confusion with regard to stipulated facts submitted by the parties.  To clarify, the parties stipulated that Head Kandy adopted a resolution on February 17, 2023, wherein it stated that it "exercise[d] its option to repurchase all Units belonging to McNeill."  [ECF No. 93 ¶ 37]. Nonetheless, Ms. McNeill maintains that Head Kandy did not exercise its option because it did not comply with the requirements set forth in Article 8.5 of Head Kandy's Amended and Restated Limited Liability Company Operating Agreement dated May 3, 2018 for its repurchase option.  For example, the parties also stipulated that "Ms. McNeill has not received any amount for the repurchase of her Units in Head Kandy following Head Kandy's adoption of the February 17, 2023 resolution." [*Id*. ¶ 38].  Therefore, Ms. McNeill objects to any finding that Head Kandy has effectuated its option to repurchase Ms. McNeill's ownership interest in Head Kandy.

## CONCLUSION

Wherefore, Ms. McNeill respectfully requests that the Court not adopt the above-referenced findings of fact and conclusions of law and, instead, enter an order consistent with the arguments set forth herein, the record before the Court and all applicable laws.

DATED this 26th day of September, 2023.

Respectfully Submitted,

By: */s/ Laura Burgess*

19

        Laura E. Burgess, Esq.
        Florida Bar No. 0105073
        L.E. Burgess P.A.
        5966 S Dixie Highway, Suite 300
        Miami, FL 33143
        Tel.: 305.942.8044
        Alt. Tel.: 713.818.5055
        laura@leburgesslaw.com

        and

        By: _/s/ Antonio L. Converse_
        Antonio L. Converse, Esq.
        Admitted *Pro Hac Vice*
        Converse Law Group, P.C.
        600 17th Street, Suite 2800 South
        Denver, CO 80202
        Tel: 303.228.9471
        anthony@converselawgroup.com

        COUNSEL FOR KAYLA MCNEILL

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and through that filing served all counsel of record.

                                               _/s/ Laura E. Burgess_