## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-CV-60345-RAR

**HEAD KANDY LLC**,

     Plaintiff,

v.

**KAYLA MARIE MCNEILL**,

     Defendant.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S CORRECTED MOTION TO DISMISS THE AMENDED COMPLAINT

**THIS CAUSE** comes before the Court on Defendant Kayla McNeill's Corrected Motion to Dismiss the Amended Complaint ("Motion"), [ECF No. 34], filed on May 11, 2023. Plaintiff Head Candy LLC filed a Response to the Motion to Dismiss ("Response") on May 26, 2023, [ECF No. 41]. Defendant then filed a Reply on June 9, 2023 ("Reply"), [ECF No. 53]. The Court having carefully considered the relevant submissions and applicable law, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Corrected Motion to Dismiss the Amended Complaint is **GRANTED IN PART AND DENIED IN PART**.

### BACKGROUND

In 2015, Defendant founded Heady Kandy, a consumer products company that produces, markets, and sells haircare and beauty items. Amended Complaint ("Am. Compl."), [ECF No. 25], ¶¶ 9–10. In 2018, Defendant sold the business to new owners—keeping a 20% ownership share for herself. Am. Compl. ¶ 9. In connection with this sale, Defendant executed an Executive Employment Agreement ("EEA"), [ECF No. 1-1], with Plaintiff which designated Defendant as an officer of the company and paid her an annual salary of $200,000. Am. Compl. ¶10. As part

of the EEA, Defendant agreed to non-solicitation, non-disparagement, and non-compete provisions ("Restrictive Covenants"). EEA at 6–9. Defendant further agreed to "submit to the exclusive jurisdiction of the state courts located in the state of Florida or to courts of the United States located in the state of Florida" while "waiv[ing]" arguments that "the venue of the action is improper" or that an enforcement action is not "maintainable in such courts." EEA at 13 (capitalization normalized).

Shortly after the sale, disagreements between the parties began to arise. Plaintiff claims to have discovered that Defendant was engaging in "a years-long scheme to enrich herself at the Company's expense." Am. Compl. ¶ 13. Plaintiff alleges that Defendant "arranged for unauthorized payroll expenses for employees and contractor's at [Head Kandy's] expenses who were in fact performing personal services for [Defendant] and her family." Am. Compl. ¶ 17. These payments were allegedly drawn from Plaintiff's "Florida bank account" and were "in excess of $100,000." *Id.* Plaintiff also alleges that Defendant charged "a gastro bypass plastic surgery for [Defendant] herself that cost $35,000, substantial personal travel for her and her family, the purchase of personal consumer merchandise, and more than four years' worth of meals at fast-food and other restaurant chains" to her personal credit card before initiating "ACH transfers directly from Head Kandy's Florida bank account" to pay the charges. Am. Compl. ¶ 20. Plaintiff further alleges that Defendant "intentionally issued [] Unauthorized Discount Codes to her personal friends and family solely for her benefit and their benefit and not in furtherance of [Plaintiff]'s business objectives, thereby permanently and/or indefinitely depriving [Plaintiff] of the value of these assets." Am. Compl. ¶ 87.

In addition to the financial malfeasance allegations, Plaintiff claims that Defendant "made false and defamatory statements" on her Facebook page in violation of the EEA. Am. Compl. ¶¶ 128–135. Defendant allegedly advertised competitor products and stated that Plaintiff utilized

images of Defendant's children without her permission.  *Id.*  These "false and defamatory statements" allegedly "caused damage in Florida, through the loss of sales revenue received into Head Kandy's Florida bank account, through harm to the assets and good will of Head Kandy, a Florida citizen, and through harm to the value of the investment of Head Kandy Members who are citizens and residents of Florida."  Am. Compl. ¶ 135.  Plaintiff also alleges that Defendant "contacted several of Head Kandy's important affiliate influencers with the intent to interfere with Head Kandy's relationship with them . . ."  Am. Compl ¶ 121.  This conduct allegedly "caused damage in Florida, through the loss of sales revenue received into Head Kandy's Florida bank account, through harm to the assets and good will of Head Kandy, a Florida citizen, and through harm to the value of the investment of Head Kandy Members who are citizens and residents of Florida."  Am. Compl. ¶ 126.  Defendant was later terminated.  Am. Compl. ¶ 36.

Defendant has since filed a claim in state court in Colorado for unpaid wages under Colorado's Wage Claim Act, C.R.S. § 8-4-101, *et seq.*, styled as *Kayla M. McNeill v. Head Kandy, LLC*, Chaffee County District Court, Case No. 2023CV30007 (the "Colorado Action").  Shortly after Defendant brought the Colorado Action, Plaintiff filed the present case.  In the Amended Complaint, Plaintiff brings claims for: Breaches of Contract (Count I), Fraud (Count II), Conversion (Count III), Civil Theft (Count IV), Unjust Enrichment (Count V), Breach of Fiduciary Duty (Count VI), Intentional Interference with Business Relationship (Count VII), Defamation (Count VIII), and Declaratory Relief (Count IX).  *See generally* Am. Compl.

Defendant now moves this Court to dismiss the Amended Complaint based on lack of personal jurisdiction, improper venue, failure to join indispensable parties, and pleading insufficiency.  Mot. at 1.  The Court will address each of these arguments in turn.

