UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60345-RAR

**HEAD KANDY LLC**,

    Plaintiff,

v.

**KAYLA MARIE MCNEILL**,

    Defendant.
_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION, GRANTING
PLAINTIFF'S EXPEDITED MOTION FOR PRELIMINARY INJUNCTION,
AND SETTING BOND**

**THIS CAUSE** comes before the Court on United States Magistrate Judge Jared M. Strauss's Report and Recommendation ("Report"), [ECF No. 133], on Plaintiff's Expedited Motion for Preliminary Injunction ("Motion"), [ECF No. 47]. Magistrate Judge Strauss held an evidentiary hearing on the Motion, [ECF No. 107], as well as oral argument, [ECF Nos. 130, 132]. Based on the evidentiary hearing, oral argument, and briefing by the parties, [ECF Nos. 113, 116, 117, 119], Magistrate Judge Strauss issued a lengthy and well-reasoned Report that recommends granting the Motion and enjoining Defendant "from further violating Section 5 of the Executive Employment Agreement." Report at 42. Defendant timely filed Objections to the Report ("Objs."), [ECF No. 134], and Plaintiff filed a Response to Defendant's Objections ("Resp."), [ECF No. 138].

When a magistrate judge's disposition has been properly objected to, district courts must review the disposition *de novo*. FED. R. CIV. P. 72(b)(3). Because Defendant timely filed objections to the Report, the Court has conducted a *de novo* review of Magistrate Judge Strauss's

legal and factual findings to which Defendant properly objected. Upon careful review of the record, the Report, Defendant's Objections, and Plaintiff's Response, the Court agrees with Magistrate Judge Strauss's recommendation that the Motion should be granted. The Court addresses each of Defendant's Objections in turn.

### A. Defendant waived her proffered defenses to Section 5 of the Executive Employment Agreement.

Defendant objects to the Report's "finding that no consideration should be given to [Defendant's] defenses to Head Kandy's claim for breach of contract." Objs. at 2. Defendant claims that Magistrate Judge Strauss did not consider Defendant's "prior breach" defense to the enforcement of the non-competition, non-solicitation, and non-disparagement provisions (collectively, the "Restrictive Covenants") contained in Section 5 of the Executive Employment Agreement ("Agreement"). Objs. at 2–4. However, this objection misstates Magistrate Judge Strauss's well-reasoned conclusion.

The Report's actual finding is that Defendant waived her prior breach defense to the enforcement of Restrictive Covenants and therefore Plaintiff is likely to succeed on the merits in its efforts to enforce the Restrictive Covenants against Defendant. Rep. at 23–25. Indeed, as Magistrate Judge Strauss notes, the bargained-for Agreement states that Defendant may "not challenge the enforceability of Section 5, nor will she raise any equitable defense to its enforcement . . . [and] the [Restrictive Covenants] are all in Section 5 of the [Agreement]." Rep. at 23–24. A prior breach defense is an equitable defense and therefore waived under the Agreement. *See Leighton v. First Universal Lending, LLC*, 925 So. 2d 462, 464 (Fla. 4th DCA 2006) ("An employer's breach of the contract is an equitable defense to the enforcement of a non-compete clause."). While Defendant claims, "there is neither assertion by Head Kandy nor conclusion in the report that [Defendant] waived any defenses to Head Kandy's claim for breach of contact,"

Objs. at 3, this is belied by the findings in the Report. *See* Rep. at 23 ("In response to Defendant's claim of a prior breach, Plaintiff asserts that Defendant has waived that argument as a defense against enforcement of the restrictive covenants. I agree.")

