UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**HEAD KANDY, LLC,**

  **Plaintiff,**

vs.                   Case No. 0:23-cv-60345-RAR

**KAYLA MARIE MCNEILL,**

  **Defendant.**
_____/

**PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S COMPLIANCE WITH
THE COURT'S PRELIMINARY INJUNCTION AND FOR CONTEMPT SANCTIONS**

Plaintiff Head Kandy, LLC ("**Head Kandy**") moves to compel Defendant Kayla Marie McNeill's ("**Ms. McNeill**") compliance with the Court's November 7, 2023 Order Adopting Report and Recommendation, Granting Plaintiff's Expediated Motion for Preliminary Injunction, and Setting Bond (the "**Preliminary Injunction**") [ECF 152], and to award contempt sanctions for her failure to comply with the Preliminary Injunction. In support, Head Kandy states:

**Introduction and Factual Background**

Three weeks ago this Court entered its Preliminary Injunction by which the Court preliminarily enjoyed Ms. McNeill from, among other things, defaming or disparaging Head Kandy; providing social media promotion and influencing services to or for any person engaged in the manufacture, sale, or distribution of hair related products; and, soliciting or encouraging any client, customer, supplier, licensee, or licensor of Head Kandy to terminate or reduce such person's relationship with Plaintiff in any manner. (ECF No. 152 at 13-14). The Court's Preliminary Injunction, and the September 12, 2023, Report and Recommendation adopted by it (the "**R&R**", ECF No. 133), were based on extensive evidence of numerous comments and videos Ms. McNeill

posted on her various social media accounts that were presented during a day-long evidentiary hearing before Magistrate Judge Strauss.  Ultimately, the Court found by Ms. McNeill's social media posts she violated the terms of restrictive covenants contained in an Executive Employment Agreement (the "**Restrictive Covenants**") between Ms. McNeill and Head Kandy and entered the Preliminary Injunction.  Now, more than three weeks after entry of the Preliminary Injunction, and nearly three months after Magistrate Judge Strauss issued the R&R, the vast majority of those violative social media posts remain available online.

For example, numerous videos in which Ms. McNeill promotes competitors' products to her followers, which are Head Kandy's customers—in clear and brazen violation of the Restrictive Covenants—are still posted on Ms. McNeill's Facebook accounts:



*See* ECF 94 (Jt. Exs. 18, 40, 67, 75, 89, 94).[1] Each of these videos remains online and viewable by the public, despite the fact that Magistrate Judge Strauss found them to violate the Restrictive Covenants, findings which this Court adopted:

- regarding Ms. McNeill's March 14, 2023, Facebook Live video (ECF 94, Jt. Ex. 18), Magistrate Judge Strauss found that "by showing her followers how to use the Revlon curling iron, directing those followers where to purchase the item, and telling them how much it cost," Ms. McNeill violated the non-competition and non-solicitation provisions by "market[ing] [a] Revlon curling iron" and other competitor hair products, which she called "phenomenal" and "amazing." (ECF 133 at 9, 26, 28).

- regarding Ms. McNeill's April 7, 2023, Facebook Live video (ECF 94, Jt. Ex. 40), Magistrate Judge Strauss found that Ms. McNeill, in violation of the Restrictive Covenants, encouraged her followers to purchase a competitor dry texture spray by stating, "You should run and go get this. This dry texture spray is bomb." ECF 133 at 9, 26.

- regarding Ms. McNeill's June 1, 2023, Facebook Live video (ECF 94, Jt. Ex. 75), Magistrate Judge Strauss found that Ms. McNeill referred to competitors' products as "replacements" for Head Kandy's products and then stated: "I don't want to use [Plaintiff's products]. I don't want to be constantly reminded of something that you worked so hard for to be taken from you. So that's all. The products are amazing. And I'm working on finding products that I love and just giving you guys ideas and different products that I love and I think are great." (ECF 133 at 10).

Likewise, still available to the public on Ms. Ms. McNeill's Facebook page is her April 11, 2023, video—which was presented and admitted into evidence during the hearing on the Motion

---

[1] The exhibit numbers given by the labels on the above screenshots refer to Head Kandy's exhibit list, ECF 95. However, the permalinks to access each of these posts online are available in ECF 94 as cited.

for Preliminary Injunction—in which she superimposed herself over a background of a post she made while still employed at Head Kandy on its Facebook page and disparagingly accused Head Kandy of stealing her Facebook page and "capitaliz[ing]" off of her children:



(Screenshot from ECF 94 (Jt. Exs. 55 and 58)).  Recognizing her obligation to take down such disparaging post, Ms. McNeill removed this video from her TikTok page.  However, the very same video remains on her Facebook page.  (*See* ECF 94 (Jt. Ex. 55) (permalink to same)).  Similarly, Judge Strauss found that Ms. McNeill made statements in violation of the non-disparagement provision in May 30, 2023 and June 9, 2023 Facebook Live videos (ECF 94, Jt. Exs. 67, 96), in which she repeatedly called several of Head Kandy's employees "liars" and "expressly stated that one of Plaintiff's employees committed perjury and insinuated that others did the same." (ECF 133 at 8, 31).  Both of those videos are also still posted on Ms. McNeill's Facebook page.

