UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY LLC,

    Plaintiff,

vs.                                                                 Case No. 0:23-cv-60345-RAR

KAYLA MARIE MCNEILL,

    Defendant.
_____/

**PLAINTIFF HEAD KANDY LLC'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S COMPLIANCE WITH THE COURT'S PRELIMINARY INJUNCTION AND FOR CONTEMPT SANCTIONS**

    Plaintiff Head Kandy, LLC ("**Head Kandy**"), pursuant to Local Rule 7.1(c)(1), submits this reply memorandum in support of its Motion to Compel Defendant's Compliance with the Court's Preliminary Injunction and for Contempt Sanctions (the "**Motion to Compel**," ECF 162) and in response to Defendant Kayla Marie McNeill's ("**Ms. McNeill**") Opposition Brief to Plaintiff's Motion to Compel Defendant's Compliance with the Court's Preliminary Injunction and for Contempt Sanctions (the "**Response**," ECF 168), as follows:

**Introduction**

    By her Response, Ms. McNeill makes yet another attempt to shirk the obligations imposed upon her by the Court's Preliminary Injunction and the Executive Employment Agreement. Tellingly, Ms. McNeill does not claim any "inability" to comply with the Preliminary Injunction, nor does she even attempt to show that she has taken all reasonable steps to do so.  Instead, Ms. McNeill *admits* to her continuing conduct disparaging Head Kandy on social media that constitutes a violation of the Preliminary Injunction, (conduct Judge Ruiz specifically warned her to stop), but argues that her conduct is somehow permissible under the "litigation privilege."  This Court has

1

already rejected Ms. McNeill's "litigation privilege" argument when ordering the Preliminary Injunction. Contrary to Ms. McNeill's meritless protestations, she is not facing a "Sophie's Choice" (an offensive and inappropriate characterization in any event), and even if she was, it is entirely of her own making. For the following reasons, and those outlined in greater detail in Head Kandy's Motion to Compel, the Court should reject Ms. McNeill's meritless arguments, order that she remove all Facebook-related posts and cease all other behavior in violation of the Preliminary Injunction, and award sanctions for her blatant refusal to comply with the Court's previous Preliminary Injunction Order.

## Argument

**I.     Ms. McNeill has continued to violate the Preliminary Injunction despite the Court's admonition not to do so and its clear ruling that the so-called "litigation privilege" does not apply.**

Ms. McNeill attempts to revive her patently frivolous contention that the "litigation privilege" protects her posts made in violation of the Executive Employment Agreement and the Preliminary Injunction. As comprehensively explained in Magistrate Judge Strauss's Report and Recommendation, however, Ms. McNeill's social media comments "were made on social media in non-litigation-related circumstances," and therefore ***are not privileged***. ECF 133 at 33; *see also Spagnulo v. Ins. Office of Am., Inc.*, 356 So. 3d 908, 918 (Fla. 4th DCA 2023) (explaining that where comments are made outside, rather than "during the course of a judicial proceeding," they are afforded no protection by law); *Delmonico v. Traynor*, 116 So. 3d 1205, 1217-18 (Fla. 2013) (explaining that absolute immunity does not apply to protect statements where a party or attorney "***steps outside*** of both the courtroom and the formal discovery process" (emphasis supplied)). Here, and as the Court has already found, Ms. McNeill's highly inflammatory and disparaging statements "did more than simply relay the status of pending litigation." ECF 133 at 33 n.12. Ms.

McNeill did not object to either of those conclusions, which the Court ultimately adopted in the Preliminary Injunction.  Ms. McNeill has not taken an appeal of this issue to the Eleventh Circuit Court of Appeals.  Ms. McNeill cannot now turn back to her patently meritless "litigation privilege" argument as a defense for her failure to comply with the Preliminary Injunction and to leave online existing posts—and make new posts—in which she references this litigation and disparages Head Kandy in the process.

## II. Ms. McNeill fails to meet the standard even she admits is applicable to prove an "inability" defense.

Ms. McNeill also has failed to prove an "inability' to comply with the Court's Preliminary Injunction. Even according to Ms. McNeill, a litigant seeking to excuse compliance with a Court order based on inability must show "that [s]he has made in good faith all reasonable efforts to meet the terms of the court order [s]he is seeking to avoid."  ECF 168 at 3 (quoting *Oxebridge Quality Res. Int'l, LLC v. Smith*, 2016 WL 11491577, at *5 (M.D. Fla. July 28, 2016)).  Ms. McNeill fails to meet this standard because she has not shown, and indeed cannot show, that she has made all reasonable efforts to comply with the Preliminary Injunction.  To the contrary, while Ms. McNeill has removed some social media posts this Court enjoined as violating the terms of her Executive Employment Agreement, she has not removed all offensive and non-compliant social media posts on Facebook.  Ms. McNeill can easily take down her Facebook page—a solution that many "A-List Celebrities" and other "Public Figures" have employed for a wide variety of reasons.  If celebrities like Kim Kardashian, Leonardo DiCaprio, and Jennifer Lawrence can turn off their Facebook accounts, then Ms. McNeill is surely capable of doing the same thing.[1]

