UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60345- BECERRA/STRAUSS

HEAD KANDY, LLC,

    Plaintiff,

v.

KAYLA MARIE MCNEILL,

    Defendant.

_____/

**OPPOSITION TO PLAINTIFF'S EXPEDITED MOTION TO ENFORCE THE PRELIMINARY INJUNCTION AND FOR AN ORDER TO SHOW CAUSE**

Defendant Kayla McNeill ("Ms. McNeill"), by and through her undersigned counsel, respectfully submits this opposition memorandum of law (the "Response") in response to Plaintiff's Expedited Motion to Enforce the Preliminary Injunction and for an Order to Show Cause [ECF No. 199] (the "Motion").

### I.   INTRODUCTION AND BACKGROUND

Plaintiff, Head Kandy, LLC ("Head Kandy"), pursuant to its Motion, seeks for Ms. McNeill to be held in contempt and financially sanctioned for one specific message chain that allegedly disparaged a non-party entity to this case, Hard Candy. The Motion contains many incorrect statements in an attempt to paint Ms. McNeill as a party who has willingly violated Court orders "multiple times." Motion at 3.

The reality is that Plaintiff is attempting to enforce a non-disparagement agreement that is no longer constitutionally permissible. As stated in Ms. McNeill's Reply to her Motion for Stay [ECF No. 200], Ms. McNeill intends to file, this week, a motion to partially vacate the Court's Preliminary Injunction and to Partially Dismiss Plaintiff's claims, based on the National Labor

Relations Board's ("NLRB") recent decision, and subsequent case law confirming the decision, that the overly broad non-disparagement provision in Ms. McNeill's Executive Employment Agreement unconstitutionally interferes with Ms. McNeill's right to concerted action. *Mclaren Macomb*, 372 NLRB No. 58 (Feb. 21, 2023); NLRB Memorandum GC 23-05; *Big Green Respondent & Kelsey Gray, an Individual Charging Party & Denver Newspaper Guild-Commc'ns Workers of Am., Loc. 37074, Afl-Cio Charging Party*, No. 27-CA-276068, 2023 WL 8873718 (Dec. 20, 2023).

Even if the non-disparagement provision was enforceable, Ms. McNeill's messages targeted Hard Candy, not Heady Kandy. Per Hard Candy's own statements to the influencer at the center of the Motion (the "Influencer"), "We're not sure who [Kayla McNeill] is or what this is in regards to. Hard Candy is managed (sic) Hayden Products and we've never had any connection to 'Hard Kandy.'" Exhibit A to Declaration of Sanjiv Mehra [ECF No. 199-2 at 4]. Ms. McNeill reached out to the Influencer after seeing a post by the Influencer congratulating Hard Candy on its collaboration with the Girl Scouts. Ms. McNeill is aware that Head Candy has also struck a deal with the store Spencers to sell sex toys, and she was concerned a fellow Influencer was promoting a brand based on family values when that same brand was also selling sex toys.

Ms. McNeill's statements about Hard Candy do not violate the Court's Order, as Hard Candy is not a "Head Kandy" business or affiliate. Throughout this litigation, the individual owners of Head Kandy have attempted to blur the corporate line when beneficial to them, but then draw a clear line in the sand when drawing a connection between Hard Candy and Head Kandy would be detrimental (for example, Plaintiff either knows Hard Candy and Head Kandy have "no connection," or it blatantly lied to Influencer).

Finally, as Plaintiff concedes, Ms. McNeill's conduct did not violate the non-solicitation or non-compete provisions of her Executive Employment Agreement. Motion at 8, n 4. "Although

Ms. McNeill's conduct may not violate the letter of the additional prohibition on her from "soliciting or encouraging any client, customer, supplier, licensee, or licensor of Plaintiff to terminate or reduce such person's relationship with Plaintiff in any manner…her conduct also certainly violates the spirit of that provision." Influencer was not a client, customer, supplier, licensee, or licensor of Plaintiff. Influencer specifically told Ms. McNeill, "I just thought it [the Girl Scout cookie make-up] was a cute package – I was under no obligation to share, not even sure how I got on the pr (sic) list." *Id*. at 5. Therefore, there is no possibility Ms. McNeill could have encouraged Influencer to terminate or reduce her relationship with Plaintiff, given that she did not have a relationship in the first place.

