**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-CV-60345-JB/JMS

HEAD KANDY, LLC,

      Plaintiff,

v.

KAYLA MCNEILL,

      Defendant.

_____/

**REPLY TO MOTION TO PARTIALLY VACATE**
**PRELIMINARY INJUNCTION AND PARTIAL MOTION TO DISMISS**

      Defendant Kayla McNeill ("Ms. McNeill"), by and through her undersigned counsel, hereby submits her reply in support of her Motion to Partially Vacate Preliminary Injunction and Partial Motion to Dismiss ("Motion") [ECF No. 214] and in response to Plaintiff's Opposition to the Motion ("Response") [ECF No. 231], and states as follows:

## I.  INTRODUCTION

      Head Kandy, LLC's ("Plaintiff" or "Head Kandy") Response misapprehends the National Labor Relations Act, 29 U.S.C.A. § 157, ("NLRA") and its application to the present action. First, the NLRA is a federal statute that must be interpreted and applied by the Court. Decisions from the National Labor Relations Board ("NLRB") are given great deference and provide valuable insight into how courts should interpret the NLRA. Second, there is no question the NLRA applies to both union and nonunion employees and is not limited to collective bargaining or union activity. Third, whether concerted activity ever occurred is not the relevant inquiry in determining whether the non-disparagement provision contained within Ms. McNeill's employment agreement ("NDP") is illegal. Instead, the inquiry for the Court is whether the

language in the NDP is likely to chill an employee's exercise of Section 7 rights. Therefore, it is immaterial whether Ms. McNeill, or any other employee, actually engaged in concerted activity. Plaintiff's focus on that inquiry in its Response is misplaced and irrelevant.[1] Fourth, the provision in the NDP Plaintiff characterizes as a "savings clause" is not sufficient to render the NDP enforceable.

## II.  <u>LEGAL ARGUMENT</u>

A.    <u>Ms. McNeill's Motion is Timely</u>

While it is true that a party typically seeks modification of a preliminary injunction due to a change in circumstances or law, these are not the only bases for which reversal of a preliminary injunction order is proper. As the court in *Canal Auth. of Fla. v. Callaway,* 489 F.2d 567, 578 (5th Cir. 1974)[2] stated:

> It is true that defendants could have appealed from the original order of September 29, 1971, which granted the preliminary injunction, or any of the orders regarding subsequent motions to modify. Had they done so, no doubt a proper resolution of the preliminary injunction question would have been hastened. Their failure to file an earlier appeal, however, does not in itself give rise to any objection. If plaintiffs have established that the failure to take an earlier appeal is somehow relevant to one of the prerequisites for a preliminary injunction, the district court should give this factor appropriate consideration. Otherwise, the delay is irrelevant to the proper disposition of the present motion to modify.
>
> . . .
>
> There is no doubt that the district court has continuing jurisdiction over a preliminary injunction. In the exercise of that jurisdiction, the court is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason. We regard the fact that all previous actions were taken under a mistaken view of the law as

---

[1] Ms. McNeill and other employees did engage in various concerted activities throughout their employment, and employees have already testified they were fearful of speaking out about employment practices to Head Kandy's majority owners.

[2] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981. *See Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

sufficiently good reason that the district court, upon a proper motion, should reconsider those actions in light of the correct standards.

Thus, for fifty years, precedent has dictated that a preliminary injunction should be reconsidered for good cause, including a mistaken view of law. *See*, *also, Wi-Lan Inc. v. HTC Corp.,* 951 F. Supp. 2d 1291, 1291-92 (M.D. Fla. 2013) (citing *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,*476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986); *Reyher v. Equitable Life Assur. Soc. of U.S.,* 900 F.Supp. 428, 430 (M.D.Fla.1995); *Sussman v. Salem, Saxon & Nielsen, P.A.,* 153 F.R.D. 689, 694 (M.D.Fla.1994)). In addition, as set forth in Ms. McNeill's Motion, the Court should refuse to enforce an illegal provision of a contract, and this defense can be raised at any time during the pendency of the case because it contemplates the Court's power to render the requested relief. Motion at 17-18. Although Plaintiff claims the cases cited by Ms. McNeill are distinguishable, it does not distinguish them other than providing parentheticals to the citations, all of which militate in favor of Ms. McNeill's argument (for example, the court has authority to consider NLRA defenses to enforcement of a contract).[3]

Plaintiff devotes a significant portion of its Response emphasizing that *McLaren* was decided prior to its own initiation of this action, but this is not material to the Court's inquiry.[4] Plaintiff either knew at the time it initiated this action it was intending to enforce an illegal non-disparagement provision against Ms. McNeill and did so anyway, which is, in itself, a violation of law, or Plaintiff misunderstood the state of the law when it filed each of its three complaints.

