UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY LLC,

    Plaintiff,

vs.                                            Case No. 0:23-cv-60345-RAR

KAYLA MARIE MCNEILL,

    Defendant.
_____/

## PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

Plaintiff, Head Kandy LLC ("**Head Kandy**"), pursuant to Fed. R. Civ. P. 11(c), moves for sanctions against Defendant Kayla Marie McNeill ("**Ms. McNeill**") for her violations of Fed. R. Civ. P. 11(b), and in support states:

### Introduction and Relevant Factual Background

This case arises out of Ms. McNeill's sale of her business to, and her subsequent employment with, Head Kandy. That relationship ended when Head Kandy discovered Ms. McNeill's extensive activity in breach of her Executive Employment Agreement and the fiduciary duty of loyalty she owed to Head Kandy. But Ms. McNeill's conduct to the detriment of Head Kandy did not stop there. After her departure, Ms. McNeill ratcheted up her breaches of the restrictive covenants found in her Executive Employment Agreement during the pendency of this case, forcing Head Kandy to seek relief from the Court. In November 2023, the Court ultimately entered its Order Adopting Report and Recommendation, Granting Plaintiff's Expedited Motion for Preliminary Injunction, and Setting Bond (the "**Preliminary Injunction**") [ECF 152] against Ms. McNeill, precluding her from continuing to violate the restrictive covenants. Even after the entry of the Preliminary Injunction, and after Judge Ruiz cautioned Ms. McNeill in November of 2023 about utilizing social media to engage in activities prohibited by the restrictive covenants of

{00080821:1}

her Executive Employment Agreement and the Preliminary Injunction, Ms. McNeill elected to continue her pattern of violative behaviors.

Indeed, despite the entry of the clear, unambiguous, and well-reasoned Preliminary Injunction, Ms. McNeill violated the Preliminary Injunction in March of 2024 by making disparaging and degrading comments about Head Kandy, its owners, and its affiliates to a third party, forcing Head Kandy to initiate contempt proceedings against Ms. McNeill. Realizing she was dead-to-rights on her violation and would likely face sanctions, Ms. McNeill and her counsel implemented a strategy to muddy the waters and put off the inevitable consequences for her violations of the Preliminary Injunction, despite lacking any cogent legal or factual basis for doing so.

In April 2024—after the Court set a hearing for Ms. McNeill to show cause for her latest violation, after the briefing for that hearing had nearly been completed, and mere days before the hearing was to occur—Ms. McNeill filed her Motion to Partially Vacate Preliminary Injunction and Partial Motion to Dismiss (the "**Motion to Vacate**") [ECF 214]. Therein, Ms. McNeill asserted frivolous arguments based on an absurdly overbroad reading of a National Labor Relations Board ("**NLRB**" or the "**Board**") decision and an illogical application of that inapposite decision to this case. Indeed, a simple Google search (let alone any level of legal research) would have revealed that all of her untimely arguments had no chance of success on the law or the facts. Nonetheless, Head Kandy was forced to file its Opposition to Defendant's Motion to Partially Vacate Preliminary Injunction and Partial Motion to Dismiss (the "**Opposition**") [ECF 231] to oppose Ms. McNeill's frivolous positions.

Ms. McNeill and/or her counsel should be sanctioned for requiring Head Kandy and the Court to endure the exercise and expense—in both time and money—of refuting Ms. McNeill's nonsensical, baseless, and improperly asserted arguments.

### **Argument**

The objective of Fed. R. Civ. P. 11 is "to reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, thus avoiding unnecessary delay and expense in litigation." *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (internal quotations omitted). To that end, "[Rule] 11 authorizes a district court to impose sanctions against an attorney who files frivolous pleadings or motions." *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 941 (11th Cir. 2022).[1] "Rule 11 sanctions are warranted when a party files a pleading or motion that '(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose.'" *Id.* at 941-42 (quoting *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021)).

