UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY LLC,

    Plaintiff,

vs.                                                             Case No. 0:23-cv-60345-JB

KAYLA MARIE MCNEILL,

    Defendant.
_____/

**PLAINTIFF'S EXPEDITED[1] MOTION TO ENFORCE
THE PRELIMINARY INJUNCTION, FOR AN ORDER TO SHOW CAUSE,
AND FOR CIVIL CONTEMPT SANCTIONS**

Plaintiff Head Kandy LLC ("**Head Kandy**") moves for an order enforcing the Court's November 7, 2023 Order Adopting Report and Recommendation, Granting Plaintiff's Expedited Motion for Preliminary Injunction, and Setting Bond (the "**Preliminary Injunction**") [ECF 152] against Defendant Kayla Marie McNeill ("**Ms. McNeill**"), directing Ms. McNeill to show cause why she should not be held in contempt and sanctioned for her latest violation of the Preliminary Injunction, and imposing appropriate sanctions against Ms. McNeill for her repeated violations of the Preliminary Injunction. In support, Head Kandy states:

**Introduction**

Multiple times since the Preliminary Injunction was entered in November 2023, this Court has admonished Ms. McNeill to avoid social media. Indeed, mere days after the Preliminary

---

[1] *See* Loc. R. 7.1(d)(2). As shown herein, the undersigned has a good faith belief that expedited treatment of this Motion is necessary given the history of Ms. McNeill and her extensive prior conduct in violation of the Preliminary Injunction and restrictive covenants. Specifically, as detailed herein, Ms. McNeill's latest violative statements, which are similar to her prior statements that the Court has already found violated her obligations, remain available online and viewable to the general public, causing further (and ongoing) irreparable harm to Head Kandy. Though the relief does not qualify as an "emergency" under Local Rule 7.1(d)(1), it is essential the Court treat this an expedited request for relief and enter any of the requested relief as soon as practicable, and by June 11, 2024.

Injunction was entered, Judge Ruiz cautioned the parties to "stay off social media as much as you possibly can while this thing is ongoing" because "we just don't want to get into a back and forth where the court has to do orders enforcing the injunction, and then it opens up the door to sanctions." 4/12/2024 Contempt Hrg. Tr. at 101:2-3, 101:8-10 (quoting Judge Ruiz's remarks at November 14, 2023 status conference). As Judge Strauss phrased it during the April 12, 2024, contempt hearing,

> The upshot of what Judge Ruiz was saying, at least as far as I can interpret it, is that this exact hearing is exactly where we didn't want to be. And I can understand if Ms. McNeill thinks the order is unfair. I understand, based on her allegations, if it makes her blood boil. All that is something to continue getting litigated. But what I take Judge Ruiz saying there is that discretion is the better part of valor, and pushing the envelope or trying to go up to the line on anything is simply asking for us to end up right back here. And if we end up back here again, someone is going to lose, … someone's going to win. Either way, it's going to be expensive for everybody and that doesn't help anybody.
>
> I can only reiterate what Judge Ruiz said which is, again, discretion is the better part of valor. And, you know, I wish Ms. McNeill were here so I could make that point to her directly, that even trying to come up close to the line is a recipe for ending up right back here. And I would urge defense counsel to have another conversation with her, because it is incumbent upon you to make sure she understands not just what the limits are, but what the consequences of and the downsides of even pushing the limits are, even if it's not found to be a violation.

4/12/2024 Contempt Hrg. Tr. at 101:19-102:15.

Apparently not dissuaded by the Court's repeated warnings, Ms. McNeill has continued to ignore this Court's admonitions, and has now, in a June 3, 2024, Facebook Live video (the "**Video**"),[2] made new public statements about Head Kandy, and its investors, management, and employees, in which she disparages the company and numerous individuals associated with it,

---

[2] The subject video is **Exhibit A** to this Motion. Through her "Whipin Life With Kayla" page, Ms. McNeill posted the Video on Facebook Live on June 3, 2024, at 9:56 A.M. eastern time. *See* Declaration of Ethan Loeb (attached hereto as **Exhibit B**). The Video, much like Ms. McNeill's prior "Lawsuit Updates," depicts Ms. McNeill talking to her Facebook followers about Head Kandy and this case. *See id.* Head Kandy has sent the Video to the Court on a USB drive via Fedex and will also make a copy available to opposing counsel.