## LEGAL STANDARDS

### I.   *Personal Jurisdiction*

To determine whether personal jurisdiction exists, a federal court sitting in diversity undertakes a two-step inquiry: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1363–64 (11th Cir. 2021) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010)).   "There are two types of personal jurisdiction: specific and general." *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1990).   "General personal jurisdiction is based on a defendant's substantial activity in [a state] without regard to where the cause of action arose," whereas "specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within [a state]."  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (citations omitted).   To determine whether a cause of action "arises out of" or "is related to" a defendant's actions in a state, the court need not require "proof of causation—*i.e.*, proof that the plaintiff 's claim came about because of the defendant's in-state conduct."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). However, "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum."  *Id.*

Where no evidentiary hearing is held on a motion to dismiss, "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).   "A prima facie case is established if the plaintiff presents affidavits or deposition testimony sufficient to defeat a motion for judgment as a matter of law."  *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th

Cir. 2010) (citation omitted).  "Where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff."  *Id.*  When "such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists."  *Id.*  A defendant challenging personal jurisdiction must present evidence to counter the plaintiffs' allegations.  *See Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (noting that the defendant must "raise, through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction").  Once the defendant has presented sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents."  *Id.*

## II.  Venue

On a motion to dismiss based upon improper venue, the plaintiff has the burden of showing that venue in the forum is proper.  *Tuuci Worldwide, LLC v. S. Frankford & Sons, Inc.*, No. 23-20615, 2023 WL 5275187, at *7 (S.D. Fla. Aug. 16, 2023).  In its analysis under Rule 12(b)(3), "a court must accept the facts in a plaintiff's complaint as true."  *Walker v. Hallmark Bank & Trust, Ltd.*, 707 F. Supp. 2d 1322, 1325 (S.D. Fla. 2010) (citing *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)).  A court may also "consider matters outside the pleadings if presented in proper form by the parties."  *Id.* (quoting *MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001)).  "Where conflicts exist between allegations in the complaint and evidence outside the pleadings, the court 'must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'"  *Id.* (quoting *Wai*, 315 F. Supp. 2d at 1268).  Title 28 U.S.C. section 1391(b) governs venue in actions alleging jurisdiction in federal court based on violations of federal law or the U.S. Constitution and provides that those actions may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Wai*, 315 F. Supp. 2d at 1268.

### III.   *Federal Rule of Civil Procedure 12(b)(6) Pleading*

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff receives the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp*., 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678.

A court considering a 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits—but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

#### IV.   *Federal Rule of Civil Procedure 12(b)(7) Indispensable Parties*

Under Federal Rule of Civil Procedure 12(b)(7), an action may be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).  Rule 19 sets forth a two-part test to determine whether a party is indispensable. *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279 (11th Cir. 2003).  First, the court must examine whether a party is "required" under Rule 19(a).  Fed. R. Civ. P. 19(a)(1).  If a court determines that an absent party does satisfy the Rule 19(a) criteria, "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). If the party is "required" under Rule 19(a) but joinder is not feasible because doing so would divest the court of jurisdiction, then the court must inquire whether, under Rule 19(b), the litigation should continue among the existing parties or should be dismissed. *See Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1347 (11th Cir. 2011).

#### V.   *Abstention*

The Declaratory Judgment Act gives district courts "exceptionally broad discretion in deciding whether to issue a declaratory judgment." *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014); *see also Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942) ("Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction.") (citation omitted); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) ("We have repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.") (internal quotations omitted).

Although district courts wield this broad discretion, the Supreme Court has cautioned that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495.  The Eleventh Circuit has

provided the following factors to guide district courts in exercising their discretion when a federal

declaratory action relates to an underlying state-court action:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (2) whether the judgment in the federal declaratory action would settle the controversy; (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue; (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable; (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; (6) whether there is an alternative remedy that is better or more effective; (7) whether the underlying factual issues are important to an informed resolution of the case; (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas Variable Life Ins. Co. v. Roach,* 411 F.3d 1328, 1331 (11th Cir. 2005). "This list is not

exhaustive, and no single factor is controlling. *See id.* "Rather, these guideposts set forth a totality-

of-the-circumstances analysis that the district court should employ when deciding whether to

entertain or abstain from hearing a declaratory action." *Platinum Luxury Auctions LLC v.

Concierge Auctions, LLC*, No. 22-60763, 2022 WL 18463420, at *5 (S.D. Fla. Oct. 10, 2022)

(citing *Nat'l Trust Ins. Co. v. S. Heating & Cooling Inc.*, 12 F.4th 1278, 1285 (11th Cir. 2021)).

## ANALYSIS

### I.  *Personal Jurisdiction*

Florida's long-arm statute, section 48.193, provides two ways in which a defendant may

be subject to the jurisdiction of Florida courts:

> First, a defendant is subject to specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida—for conduct specifically enumerated in the

> statute . . . Second, a defendant is subject to general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida.

*Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (internal citations and quotations omitted). As discussed above, "[w]hether specific or general, the exercise of personal jurisdiction over a defendant must comport with due process." *Id.* Plaintiff has provided argument in support of only specific personal jurisdiction in its Response. Resp. 5–19. Therefore, the Court will focus its analysis solely on whether specific personal jurisdiction exists over Defendant.

"Specific jurisdiction is claim-specific, and a court may hold it has specific personal jurisdiction over a defendant as to one claim but not as to another in the same suit." *Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1086 (S.D. Fla. 2020). Therefore, the Court will analyze each count as grouped by the alleged conduct that gives rise to it when appropriate. Defendant's alleged misconduct relating to credit card reimbursements, payroll expenditures, and unauthorized discount codes gives rise to Plaintiff's claims for Fraud (Count II), Conversion (Count III), Civil Theft (Count IV), Unjust Enrichment (Count V), and Breach of Fiduciary Duty (Count VI) (collectively, the "Financial Malfeasance Claims"). Defendant's alleged false and disparaging statements to Plaintiff's affiliates and customers give rise to Plaintiff's claims for Breach of Contract (Count I), Intentional Interference with Business Relationship (Count VII), and Defamation (Count VIII) (collectively, the "Reputation Claims").

### A.   *Long-Arm Statute*

Under the first step of the personal jurisdiction inquiry, the Court must determine whether Defendant's activities meet any of the enumerated acts listed in section 48.193(1) of the Florida Statutes. Plaintiff alleges jurisdiction under sections 48.193(1)(a)(2) and 48.193(1)(a)(1). Resp. at 6.

### i.    Section 48.193(1)(a)(2)

Florida law allows for personal jurisdiction over nonresident defendants who "commit[] a tortious act within" Florida.  Fla. Stat. § 48.193(1)(a)(2).  This provision of Florida's long-arm statute "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008); *see also Louis Vuitton*, 736 F.3d at 1353 ("[U]nder Florida law, a nonresident defendant commits a tortious act within [Florida] when he commits an act outside the state that causes injury within Florida.").