Defendant attempts to salvage her prior breach defense by arguing that waiver of the defense would lead to "absurd results" because Plaintiff's alleged breach "occurred prior to any of the conduct identified in the Report as supporting the imposition of an injunction against Ms. McNeill." Objs. at 3. Defendant further posits that "Head Candy's prior material breach of the Employment Agreement is an absolute bar to enforcement of the restrictive covenants" and cites four cases in support of this proposition. Objs. at 3. However, the proffered cases do not involve waiver of contract defenses and are thus inapposite here. Moreover, "it is not the trial court's role to rewrite a contract to make it more reasonable for one of the parties." *Churchville v. GACS Inc.*, 973 So. 2d 1212, 1216 (Fla. 1st DCA 2008). As Magistrate Judge Strauss correctly found, "[a] party, by their own knowledge and conduct may waive any rights to which he or she is legally entitled." Rep. at 24 (quoting from *Band v. Libby*, 113 So. 3d 113, 115 (Fla. 2d DCA 2013)).

Finally, Defendant argues that Magistrate Judge Strauss incorrectly relied on *Reliance Wholesale, Inc. v. Godfrey*, 51 So. 3d 561, 565 (Fla. 3d DCA 2010) because *Godfrey* "premised its decision upon its conclusion that 'Florida law limits this [prior breach] defense to dependent covenants'" and "the restrictive covenants within the Employment Agreement are dependent." Objs. at 5. The Court disagrees. *Godfrey* is only one of several cases the Report cites in support of its finding that Defendant waived her equitable defenses. Moreover, Defendant once again improperly frames the Report's conclusions on the past breach defense. Regardless of whether the covenants are dependent or independent—the crux of the inquiry here is whether Defendant waived a past breach defense via the Agreement. *See Band*, 113 So. 3d at 115. Put another way,

the issue is not the availability or the applicability of the past breach defense, but whether Defendant *waived* her right to raise such a defense under the terms of the Agreement. *Id*. Ultimately, the Court agrees with the Report's findings that Defendant waived her equitable defenses to the enforcement of the Restrictive Covenants.

> **B. There is sufficient evidence that Plaintiff suffered harm as a result of Defendant's conduct.**

Defendant objects that "the financial [sic] submitted by Plaintiff do not support or show what the Report states they do" and therefore Plaintiff has not shown a likelihood of success in proving harm. Objs. at 6. In support of this argument, Defendant provides a detailed analysis of the evidence offered at the evidentiary hearing and via affidavits. Objs. 6–8. Defendant makes several salient points undermining Plaintiff's interpretation of this financial data—arguing that Plaintiff cannot prove its declining customer base is tied only to Defendant's conduct. *Id.*

However, while these arguments will likely be probative as to damages at a later stage, they do not diminish the well-reasoned analysis provided in the Report. Indeed, the Report itself correctly accounts for many of the points that Defendant raises in her Objections. *See* Report at 34 ("While it is unclear whether Defendant's conduct was the *sole* cause of Plaintiff's loss of customers and followers, Plaintiff has demonstrated that it is substantially likely to succeed in showing at least some injury from one of Defendant's breaches of the [Agreement] . . . Therefore, while the extent of Plaintiff's injury is ultimately an issue for trial, Plaintiff has shown a substantial likelihood of proving at least some injury from Defendant's breaches.").

Additionally, there is clear evidence that Defendant's conduct affected "specific prospective or existing customers." Fla. Stat. § 542.335. For example, in the comment section of one of Defendant's videos disparaging Plaintiff and its employees, multiple customers stated they would not be purchasing Plaintiff's products again. Rep. at 34. Purchase histories for those

"specific customers" indicate that they stopped purchasing products from Plaintiff. *Id.* This, in conjunction with testimony at the evidentiary hearing and sworn affidavits, Rep. 10–12 (collecting evidence), is sufficient for the Court to conclude that there is a substantial likelihood of success on the merits as to showing harm regarding breach of the Agreement. *See AmeriGas Propane, Inc. v. Sanchez*, 335 So. 3d 1253, 1257 (Fla. 3d DCA 2021) ("It doesn't matter for purposes of the temporary injunction, that the customers attributed either substantial cost savings or unsatisfactory customer service as reasons for switching to [the plaintiff's competitor]; the unrebutted evidence shows that [the defendant] either directly or indirectly solicited them in violation of the restrictive covenants.").