These and many other Facebook Live videos posted by Ms. McNeill that were submitted as evidence and specifically found in the R&R to violate one or more of the Restrictive Covenants remain available online.  (*See* ECF 94 (permalinks to joint exhibits 10, 12, 14, 15, 16, 17, 18, 28, 29, 30, 31, 32, 33, 34, 35, 37, 38, 40, 54, 55, 59, 62, 63, 65, 67, 75, 89, 94, 96, 100, 101, 102, 103 and 104), which are all still up as of the date of this filing).  Moreover, there are numerous examples of still-public posts that were not included in the record considered by Magistrate Judge Strauss, but nonetheless constitute violations of the Restrictive Covenants and the Preliminary Injunction. For example, in an April 13, 2023 post, Ms. McNeill accuses Head Kandy of "threaten[ing]" her, forcing her out of the company, and "pay[ing] [her] nothing":



(Available at https://www.facebook.com/WhipinlifewithKayla/posts/pfbid0ZqfGntQ7s5 ipiK62KuMTq9Jt9gKeVAt5ZhX8yWMMimbpRVKknt7WTE5MLovCsuCHl (last visited 12/1/2023 at 5:01 P.M.).

Similarly, in a post from April 3, 2023, Ms. McNeill makes false and disparaging statements about how her business and her social media pages were "stolen" from her by Head

Kandy, how she was "[paid] NOTHING" for her brand, how Head Kandy has taken "control" of pictures and videos of her children, and how she was "pushed out" of the business:



(Available at https://www.facebook.com/WhipinlifewithKayla/posts/pfbid02ttkpVE2JmFqF6zT DuxnjCFkkS5A28vfbueVrYamHWCagyxTXnXaJT26YW2AEDWaPl (last visited 12/1/2023 at

5:01 P.M.)). Judge Strauss found—and the Court adopted his findings—that comments such as these were disparaging and were in breach of the Restrictive Covenants. (*See* R&R, ECF 133 at 31 (finding likelihood of success on the merits on claim for breach of the non-disparagement provision based in part on Ms. McNeill's various statements that Head Kandy "kicked her out of the company and paid her 'nothing,'" "[stole] the company from her," and "push[ed] her out")). Yet, these posts remain online.

As of the date of this filing, ***each of these videos and posts, and numerous others like them, remain available to the public at large***. Consequently, those clearly violative statements are still available for the world, including Head Kandy's customer base, to view, representing not only a continuing breach of the Restrictive Covenants, but also a violation of the Preliminary Injunction's restrictions and a continuance of the harm Ms. McNeill has perpetuated on Head Kandy.

The fact that most of Ms. McNeill's violative posts have not been taken down is not due to lack of effort on the part of Head Kandy. Immediately after Magistrate Judge Strauss issued his Report and Recommendation, Head Kandy wrote to Ms. McNeill's lawyers and requested Ms. McNeill remove from her social media accounts all posts that constitute violations of the Restrictive Covenants, as Magistrate Judge Strauss concluded. [**Exhibit A**: September 15, 2023, letter to Counsel for Ms. McNeill]. Ms. McNeill refused, contending Head Kandy could not identify any authority requiring her to comply with a "Report," but stating she would "comply with all orders entered by the Court." [**Exhibit B**: September 19, 2023, e-mail from counsel for Ms. McNeill].

On November 7, 2023, after this Court adopted Magistrate Judge Strauss's R&R and entered as an order its Preliminary Injunction, Head Kandy resent to Ms. McNeill's counsel's the

September 15, 2023, letter requesting that Ms. McNeill comply with Court's order and remove her violative social media posts. In response, Ms. McNeill's counsel offered a myriad of excuses as to why Ms. McNeill had not complied, and cited technical difficulties in attempting to comply, with which Head Kandy's counsel attempted to assist. [*See, e.g.*, **Composite Exhibit C**: correspondence between counsel from 9/15/2023 to 11/30/2023]. Unfortunately, despite the fact that the affirmative duty to comply with the Restrictive Covenants and the Preliminary Injunction rests solely with Ms. McNeill, she has continued to claim that she is unable to "archive" the violative posts or to otherwise ensure that they are removed from public view and preserved as evidence for purposes of this litigation, and has pointed to Head Kandy's counsel's inability to show her a way to do so. *See id.* Ms. McNeill's excuses strain credulity, and more importantly, are beside the point—it is Ms. McNeill's responsibility, not Head Kandy's, to ensure her own compliance with the Preliminary Injunction. Head Kandy can no longer offer suggestions while Ms. McNeill merely stands by, claims that Head Kandy's suggestions won't work, and fails to abide by her Court-ordered obligations.

Accordingly, the Court should ensure compliance with its Preliminary Injunction by ordering Ms. McNeill to take whatever actions are necessary to remove the violative posts from public view, including, if necessary, making her entire Facebook pages containing the violating posts and videos inaccessible to the public, while still preserving them as evidence in this litigation, and sanctioning Ms. McNeill for failing to comply with the Preliminary Injunction and forcing Head Kandy to file this Motion.