---

[1] Indeed, those celebrities, along with other famous and well-known individuals and brands, recently "froze" their social media accounts, including Facebook, to protest hate speech on those platforms. *See Kim Kardashian to freeze Facebook, Instagram accounts to protest hate speech*, REUTERS (Sept. 15, 2020), available at https://www.reuters.com/article/idUSKBN267073/; Marlene Lenthang, *Kim Kardashian is joined by Leonardo DiCaprio and a slew of stars for 'freeze' Instagram day as Hollywood decides to protest 'hate speech' on the Mark*

Ms. McNeill argues that despite the entry of Magistrate Judge Strauss's Report and Recommendation over three months ago, she still is under no obligation to completely remove and preserve the violative Facebook posts, because she has yet to determine how to do so while still maintaining her online Facebook page on which those posts were made. Ms. McNeill attempts to shift the burden from herself to Head Kandy's counsel to identify each violative post individually and to ascertain for her how to properly remove the offending posts from public view while preserving them as evidence in this litigation. This is nothing more than a delay tactic and opportunity for Ms. McNeill to continue her offending conduct. Ms. McNeill fully understands the process and the implications of the Preliminary Injunction: the Preliminary Injunction is an order that Ms. McNeill must follow *completely* or face sanctions; it is not an opportunity for her to negotiate with Head Kandy over the extent to which she may continue to violate the restrictive covenants to which she agreed. As Head Kandy has explained to Ms. McNeill multiple times over three months, it is Ms. McNeill's responsibility—not Head Kandy's—to comply with the Preliminary Injunction, even if doing so is inconvenient, difficult, undesirable, or would impose greater burdens on her than she would like. *See Diamond Resorts Int'l, Inc. v. US Consumer Att'ys, P.A.*, 2021 WL 9596129, at *11 (S.D. Fla. Apr. 9, 2021) (explaining that a party is not required to

---

*Zuckerberg-owned platform*, DAILY MAIL (Sept. 15, 2020), available at https://www.dailymail.co.uk/news/article-8736485/Kim-Kardashian-freezes-Facebook-Instagram-hate-propaganda-misinformation.html. Many other public figures have similarly deactivated their social media accounts, either temporarily or permanently, for a wide variety of other reasons. *See* Rania Aniftos, *Kanye West Deactivates Instagram Account*, BILLBOARD (Apr. 19, 2023), available at https://www.billboard.com/music/music-news/kanye-west-deactivates-instagram-1235310665/ (rapper Kanye West temporarily deactivated his Instagram account following a slew of offensive posts); Megan Sauer, *Apple co-founder Steve Wozniak: 'Of all Big Tech, Facebook is No. 1 that I don't like'*, CNBC (Mar. 23, 2022), available at https://www.cnbc.com/2022/03/23/why-apple-co-founder-steve-wozniak-deactivated-his-facebook-account.html (Apple's Steve Wozniak deactivated his Facebook account over privacy concerns); Hamza Shaban, *Alexandria Ocasio-Cortez quits Facebook, calls social media a 'public health risk'*, WASHINGTON POST (Apr. 15, 2019), available at https://www.washingtonpost.com/technology/2019/04/15/alexandria-ocasio-cortez-quits-facebook-calls-social-media-public-health-risk/ (congresswoman Alexandria Ocasio-Cortez deactivated her personal Facebook page for her personal health); Carly Ledbetter, *Meghan Markle Has Shut Down All Of Her Social Media Accounts*, HUFFPOST (Jan. 9, 2018), available at https://www.huffpost.com/entry/meghan-markle-has-shut-down-all-of-her-social-media-accounts_n_5a551c24e4b003133ecd3b72 (actress Meghan Markle deactivated her social media accounts, including Facebook, upon becoming a member of the Royal Family).

negotiate or cooperate with the enjoined party to obtain compliance with a preliminary injunction via contempt proceedings).

Moreover, Ms. McNeill in her Opposition offers no evidence that she has "made in good faith all reasonable efforts to meet the terms of the court order [Ms. McNeill] is seeking to avoid." *See Oxebridge Quality Res.*, 2016 WL 11491577, at *5. Instead, she presents only her and her counsel's unsupported statements, weakly complaining that Ms. McNeill has attempted to comply, but that Facebook does not have a function by which "Public Figures," such as Ms. McNeill, can block from view, but maintain for evidence, past posts. Ms. McNeill then bizarrely points out that she has set the violative posts so that only her *"top fans"* may view them—obviously not a solution and clearly still a violation of the Preliminary Injunction. Neither Ms. McNeill's bald assertions of confusion over the process necessary to comply, nor her continued violative posts to her "top fans," in any way excuses her noncompliance. The Preliminary Injunction never allowed Ms. McNeill to violate its terms with only her "top fans"!