The only thing for the Court to determine is whether 1) the non-disparagement provision is enforceable in light of the NLRB's recent decision and case law decided post preliminary-inunction affirming the NLRB's position; and 2) if the non-disparagement provision is enforceable, whether Ms. McNeill violated the Court's Preliminary Injunction.

## II.     ARGUMENT

### A. The Non-Disparagement Provision is Unconstitutional and Unenforceable.

Ms. McNeill will file a Motion fully setting forth the basis for this argument this week, and asks that any decision on Plaintiff's Motion be deferred until the Court rules on the constitutionality of the non-disparagement provision. As will be fully set forth in Ms. McNeill's Motion to Partially Vacate the Preliminary Injunction and Partially Dismiss Plaintiff's Claims, pursuant to the NLRB's recent overturning of 15 years of precedent and subsequent case law interpreting the rule, the non-disparagement provision in this case is unenforceable.

In February 2023, the NLRB issued its decision in *Mclaren Macomb*, 372 NLRB No. 58 (Feb. 21, 2023), holding that an employer's proffer of a severance agreement that "has a reasonable tendency to interfere with or restrain the prospective exercise of Section 7 rights" is, in itself, a

violation of law, and it is the language of the agreement itself, and not surrounding circumstances, that dictate whether the agreement is illegal. The *Mclaren* decision found that a non-disparagement provision containing "a non-disparagement clause that advised the employees that they are prohibited from making statements that could disparage or harm the image of the employer, its parent and affiliates, and their officers, directors, employees, agents and representatives" was a violation of law and was unenforceable.

In March 2023, the Office of the General Counsel of the NLRB issued Memorandum GC 23-05, providing "Guidance in Response to Inquiries about the *McLaren Macomb* Decision" ("Guidance"). The Guidance clarifies that the *Mclaren* decision's reasoning extends to "overly broad provisions in any employer communication to employees that tend to interfere with, restrain or coerce employees' exercise of Section 7 ("Section 7") rights would be unlawful if not narrowly tailored to address a special circumstance justifying the impingement on workers' rights." *Id*. at p. 5. In addition, the Guidance reiterated that Section 7 rights apply equally to employees and former employees and that communication need not be with a co-worker to be protected: "Section 7 rights are not limited to discussions with coworkers, as they do not depend on the existence of an employment relationship between the employee and the employer." *Id.* at p. 4 (citing *Cedars-Sinai Medical Center*, 368 NLRB No. 83, slip op. at 8 fn. 7 (2019); *Waco, Inc.*, 273 NLRB 746, 747 fn. 8 (1984); *Little Rock Crate & Basket Co*., 227 NLRB 1406 (1977); *Briggs Manufacturing Co*., 75 NLRB 569, 570 (1947)). Finally, the Guidance states unequivocally that the rule stated in *Mclaren* applies retroactively and that there is no statute of limitations related to claims of improper proffer and enforcement of illegal provisions. *Id.* at p. 3. Thus, any provision of an agreement that violates the rule set forth in *Mclaren* is void *ab initio*.

For example, in *Big Green Respondent & Kelsey Gray, an Individual Charging Party & Denver Newspaper Guild-Commc'ns Workers of Am., Loc. 37074, Afl-Cio Charging Party*, No.

27-CA-276068, 2023 WL 8873718 (Dec. 20, 2023), the court found that a non-disparagement provision that prohibited "publicly disparaging or casting aspersion" was unlimited in scope and unconstitutionally interfered with the employee's right to concerted activity.

Like the non-disparagement provision in *Big Green*, the non-disparagement provision in Ms. McNeill's Executive Employment Agreement is void *ab initio*, as it is just the kind of overly broad clause that interferes with Section 7 rights. Specifically, the non-disparagement provision states Ms. McNeill is prohibited from:

> making, publishing, or communicating to any person or in any public forum any defamatory, disparaging, or otherwise negative or degrading comments, remarks, or statements concerning Plaintiff, or its affiliates, or their businesses or any of their respective employees, officers, existing and prospective clients, suppliers, investors, and other associated third parties.