---

[3] Ultimately, Plaintiff agrees "courts will not enter judgment enforcing contracts that are illegal or contrary to public policy," which is a "general and unremarkable proposition." Despite this admission, Plaintiff somehow maintains its position that the Court should enforce the illegal contract provision in this case because the fact the NDP is illegal was not previously declared. A court should not enforce an illegal contract regardless of whether a party raises the issue of illegality or when the defense is raised. Motion at 17-18.

[4] Plaintiff also asserts that Ms. McNeill attempted to characterize *McLaren* as case law arising after the Preliminary Injunction was issued. Instead, Ms. McNeill was acknowledging that *McLaren* and its recent progeny announce a new rule departing from over a decade of precedent, which is true.

B.      The Non-Disclosure Provision is Illegal and Unenforceable

1.      *McLaren Applies to this Case*

Plaintiff argues the NLRA should not apply to Ms. McNeill because its primary function

is to protect collective bargaining and union activity. Response at 8.[5] That is a misunderstanding

of the law. It has long been black letter law that the NLRA protects both union and nonunion

employees. 29 U.S.C. § 157; *N.L.R.B. v. Phoenix Mut. Life Ins. Co.*, 167 F.2d 983, 988 (7th Cir.

1948); *Koch Supplies, Inc. v. N.L.R.B.*, 646 F.2d 1257, 1259 (8th Cir. 1981); *E.I. Du Pont De

Nemours & Co. v. N.L.R.B.*, 707 F.2d 1076, 1079 (9th Cir. 1983); *Indiana Gear Works v. N. L. R.

B.*, 371 F.2d 273, 276 (7th Cir. 1967); NLRB.gov, https://www.nlrb.gov/about-nlrb/rights-we-

protect/whats-law ("Federal law protects employees engaged in union activity, but that's only

part of the story. Even if you're not represented by a union - even if you have zero interest in

having a union - the National Labor Relations Act protects your right to band together with

coworkers to improve your lives at work. You have the right to act with coworkers to address

work-related issues in many ways. Examples include: talking with one or more co-workers about

your wages and benefits or other working conditions, circulating a petition asking for better

hours, participating in a concerted refusal to work in unsafe conditions, and joining with

coworkers to talk directly to your employer, to a government agency, or to the media about

problems in your workplace."); Memorandum GC 23-05, providing "Guidance in Response to

Inquiries about the *McLaren Macomb* Decision" ("Guidance"). *Re: Guidance in Response to

Inquiries About the McLaren Macomb Dec.*, MEMORANDUM GC 23-05, 2023 WL 3567920

(Mar. 22, 2023).

---

[5] *Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018) is a monumental Supreme Court case holding employers may force employees to individual arbitration. SCOTUS did not consider, let alone rule on, whether the NLRA applies to nonunion employees. The issue decided was whether the NLRA preempted the Federal Arbitration Act.

Plaintiff also argues *McLaren* does not apply because *McLaren* was decided in the context of a severance agreement. Plaintiff cites no authority as to why the rationale in *McLaren*, which in no way limited its holding concerning non-disparagement provisions to those contained within severance agreements, should be construed so narrowly. Such a narrow application would be nonsensical, as Section 7 rights apply both to employees and former employees, and any non-disparagement provision infringing on those rights would be invalid for the same reasons articulated in *McLaren*. In addition to the Guidance's announcement that *McLaren* should apply to any agreement (not just severance agreements), the NLRB has already applied *McLaren* outside the context of a severance agreement. *Challenge Mfg. Holdings, Inc., Respondent & Kahdeijra Lashay Gee, an Individual Charging Party*, No. 07-CA-286573, 2023 WL 2866336 (Apr. 10, 2023) (stating *McLaren's* holding applies equally to all non-disparagement provisions, not just those in severance agreements).[i]