"When deciding whether to impose sanctions under Rule 11, a district court must conduct a two-step inquiry, determining '(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous.'" *Id.* at 942 (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)). "A factual claim is frivolous when it has no reasonable factual basis," while "[a] legal claim is frivolous when it has no reasonable chance of succeeding." *Id.* Moreover, "[i]f the attorney failed to make a reasonable inquiry, then 'the court must impose sanctions despite the attorney's good faith belief that the

---

[1] "Sanctions under Rule 11 have been recognized to serve the multiple purposes of punishment, compensation and deterrence," and the Court has "discretion to fashion an appropriate sanction" in pursuance of those objectives. *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1330 (S.D. Fla. 2007).

claims were sound.'" *Id.* (quoting *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)). "The reasonableness of the inquiry depends on the circumstances of the case." *Id.*

Moreover, an attorney's reaffirmation of frivolous contentions, even those that may have been nonfrivolous when originally asserted but later became frivolous, also violates Rule 11. *See id.* at 942-43 ("[A]n attorney's obligations with respect to the contents of pleadings or motions are not measured solely as of the time when the pleading or motion is initially filed with the court, but also at the time when the attorney, having learned the claims lack merit, reaffirms them to the court. That the contentions contained in the complaint were not frivolous at the time it was filed does not prevent the district court from sanctioning [the attorney] for his continued advocacy of them after it should have been clear that those contentions were no longer tenable.") (internal quotations omitted).

Here, sanctions are warranted based on Ms. McNeill's legally and factually unsupported and unsupportable Motion to Vacate, which Ms. McNeill filed (and the contentions of which Ms. McNeill has repeated to the Court multiple times) in bad faith for the improper purposes of causing obstruction and delay of these proceedings and imposing additional expense and inconvenience upon Head Kandy, as has been her pattern from the beginning of this litigation.

**I.  The Motion to Vacate is objectively frivolous because the legal arguments asserted therein have no reasonable chance of succeeding; the newly invented facts claimed therein are immaterial, baseless, and improperly asserted; and Ms. McNeill's counsel would have been aware of those realities upon any reasonable inquiry.**

Ms. McNeill's Motion to Vacate asserts that the Court erroneously entered, and must vacate or modify, the Preliminary Injunction based solely and entirely on decisions from the NLRB. That argument has no reasonable chance of success whatsoever for the following reasons, which are explained in greater detail in Head Kandy's Opposition to the Motion to Vacate. Ms. McNeill's

counsel should have known that those contentions had no reasonable chance of success before repeatedly asserting them.

A. Ms. McNeill's Motion to Vacate is clearly untimely.

Ms. McNeill's arguments in favor of vacatur or modification are untimely, and for that reason alone, have no chance of success. Indeed, a cursory glance at the decisions on which Ms. McNeill relies reveals that the primary authority on which her arguments are based—*McLaren Macomb*, 372 N.L.R.B. No. 58 (Feb. 21, 2023), which is inapplicable anyway—was decided before this case was even filed and **nearly nine months** before the Preliminary Injunction was entered. Setting aside its obvious inapplicability, Ms. McNeill could have raised her argument based on *McLaren Macomb* in any of her various prior attacks on Head Kandy's attempt to obtain the Preliminary Injunction before it was entered, including via her motion to dismiss Head Kandy's claim seeking injunctive relief [ECF 30 and 34], her opposition to Head Kandy's Motion for a Preliminary Injunction [ECF 66], or in her Objection to Magistrate Judge Strauss's Report and Recommendation to grant Head Kandy's Motion for Preliminary Injunction [ECF 134]. Because she never raised the argument before, it is well-established that she cannot rely upon it as the basis to now seek a modification or vacatur. *See, e.g.*, *Hodge v. Dep't of Hous. & Urban Dev., Hous. Div., Dade Cnty., Fla.*, 862 F.2d 859, 862 (11th Cir. 1989) ("Before exercising its power to modify, a court must be convinced by the party seeking relief that existing conditions differ so substantially from those which precipitated the decree as to warrant judicial adjustment."); *CWI, Inc. v. LDRV Holdings Corp.*, 2013 WL 12123229, at *2 (M.D. Fla. Oct. 16, 2013) ("Modification of [a preliminary] injunction is proper only when there has been a change of circumstances between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable."); *CreeLED, Inc. v. Individuals, Partnerships and*

*Unincorporated Associations Identified on Schedule "A"*, 2023 WL 5036192, at *3 (S.D. Fla. Aug. 8, 2023) ("A motion to modify a preliminary injunction is meant only to relieve inequities that arise after the original order.").

Given that the above clearly established case law alone mandates denial of the Motion to Vacate, sanctions against Ms. McNeill's counsel are warranted for asserting arguments that have no possibility of success. *Cf. Jackson v. Hall Cnty. Gov't, Ga.*, 568 F. App'x 676, 679 (11th Cir. 2014) (affirming sanctions for filing time barred claim because the attorney's theory that the claim was timely was "clearly foreclosed by our existing case law"); *Taidoc Tech. Corp. v. Pharma Supply, Inc.*, 2014 WL 12861850, at *6 (S.D. Fla. July 11, 2014) ("[T]here was little dispute from defense counsel at the hearing that the factual allegations and timing of the relevant events as pled in Defendant's counterclaims rendered them time-barred. Such a willful disregard of the applicable statutes of limitations also warrants the imposition of sanctions.").