{00082632:1}                                           2

including going so far as to call Head Kandy's workplace environment "lawless," "toxic," and full of "drama," and recounting various allegations of employee conduct that reflect negatively on the individual Head Kandy employees purportedly involved, on Head Kandy's management, and on Head Kandy as a whole.

Shockingly, several times throughout the Video, Ms. McNeill even makes the astute observation that "I'm sure I'll get in trouble for even talking about it." Although one might think that the specter of appearing before the Court and facing potential monetary sanctions would discourage Ms. McNeill from continued brazen violation of the Preliminary Injunction, she is apparently not discouraged. This Court should order Ms. McNeill to remove the Video from public view, impose a hefty financial penalty on Ms. McNeill for each day the Video remains viewable online, impose monetary sanctions against Ms. McNeill to compensate Head Kandy for the attorney's fees it has incurred in being forced to deal with yet another violative statement by Ms. McNeill, and ensure a swift end to Ms. McNeill's pattern of repeated disregard of and disdain for this Court's authority by striking Ms. McNeill's pleadings and entering judgment for Head Kandy.

## Factual Background

This case arises out of Ms. McNeill's employment with and partial ownership of Head Kandy, and her subsequent termination from that employment and ownership. Ms. McNeill remains subject to various restrictive covenants, discussed in greater depth in Head Kandy's previous filings and this Court's prior orders. Put simply, these contractual provisions, to which Ms. McNeill voluntarily agreed in exchange for substantial compensation, preclude her from competing with Head Kandy in certain businesses, soliciting Head Kandy's employees, customers, and other business affiliates, and disparaging Head Kandy, and its employees, officers, and affiliates, to third parties, publicly or privately.

During her employment with Head Kandy, however, Ms. McNeill began violating these restrictive covenants by devoting her time and efforts to competing businesses and using Head Kandy's employees to further those businesses. After Ms. McNeill was terminated for this and other misconduct, she increased her conduct in violation of the restrictive covenants. After Head Kandy was forced to bring this lawsuit to enjoin her violative conduct and recover damages for it, Ms. McNeill ratcheted up that violative conduct even further. Accordingly, Head Kandy sought, and obtained, the Preliminary Injunction, which was based upon an evidentiary hearing, extensive argument from counsel, and a thorough and well-reasoned Report and Recommendation entered by Judge Strauss [ECF 133]. The Preliminary Injunction found that Head Kandy had a substantial likelihood of success on the merits as to its claims against Ms. McNeill for violation of the restrictive covenants, rejected Ms. McNeill's meritless objections to Judge Strauss's findings of fact and conclusions of law, and enjoined Ms. McNeill from further violations of the restrictive covenants. Specifically, as relevant to this Motion, the Preliminary Injunction "enjoined and restrained" Ms. McNeill from "directly or indirectly":

> (v) making, publishing, or communicating to any person or in any public forum any defamatory, disparaging, or otherwise negative or degrading comments, remarks, or statements concerning Plaintiff, or its affiliates, or their businesses or any of their respective employees, officers, existing and prospective clients, suppliers, investors, and other associated third parties.

[ECF 152 at 14].

After the Preliminary Injunction was issued, Head Kandy's counsel repeatedly asked Ms. McNeill to comply with the Preliminary Injunction by removing from public view her many violative social media posts. Rather than doing so immediately, Ms. McNeill took ***more than two months*** after the Preliminary Injunction was entered—and ***more than four months*** after the Report and Recommendation was entered—to figure out how to accomplish that obligation, and even

then, only did so because this Court explicitly ordered her to do so, on pain of potential contempt sanctions. [ECF 177]. The Court, however, did not sanction Ms. McNeill at that time.

Then, mere weeks after the first enforcement proceedings, in March 2024, Ms. McNeill yet again violated the Preliminary Injunction, this time by disparaging Head Kandy, its owners, and its employees in messages to an affiliate influencer who promoted a related business, Hard Candy, which shares common ownership and control with Head Kandy. In a private conversation with the social media influencer, Ms. McNeill claimed that Head Kandy was "taken from me by the owners of hard candy," and that she was "sexually harassed and retaliated against" and is involved "in a federal lawsuit with the owners of hard candy," who are also the owners and officers of Head Kandy. Ms. McNeill then attempted to induce the influencer to terminate her relationship with and promotion of Hard Candy by insinuating that the influencer—by promoting the Hard Candy brand that is owned by the Head Kandy owners—was involved in something untoward. Accordingly, Head Kandy again initiated enforcement proceedings. [ECF 199]. On April 12, 2024, Judge Strauss conducted an evidentiary hearing, but has not yet ruled on Head Kandy's second motion or imposed sanctions against Ms. McNeill. [ECF 229].