Here, Plaintiff alleges that Defendant committed several torts against it.  Defendant argues that Plaintiff "does not allege that [Defendant] was present in the State of Florida when any of the tortious acts were allegedly committed" and Defendant "is not alleged to have directed tortious activity into Florida."  Mot. at 6–7.  However, under Florida law, "a nonresident defendant commits a tortious act within [Florida] when he commits an act outside the state that causes injury within Florida." *Louis Vuitton*, 736 F.3d at 1353.  And here Plaintiff has claimed that Defendant's alleged torts caused "damage [that] was incurred in Florida" because "[fraudulent expenditures] were paid from Head Kandy's Florida bank account, and [] these improper expenses harmed Head Kandy, a Florida citizen, and harmed the value of the investment of Head Kandy members who are citizens and residents of Florida."  Am. Compl. ¶ 103 (Count V); *see also* Am. Compl. ¶¶ 78 (Count II); 89 (Count III); 96 (Count IV); 117 (Count VI); 126 (Count VII); 135 (Count VIII).  Accordingly, Plaintiff has pled that Defendant committed torts that allegedly caused injury to Plaintiff within the state as required by Florida's long-arm statute.

### ii.    Section 48.193(1)(a)(1)

Florida law allows for jurisdiction over a defendant who "[o]perat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture in this state . . . ."  Fla. Stat. §

48.193(1)(a)(1).  "[T]o establish that a defendant is 'carrying on a business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit."  *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005).  Where a plaintiff alleges that a defendant "engaged in several forms of ongoing, extensive communications with Plaintiff's representatives in Florida; travelled to Florida, entered into an agreement requiring Defendant to send deliverables to Florida; and did send deliverables to Florida," courts have found such allegations "established engaging in business in Florida under Section 48.193(1)(a)(1)."  *Intego Software, LLC v. Concept Development, Inc.*, 198 So. 2d 3d 887, 893 (Fla. 1st DCA 2016).

Here, Plaintiff brings a claim for Breaches of Contract (Count I) based on allegations that Defendant "made false and disparaging statements about Head Kandy, its products and its majority owners, to Head Kandy employees, affiliates, and customers" as well as "intentionally sought to steer customers away from Head Kandy products and towards competing products."  Am. Compl. ¶ 56.  This behavior allegedly "caused damage in Florida, through the loss of sales revenue received into Head Kandy's Florida bank account, through harm to the assets and good will of Head Kandy, a Florida citizen, and through harm to the value of the investment of Head Kandy Members who are citizens and residents of Florida."  Am. Compl. ¶ 68.  Plaintiff has presented evidence that disparaging statements by Defendant reached consumers in Florida.  Resp. at 13.[1] Additionally, there is no disagreement that Defendant signed the EEA (governed by Florida law) with a Florida company, *see generally* EEA, and worked with a Florida-based accounting office

---

[1]  Defendant provides affidavits and argument attempting to contextualize or contradict evidence showing that disparaging statements by Defendant reached Florida consumers.  Reply at 5.  But "the Court must construe all reasonable inferences in favor of the non-movant plaintiff."  *See PVC Windoors, Inc.*, 598 F.3d at 810.  Further, given the screenshots of Florida consumer commentary provided by Plaintiff, Resp. at 13, the Court finds that there is sufficient evidence to support personal jurisdiction.

on a weekly basis, Mot. Ex. A, Affidavit of Kayla McNeill ("McNeill Affidavit") ¶ 12. Accordingly, Plaintiff has pled and established that Defendant engaged in business in Florida under section 48.193(1)(a)(1) for purposes of the Breaches of Contract claim (Count I).

Defendant argues that Florida's Corporate Shield Doctrine should prevent jurisdiction over Defendant because "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." Mot. at 10 (quoting *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993)). However, such is not the case here. Plaintiff's breach of contract claim can be boiled down to the allegation that many of Defendant's efforts to conduct business in Florida were for her own benefit—not that of the company. *See* Am. Compl. ¶ 56 (alleging Defendant "intentionally sought to steer customers away from Head Kandy products and towards competing products"). While it is true that some of Defendant's conduct in Florida was for the benefit of Plaintiff, *Doe* dealt with a defendant whose "only" contact with the state was for the benefit of the business and is thus inapposite here.[2]

### B.  Due Process

"Even though a statute may permit a state to assert jurisdiction over a nonresident defendant, the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no

---

[2] Defendant also argues that a video Defendant admits to posting on two separate social media accounts regarding Plaintiff allegedly profiting off photos of her children "occurred after commencement of this action and are protected by an absolute litigation privilege" and therefore "cannot form the basis for personal jurisdiction over Ms. McNeill." Reply at 3. However, litigation privilege protects only "statements made in the course of judicial proceedings." *Rolle v. Cold Stone Creamery, Inc.*, 212 So. 3d 1073, 1076 (Fla. 3d DCA 2017). In the *Rolle* case relied upon by Defendant, the court extended the privilege to a demand letter of sorts sent to an opposing attorney and then later provided to public media. *Id.* at 1075. Here, a video posted by Defendant to her social media page that does not mention the ongoing litigation is not analogous—and there is no indication that this statement was otherwise made in the course of judicial proceedings. Litigation privilege does not prevent the Court from considering this video in determining jurisdiction.

meaningful 'contacts, ties, or relations.'" *Licciardello,* 544 F.3d at 1284 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Specific jurisdiction exists if the following three prongs are satisfied: (1) the plaintiff has established that his claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) the plaintiff has demonstrated that the defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of jurisdiction would not violate traditional notions of fair play and substantial justice. *Louis Vuitton*, 736 F.3d at 1355. "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.* (quoting *Diamond Crystal,* 593 F.3d at 1267). Here, Plaintiff has established the first two prongs of the Due Process test, and Defendant has failed to show that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.