### C. The Restrictive Covenants are Reasonable in Duration.

Defendant objects to Magistrate Judge Strauss's finding that the Restrictive Covenants are reasonable in duration as analyzed under sections 542.335(1)(d)(1) and 542.335(1)(d)(3) of the Florida Statutes. Objs. at 9–12. After careful analysis of both statutory provisions, the Court agrees with Magistrate Judge Strauss's findings that the Restrictive Covenants are reasonable under either provision. Additionally, while the Court would reach the same result under either section 542.335(1)(d)(3) or section 542.335(1)(d)(1), the Court finds that section 542.335(1)(d)(3) is most applicable as Defendant was the sole member of Lashed Out, LLC when it sold its assets to Plaintiff.[1]

---

[1] Defendant argues that analysis under this section amounts to disregarding Lashed Out's corporate structure and piercing the corporate veil. Objs. at 12–13. The Court disagrees. The three cases Defendant offers in support of her argument involve piercing the corporate veil for purposes of asset recovery from an individual—in other words, a textbook application of the veil-piercing doctrine. Defendant advances no reason why the confines of such a well-established principle should be contorted to fit the present situation regarding the presumptive reasonableness of the Restrictive Covenants. Therefore, although the Court's analysis would be the same under either section 542.335(1)(d)(3) or section 542.335(1)(d)(1), analysis is proper under section 542.335(1)(d)(3).

Section 542.335(1)(d)(3) applies to "a restrictive covenant sought to be enforced against the seller of all or a part of [] [t]he assets of a business or professional practice." Fla. Stat. § 542.335(1)(d)(3). It states that "[i]n determining the reasonableness in time of a postterm restrictive covenant not predicated upon the protection of trade secrets. . . a court shall presume reasonable in time any restraint 3 years or less in duration and shall presume unreasonable in time any restraint more than 7 years in duration." *Id*. Defendant argues that the presumptively reasonable time frame should be calculated based on "the express language of the Employment Agreement which states that the non-compete provision began on May 3, 2018." Objs. at 9–10. According to Defendant, "the date on which the restriction began is critical to the analysis because the statute refers to the entire duration of the restriction, not just a particular portion." Objs. at 10.

However, this is belied by the plain text of the statute which refers explicitly to a "*postterm* restrictive covenant." Fla. Stat. § 542.335(1)(d)(3) (emphasis added). "'Postterm' connotes an employment relationship that has terminated, which is the time when one party seeks to enforce a covenant not to compete." *Winn-Dixie Stores, Inc. v. Dolgencorp, Inc.*, 964 So. 2d 261, 268 (Fla. 4th DCA 2007). Moreover, reading section 542.335(1)(d) as Defendant proposes would effectively nullify a restrictive covenant for any employee who is employed at least seven years before termination. Consequently, the Court finds the non-compete provision presumptively reasonable in duration under section 542.335(1)(d)(3). Therefore, Plaintiff has shown a high likelihood of success on the merits as to the enforceability of the Restrictive Covenants.

Section 542.335(1)(d)(1) applies to a "restrictive covenant sought to be enforced against a former employee, agent, or independent contractor, and not associated with the sale of all or a part of [] [t]he assets of a business or professional practice." Fla. Stat. § 542.335(1)(d)(1). It provides that "a court shall presume reasonable in time any restraint 6 months or less in duration and shall

presume unreasonable in time any restraint more than 2 years in duration." *Id.* In a line presumably discussing section 542.335(1)(d)(1), the Report states "[u]nder Section 542.335(d), a two-year restrictive covenant is presumptively reasonable when it is enforced against a former employee." Rep. at 16. Defendant correctly responds that "[f]or the Court to presume any duration less than two years to be reasonable would be contrary to the express language of the statute and constitute error." Objs. at 11. While Defendant astutely notes the three-year restriction at issue here is not entitled to a presumption of reasonableness, Defendant again confuses the Agreement's effective date with the post-termination analysis required by the plain language of section 542.335(1)(d)(3). *See* Objs. at 11 (arguing "the non-compete provision is presumptively unreasonable . . . as it began more than five years ago on May 3, 2018.").