## Argument

Ms. McNeill's failure to remove all of the offending posts is a continuing—and still ongoing—breach of the Restrictive Covenants and violation of the Preliminary Injunction.

Because the offending statements are still available online for members of the public to view anew, they still constitute the same disparagement, solicitation, and/or promotion of competing businesses that they did on the day they were posted. *See GAF Materials LLC v. Lipinskiy*, 2020 WL 6867412, at *6 (D. Minn. Nov. 23, 2020) (observing that the fact that the defendants' social media posts, which violated a non-disparagement agreement between the parties, "remain[ed] available" online meant that they "continue[d] to harm" the plaintiff, and ultimately issuing a preliminary injunction ordering the defendants to remove such statements); *DF Ventures, LLC v. FOFBakers Hldg. Co. LLC*, 2023 WL 4677661, at *8-9 (D.N.J. July 21, 2023) (ordering defendants to "stop making these posts and take down all the posts and comments that currently exist" in violation of a non-disparagement agreement based on the ongoing "hardships allowing those posts to continue would cause" to the plaintiffs); *Souza v. Algoo Realty, LLC*, 2020 WL 5300925, at *6-7 (D. Conn. Sept. 4, 2020) (in the statute of limitations context, observing that "[c]ontinued publication by leaving the images 'up for months,' as well as 'republiciz[ing]' the images, could be considered a continuing breach of duty"). Indeed, that must be the case, because allowing the offending posts to remain available to be viewed anew by the general public abrogates the very purpose of the Preliminary Injunction—to prevent ongoing irreparable harm to Head Kandy. *Cf. Lehman v. Discovery Commc'ns, Inc.*, 332 F. Supp. 2d 534, 539 (E.D.N.Y. 2004) ("If the decision maker has sustained her maximum liability when she first broadcasts the [offending statements], she has no motivation to limit the injury.").

In other words, the mere fact that Ms. McNeill's existing posts were initially made at a certain time in the past does not insulate them from violating the Preliminary Injunction when they remain online and viewable by the general public, and particularly when social media algorithms by their very nature continue to push that content to new viewers every day. Indeed, in a case in

which a preliminary injunction prohibited "solicitation," or posting certain content on social media—because that conduct violated restrictive covenants contained in a contractual agreement between the parties—this Court ordered the defendant **to delete offending posts, including those which predated the preliminary injunction**.  *H&R Block E. Enters., Inc. v. Gomez*, 2016 WL 8678542, at *2-3 (S.D. Fla. July 5, 2016), *report and recommendation adopted*, 2016 WL 8678034 (S.D. Fla. July 22, 2016); *see also Queen Virgin Remy Ltd. Co. v. Thomason*, 2015 WL 11455760 (N.D. Ga. Oct. 21, 2015) (ordering the defendant to remove preexisting social media posts when the preliminary injunction required her to "discontinue" her "unauthorized uses" of the plaintiff's name and mark).  Put simply, if the posts were violative of the Restrictive Covenants when they were made, then they are violative of the Preliminary Injunction now.

As is apparent from even a cursory inspection of the subject posts, Ms. McNeill's still-existing social media posts constitute restricted competition, solicitation, and disparagement, all of which are expressly prohibited by the Restrictive Covenants and the Preliminary Injunction.  In effect, this Court has already reached that inevitable conclusion in its Preliminary Injunction, when it adopted Magistrate Judge Strauss's finding that the social media posts referenced above violate the Restrictive Covenants and cause harm to Head Kandy.  Accordingly, Ms. McNeill is violating the Preliminary Injunction by continuing to display the offending posts on her social media pages, which remain visible to the general public.  Indeed, by removing some of her violative TikTok videos and engaging in discussions regarding the removal of her other posts after entry of the Preliminary Injunction, Ms. McNeill has effectively conceded as much.  To enforce the terms of its Preliminary Injunction and put an end to Ms. McNeill's recalcitrance, the Court should order Ms. McNeill to remove and preserve all of the remaining violative posts, and hold her in contempt for her failure to do so to date.

**Conclusion**

For the above reasons, Head Kandy respectfully requests that this Court enter an order requiring Ms. McNeill to take whatever actions are necessary to remove the violative posts from public view to comply with the Preliminary Injunction, while still preserving them as evidence in this litigation, holding Ms. McNeill in contempt, and granting all further and additional relief the Court deems appropriate in these circumstances.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 1st, 2023, I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* and Jed Ferdinand, Esquire, jferdinand@fipalawgroup.com, Kathleen B. Moore, Esquire, kmoore@fipalawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

/s/ Ethan J. Loeb
ETHAN J. LOEB
FL Bar #668338
ethanl@blhtlaw.com
loisf@blhtlaw.com
EDWARD C. THOMPSON
FL Bar #684929
colint@blhtlaw.com
heatherw@blhtlaw.com
ELLIOT P. HANEY
FL Bar #1018829
ellioth@blhtlaw.com
lynseyh@blhtlaw.com
**BARTLETT LOEB HINDS**
**& THOMPSON, PLLC**
100 N. Tampa Street, Suite 2050
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Plaintiff Head Kandy LLC*