Moreover, it strains credulity to insist that, even though other social media outlets (e.g., TikTok) can remove posts from public view while preserving them for use in litigation, it is impossible for Facebook—one of the world's preeminent social media and technology companies—to do so. This cannot be the first time Facebook videos have been the subject of litigation, and Ms. McNeill cannot be the first "public figure" to be ordered to remove certain posts from public view. In fact, Ms. Mc Neill offers nothing—*no evidence*—to show that it is the first time Facebook has encountered such a situation, or that it cannot be done. Further, Ms. McNeill has not explained why she is simply unable to remove her entire Facebook page with the violative posts from public view, at least until she is able to determine from Facebook how she can remove just the violative posts. Quite simply, Ms. McNeill is the one who made a calculated bet to use

her Facebook page to engage in conduct in violation of her Executive Employment Agreement. After losing that bet (and being enjoined on a preliminary basis), she cannot now circumvent the Court's directive simply because complying is inconvenient.

Ms. McNeill's half-baked efforts to comply—made after months of excuses and unnecessary delay and combined with complaints that the potential options suggested by Head Kandy's counsel have not worked without any real effort on Ms. McNeill's part to find a solution herself—do not come close to meeting the burden of exhausting "all reasonable efforts" to comply. *See, e.g.*, *PlayNation Play Systems, Inc. v. Velex Corp.*, 939 F.3d 1205, 1214 (11th Cir. 2019) (rejecting an inability defense when the enjoined party made some efforts to comply, but unnecessarily delayed in doing so and did not make ***all*** reasonable efforts); *PayCargo, LLC v. CargoSprint, LLC*, 2021 WL 11960969, at *4 (S.D. Fla. Jan, 19, 2021) (although they made some efforts, enjoined defendants were held in contempt for failure to take all reasonable efforts to remove offending references from their social media pages). Accordingly, Ms. McNeill's claim of inability falls flat and should be summarily rejected.

**III.    Despite her assertions, Ms. McNeill has apparently has not even set her violative posts to what she claims is the "most restrictive setting," and even if she had, that would not constitute compliance with the Preliminary Injunction.**

Ms. McNeill claims that she has done all she can do with respect to the offending Facebook videos because she has set them to the "most restrictive setting" of "Top Fans." First, this appears to be untrue because counsel for Head Kandy, and their staff, who are not "Top Fans" of Ms. McNeill's Facebook page, are still able to view each of the violative posts cited in the Motion for Contempt. *See* Declaration of Heather Wilfong (attached as **Exhibit A**). Most likely, the same would be true of the Court and its staff. Even if it were true, however, continuing to post false and defamatory messages to her "Top Fans" in violation of the Executive Employment Agreement

6

does not come close to establishing compliance with the Preliminary Injunction. Even if Ms. McNeill had applied the "most restrictive setting" to all the posts in question, violating the Preliminary Injunction in front of a smaller audience (particularly an audience of her "Top Fans" who are arguably more motivated to believe and spread whatever Ms. McNeill posts on their social media profiles) is not the same as complying with the terms of the Preliminary Injunction, which requires Ms. McNeill to ***stop*** engaging in violative conduct ***entirely*** and ***without exception***. In any event, as discussed above, there are even more restrictive privacy settings plainly available—Ms. McNeill could simply make her whole Facebook page private. Ms. McNeill's ineffective attempt to comply with the Preliminary Injunction is woefully inadequate and continues to violate the Court's order.

Perhaps most tellingly, Ms. McNeill's recent conduct—obstinately attempting to avoid the consequences of her actions at every turn while continuing to engage in the activities that led to this dispute in the first place—flies in the face of Judge Ruiz's admonition to Ms. McNeill at the November 14, 2023, status conference to "stay off" social media. Ms. McNeill's latest social media activity shows disregard for her court-ordered obligations and disdain for the Court and the judicial process as a whole. Indeed, Ms. McNeill's defiant attitude has permeated the entire case. The Court should take all actions necessary to hold Ms. McNeill to the terms of its Preliminary Injunction.

## Conclusion

For the above reasons, Head Kandy respectfully requests that the Court grant its Motion for Contempt, sanction Ms. McNeill for her continued noncompliance, and order any further relief the Court deems just and proper.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 28, 2023 I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

/s/ *Ethan J. Loeb*
ETHAN J. LOEB
FL Bar No. 668338
ethanl@blhtlaw.com
loisf@blhtlaw.com
eservice@blhtlaw.com
EDWARD C. THOMPSON
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
JALEN A. LARUBBIO
FL Bar No. 1039258
JalenL@blhtlaw.com
uniquea@blhtlaw.com
ELLIOT P. HANEY
FL Bar No. 1018829
ellioth@blhtlaw.com
uniquea@blhtlaw.com
**BARTLETT LOEB HINDS**
**THOMPSON & ANGELOS**
100 N. Tampa Street, Suite 2050
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Plaintiff Head Kandy LLC*