Preliminary Injunction Order at 4 [EFC No. 152]. This provision is unlimited in scope and prohibits Ms. McNeill from making any statement to *any person* that is disparaging or negative toward an expansive group of individuals. As such, the non-disparagement agreement is illegal, cannot be enforced, and the Motion should be denied.

### B. Ms. McNeill's Statements did Not Disparage Head Kandy or its Affiliates.

Per Plaintiff's Motion, Ms. McNeill reached out to Influencer regarding her post about Hard Candy's collaboration with the Girl Scouts. Hard Candy is not identified in the Court's Preliminary Injunction, and, per Plaintiff's own statements, Hard Candy has nothing to do with Head Kandy or Ms. McNeill in any way. Plaintiff cannot represent this is the case to the public while also maintaining the opposite to the Court—either Plaintiff intends on misrepresenting its relationship with Ms. McNeill to the public or, as Plaintiff itself says, Hard Kandy and Head Candy have nothing to do with each other. Ms. McNeill's statements about Hard Candy should not be a violation of the Preliminary Injunction.

As for Hard Kandy's owners, Ms. McNeill fully acknowledges that she told the Influencer her company was taken away from her by the owners of *Head Candy* and that she was sexually harassed and retaliated against. However, Ms. McNeill's statements do not say that the owners *improperly* took her company away, nor do the statements identify any individual of either company regarding sexual harassment or retaliation. Ms. McNeill does not directly accuse the owners of Hard Candy or Head Candy of improper conduct. If Plaintiff took Ms. McNeill's 20% ownership from Ms. McNeill with legitimate reason, which is Plaintiff's position, then there can be no unfair castigation around such a statement – which was Plaintiff's argument for the other phrases such as "kicked out", "stole" and "witch-hunt." If HK rightfully took Ms. McNeill's ownership interest, then there can be no negative connotation attached to such an action, nor would anyone infer it. At the end of the day, Ms. McNeill's 20% ownership of the Company was taken from her, as Plaintiff, itself, has stated in its public filing with the Court.

### C. **Ms. McNeill did Not Violate the Non-Solicitation Provision of her Agreement.**

Despite Plaintiff's attempts to conflate the non-disparagement and non-solicitation provisions of Ms. McNeill's Executive Employment Agreement, Plaintiff's Motion falls squarely within the bounds of the non-disparagement provision. As set forth above, Influencer had NO relationship with either Plaintiff or Hard Candy. Instead, Hard Candy sent Influencer products without ever having spoken with her, and Influencer posted the products because she thought the packaging was cute. Per the plain terms of the Executive Employment Agreement, the non-solicitation provision extends only to " any client, customer, supplier, licensee, or licensor of Plaintiff." Influencer was, without doubt, none of these. Thus, Ms. McNeill is not in violation of that provision.

### III.   CONCLUSION

Ms. McNeill requests that the Court consider her Motion to Partially Vacate the Preliminary Injunction and Partially Dismiss Plaintiff's Claims prior to, or in tandem with its

consideration of Plaintiff's Motion, because, if the Court agrees that the non-disparagement provision is unenforceable, Plaintiff's Motion should be denied without further consideration. If the Court finds that the non-disparagement provision is enforceable, Ms. McNeill requests a hearing on the Motion and that the Court deny the request for sanctions, and if the Court determines sanctions are proper, requests that sanctions be minimal, given that Plaintiff has suffered no damages and Ms. McNeill has a good faith belief that the Preliminary Injunction Order did not prohibit her conduct.

**DATED** this 1st day of April, 2024.

Respectfully Submitted,

By: */s/ Laura E. Burgess*
Laura E. Burgess, Esq.
Florida Bar No. 0105073
L.E. Burgess P.A.
5966 S Dixie Highway, Suite 300
Miami, FL 33143
Tel.: 305.942.8044
Alt. Tel.: 713.818.5055
laura@leburgesslaw.com

AND

By: */s/ Antonio L. Converse*
Antonio L. Converse, Esq.
Admitted *Pro Hac Vice*
Converse Law Group, P.C.
600 17th Street, Suite 2800 South
Denver, CO 80202
Tel: 303.228.9471
anthony@converselawgroup.com

COUNSEL FOR KAYLA MCNEILL

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and through that filing served all counsel of record.

*/s/ Laura E. Burgess*