Finally, Plaintiff argues NLRB cases are not binding on this Court.[6] Nonetheless, it would be improper for the Court to ignore NLRB decisions. As set forth in the Motion, courts must determine whether a contract violates the NLRA when the NLRA is implicated. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 84, 102 S. Ct. 851, 860, 70 L. Ed. 2d 833 (1982) (citing NLRB decisions in support of its holding). NLRB decisions "merit greatest deference" by courts and will be given "controlling weight unless 'arbitrary, capricious, or manifestly contrary to the statute.'" *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 324, 114 S. Ct. 835, 839, 127 L. Ed. 2d 152 (1994) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)).

---

[6] Plaintiff takes issue with Ms. McNeill for not asserting, "as primary or alternative relief, dismissal of any of Head Kandy's claims for injunctive relief." Response at 2 n. 1. Ms. McNeill cannot do that in this case. Plaintiff chose to file its claims with this Court (and not the NLRB, where Ms. McNeill can make an affirmative claim, which is why Ms. McNeill is asserting her defense in this venue). *Costello v. Grundon*, 651 F.3d 614, 624 (7th Cir. 2011) (citing *Kaiser Steel*).

2.      <u>*The NDP has a Likelihood of Chilling Employees' Section 7 Rights*</u>

Plaintiff also misconstrues the holding in *McLaren* and *Big Green*, stating the legal holdings therein have no applicability to the instant case because "there have not been any allegations whatsoever concerning labor organizations, collective bargaining, or concerted activities by employees, and particularly no such allegations by or in any way related to Ms. McNeill." Response at 9. This interpretation is incorrect. It is **<u>irrelevant</u>** whether or not concerted activity has occurred. Instead, the Court's consideration is whether the NDP ***could have a tendency*** to chill Section 7 rights—not whether any employee actually exercises those rights. Motion p. 14; *Stericycle, Inc. & Teamsters Loc. 628*, 372 NLRB No. 113 (Aug. 2, 2023) The "mere maintenance of a rule likely to chill section 7 activity, whether explicitly or through reasonable interpretation, can amount to an unfair labor practice even absent evidence of enforcement." *Cintas Corp. v. N.L.R.B.*, 482 F.3d 463, 467–68 (D.C. Cir. 2007).

In *Stericycle, Inc. & Teamsters Loc. 628*, 372 NLRB No. 113 (Aug. 2, 2023), the NLRB held that in determining whether a contract provision has a "reasonable tendency to interfere with, restrain, or coerce employees who may engage in activities protected by Section 7," the provision must be interpreted "from the perspective of the reasonable employee who is economically dependent on her employer and thus inclined to interpret an ambiguous rule to prohibit protected activity she would otherwise engage in. The reasonable employee interprets rules as a layperson, not as a lawyer." *Stericycle, Inc. & Teamsters Loc. 628*, 372 NLRB No. 113 (Aug. 2, 2023).[7] If such reasonable employee "could reasonably interpret a rule to restrict or prohibit Section 7 activity," the employer's rule is illegal and unenforceable. *Id.*

---

[7] Ms. McNeill acknowledges *Stericycle* dictates the standard the NLRB must use but believes the NLRB's standard should likewise be utilized by the Court pursuant to the deference provided by courts to NLRB authority.

3. _The "Savings Clause" does Nothing to Alter the Illegality of the NDP_

The NLRB has long held that general disclaimers like the one Plaintiff relies on are not sufficient to "save" an otherwise overly broad, unenforceable rule:

> A "savings clause" refers to a provision in a policy stating that it should not be construed or applied in a manner that interferes with employees' rights under the NLRA . . .savings clauses are not sufficient to cure overbroad social media policies. Thus, employers must have properly tailored policies, and cannot rely on these savings clauses alone to otherwise cure overbroad provisions.