Ms. McNeill and her counsel recognized they could not meet the standard this Court must apply in considering whether the Preliminary Injunction should be modified because there had been no change in applicable (or even inapplicable) law since entry of the Preliminary Injunction. Therefore, Ms. McNeill and her counsel attempted to characterize the *McLaren Maccomb* decision (which was decided before the entry of the Preliminary Injunction and is inapplicable anyway) as a more recent change than it actually was. To do so, they misrepresented to the Court that the NLRB's February 2023 decision in *McLaren Macomb* somehow needed to be confirmed or validated by (a) an Office of the General Counsel of the NLRB guidance document addressing the *McLaren Macomb* decision issued in March 2023, and (b) an Administrative Law Judge's December 2023 decision in *Big Green Respondent & Kelsey Gray, an Individual Charting Party & Denver Newspaper Guild-Commc'ns Workers of Am., Loc. 37074, AFL-CIO Charging Party,*

No. 27-CA-276068, 2023 WL 8873718 (N.L.R.B. Div. of Judges, Dec. 20, 2023), which Ms. McNeill additionally misrepresents as being a decision of a "court."

Not only is Ms. McNeill wrong on each of those issues, but also, her counsel's decision to misrepresent these points, and to repeatedly present frivolous arguments to the Court despite the lack of any chance of success, is deserving of sanctions. *See Collar v. Abalux, Inc.*, 806 F. App'x 860, 864 (11th Cir. 2020) (affirming sanctions in part because an attorney "misstated the import of" a particular case, made a "frivolous" argument based upon that case law, and thereby "unreasonably prolonged" the litigation).

B. <u>Ms. McNeill's Motion to Vacate relies entirely on plainly inapposite law and factual allegations.</u>

Regardless of its untimeliness, Ms. McNeill's Motion to Vacate has no reasonable chance of success because it is completely based on a decision of the NLRB, and that decision's progeny, which, for a myriad of reasons, has no applicability at all to the facts of this case.

i. **<u>"Section 7 Rights" at issue in *McLaren Macomb* are not implicated here.</u>** The *McLaren Macomb* and *Big Green* decisions apply the National Labor Relations Act ("**NLRA**"), which is a statutory regime governing labor disputes and concerted action of employees to "safeguard[] … workers' rights to join unions and to engage in collective bargaining." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 521 (2018). No complex legal research is necessary to ascertain that the NLRA has nothing whatsoever to do with this case. In fact, if the *Lewis* case was not clear enough on its own, a simple Google query reveals that the purpose of the NLRA is "to encourage collective bargaining by protecting workers' full freedom of association," *National Labor Relations Act*, https://www.nlrb.gov/guidance/key-reference-materials/national-labor-relations-act (last visited April 9, 2024 at 10:00 A.M.), which purpose is achieved through Section 7 of the NLRA, guaranteeing employees

{00080821:1}  7

> the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities.

29 U.S.C. § 157. Needless to say, and as explained in greater detail in Head Kandy's Opposition, Ms. McNeill should have known prior to filing the Motion to Vacate that those rights are not implicated at all by the facts of this case—which does not involve, and has never involved, any allegations, much less any claim, related to collective bargaining, union activity, or anything that qualifies as a labor dispute.

Simply put, the argument Ms. McNeill and her counsel put forth in their Motion to Vacate borders on absurd, and is certainly frivolous and sanctionable, because it had no possible chance of success from the moment it was filed, but yet was filed by Ms. McNeill's counsel anyway. *See Gutierrez v. City of Hialeah*, 729 F. Supp. 1329, 1333 (S.D. Fla. 1990) (imposing sanctions because counsel "failed to research legal precedent adequately" and instead filed numerous documents "seeking relief under clearly inapposite or non-existent precedent"); *Bradley v. Tucker*, 2015 WL 4075088, at *3 (S.D. Ga. July 1, 2015) ("Mr. Pagano's theories plainly are not the product of reasonable research, for if he had engaged in even a brief inquiry of the law governing his client's claims, he would have discovered that the position he advances is patently without merit. Mr. Pagano, however, failed to conduct that research and, for that, the Court must sanction him.") (footnote omitted).