Now, not even two months after the last contempt hearing, **which Ms. McNeill did not attend**, Ms. McNeill has once again taken to social media to disparage Head Kandy. On the morning of June 3, 2024, Ms. McNeill initiated a 22-minute Facebook Live video broadcast on her "Whipin Life With Kayla" Facebook page—the same page which the Court found Ms. McNeill had previously used to post "lawsuit updates" in violation of her Executive Employment Agreement and the Preliminary Injunction. In the Video, Ms. McNeill begins by discussing her new store location, but quickly devolves into disparaging and negative commentary which, though she is careful to avoid mentioning the company by name, undoubtedly pertains to Head Kandy, its

owners and investors, its management, and its employees. Among other disparaging and negative assertions, Ms. McNeill stated the following:

- The Head Kandy warehouse was, and Head Kandy employees were, "lawless," "crazy," and "toxic," and the "drama" there was "unreal every day" because "every single person in that warehouse had so much drama" and were "adults who could not get their lives together";

- Various Head Kandy employees, including managers, engaged in drunken fights, drug use, and extramarital affairs with each other while at work;

- One Head Kandy employee cut himself with a box cutter and wrote the name of a female Head Kandy employee in his blood on the wall after she spurned him;

- Ms. McNeill was "left" to "step in" and deal with that alleged conduct of Head Kandy employees because she was "an owner" and the people "in charge" condoned that alleged conduct and "did nothing" about it;

- Other employees "left" Head Kandy "because it was lawless";

- Netflix documentary *Dancing For The Devil*—which tells the story of young female cult members[3]—was "pretty boring compared to the drama of [her] life and what happened over the past several years" with respect to Head Kandy and its employees; and

- Head Kandy employees who have been deposed in this case were lying and "turned on [her]."[4]

---

[3] https://www.netflix.com/title/81638162.

[4] It is readily apparent that Ms. McNeill is making such comments in an effort to discourage further testimony against her in this litigation and make it known that testimony against her will result in online public disparagement and humiliation. In fact, Nicole Cook, a witness who was recently deposed in this case, contacted counsel for Head Kandy on the day the Video was posted to alert Head Kandy to the Video and the negative comments Ms. McNeill is making about Ms. Cook, her family, and Head Kandy. *See* Declaration of Nicole Cook (attached hereto as **Exhibit C**). Ms. McNeill has continued to attempt to intimidate Ms. Cook and her family, and indeed, one of the employees Ms. McNeill references in the Video is Ms. Cook's sister. *See id.* Tellingly, in a previous attempt to rattle Ms. Cook, counsel for Ms. McNeill, on cross-examination during Ms. Cook's deposition, asked Ms. Cook about her husband's alleged consumption of inappropriate media featuring Ms. McNeill, even though that subject had no relevance at all to the questions asked on direct examination or to the issues currently presented in this case. *See* Deposition of Nicole Cook, Transcript at 170:5-7 ("Q: Did you ever have a dispute with your partner about him viewing or being in possession of inappropriate pictures or videos of Ms. McNeill?") [hereinafter "**Cook Tr.**," attached hereto as **Exhibit D**]. Counsel for Ms. McNeill then went on to insinuate that the witness's husband may have been engaged in a sexual relationship with Ms. McNeill. Cook Tr. at 171:17-19 ("Q: And the relationship between your partner and Ms. McNeill has always been … simply a platonic friendly one, correct?"). When counsel for Head Kandy followed up on that line of questioning, Ms. Cook explained that Ms. McNeill is featured in pornographic videos, which fact is well-known in her community. Cook Tr. at 177:12-178:23, 182:25-184:20. Ms. Cook then clarified that she was not

Ms. McNeill also made repeated insinuations that there is more "wild" "drama" pertaining to Head Kandy that she is not yet revealing, which she will one day divulge in her own tell-all book, series, or documentary where she will "go into detail about all the things that … happened."