### i. *Arises out of or relates to*

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *See Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (cleaned up). This means that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. Moreover, the location of a plaintiff's alleged injury cannot support specific jurisdiction on its own. *See id.* at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."). "[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010).

In determining whether a claim "arises out of or relates to" a defendant's contacts with the forum, the Supreme Court has explained that a "strict causal relationship between the defendant's

in-state activity and the litigation" is not required and "we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor*, 141 S. Ct. at 1026. As the Eleventh Circuit has recently stated, this "inquiry—whether the claims 'arise out of or relate to' one of the defendant's contacts—does not require direct causation. Rather, it 'contemplates that some relationships will support jurisdiction without a causal showing.'" *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1229 (11th Cir. 2023) (quoting *Ford Motor*, 141 S. Ct. at 1026 (emphasis omitted) (citation omitted)). "The focus must always be on the *nonresident defendant's* conduct, that is, whether the defendant deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum." *Diamond Crystal*, 593 F.3d at 1268 (emphasis in original).

The Court begins by analyzing the "arises out of or relates to" standard as to the Financial Malfeasance Claims before proceeding to the Reputation Claims.

### a. *Financial Malfeasance Claims*

#### 1. *Credit Card Reimbursements*

Defendant denies she "sought reimbursement from [Plaintiff's Florida-based accounting office] for [her] personal expenses." McNeill Affidavit ¶¶ 8–9. Defendant instead alleges that employee Ryan Thompson (or another staffer) was charged with "submit[ting] full, unredacted copies of each monthly Credit Card statement." McNeill Affidavit ¶ 10. Defendant argues that these statements show she "did not take any actions directed into Florida . . . ." Reply at 8.

In contrast, Plaintiff submitted the testimony of Ryan Thompson who claims Defendant "directed [him] to submit [Defendant's] full and complete American Express card statement every single month to [Plaintiff's] accounting department located in Hollywood, Florida, so that it could be paid from [Plaintiff's] bank account held at Synovus Bank in Florida." Resp. Ex. A, Affidavit

of Ryan Thompson ("Thompson Affidavit") ¶ 7.  For example, Mr. Thompson claims Defendant asked him to submit an expense charge for a mechanical part for Defendant's personal use and Defendant stated "they would never know it wasn't used for the forklift" that Plaintiff owned. Thompson Affidavit ¶ 11.

There is a clear conflict between Defendant's testimony and Mr. Thompson's testimony on the issue of reimbursement.  But "the Court must construe all reasonable inferences in favor of the non-movant plaintiff."  *See PVC Windoors, Inc.*, 598 F.3d at 810.  The parties agree that the American Express card belonged only to Defendant and that Mr. Thompson, to some extent, was involved in submitting Defendant's personal credit card statements for reimbursement of business-related expenses.  McNeill Affidavit ¶¶ 7, 10; Thompson Affidavit ¶ 7.  And, based on the allegations in the Amended Complaint and evidence provided by Plaintiff's witnesses, there is evidence Defendant was involved, to whatever extent, in directing or facilitating the submission of expenses to a Florida-based accounting office to enact the withdrawal of money from a Florida-based account.  This is sufficient to support a finding that Defendant's conduct arises out of or relates to the Defendant's contacts in Florida.  *See PVC Windoors, Inc.*, 598 F.3d at 810 ("Where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff.  If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists.").

Further, Defendant seems to argue for a higher standard of relation than actually required by law for a court to find a basis for jurisdiction.  *See* Reply at 8 ("[Defendant] did not take any actions directed into Florida pertaining [sic] the Credit Card charges which form the basis for [Plaintiff's] tort claims.").  The Supreme Court has made clear that causation is not required for the "relatedness" prong to be met.  *Ford Motor*, 141 S. Ct. at 1026; *see also Del Valle v. Trivago*

*GMBH*, 56 F.4th 1265, 1276 (11th Cir. 2022) ("[D]irect causation between the nonresident's forum contacts and the plaintiff's cause of action is not required."); *SkyHop Techs*, 58 F.4th at 1229 ("The first inquiry—whether the claims 'arise out of or relate to' one of the defendant's contacts—does not require direct causation."). In light of *Ford* and its progeny, the Court finds the facts alleged also support the "relatedness" component of the prong, which is in and of itself sufficient. Thus, the "arises out of *or related to*" prong is satisfied by the allegations and evidence regarding the credit card reimbursements.

## 2. *Payroll Expenditures*

In addition to allegedly improper reimbursements, Defendant denies that she "approved, authorized or in any way secured payment of Head Kandy funds to [a Head Kandy employee] for personal work he performed for me or my family." McNeill Affidavit ¶ 14. In contrast, Plaintiff points again to the testimony of Mr. Thompson, who claims that Defendant "told [him] that she had agreed to provide Elise Hopkins a position with, and pay her as an employee of [Plaintiff]. Her primary responsibility, however, was as a school tutor for [Defendant's] son." Thompson Affidavit ¶ 16. Elise Hopkins is one example, but Thompson makes similar allegations regarding two other employees in addition to alleging that he himself was required to perform personal services for Defendant. Thompson Affidavit ¶¶ 15, 17, 19.

There is a clear conflict between Defendant's testimony and Mr. Thompson's testimony on the issue of payroll, requiring the Court to once again construe all reasonable inferences in favor of Plaintiff. *See PVC Windoors, Inc.*, 598 F.3d at 810. Defendant admits that she "received payroll preview reports prior to disbursement of any payroll funds to allow [her] the opportunity to review and approve the payroll figures before they were finalized." McNeill Affidavit ¶ 12. Further, it is uncontroverted that payroll, after it was reviewed and approved by Defendant, was processed by a Florida office and withdrawn from a Florida account. Am. Compl. ¶¶ 100–03. Based on these

uncontroverted allegations and affidavits provided by Plaintiff's witnesses, there is evidence that Defendant was involved in directing or approving a Florida-office drawing money from a Florida-based account for employees who purportedly performed personal services for Defendant.  This is sufficient to support a finding that Defendant's conduct arises out of or relates to the Defendant's contacts in Florida.  *See PVC Windoors, Inc.*, 598 F.3d at 810.