The operative date for the "postterm" analysis required by the statute remains the date Defendant was terminated: January 30, 2023. [ECF No. 93] at ¶ 12. And while the enforcement of a three-year restriction would be presumptively unreasonable, the Agreement provides the duration of the Restrictive Covenants "shall automatically be considered to have been amended and revised" to a lower term in the event a court finds the three-year term unreasonable. [ECF No. 73-3] at 8. Therefore, the Court finds that Plaintiff has shown a high likelihood of success on the merits as to the enforceability of the Restrictive Covenants under section 542.335(1)(d)(1) as well.

### D. Defendant "Solicited" Plaintiff's Customers within the Meaning of the Agreement.

Defendant "objects to the Report's Conclusion of Law as to the meaning of 'solicit' within the Employment Agreement." Objs. at 13. She argues that "the Report does not adequately or accurately describe who Ms. McNeil's 'followers' were on the videos cited to in the Report." Objs. at 14. Defendant then provides several paragraphs distinguishing between the number of followers on various accounts that were associated with Defendant at varying points in the

separation. Objs. 13–14. However, while these points may be relevant to the issue of damages, they do not alter the Report's ultimate conclusion: Defendant, to whatever extent, solicited customers in violation of the Agreement. *See* Rep. at 28 ("[B]y sometimes showing Plaintiff's customers['] products that were identical or similar to products that Plaintiff sold and products that could serve as 'replacements' for Plaintiff's products, Defendant was directly or indirectly soliciting or encouraging Plaintiff's customers to reduce their relationship with Plaintiff . . . ."). Based on the record, including numerous videos in which Defendant is lauding competitor products to a substantial number of her followers (whether 15,000 or 100,000), the Court finds that Plaintiff has shown a substantial likelihood of succeeding on the merits regarding Defendant's solicitation.

### E. The Court has Jurisdiction to Implement a Temporary Injunction.

Defendant objects to this Court imposing an injunction on her when she "has an active and substantiated jurisdictional challenge before the Court through her Motion to Dismiss[.]" Objs. at 14. This Objection has been mooted by the Court's Order Granting in Part and Denying in Part Defendant's Corrected Motion to Dismiss the Amended Complaint, [ECF No. 151]. Consequently, the Court need not address it any further.

### F. The Injunctive Relief Granted Does Not Violate Defendant's Right to Free Speech.

The Report recommends enjoining Defendant from "making, publishing, or communicating to any person or in any public forum any defamatory, disparaging, or otherwise negative or degrading comments, remarks or statements concerning Plaintiff, or its affiliates, or their businesses or any of their respective employees, officers, existing and prospective clients, suppliers, investors, and other associated third parties." Rep. at 42–43. Defendant argues that she "made the very same statements under oath during the [preliminary injunction] hearing that she

made in her videos . . . [and] [c]omments made by [Defendant] that relay statements she made during the course of this proceeding are protected speech." Objs. at 16.

Although Defendant cites a handful of cases in support of her argument, Objs. at 16–17, none of these cases involve a situation in which the party claiming free speech bargained away those rights in a contract and are thus inapposite. Indeed, Defendant's attempts to expand these otherwise unremarkable holdings would allow any party to effectively nullify a bargained-for non-disparagement agreement in the name of free speech by simply bringing a lawsuit. Rather, as other courts have found, a party can waive their free speech rights in the course of an agreement. *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, 679 F. App'x 33, 36 (2d Cir. 2017) ("The argument fails because the injunction's prohibition on speech that is false . . . or disparaging effectively enforces defendants' own covenant not to engage in such speech."); *see also Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 204–05 (3d Cir. 2012) (noting that parties may waive a First Amendment challenge by knowingly and voluntarily entering into an agreement restricting speech). The Court finds that Defendant has waived her free speech objection by signing the Agreement containing the Restrictive Covenants.