National Labor Relations Board, Report of the Acting General Counsel Concerning Social Media Cases (May 30, 2012) (internal citations omitted) Instead, in order for a savings clause to even possibly apply, it must specifically alert the employee to the panoply of nonwaivable rights under Section 7. _First Transit, Inc._, 360 NLRB 619, 621–22 (2014). In _Entergy Nuclear Operations, Inc. & United Gov't Sec. Officers of Am., Loc. 25_, 367 NLRB No. 135 (May 21, 2019) the NLRB found that an even more specific "savings clause"[8] located after a non-disparagement provision was insufficient to render the provision NLRA-compliant. The NLRB found that the non-disparagement clause prohibiting "untrue or disparaging communications" was impermissibly overbroad, as it did not specify the prohibition was only prohibiting maliciously false or intentionally untrue statements. _Id._ Because the "savings clause" did not specifically "contain any language expressly addressing untrue or disparaging statements" or otherwise connect the general 'savings clause' to the language prohibiting all disparaging language in any way," it was not sufficient to "save" the unenforceable non-disparagement provision. _Id._ The NLRB noted that both the non-disparagement provision and the "savings clause" would be construed against the employer drafter. _Id._

---

[8] The "savings clause" in _Entergy_ stated that nothing in the section restricts the "employee's rights under any federal . . . labor or employment law, or regulation, . . . includ[ing, but] not limited to the right to engage in protected concerted activity for mutual aid and protection, and the right to engage in protected concerted activity relating to wages, hours and other terms of employment, such as the right to discuss his or her wages, benefits and employment conditions with others."

NLRB cases,[ii] advice memoranda, and secondary sources have reiterated these principles.[9] *Challenge Mfg. Holdings, Inc., Respondent & Kahdeijra Lashay Gee, an Individual Charging Party*, No. 07-CA-286573, 2023 WL 2866336 (Apr. 10, 2023); *Echostar Techs., L.L.C.*, No. 27-CA-066726, 2012 WL 4321039 (Sept. 20, 2012); *Cox Communications, Inc.*, 40 NLRB AMR 25 (October 19, 2012); Essential Facts: Employment § 9:12. Employee rights in the absence of a union (2024 Ed.) (West).; Guide to HR Policies and Procedures Manuals § 7:57, The NLRB's restrictions on social media policies (2024 Ed.) (West).

4. <u>*If a Supervisor, Ms. McNeill is a Protected Supervisor because she Refused to follow Head Kandy's Protocol to Violate Employees' Section 7 Rights*</u>

Contrary to Plaintiff's argument that complaining about harassment is not a protected concerted activity under the NLRA, the opposite is true. In *Fresh & Easy Neighborhood Mkt., Inc.*, 361 NLRB 151 (2014), the NLRB held that seeking the assistance of coworkers, outside the context of any kind of union, for a complaint of sexual harassment is concerted action for the mutual aid and protection of employees. *Fresh and Easy*, 361 NLRB 151 at *8; *see, also, N.L.R.B. v. Downslope Indus., Inc.,* 676 F.2d 1114, 1118 (6th Cir. 1982); 128 Harv. L. Rev. 785, 790 (Aug. 11, 2014) (reiterating complaints about sexual harassment fall within NLRA's protection). The Board applied the solidarity principle that "an injury to one is an injury to all," stating that even one employee's discussion can implicate Section 7 rights. *Id.* The Board reasoned "[t]he concept of 'mutual aid or protection' focuses on the *goal* of concerted activity; chiefly, whether the employee or employees involved are seeking to 'improve terms and conditions of employment or otherwise improve their lot as employees,'" and that complaints of

---

[9] Practitioners also agree. *See, e.g.*, https://www.mintz.com/insights-center/viewpoints/2226/2023-03-27-nlrb-general-counsel-releases-guidance-wake-mclaren; https://www.gtlaw.com/en/insights/2023/3/nlrb-rules-broad-yet-common-severance-agreements-are-unlawful#:~:text=A%20prominent%20%E2%80%9Csavings%20clause%E2%80%9D%20or,necessarily%20cure%20%20overly%20broad%20provisions.

sexual harassment seek to improve the terms and conditions of employment. *Id.* at *3 (2014) (citing *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565 (1978)).