      **ii.**    ***McLaren* and *Big Green* have no application.**  The decisions Ms. McNeill cites are, on their face, not sufficiently analogous to this case to provide a useful comparison, much less to be dispositive of the outcome of the Motion to Vacate, as Ms. McNeill's counsel has suggested they are. Those decisions—*McLaren Macomb* and *Big Green*—pertain to contractual provisions in severance agreements insofar as such provisions, if sufficiently overbroad, may impede

employees' exercise of collective bargaining rights under the NLRA by conditioning the availability of severance benefits on the outgoing employee's assent to the overly broad restrictions. Rather than accept the plain holding of those non-binding cases—"that an employer violates Section 8(a)(1) of the Act when it proffers a severance agreement with provisions that would restrict employees' exercise of their NLRA rights," *McLaren Macomb*, slip op. at 8—Ms. McNeill's counsel misrepresents their import, overstates their clearly stated holding, and attempts to apply them to her wholly incomparable factual circumstances, which involve a multi-million dollar sale of her former business's assets and an agreement to be employed by the new entity. The Executive Employment Agreement is not a severance agreement coercively foisted upon Ms. McNeill at termination. Moreover, Ms. McNeill almost entirely ignores the savings clause in her own Executive Employment Agreement, which explicitly excludes communications protected under the NLRA from the non-disparagement provision's reach, and her arguments concerning that provision's effect are farcical:

> (d) **Non-Disparagement**. The Executive agrees and covenants that the Executive will not, at any time, make, publish or communicate to any Person or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Company or its affiliates, or their businesses, or any of their employees, officers, and existing and prospective clients, suppliers, investors, and other associated third parties. <u>This Section 5(d) does not, in any way, restrict or impede the Executive from exercising protected rights to the extent that such rights cannot be waived by agreement, including, without limitation, the Executive's rights under the National Labor Relations Act, or rights to communicate with any other administrative or regulatory agency to report suspected unlawful conduct, or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided</u> that such compliance does not exceed that required by the law, regulation, or order. The Executive shall promptly provide written notice of any such order to an authorized officer of the Company.

That clause alone, particularly when read along with the actual holdings of the *McLaren Macomb* and *Big Green* decisions, shows that Ms. McNeill's Motion to Vacate is frivolous, has no reasonable chance of success on the law, and is deserving of sanctions. Unlike the overly broad non-disparagement clause in *McLaren Macomb*, the covenant at issue in this matter is

unmistakable in its scope by referring to the NLRA and Ms. McNeill's ability to address any grievances she might have with regard to her rights under the NLRA to regulators or other governmental authorities.

  **iii.**  **Ms. McNeill was a "Managerial Employee" and "Supervisor."** The facts as they have existed for the duration of this case confirm, as a matter of law, that Ms. McNeill does not possess NLRA rights. Indeed, it has been long-established by the courts that "managerial employees" are not within the scope of Section 7's protections, and it is equally clear that "supervisors" are likewise not covered (and in fact, are explicitly excluded) by the NLRA. *See, e.g.*, *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 287-88 (1974) (managerial employees); *Cooper/T. Smith, Inc. v. NLRB*, 177 F.3d 1259, 1263 (11th Cir. 1999) (supervisors) (citing and discussing 29 U.S.C. § 152(11)). Ms. McNeill's counsel, through reasonably diligent research, should have discovered these exceptions, and any minimally competent analysis would have revealed that they bar Ms. McNeill's ability to assert that she has the Section 7 rights which the non-disparagement clause has supposedly violated. Indeed, Ms. McNeill herself, who was also a part-owner of Head Kandy during the time she was an employee, has effectively conceded (and, in any event, cannot reasonably dispute)[2] her supervisory and managerial role with Head Kandy, which is fatal to her Motion to Vacate. *See Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002) ("Sanctions are warranted [under Rule 11] when a party exhibits a deliberate indifference to obvious facts….") (citation and internal quotation marks omitted); *Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848, 852 (11th Cir. 1988) (sanctions appropriate when suit was brought despite the "very clear" law defeating it). To the extent any doubt remains about Ms. McNeill's role at Head Kandy, this Court need to look no further than the proposed answer

---

[2] Ms. McNeill's arguments that she was not a "supervisor" or "managerial employee" are also patently frivolous and have no chance of success for the reasons explained in Head Kandy's Opposition.

that Ms. McNeill filed, subject to Rule 11 verification requirements, in this case, wherein she admitted to being a managerial employee:

> 19.   Ms. McNeill admits that she was a key managerial employee of HK. Ms. McNeill denies the remaining allegations in Paragraph 19.