This unabashed disparagement of Head Kandy, and particularly of Head Kandy's employees, is, once again, a blatant violation of the Preliminary Injunction. The Court should order Ms. McNeill to show cause why she should not be held in contempt for her latest violation of the Preliminary Injunction, and should, after appropriate evidentiary proceedings, find Ms. McNeill in contempt and impose appropriate sanctions, including up to default judgment against Ms. McNeill for her repeated violations of the Preliminary Injunction and her clear and persistent disregard of and disdain for this Court's orders and authority.

**Argument**

"District courts have inherent and statutory power to enforce their Orders and to punish violators for contempt." *Consumer Elecs. Ass'n v. Compras & Buys Mag., Inc.*, 2009 WL 10667730, at *6 (S.D. Fla. June 10, 2009). A federal district court has discretion in its procedure surrounding potential civil contempt sanctions, but "[w]hen the purportedly contumacious conduct occurs outside the presence of the court, due process requires … that the defendant (1) be informed, through a show-cause order, of [her] purportedly contumacious conduct, and (2) be given a hearing at which [s]he can be represented by counsel, call witnesses, and testify in order to show cause why [s]he should not be held in contempt." *See Mercer v. Mitchell*, 908 F.2d 763, 767-68 (11th

---

even sure that she had ever confronted her husband about his purchase of Ms. McNeill's pornographic videos, meaning that the issue was being brought up for the first time during her deposition by counsel for Ms. McNeill, seemingly at Ms. McNeill's suggestion. Cook Tr. at 179:7-24. Such questioning can only be explained as an effort to intimidate the witness with uncomfortable questions and discourage further harmful testimony or cooperation with Head Kandy by attempting to sow discord in the witness's marriage. These facts illuminate Ms. McNeill's ongoing efforts, of which the Video is the latest episode, to scare those who she believes have "turned on her," particularly those who have been or may be deposed in this case.

Cir. 1990). Accordingly, when an enjoined party violates a preliminary injunction, just as when any party violates a court order, the aggrieved party may move for an order to show cause why the enjoined party should not be held in contempt and sanctioned for the violation. *See id.* at 768. "If the court finds that the conduct as alleged would violate the prior order, it enters an order requiring the defendant to show cause why [s]he should not be held in contempt and conducts a hearing on the matter." *Id.* Then, if the court rejects the defendant's arguments for non-enforcement and "concludes that the order should not be modified and that the defendant did not comply with the order, then the court may hold [her] in contempt and impose sanctions designed to ensure compliance." *Id.*

Here, the Court should enter an order to show cause why Ms. McNeill should not be held in contempt and be sanctioned for her disparagement of Head Kandy and its employees. That conduct, manifested in the Facebook Live video recording attached hereto, plainly falls within the prohibition, imposed by this Court, that Ms. McNeill is "enjoined and restrained" from "making, publishing, or communicating to any person … any ***defamatory, disparaging, or otherwise negative or degrading*** comments, remarks, or statements ***concerning Plaintiff***, or its affiliates, or their businesses or any of their respective ***employees***, ***officers***, existing and prospective clients, suppliers, ***investors***, and other associated third parties." ECF 152 at 14 (emphasis supplied). By her latest public statements, Ms. McNeill has disparaged and degraded Head Kandy, its owners and investors, its management, and its employees. Indeed, Ms. McNeill accuses various Head Kandy employees of being "lawless," "crazy," and "toxic"; engaging in extramarital affairs with each other; and participating in drunken fights and drug use in the workplace. Those accusations undoubtedly cast a negative light on Head Kandy, and particularly on those employees. What is more, Ms. McNeill states that Head Kandy and its management "did nothing" about this behavior,

and even suggests that they condoned or participated in it, which casts the company and those in charge of it in a negative light. By any definition, Ms. McNeill's latest comments are negative and disparaging.

Ms. McNeill should be required to answer for her latest brazen violation of the Preliminary Injunction, and if an evidentiary hearing and additional argument confirm that she has in fact violated the Preliminary Injunction, with which she was not excused from complying, then Ms. McNeill should be held in contempt and sanctioned appropriately, including by being ordered to pay Head Kandy's attorney's fees.