In sum, based on the analysis in this section and the preceding section, the Court finds that Plaintiff's claims for Fraud (Count II), Civil Theft (Count IV), Unjust Enrichment (Count V), and Breach of Fiduciary Duty (Count VI) arise from or relate to the forum.

### 3.   *Discount Codes*

Regarding the allegedly unauthorized discount codes, Plaintiff does not allege or provide evidence that any of the discount codes were directed at individuals in Florida.  Instead, Plaintiff alleges only that Defendant's "tortious conversion of the Unauthorized Discount Codes caused damage in Florida, through a loss of sales revenue that should have been received into Head Kandy's Florida bank account in exchange for products distributed by Head Kandy, through harm to the assets of Head Kandy, a Florida citizen, in its Florida bank account, and through harm to the value of the investment of Head Kandy Members who are citizens and residents of Florida."  Am. Compl. ¶ 126.  Unlike the other Financial Malfeasance Claims (Fraud, Civil Theft, Breach of Fiduciary Duty, and Unjust Enrichment), which allege pecuniary harm in Florida *and* some action by Defendant specifically directing the alleged fraud to run through a Florida office and Florida bank account, Plaintiff fails to provide any other links to Florida as to Conversion (Count III).  *See Guarino v. Mandel*, 327 So. 3d 853, 861 (Fla. 4th DCA 2021) ("Mere injury in Florida resulting from a tort committed elsewhere is insufficient to support personal jurisdiction over a nonresident defendant.").  Additionally, this alleged misuse of company discount codes forms the only basis for Plaintiff's Conversion claim.  *See* Am. Compl. ¶¶ 80–89.  Therefore, the Court cannot find

specific jurisdiction exists as to Conversion (Count III) because the alleged conduct does not arise from or relate to the forum.

### b. Reputation Claims

#### 1. Defamatory Statements to Customers

Plaintiff's claims regarding Defendant's alleged disparaging statements to customers arise or relate to Defendant's contacts with Florida.  Plaintiff alleges that Defendant made disparaging and defamatory statements, including a video posted on April 11, 2023, which "reached followers in Florida" and caused a loss of sales.  Mot. at 13.  In support, Plaintiff provides social media commentary from Florida consumers stating that they will no longer support Plaintiff because of Defendant's allegations.  Mot. Ex. C, Affidavit of Mindy McDermaid ("McDermaid Affidavit") ¶ 19–20.[3]  Given that Plaintiff's Breaches of Contract claim and Defamation claim are based on the alleged harm Plaintiff suffered from Defendant's disparaging statements, the Court finds the Breaches of Contract (Count I) and Defamation (Count VIII) claims arise out of or relate to Defendant's contacts with Florida.

#### 2. Defamatory Statements to Affiliates

Regarding the allegedly disparaging statements that Defendant made to Plaintiff's affiliates—which form the basis for Plaintiff's claim for Intentional Interference with Business Relationship (Count VII), *see* Am. Compl. ¶¶ 119–126—the Court cannot find evidence linking Defendant's alleged conduct to the forum.  Plaintiff does not allege or provide evidence that any of the affiliates were located in Florida.  Instead, Plaintiff alleges only that "intentional interference

---

[3]  Defendant argues that because someone else may have re-posted some of Defendant's online statements disparaging Plaintiff, they cannot form the basis for jurisdiction.  Reply at 2–5.  The Court disagrees. Construing all reasonable inferences in favor of Plaintiff as the Court must, *see PVC Windoors, Inc.*, 598 F.3d at 810, there is sufficient evidence here that Defendant posted videos of herself making disparaging statements about Plaintiff.

with these business relationships has caused damage in Florida, through the loss of sales revenue received into Head Kandy's Florida bank account, through harm to the assets and good will of Head Kandy, a Florida citizen, and through harm to the value of the investment of Head Kandy Members who are citizens and residents of Florida." Am. Compl. ¶ 126. Unlike the Financial Malfeasance claims, which alleged pecuniary harm in Florida *and* some action by the Defendant specifically directing the alleged fraud to run through a Florida office and Florida bank account, Plaintiff fails to provide any other links to Florida. *See Guarino*, 327 So. 3d at 861. Similarly, unlike the Breaches of Contract and Defamation claims, Plaintiff fails to allege or show that the affiliates received the disparaging statements in Florida. Therefore, the Court cannot find specific jurisdiction exists as to the Intentional Interference with Business Relationship claim (Count VII) because the alleged conduct does not arise out of or relate to Defendant's contacts with Florida.

Having addressed the "arises out of or related to" standard as to the Financial Malfeasance and Reputation Claims, the Court now proceeds to the second piece of the personal jurisdiction analysis: purposeful availment.

### ii.  *Purposeful Availment*

For the Court to find specific personal jurisdiction, Defendant must have taken "some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Ford Motor*, 141 S. Ct. at 1024–25 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id.* at 1015 (quoting *Keeton*, 465 U.S. at 774). "These rules derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). Defendants are thus provided with "fair warning"—knowledge that "a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

The Court begins by analyzing the "purposeful availment" standard as to the Financial Malfeasance Claims before proceeding to the Reputation Claims.

### a. Financial Malfeasance Claims[4]

Defendant argues that she "is not alleged to have directed tortious activity into Florida." Mot at 7. She summarizes the Financial Malfeasance Claims against her as alleging that she, "while outside Florida, (1) submitted overly inclusive reimbursement requests to Head Kandy; [and] (2) diverted the labor of Head Kandy's employees working outside the State of Florida for Ms. McNeill's personal benefit." *Id.* (citations omitted). However, as discussed above, the Court finds there is evidence that Defendant was involved in directing or approving a Florida office drawing money from a Florida-based account for employees who performed personal services for Defendant. Thompson Affidavit ¶ 16–19. This is sufficient to support a finding that Defendant purposefully availed herself of the forum.