### G. Defendant, By Her Own Admission, Was Informed of Her Impending Removal on November 28, 2022.

Defendant objects to the Court's finding that "[o]n November 28, 2022, Plaintiff informed Defendant that she was going to be removed from the company." Objs. at 18; Rep. at 7. This objection is frivolous and wholly without merit. During the evidentiary hearing, Defendant testified that "I was told on November 28th that I was going to be removed from the company." [ECF Nos. 131, 190:18–19]. Given that the Report's finding is identical to Defendant's own testimony, the Court will not entertain this objection any further. *See Marsden v. Moore*, 847 F.2d

1536, 1548 (11th Cir. 1988) ("Frivolous, conclusive, or general objections [to a magistrate report] need not be considered by the district court.").

### H. The Report Accurately Described the Membership Repurchase.

Defendant objects to the Court's finding that "[o]n February 17, 2023, Plaintiff exercised its option to repurchase all of the membership units belonging to Defendant, though Defendant has not received any amount for the repurchase of her units." Rep. at 7; Objs. at 19. Defendant "clarifies" that the parties "stipulated that Head Kandy adopted a resolution [] wherein it stated that it 'exercise[d] its option to repurchase all Units belonging to McNeill'" and the parties further stipulated that "Ms. McNeill has not received any amount for the repurchase of her Units in Head Candy . . . ." It appears that the Report's statement that Plaintiff exercised its option to repurchase all units, but has not paid Defendant for her units, is accurate by the parties' own stipulation. The Court thus finds this objection to be frivolous and will not consider it any further. *See Marsden*, 847 F.2d at 1548.

### I. The Court Need Not Consider Defendant's Remaining Factual Objections.

Defendant, without citation or reference to any section of the Report, maintains the "Declarations and Affidavits executed by current and former Head Kandy customers and entered into evidence are, as a group, unreliable." Objs. at 18. However, a specific objection to a magistrate judge's report must "identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Kohser*, 649 F. App'x at 777. *Id.* (quotation omitted). Here, Defendant has failed to lodge a specific objection because she does not refer the Court to any particular provision of the forty-three-page Report. Rather, she has advanced a generalized objection that the Court is not obligated to review. *See United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) ("It is reasonable to place upon the parties the duty to pinpoint

those portions of the magistrate's report that the district court must specially consider. This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act."). Moreover, Magistrate Judge Strauss conducted an evidentiary hearing, [ECF No. 107], as well as oral argument, [ECF Nos. 130, 132] during which he was able to directly evaluate the credibility of the witnesses and evidence presented—in addition to hearing argument from counsel on the same. The Court will not second-guess the factual findings reached by Magistrate Judge Strauss.

### J. Bond Determination

On October 16, 2023, the Court issued an order noting that "the parties have not presented sufficient evidence from which the Court can determine a reasonable bond as of yet" and requiring that the parties submit "supplemental briefing, of no more than fives pages for each side, on the issue of a reasonable bond on or before October 20, 2023." [ECF No. 145]. In Plaintiff's Supplemental Brief on Reasonable Bond ("Pl. Brief"), [ECF No. 146], Plaintiff contends a nominal bond of $5,000—or no bond at all—is appropriate. Pl. Brief at 1. In support, Plaintiff argues that when Defendant's "actual and potential non-restricted income opportunities are factored into the calculation, [Defendant] is not likely to actually suffer any damages from the entry of a preliminary injunction." *Id.* at 4 (citation omitted). Plaintiff further argues that a bond is not necessary in the current situation because the "preliminary injunction merely requires Defendant to comply with the contractual terms to which she agreed." *Id.* at 5 (cleaned up).