Further, federal courts have found that publishing information regarding sexual harassment in the workplace is protected NLRA activity. *See Phoenix Transit Sys. v. N.L.R.B.*, 63 F. App'x 524, 525 (D.C. Cir. 2003). While it is true that a supervisor's own participation in concerted activity is not always protected, "a well-recognized exception has developed to allow reinstatement when the supervisor's discharge is part of an integral pattern of employer conduct aimed at squelching protected employee activity. *N.L.R.B. v. Downslope Indus., Inc.*, 676 F.2d 1114, 1119 (6th Cir. 1982). In addition, a supervisor's conduct is protected by Section 7 when the supervisor is disciplined for refusing to commit an unfair labor practice. *Id.*

Plaintiff does not dispute any of Ms. McNeill's factual allegations, including that employees complained to her about enduring sexual harassment. Motion SOF ¶ 10. In addition, two former Head Kandy employees were recently deposed and testified that Head Kandy had no complaint procedures, that they were afraid to complain to Mr. Falic or Mr. Rosenbaum, that the only person they felt comfortable complaining to was Ms. McNeill, that they wanted Ms. McNeill to advocate on their behalf, and Ms. McNeill was not their supervisor.[10]

Instead of forcing her fellow female employee to continue doing yoga with Ms. Rosenbaum, Ms. McNeill refused to allow her to submit to harassing behavior by reporting the unlawful conduct to Mr. Falic on behalf of Ms. McNeill and her fellow female employee. Motion SOF ¶¶ 11-13. Ms. McNeill also went against Mr. Rosenbaum's direction, telling her co-worker to no longer attend yoga and to make up excuses if she needed to, refusing to engage in Head Kandy's practice of forcing employees to submit to harassment and allowing a place to complain

---

[10] The depositions occurred on April 23-24, 2024. Ms. McNeill does not yet have the Deposition transcripts are not yet available; however, Ms. McNeill will supplement this Reply upon receipt of the transcripts.

about working conditions even when it was Head Kandy's policy not to allow such complaints. *Id.* Ms. McNeill was served with a notice of breach of her employment agreement eight days after the complaint and precipitously fired thereafter. *Id.* This termination was a part of Head Kandy's campaign to squelch protected activity (including this lawsuit, which attempts to prohibit Ms. McNeill from speaking out about Head Kandy's harassing treatment of employees). *Id.* In addition, Ms. McNeill was disciplined a mere eight days after making the complaint for other employees and herself, refusing to abide by Head Kandy's rule that she must not speak badly about them and that no complaints should be made. *Id.* Thus, even if Ms. McNeill falls within the supervisor or executive exceptions, the NLRA still applies to her.

**FOR THE REASONS** set forth herein, and in the Motion, Ms. McNeill respectfully requests an order from the Court granting her Motion, and modifying the preliminary injunction order and dismissing Head Kandy's claims in accordance with the Motion.

**DATED** this 29th day of April, 2024.

Respectfully Submitted,

By: _/s/ Laura Burgess_
Laura E. Burgess, Esq.
Florida Bar No. 0105073
L.E. Burgess P.A.
5966 S Dixie Highway, Suite 300
Miami, FL 33143
Tel.: 305.942.8044
Alt. Tel.: 713.818.5055
laura@leburgesslaw.com

and

By: _/s/ Antonio L. Converse_
Antonio L. Converse, Esq.
Admitted *Pro Hac Vice*
Converse Law Group, P.C.
600 17th Street, Suite 2800 South

Denver, CO 80202
Tel: 303.228.9471
anthony@converselawgroup.com

and

By: _/s/ Jennifer A. Tiedeken_____
Jennifer A. Tiedeken, Esq.
Admitted *Pro Hac Vice*
Davis & Ceriani, P.C.
1600 Stout Street, Suite 1710
Denver, CO 80202
Tel:  303.534.9000
jtiedeken@davisandceriani.com

COUNSEL FOR KAYLA MCNEILL

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2024*, I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF and, through that filing, served all counsel of record. *Portal Issue