[ECF No. 195-1, ¶ 19].

    **iv.**    **The Alleged Activity is not Covered by Section 7.**  The alleged activity Ms. McNeill claims was protected by the NLRA, as a matter of law, quite obviously has nothing to do with the NLRA. That activity was her supposed "refus[al] to allow Mr. Rosenbaum to harass and abuse her and other employees," her alleged "convers[ation] with another female employee about her discomfort with Mr. Rosenbaum and being forced to do yoga with him," and complaints to Head Kandy's Managing Member about this alleged sexual harassment. [Motion to Vacate, ECF 214 at 12]. Not only is there no competent or credible evidence in the record to establish any of those outlandish assertions,[3] but even assuming Ms. McNeill's allegations are at all true, that conduct is plainly unrelated to the NLRA, which concerns labor organizations and disputes, not civil rights claims of discrimination or harassment. The suggestion that Ms. McNeill was actually some kind of labor organizer for a collective of Head Kandy employees, or that she was somehow protecting other employees from supposed labor law violations by Head Kandy, as she would have had to have been for the NLRA to have any relevance whatsoever here, strains credulity, is

---

[3] Indeed, Ms. McNeill's newly asserted and unsupported factual allegations are simply a transparent and half-baked attempt to create out of whole cloth and inject the facts she believes necessary to save her from being held accountable for her latest violation of the Preliminary Injunction. The timing of the Motion to Vacate—the legal and factual contentions contained in which, as explained in Head Kandy's Opposition, could have been asserted long before now, including before the Preliminary Injunction was even entered—makes this reality quite apparent. Through her Motion to Vacate, Ms. McNeill and her counsel also attempt to obliquely bring before the Court and litigate Ms. McNeill's unfounded claims of sexual harassment and retaliation, despite the fact that those claims have not yet made it through, and likely never will make it through, the requisite state administrative process. The Motion to Vacate, in addition to being frivolous and having no reasonable chance of success on its legal merits, contains baseless factual claims made now for the first time for an improper purpose, thereby warranting sanctions.

ridiculous on its face, and bears no relationship at all to the issues in this case. There are no facts bringing this case within the ambit of the NLRA even if Ms. McNeill was correct (which she is not) that the NLRA and decisions enforcing it have any application to this case in the first instance.[4] And, if there is any doubt remaining about Section 7's non-applicability to this case (and to the alleged harassment claims that Ms. McNeill alleges to have occurred while she was a supervisor and managerial employee at Head Kandy), Ms. McNeill could have simply gone to the FAQ portion of the NLRB website to learn that any questions or issues pertaining to "unpaid wages, safety on the job, employment discrimination, workers' compensation, or a number of other work related issues" should be brought to the attention of a "different government agency," because those issues are governed by laws other than the NLRA. *Frequently Asked Questions – NLRB*, https://www.nlrb.gov/resources/faq/nlrb (last visited April 9, 2024 12:29 P.M.). Thus, sanctions are warranted.

Any one of these reasons is sufficient on its own to defeat Ms. McNeill's Motion to Vacate, showing that the Motion to Vacate has no reasonable probability of succeeding, a truth which should have been patently obvious to Ms. McNeill's counsel before filing the Motion to Vacate. Ms. McNeill's counsel's insistence on making and repeating those arguments to the Court despite their futility is grounds for sanctions.

II. **Ms. McNeill's Motion to Vacate was concocted for an improper purpose and filed in bad faith to impose delay, inconvenience, and expense on Head Kandy and the Court.**

Not only does Ms. McNeill's Motion to Vacate have no chance of success because it relies entirely on frivolous legal arguments, but also, the Motion to Vacate merits sanctions because it was filed in bad faith for a blatantly improper purpose. The reality is that Ms. McNeill's Motion

---

[4] At best, there are merely convenient (and unbelievable) accusations, which Ms. McNeill plainly raises at this time for the improper purpose of attempting to avoid the consequences of her violative conduct.

to Vacate is part of her latest maneuver to (i) try to obstruct these proceedings; (ii) unfairly spring surprise last minute filings on Head Kandy; (iii) inconvenience and waste the resources of Head Kandy and the Court; and (iv) ultimately attempt to evade the consequences of Ms. McNeill's apparent unwillingness to comply with the Executive Employment Agreement and the Preliminary Injunction.