The Court can, and should, also impose a more drastic sanction, such as striking Ms. McNeill's pleadings or entering default judgment for Head Kandy. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (holding that "[t]he power to punish for contempts is inherent in all courts," including the power to impose severe sanctions such as dismissal for the "willful disobedience of a court order"); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1049 (11th Cir. 1994) (willful violations of court orders support sanction of default and dismissal); *Esprit Stones Priv. Ltd. v. Rio Stone Grp. Inc.*, 2022 WL 18492526, at *2 (M.D. Fla. Sept. 15, 2022) ("The sanctions of entry of default judgment and striking pleadings under a court's inherent authority are appropriate only when there is: (1) a clear record of delay or bad faith; and (2) a finding that lesser sanctions are inadequate.") (cleaned up) (quoting *Agans v. Mann Bracken, LLP*, 2010 WL 11647601 (N.D. Ga. Mar. 9, 2010)). Head Kandy suggests that at this point, after multiple violations of the Preliminary Injunction and endless efforts to delay and obstruct these proceedings, a steeper sanction against Ms. McNeill is warranted, such as striking of her pleadings or entry of default judgment in favor of Head Kandy. *See Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347, 351-52 (7th Cir. 2018) (affirming entry of default judgment as a sanction against the

defendant after the defendant violated a preliminary injunction and multiple contempt findings failed to change his resistant behavior); *H&R Block Enters., LLC v. Livsey*, 2022 WL 18584761, at *3-4 (W.D. Mo. Jan. 3, 2022) (striking answer and entering judgment for the plaintiff when the defendant committed "substantial and persistent" violations of preliminary injunction premised on restrictive covenants the defendant agreed to in connection with the sale of his business to the plaintiff, with whom he remained employed for a time after the sale); *Esprit Stones*, 2022 WL 18492526, at *3 (finding entry of default judgment to be an appropriate sanction when the defendant had "already shown its willingness to defy a court order," then continued to make misrepresentations to the court and hamper the progress of the case).[5]  No threat of incremental sanctions or admonitions from the Court have worked thus far, and it is clear that only a drastic remedy will ensure Ms. McNeill's respect for the authority of this Court's orders and finally put an end to her crusade against Head Kandy.  Otherwise, as Ms. McNeill has already made clear by her conduct, the Court and the parties will simply be back here again down the road.

## Conclusion

For the above reasons, Head Kandy respectfully requests that the Court grant this Motion and enter an Order to Show Cause why Ms. McNeill should not be held in contempt and sanctioned for her latest violation of the Preliminary Injunction described herein, ultimately find that Ms. McNeill should be held in contempt and appropriately sanctioned for her contemptuous conduct, and order such other and further relief that the Court deems appropriate.

---

[5] In full candor to the Court, Head Kandy has also located a case from this District wherein the Court (Magistrate Judge Reinhart) found that striking pleadings and entering a default judgment based on the defendant's violation of a preliminary injunction would be punitive, and therefore not a permissible sanction for civil contempt.  *See Highland Consulting Grp., Inc. v. Soule*, 2021 WL 4991257, at *1 (S.D. Fla. June 17, 2021).  However, Head Kandy believes that determining an appropriate sanction is a fact-specific inquiry, and the facts of this case, which involve multiple repeated violations of the same nature without any inkling of responsibility or remorse by Ms. McNeill despite repeated threat of lesser sanctions, support a more drastic remedy.  Indeed, in *Highland Consulting*, there is no indication that the defendant engaged in a pattern of disobeying court orders or other recalcitrant behavior, but rather, only one violation of the preliminary injunction is discussed.  2021 WL 4991257, at *1.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 4, 2024 I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jat@davisandceriani.com, Paralegals@davisandceriani.com, Davis & Ceriani, P.C., 1600 Stout Street, Ste. 1710, Denver, CO 80202 *(pro hac vice admission pending), co-counsel for Defendant;.* and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

/s/ Ethan J. Loeb
**ETHAN J. LOEB**
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
**EDWARD C. THOMPSON**
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
**JALEN A. LARUBBIO**
FL Bar No. 1039258
JalenL@blhtlaw.com
UniqueA@blhtlaw.com
**CARSON A. SADRO**
FL Bar No. 1026159
KerriR@blhtlaw.com
**BARTLETT LOEB HINDS THOMPSON & ANGELOS**
100 N. Tampa Street, Suite 2050
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Plaintiff Head Kandy LLC*