Similarly, there is evidence Defendant was involved, to whatever extent, in directing or facilitating the submission of expenses to a Florida-based accounting office to enact the withdrawal of money from a Florida-based account to reimburse personal expenses on her credit card. The Court finds there is sufficient evidence to support a finding that Defendant availed herself of the forum regarding Plaintiff's claims for Fraud (Count II), Civil Theft (Count VI), Unjust Enrichment (Count V), and Breach of Fiduciary Duty (Count VI).

---

[4] Because the Court finds that Plaintiff's claim for Conversion (Count III) did not arise out of Defendant's contacts with the forum, *see supra* at 18, it need not address purposeful availment or traditional notions of fair play and substantial justice regarding this particular claim.

### b. *Reputation Claims*[5]

"In the context of the World Wide Web, given its pervasiveness, an alleged tortfeasor who posts allegedly defamatory material on a website has intentionally made the material almost instantly available everywhere the material is accessible." *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1214–15 (Fla. 2010). Therefore, "by posting allegedly defamatory material on the Web about a Florida resident, [Defendant] has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida." *Id.*

Furthermore, Plaintiff brings a Breaches of Contract claim related to the EEA based on this conduct. In the EEA, Defendant agreed to "submit to the exclusive jurisdiction of the state courts located in the state of Florida or to courts of the United States located in the state of Florida" while "waiv[ing]" arguments that "the venue of the action is improper" or that an enforcement action is not "maintainable in such courts." EEA at 13 (capitalization normalized). While this is not dispositive of jurisdiction, it is certainly evidence that Defendant made purposeful contact with the state of Florida and should not be surprised to be haled into this forum. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996) (finding the defendant's contractual agreement that all disputes between the parties "shall be governed by Florida law in a Florida court, further reinforces [the defendant's] 'deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.'"). Therefore, there is sufficient evidence to support a finding that Defendant availed herself of the instant forum regarding Plaintiff's claims for Breaches of Contract (Count I) and Defamation (Count VIII).

---

[5] Because the Court has found that the Intentional Interference with Business Relationship claim (Count VII) did not arise out of the Defendant's contacts with the forum, *see* supra 19, it need not reach the issues of purposeful availment or traditional notions of fair play and substantial justice.

### iii.  *Traditional notions of fair play and substantial justice*

Because Plaintiff has established the first two prongs of the due process test for specific jurisdiction, Defendant must demonstrate that this Court's exercise of personal jurisdiction over it violates "traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355. Even where a defendant has purposefully established constitutionally significant contacts within a forum state, jurisdiction must also be evaluated in light of several other factors to determine whether its exercise would comport with "fair play and substantial justice." *International Shoe*, 326 U.S. at 320.  "These factors include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Licciardello*, 544 F.3d at 1284 (citing *World–Wide Volkswagen*, 444 U.S. at 292).  "Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise." *Id.*

Defendant fails to meet her burden to demonstrate that the Court's exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice.  Defendant argues that "there is a large burden on [Defendant] being hauled into Florida court."  Reply at 11.  As Plaintiff correctly notes, Defendant does not provide any support, even in her affidavit, for this claim.  Resp. at 19.  Further, it is unconverted that Defendant "travelled to [Plaintiff's] primary place of business in Hollywood, Florida on numerous occasions between 2018 and 2022 to engage in business with [Plaintiff]" and "[o]n at least two occasions, McNeill travelled to Tampa, Florida to appear on the shopping site HSN Live."  Am. Compl. ¶ 7(ii).  As discussed above, Defendant agreed to the "exclusive jurisdiction" of courts in Florida and agreed to adjudicate any disputes under Florida law.  Consequently, Defendant should not be surprised to be litigating in Florida courts. *See Sculptchair, Inc.*, 94 F.3d at 631.

Defendant also argues that "Florida has no interest in adjudicating this dispute." Reply at 11. The Court disagrees. "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Lovelady*, 544 F.3d at 1288. Additionally, the EEA at issue here applies Florida law and Florida courts have an interest in interpreting and/or applying Florida law. *See Know Mind Enterprises, Inc. v. Web Merchants, Inc.*, No. 8:06-CV-767-SCB-EAJ, 2006 WL 8440218, at *4 (M.D. Fla. Oct. 24, 2006). Therefore, these factors weigh in favor of finding jurisdiction.

 Ultimately, based on the foregoing analysis, the Court concludes it has specific personal jurisdiction over Defendant as to Plaintiff's claims for Breach of Contract (Count I), Fraud (Count II), Civil Theft (Count IV), Unjust Enrichment (Count V), Breach of Fiduciary Duty (Count VI), and Defamation (Count VIII) because (1) Plaintiff has established that these claims "arise out of or relate to" at least one of Defendant's contacts with the forum; (2) Plaintiff has demonstrated that Defendant "purposefully availed" herself of the forum; and (3) the exercise of jurisdiction would not violate traditional notions of fair play and substantial justice. *See Louis Vuitton*, 736 F.3d at 1355.

However, the Court concludes that it does not have specific personal jurisdiction over Plaintiff's claims for Conversion (Count III) and Intentional Interference with Business Relationship (Count VII).[6] Accordingly, these specific claims warrant dismissal for lack of personal jurisdiction.

---

[6] The Court notes that Defendant also moves to dismiss the Conversion claim under Federal Rule of Civil Procedure 12(b)(6). Mot. 15–16. Because the Court finds that it lacks jurisdiction over this claim, it need not reach Defendant's argument regarding pleading sufficiency.

*II. Venue*

Defendant argues that "Florida is not the appropriate venue for this dispute" because "[Plaintiff] has not alleged damage to any property in Florida" and "the alleged events and omissions which underlie [Plaintiff's] claims all occurred outside the State of Florida." Mot. at 12 (capitalization normalized).  While it is true that Plaintiff has the burden of showing that venue in the forum is proper, *see Tuuci Worldwide, LLC*, 2023 WL 5275187 at *7, "a court must accept the facts in a plaintiff's complaint as true," *Walker*, 707 F. Supp. 2d at 1325.  And Plaintiff has alleged property damage in Florida for each claim.  *See* Am. Compl. ¶¶ 68 (Count I); 78 (Count II); 96 (Count IV); 103 (Count V); 117 (Count VI); 135 (Count VIII).