In her Memorandum Re: Preliminary Injunction Bond ("Def. Brief"), [ECF No. 147], Defendant responds by contending that the bond should be set at $378,000—one year of her base salary plus her 2022 bonus. Def. Brief at 3. Defendant also argues that "there is no evidence in the record before the Court as to current opportunities presented to [Defendant] for employment

in non-restricted areas" and "without evidence of such opportunities" the value "would be speculative, at best" and therefore "should not be considered by the Court" when setting a bond. Def. Brief at 5.

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). "The burden is on the party seeking security to establish a rational basis for the amount of a proposed bond, and the amount of an injunction bond lies within the sound discretion of this Court." *Vas Aero Services, LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1364 (S.D. Fla. 2012) (internal citations and quotations omitted). "Generally, the amount of the bond in this type of case[] reflects the potential loss of salary reduced by the possibility of other employment opportunities in non-restricted areas and other mitigating factors." *Pitney Bowes Inc. v. Acevedo*, No. 08-21808, 2008 WL 2940667, at *6 (S.D. Fla. July 28, 2008).

Here, the Court finds that a $378,000 bond is appropriate. As Defendant notes, "a rational basis for determining the minimum impact an injunction will have on [Defendant] is the value of her compensation package from [Plaintiff] based on the duration of the injunction." Def. Brief at 3. Defendant provides further support for this proposed bond in Exhibit A, [ECF No. 148], which approximates the bonus Defendant would have received by calculating Plaintiff's estimated net income for 2022 using evidence that is already part of the record. *See* Ex. A. Defendant then calculates a percentage of Plaintiff's net income for 2022 to establish Defendant's approximate bonus as per the employment agreement. *Id.* The Court finds that this is sufficient to establish a rational basis for a bond of $378,000.

Plaintiff argues that the imposition of any non-nominal bond is inappropriate both because the injunction is merely holding Defendant to the terms of her contract and Defendant has not disproven that she is receiving income from non-restricted sources. Pl. Brief at 4–5. The Court disagrees. The purpose of a bond is to make a defendant whole for the time spent enjoined. *See Pitney Bowes Inc.*, 2008 WL 2940667 at *6. If Defendant prevails on her prior breach theory such that the Restrictive Covenants do not bind her, and never should have bound her, a non-nominal bond will not compensate Defendant for the time she spent unable to conduct business in restricted areas from now until the end of the litigation. Accordingly, based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. The Report, [ECF No. 133], is **AFFIRMED AND ADOPTED**.
2. Plaintiff's Expedited Motion for Preliminary Injunction, [ECF No. 47], is **GRANTED**.
3. Defendant shall be enjoined and restrained from further violating Section 5 of the Executive Employment Agreement, including by directly or indirectly:
    - (i) engaging in business related to the manufacture, sale, and distribution of hair-related products;
    - (ii) providing management, business planning, sales, marketing, financial planning, or other similar services she provided to Plaintiff during her employment therewith, including social media promotion and influencing services, to or for any person engaged in the manufacture, sale, or distribution of hair related products;
    - (iii) soliciting business related to the manufacture, sale, and distribution of hair-related products from any person who is or was a client, customer, supplier, licensee, licensor or other business relation of Plaintiff;

      (iv)    soliciting or encouraging any client, customer, supplier, licensee, or licensor of Plaintiff to terminate or reduce such person's relationship with Plaintiff in any manner; and

      (v)    making, publishing, or communicating to any person or in any public forum any defamatory, disparaging, or otherwise negative or degrading comments, remarks, or statements concerning Plaintiff, or its affiliates, or their businesses or any of their respective employees, officers, existing and prospective clients, suppliers, investors, and other associated third parties.

4. Plaintiff Head Kandy LLC must post a bond in the amount of **$378,000** no later than **November 21, 2023**. If such a bond is not posted, the injunction herein will be automatically dissolved.

**DONE AND ORDERED** in Miami, Florida, this 7th day of November, 2023.

                                                              _____
                                                              **RODOLFO A. RUIZ II**
                                                              **UNITED STATES DISTRICT JUDGE**