*/s/ Laura E. Burgess*_____

---

[i] *McLaren* is only a year-old decision, thus, there are no federal court cases interpreting *McLaren* and only a handful of NLRB decisions. However, practitioners across the country agree *McLaren* applies to all non-disparagement agreements. https://browngold.com/blog/non-disparagement-in-employment-post-mclaren-macomb/; https://www.laboremploymentlawblog.com/2023/03/articles/national-labor-relations-act/nlrb-general-counsel-releases-memo-concerning-confidentiality-and-non-disparagement-clauses-in-severance-agreements-post-mclaren/ https://www.apslaw.com/on-the-job/2023/03/29/the-end-of-an-era-separation-agreements-in-the-wake-of-mclaren-macomb-what-employers-need-to-know/; https://www.bsk.com/news-events-videos/nlrb-general-counsel-releases-guidance-on-board-rsquo-s-mclaren-macomb-decision; https://www.mslaw.com/mslaw-blog/nlrbs-general-counsel-offers-more-guidance-on-confidentiality-and-non-disparagement-decision; https://katzbanks.com/employment-law-blog/nlrb-curtails-scope-nondisparagement-confidentiality-provisions-severance/; https://ogletree.com/insights-resources/blog-posts/nlrb-holds-confidentiality-nondisparagement-provisions-illegal-in-severance-agreements-presented-to-section-7-employees/; https://www.saul.com/insights/blog/nlrbs-general-counsel-has-released-guidance-confidentiality-and-non-disparagement; https://www.dbllaw.com/blog/2023/04/07/nlrb-offers-guidance-on-mclaren/; https://www.wilmerhale.com/insights/client-alerts/20230328-nlrb-issues-post-mclaren-guidance; https://natlawreview.com/article/update-nlrb-general-counsel-issues-guidance-confidentiality-and-non-disparagement; https://www.pullcom.com/working-together/nlrb-issues-decision-impacting-non-disparagement-confidentiality-provisions-severance-agreements; https://www.hodgsonruss.com/newsroom-publications-14132.html; https://www.nutter.com/trending-newsroom-publications-shifting-nlrb-positions; https://www.cullenllp.com/blog/national-labor-relations-board-administrative-law-judge-decision-gives-insight-on-impact-of-mclaren-macomb-decision-and-related-guidance/; https://ogletree.com/insights-resources/blog-posts/nlrb-general-counsel-says-confidentiality-nondisparagement-clause-decision-applies-retroactively/?_gl=1*aho7c0*_up*MQ..*_ga*MTcwNDIyMzIxNC4xNzEzODA5MDY5*_ga_V4WT9JNBFT*MTcxMzgwOTA2OS4xLjEuMTcxMzgxMDg2OS4wLjAuMA; https://www.mofo.com/resources/insights/230410-nlrb-gc-broad-view-mclaren-macomb-decision; https://www.hahnlaw.com/insights/nlrb-provides-guidance-on-non-disparagement-and-confidentiality-provisions-in-severance-agreements-in-light-of-mclaren-macomb-decision/;

https://www.vorys.com/publication-nlrb-limits-confidentiality-and-non-disparagement-clauses-in-severance-agreements.

[ii] *See*, *e.g.*, *Muse Sch. Ca*, 200 L.R.R.M. (BNA) ¶ 1807 (N.L.R.B. Div. of Judges Sept. 8, 2014) (finding, in part, that a savings clause that stated "will not be interpreted to interfere with [the employee's] ability to engage in activities protected under the National Labor Relations Act ("NLRA")" was "vague as to the conduct being repudiated" and violated the NLRA); *Tpi Iowa, LLC, Respondent & Douglas Vollers II, an Individual*, No. JD-93-16, 2016 WL 5340240 (Sept. 22, 2016) (finding that a savings clause that stated the employer's social media guidelines "are not intended to prohibit associates from exercising their right to engage in protected concerted activity under the National Labor Relations Act" … "[did] not advise employees when a rule [was] overly broad and what rights employees [had] pursuant to Section 7," noting that "such a provision is designed to protect the respondent but not employees" and the clause "[did] not save [the employer] from liability from the overly broad rules contained in the social media guidelines.") (internal quotations omitted); *Giant Eagle, Inc.*, 39 NLRB AMR 31(June 22, 2011) (finding a savings clause that merely referenced the NLRA was not sufficient to overcome the illegal social media policy and finding that an employer "may not prohibit employee activity protected by the Act and then seek to escape the consequences of the prohibition by a general reference to rights protected by law. This is because employees may very well not know what conduct is protected and, rather than take the trouble to get reliable information on the subject, would elect to refrain from engaging in conduct that is in fact protected by the Act.") (internal quotations and citations omitted).