Magistrate Judge Strauss effectively recognized Ms. McNeill's improper objective in his Order on Emergency Motion [ECF 218], remarking: "The timing of the Motion [to reschedule the April 12, 2024 contempt hearing] is especially curious considering Defendant filed her response to Plaintiff's Expedited Motion to Enforce the Preliminary Injunction and for an Order to Show Cause on April 1, 2024, and indicated that Defendant would file her Motion to Vacate that week. … Defendant's decision to file her Motion to Vacate four days before the evidentiary hearing, and a week after Defendant stated she would, was her choice. Defendant's own dilatory conduct cannot constitute an emergency." (citations omitted). Ms. McNeill filed the Motion to Vacate a week later than her own self-imposed deadline, and months later than she would have had to for it to be timely, as a basis to postpone the contempt hearing, and then failed to even show up to that hearing when it went on as scheduled despite Ms. McNeill's machinations.

Just as she has throughout this case, Ms. McNeill and her counsel attempted to manufacture an excuse to distract from Ms. McNeill's pervasive wrongful conduct, to sow needless confusion, to cause unnecessary expense, and to delay and obstruct what ought to be the "just, speedy and inexpensive" resolution of this case. Fed. R. Civ. P. 1. Filing yet another frivolous motion in pursuit of that inappropriate strategy of delay, obfuscation, and evasion is grounds for sanctions. *See* Fed. R. Civ. P. 11(b)(1) (sanctionable conduct includes presentation of filings or arguments "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the

cost of litigation"); *Bernal*, 479 F. Supp. 2d at 1330 (a motion made "with complete disregard for [known] information," "in a combative effort to minimize his clients' failures to meet their discovery obligations," and "to divert this Court's attention to phantom misconduct by Plaintiff and her attorney" warranted sanctions); *Rhein Medical, Inc. v. Koehler*, 889 F. Supp. 1511, 1517 (M.D. Fla. 1995) (submissions "filed for the purpose of delay and to obtain some strategic advantage" violated Rule 11 and warranted sanctions); *cf. In re Kunstler*, 914 F.2d 505, 519 (11th Cir. 1990) ("If counsel willfully files a baseless complaint, a court may properly infer that it was filed either for purposes of harassment, or some purpose other than to vindicate rights through the judicial process."); *see also Bradley*, 2015 WL 4075088, at *3-4 (citing *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (11th Cir. 1993) for the proposition that "an attorney's loyalties to a client do not outweigh the duty an attorney owes to the Court and to the justice system," and imposing sanctions when the attorney "allowed his client's objectives to 'override' the duties he owes the Court" by asserting a position that "no reasonable attorney could believe … is legally tenable").

## Conclusion

For the above reasons, Head Kandy respectfully requests that the Court grant this Motion and award sanctions against Ms. McNeill and/or her counsel for filing the Motion to Vacate and continuing to pursue frivolous legal and factual positions with no chance of success and for improper purposes, and order such other and further relief the Court deems appropriate.

    */s/ Ethan J. Loeb*
**ETHAN J. LOEB**
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
**EDWARD C. THOMPSON**
FL Bar No. 684929

colint@blhtlaw.com
heatherw@blhtlaw.com
**JALEN A. LARUBBIO**
FL Bar No. 1039258
JalenL@blhtlaw.com
UniqueA@blhtlaw.com
**CARSON A. SADRO**
FL Bar No. 1026159
KerriR@blhtlaw.com
**BARTLETT LOEB HINDS**
**THOMPSON & ANGELOS**
100 N. Tampa Street, Suite 2050
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Plaintiff Head Kandy LLC*

### CERTIFICATE OF SERVICE PURSUANT TO FED.R.CIV.9.11(c)(2)

I HEREBY CERTIFY that on April 16, 2024, I served the forgoing upon : Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jat@davisandceriani.com, Davis & Ceriani, P.C., 1600 Stout Street, Ste. 1710, Denver, CO 80202 *(pro hac vice admission pending), co-counsel for Defendant;*. and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff* via electronic mail in accordance with Fed. R. Civ. P. 11(c)(2).

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 9, 2024 I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jat@davisandceriani.com, Paralegals@davisandceriani.com, Davis &

Ceriani, P.C., 1600 Stout Street, Ste. 1710, Denver, CO 80202 *(pro hac vice admission pending), co-counsel for Defendant;.* and Jed Ferdinand, Esquire, <u>jferdinand@fiplawgroup.com</u>, Kathleen B. Moore, Esquire, <u>kmoore@fiplawgroup.com</u>, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

<u>/s/ Ethan J. Loeb</u>
Attorney