Moreover, to the extent Defendant claims that she "did not commit the acts described by [Plaintiff] in the Complaint [sic]," Reply at 12, Defendant merely establishes a conflict in the evidence.  And just as with its personal jurisdiction analysis, the Court must "draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'" *Walker*, 707 F. Supp. 2d at 1325.  Here, for the same reasons already provided in its jurisdictional analysis, the Court finds there is sufficient evidence that Defendant directed actions into Florida and "a substantial part of property that is the subject of the action is situated" in Florida.  *See Wai*, 315 F. Supp. 2d at 1268. Additionally, Defendant has already agreed that Florida is a proper venue for this dispute.  EEA at 13.  In sum, venue is appropriate in Florida.[7]  *See Martin v. Kuhl*, 528 So. 2d 71, 72 (Fla. 4th DCA

---

[7]  Defendant also argues that Plaintiff cannot "maintain an action or proceeding in this state unless it has a certificate of authority to transact business in this State." Mot. at 12.  In response, Plaintiff has provided a document from the State of Florida certifying that Plaintiff "is authorized to transact business in Florida." Resp., Ex. E.  Defendant then moves the goalpost and claims, without citation to a single case, that "Florida Courts have clarified that there is a distinction between a Certificate of Authority for a Florida entity and a Certificate of Status granting the entity LLC rights under Florida law" and "what [Plaintiff] attaches to its response is not sufficient."  Reply at 12.  The need for a Certificate of Status as opposed to the originally requested Certificate of Authority is an entirely new argument that Defendant is prohibited from raising for the first time in its Reply.  The Court will therefore not consider it.  *See Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1181 (S.D. Fla. 2015), *aff'd*, 839 F.3d 1003 (11th Cir. 2016) ("A reply memorandum may not raise new arguments or evidence, particularly where the evidence was available

1988) (finding venue proper in the county from which property was allegedly taken); *Powers v. Melick*, 211 So. 3d 122, 124 (Fla. 4th DCA 2017) (finding the parties' waiver of venue objections provision enforceable).

### III.   Rule 12(b)(6) Pleading

Defendant argues that Plaintiff fails to satisfy the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b).  Motion 13–15.  Defendant states that Plaintiff's fraud claim is "comprised of three categories of transactions: (1) reimbursement payments made by Head Kandy to Ms. McNeill for charges to Ms. McNeill's credit card, (2) wage payments to certain employees of Head Kandy, and (3) lease payments made by Head Kandy for use of Ms. McNeill's personal property."  Mot at 13–14 (citations omitted).  As to the second and third categories, Defendant argues only that Plaintiff alleges "no set of facts [] pertaining to either Head Kandy's knowledge of the truth or falsity of the subject representations or the reasonableness of Head Kandy's reliance upon such representations."  Mot. at 14.  As to the first category, Defendant further argues that Plaintiff "fails to identify any specific representations made by [Defendant] pertaining to the reimbursement payments" and "fail[s] to perform even a cursory review or examination of the credit card statements prior to relying upon them" which renders Plaintiff's reliance "unreasonable as a matter of law."  Mot. at 14–15.

The Court finds that Plaintiff has sufficiently pled common law fraud against Defendant. Under Florida law, the essential elements of common law fraud are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation."  *State Farm Mut. Auto. Ins. Co. v. Performance*

---

when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence.").

*Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1317 (S.D. Fla. 2017) (citing to *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).  To satisfy Rule 9(b)'s "particularity" standard, a complaint must "identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendants gain[ed] by the alleged fraud." *Travelers Prop. Cas. Co. of Am. v. Charlotte Pipe & Foundry Co.*, No. 6:11-CV-19-ORL-28GJK, 2012 WL 983783, at *6 (M.D. Fla. Mar. 22, 2012).  Plaintiff has met these four requirements.

First, Plaintiff has pled that Defendant made a false statement concerning a material fact about the credit card reimbursements by alleging Defendant "represented to the Company that personal expenses she had charged to her credit card were legitimate business expenses."  Am. Compl. ¶ 72.  Plaintiff has also identified the "precise [] documents" containing the alleged misrepresentations in the form of Exhibit G, which contains dozens of pages of alleged misrepresentations by Defendant.  Am. Compl., Ex. G.  Defendant may disagree with the allegations or seek to present a defense to them, Mot. at 15, but that has no bearing on whether this claim has been sufficiently pled.

Second, Plaintiff has pled that Defendant made knowing misrepresentations as to the credit card reimbursements—and third, that Defendant intended for Plaintiff to rely on those misrepresentations—by alleging that Defendant "knew or should have known that her personal expenses were required to be disclosed to the Company, and she knowingly made these material omissions of fact in bad faith with the intention of inducing Head Kandy to permit her to use Company funds to pay the credit card bills . . . ."  Am. Compl. ¶ 74.  This is, again, supported by Exhibit G which provides the "time and place of and person responsible for the statement" as well

as the "content and manner" of the statements by detailing the date, purchase location, and amount of each allegedly fraudulent reimbursement request.  Am. Compl., Ex. G.

Similarly, as to the allegedly fraudulent payroll expenditures, Plaintiff has alleged that Defendant "knowingly made these false statements that the expenses were for the benefit of Head Kandy with the intention of deceiving Head Kandy and causing Head Kandy to pay for her personal and family expenses."  Am. Compl. ¶¶ 77–78.  Plaintiff further alleges that "Head Kandy reasonably relied on each of McNeill's false statements that the payroll expenses were legitimate business expenses, and it paid the expenses in full, thereby incurring additional damage in the amount of at least $100,000."  *Id.*  Likewise, as to the allegedly fraudulent lease, Plaintiff alleges Defendant "knowingly made these false representations that the barn and fork-lift were being used for legitimate business purposes, causing Head Kandy to make lease payments to her" and "Head Kandy reasonably relied on her false statements."  Am. Compl. ¶ 79.  Given that Plaintiff also alleges that Defendant had "broad responsibility for the 'general operational activities of the Company'" and "successfully lobbied for personal control of payroll without oversight," Am. Compl. ¶¶ 11, 17, the Court finds that Plaintiff has alleged substantially more than "no set of facts" as to both Plaintiff's knowledge of falsity and justified reliance on Defendant's statements.

Fourth, Plaintiff has adequately alleged it suffered injury acting in reliance on Defendant's misrepresentations by averring that Plaintiff "reasonably relied on each of McNeill's false representations and material omissions by permitting her to pay the American Express bill with Company funds and by failing to obtain reimbursement for improper personal expenses, thereby incurring damage in the amount of at least $1 million."  Am Compl. ¶ 75.  This portion of the Amended Complaint also satisfies the requirement that Plaintiff identify what Defendant gained by the alleged fraud.  Am. Compl. ¶ 154.  Consequently, the Court denies Defendant's Motion to Dismiss as to Plaintiff's claim for Fraud (Count II).

### IV.  *Rule 12(b)(7) Indispensable Parties*

Under Rule 12(b)(7), an action may be dismissed for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7).  Rule 19 sets forth a two-part test to determine whether a party is indispensable.  *Focus on the Fam.*, 344 F.3d at 1279.  First, the court must examine whether a party is "required" under Rule 19(a).  Fed. R. Civ. P. 19(a)(1).  A party is required "if the court determines either that complete relief cannot be granted with the present parties or the absent party has an interest in the disposition of the current proceedings." *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 847 (11th Cir. 1999).  Neither is true here, so the Court need not reach the second step of the test.

Defendant argues that the "co-owners of [Plaintiff] are indispensable parties" because "a portion of the damages sought by [Plaintiff] were incurred by the non-parties."  Mot. at 17.  Defendant cites to no case law in support of this argument.  However, as Plaintiff correctly points out, the co-owners of Plaintiff do not appear to have any independent claim in their individual capacity.  *See Dinuro Invs., LLC v. Camach*o, 141 So. 3d 731, 739–40 (Fla. 3d DCA 2014).  Indeed, Defendant's interpretation of civil procedure would require each owner of an LLC to be an individual plaintiff in almost any case an LLC brings for financial damages.  The Court therefore denies Defendant's Motion to Dismiss for failure to join indispensable parties.

### V.  **Abstention**

Count IX of the Amended Complaint seeks a declaratory judgment that Defendant "is not entitled to an Annual Bonus" because Defendant "was not employed by the company on the date on which the Annual Bonus is paid" and was "in violation of the terms . . . of the [EEA]."  Am. Compl. ¶¶ 142–43.  Defendant argues that the Court should abstain from considering the Declaratory Judgment count under the nine-factor test set forth in *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005).  The Court disagrees.

"The first, fifth, and ninth *Ameritas* factors look to concerns of comity and the interest of the forum state in resolving the legal issues presented." *Nat'l Specialty Ins. Co. v. S. Fla. Transp. Svcs, Corp.*, No. 20-24599, 2021 WL 980948, at *8 (S.D. Fla. Mar. 16, 2021). "[T]he seventh and eighth *Ameritas* factors examine the ability of the state court to resolve the legal and factual issues relative to the federal court." *Id.* Given that this case involves a resident of Florida (Plaintiff) and a resident of Colorado (Defendant), both states bear an interest in resolving alleged injuries to their residents. However, the EEA is quite clear that Florida law is to govern the dispute. EEA at 13. Colorado does not have any interest in applying or interpreting Florida law. Likewise, this action is unlikely to improperly encroach on state jurisdiction given that both parties have already agreed that Florida is the proper forum for this dispute. *Id.* Additionally, Colorado does not appear to have any special advantage in resolving the factual issues present in this case. Plaintiff's claims largely stem from alleged misconduct run through its Florida accounting office that negatively impacted Plaintiff's Florida banking account. *See* Am. Compl. ¶¶ 78 (Count II); 89 (Count III); 96 (Count IV); 103 (Count V); 117 (Count VI); 126 (Count VII); 135 (Count VIII). Therefore, the Court finds that these factors weigh against abstention.

"The second, third, and sixth *Ameritas* factors concern whether the declaratory judgment action is the most efficient and economical forum to resolve the rights of all the parties." *Nat'l Specialty Ins. Co.*, 2021 WL 980948, at *8. The Court finds that these factors also weigh against abstention. The Court, by way of adjudicating the Breaches of Contract claim before it, as well as any prior breach defenses likely to be raised by Defendant, will necessarily rule on many factual and legal issues inextricably intertwined with the Declaratory Judgment count. There does not appear to be a more effective remedy for resolving this issue. Therefore, judicial economy is served, at both the state and federal level, by the Court adjudicating the Declaratory Judgment count.

Finally, the fourth *Ameritas* factor asks, "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing.'" *Nat'l Specialty Ins. Co.*, 2021 WL 980948, at \*9. The fact remains that Defendant negotiated and signed the EEA which unambiguously establishes Florida courts as the proper forum for resolving the very sort of dispute Defendant elected to pursue in Colorado instead.  Accordingly, although the timing of the instant action relative to the filing of the Colorado action could suggest procedural fencing, Plaintiff's invocation of the EEA's forum selection clause is not driven by this purpose.  Thus, this factor tilts in favor of non-abstention.

In sum, having carefully considered and weighed the *Ameritas* factors, the Court finds that adjudication of the Declaratory Judgment claim (Count IX) is appropriate in this case.

<u>**CONCLUSION**</u>

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Corrected Motion to Dismiss the Amended Complaint, [ECF No. 34], is **GRANTED IN PART**. Counts III and VII are **DISMISSED** *without prejudice*.  *See Marsalis v. STM Reader, LLC*, 806 F. App'x 748, 752 (11th Cir. 2020) ("[A] dismissal on jurisdictional grounds, as opposed to a merits dismissal, cannot form the basis for a dismissal with prejudice.").  Defendant's Motion is **DENIED** in all other respects.

**DONE AND ORDERED** in Miami, Florida, this 7th day of November, 2023.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**