## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC

Plaintiff,

vs.                                                                CASE NO. 23-CV-60345-JB/JMS

KAYLA MCNEILL,

Defendant.

_____/

### OPPOSITION TO PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

Defendant Kayla McNeill ("Ms. McNeill"), by and through her undersigned counsel, hereby submits her opposition memorandum of law ("Response") to Plaintiff Head Kandy, LLC's ("HK") Motion for Rule 11 Sanctions [ECF No. 260] ("Sanctions Motion"), and states as follows:

### I.    INTRODUCTION

HK's Sanctions Motion asks the Court to sanction Ms. McNeill and her counsel for challenging, through her Motion to Partially Vacate Preliminary Injunction and Partial Motion to Dismiss [ECF No. 214] ("Motion to Modify"), the continuing validity of the preliminary injunction entered on November 7, 2023 ("Preliminary Injunction") [Doc. No. 152] as it applies to the non-disparagement provision ("NDP") contained within the Executive Employment Agreement ("Employment Agreement") Ms. McNeill signed as an employee of HK. Ms. McNeill's Motion to Modify is based upon recent authority from the National Labor Relations Board ("NLRB") holding that overly broad non-disparagement provisions such as the NDP are illegal and unenforceable because they interfere with employee's statutory rights under the National Labor Relations Act, 29 U.S.C.A. §§ 151-169, ("NLRA"). The majority of HK's

arguments are also made in its Opposition to the Motion to Vacate and addressed in Ms. McNeill's Reply to Motion to Modify ("Reply") [ECF No. 248], and Ms. McNeill incorporates those arguments herein. The Sanctions Motion must be denied, in its entirety, as specifically and thoroughly discussed below.

Each of the arguments raised by Ms. McNeill is supported by existing authority, secondary sources, and practitioners and is not frivolous, made in bad faith, or otherwise improper. Yet, HK's Sanctions Motion is replete with inflammatory language and *ad hominin* attacks upon Ms. McNeill and the undersigned, outright calling Ms. McNeill and her counsel's arguments farcical, absurd, and lacking in competence. The tenor and tact is concerning, as it does not collegially address arguments, but relies on personal attack as its main strategy. As Judge Becerra stressed during the May 1, 2024 Status Conference, the rhetoric in the filings with the Court has been exceedingly aggressive and admonished the parties to discontinue such practices. Ms. McNeill agrees that the parties should be able to advocate their positions without such hostility. Indeed, statements that the undersigned have not undertaken rudimentary research, such as a "Google search," and describing Ms. McNeill's allegations as created out of whole cloth and outlandish does not assist the Court in arriving at a considered resolution of disputes on their merits. Consequently, Ms. McNeill will not respond in kind to such inflammatory accusations made in the Sanctions Motion. Rather, Ms. McNeill has set forth the abundance of well-reasoned citations that support her arguments and demonstrate that the NDP is not enforceable.

## II.  <u>ARGUMENT</u>

### A.  <u>Standard of Review</u>

Rule 11 "is an extraordinary remedy, one to be exercised with extreme caution." *Uniq*

*Branch Office Mexico, S.A. de C.V. v. Steel Media Grp., LLC*, Civil Action No. 22-23876-Civ, 2024 U.S. Dist. LEXIS 62897, at *2 (S.D. Fla. Apr. 5, 2024) (citing *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)). "Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits." *Id.* at *3.

Rule 11 sanctions are only appropriate "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Id.* at *1-2. A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis, because it is supported by no evidence or only by "patently frivolous" evidence. *Id.* When, however, the evidence supporting a claim is reasonable, but only weak or self-serving, sanctions cannot be imposed. *Id.*

Put another way, "Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment.'" *Almeida v. Bennet Auto Supply, Inc.*, 335 F.R.D. 463, 464–65 (S.D. Fla. 2020) (quoting *Davis v. Carl*, 9106 F.2d 533, 538 (11th Cir. 1990)) (emphasis in original). Sanctions "are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law. . . . [T]he purpose of Rule 11 is to deter frivolous lawsuits and not to deter novel legal arguments or cases of first impression." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998) (internal quotations and citations omitted).

**B.**    **Motion to Modify is Not Untimely**

In its Sanctions Motion, HK's first argues Ms. McNeill's Motion to Modify is sanctionable because the arguments therein were not raised during the Court's first consideration of HK's motion for preliminary injunction and, according to HK, cannot be raised now because they do not constitute a change in circumstances or law.[1] However, that is not the "well-established law" in the 11th Circuit (or in federal courts around the country) that controls when a court may modify a preliminary injunction. As Ms. McNeill cited in her Reply, the law in the 11th Circuit for over fifty years has been that courts can modify or dissolve a preliminary injunction for "any . . . good reason," including a "mistaken view of the law":

> There is no doubt that the district court has continuing jurisdiction over a preliminary injunction. In the exercise of that jurisdiction, the court is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason. We regard the fact that all previous actions were taken under a mistaken view of the law as sufficiently good reason that the district court, upon a proper motion, should reconsider those actions in light of the correct standards.

*Canal Auth. of Fla. v. Callaway,* 489 F.2d 567, 578 (5th Cir. 1974).[2] Thus, pursuant to well-established controlling precedent, modification of an injunction can be sought for ___**any equitable**___ ___**purpose**___, not just a change in circumstance or law. *Id.*; *See*, *also, Warrior Trading, Inc. v. Jaffee*, No. 1:19-CV-20121-JLK, 2019 WL 13236247, at *1 (S.D. Fla. July 25, 2019). Federal courts

---

[1] HK cites three cases in support of its position, the first of which is in the context of a permanent injunction. However, the standards applicable to dissolution of a permanent injunction are far higher and not applicable here. *See, e.g., Basic Rsch., L.L.C. v. Cytodyne Techs., Inc.*, No. 2:99-CV-343K, 2000 WL 33363261, at *11 (D. Utah Dec. 20, 2000) ("The district court has inherent power to modify or vacate a preliminary injunction. When considering whether to modify a preliminary injunction, "a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or law or for any other good reason." This contrasts with the stricter standards that apply when a court is asked to modify a permanent or final injunction.") (internal citations omitted); *In re Dore & Assoc. Contracting, Inc.,* 54 B.R. 353 (Bankr.W.D.Wisc.1985) (noting that the "rigorous test for modification of a permanent injunction is not applicable to preliminary injunctions" and that "if for any reason a court changes its estimation of the merits of the case it may dissolve the preliminary injunction."). In addition, the cases HK relies upon do not involve a mistake of law—in fact, the only Sothern District of Florida case cited by HK involves factual arguments. Thus, the cases are inapposite and do not constitute "well-established" authority.

[2] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981. *See Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

across the country have enunciated the same principle. *Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 733–34 (W.D. Va. 2006) (citing *Callaway*); *Pro Edge L.P. v. Gue*, 411 F. Supp. 2d 1080, 1090–91 (N.D. Iowa 2006) ("In light of the fact that a preliminary injunction can be modified for any good reason . . . the focus of a court's inquiry when determining whether modification of a preliminary injunction is warranted is not, as the plaintiffs suggest, whether a sufficient change in circumstances exists, but rather, whether a modification is equitable, *for any reason,* in order to effectuate justice between the parties.") (emphasis in original); *Movie Systems, Inc. v. MAD Minneapolis Distrib,* 717 F.2d 427, 430 (9th Cir.1983) ("a district court is not bound by a strict standard of changed circumstances but is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or law or for any other good reason."); *In re Dore & Assoc. Contracting, Inc.,* 54 B .R. 353 (Bankr.W.D.Wisc.1985) ("if for any reason a court changes its estimation of the merits of the case it may dissolve the preliminary injunction"); *Basic Rsch., L.L.C. v. Cytodyne Techs., Inc.*, No. 2:99-CV-343K, 2000 WL 33363261, at *11 (D. Utah Dec. 20, 2000) (same). To be sure, Preliminary injunctions are an extraordinary remedy so it is paramount that they be decided on the correct understanding of the controlling law. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994). Excluding from a district court's continuing jurisdiction over its orders the power to reconsider orders entered under a mistaken view of the law would require the district court to allow itself to be overturned on appeal even when it determines that its order was improperly decided.

The basis of Ms. McNeill's Motion to Modify is that, pursuant to the NLRA, the NDP in her Employment Agreement is not legal and is, therefore, void *ab initio*. Illegality of contract is a non-waivable defense—meaning it can be raised at any point during the pendency of litigation.

This is because, as the Supreme Court of the United States made clear over forty years ago, a court cannot enforce a contract provision that violates the NLRA. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83–86 (1982) ("[W]here a[n] [NLRA] defense is raised by a party which [NLRA] was designed to protect, and where the defense is not directed to a collateral matter but to the portion of the contract for which enforcement is sought, **a court must entertain the defense**. While only the Board may provide affirmative remedies for unfair labor practices**, a court may not enforce a contract provision which violates [NLRA]**. Were the rule otherwise, parties could be compelled to comply with contract clauses, the lawfulness of which would be insulated from review by any court.") (emphasis added).

As discussed below and in the Motion to Modify, the NLRB has recently[3] made clear that provisions almost identical to the NDP are likely to chill employees' exercise of their Section 7 rights and are, therefore, violative of the NLRA, void *ab initio* and cannot be enforced by courts. The Court's current Preliminary Injunction enforces and expands the NDP that Ms. McNeill believes is not legal under the NLRA, and has asked the Court to modify its order based on this good reason. Ms. McNeill is entitled to raise her argument now based on well-established binding precedent, and the Motion cannot be considered frivolous based on its timing.

**C.      Authority Cited in Motion to Modify is Directly on Point**

1.      *Section 7 Applies to Employees Outside of Union and Collective Bargaining Situations*

Among the many inflammatory accusations within the Sanctions Motion, HK represents to the Court that the undersigned could have determined through "a simple Google search" that

---

[3] HK argues Ms. McNeill attempted to mislead the Court as to the recency of the *McLaren* decision, but that is untrue and Ms. McNeill will take the opportunity to clarify. The beginning sentence of the Motion to Modify states: "In February 2023, the [NLRB] issued its decision in *McLaren*[.]" Thus, Ms. McNeill was clear from the very outset of her Motion to Modify that *McLaren* came out prior to the Court's issuance of the Preliminary Injunction. Instead, Ms. McNeill was disclosing, for the Court's benefit, the recent and evolving nature of the law supporting the Motion to Modify.

the NLRA applies solely to "collective bargaining, union activity, or anything that qualifies as a labor dispute." Sanctions Motion at 7 (citing *National Labor Relations Act*, https://www.nlrb.gov/guidance/key-reference-materials/national-labor-relations-act). This argument is ironic, given that the very link cited by HK demonstrates that this falls squarely within the definition of "labor dispute." The text of the NLRA contained within the provided link states that the term "labor dispute" includes "**any controversy concerning** terms, tenure or **conditions of employment**, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee." 29 U.S.C.A. § 152(9) (emphasis added). In addition, apparently HK's own attorneys did not properly google the NLRA's scope prior to filing its Sanctions Motion, given that another page on the same exact website expressly states that actions outside of forming a union and collective bargaining protected by the NLRA:

> Federal law protects employees engaged in union activity, but that's only part of the story. Even if you're not represented by a union - even if you have zero interest in having a union - the National Labor Relations Act protects your right to band together with coworkers to improve your lives at work. You have the right to act with coworkers to address work-related issues in many ways. Examples include: talking with one or more co-workers about your wages and benefits or other working conditions, circulating a petition asking for better hours, participating in a concerted refusal to work in unsafe conditions, and joining with coworkers to talk directly to your employer, to a government agency, or to the media about problems in your workplace.

NLRB.gov, https://www.nlrb.gov/about-nlrb/rights-we-protect/whats-law. In addition to the text of the NLRA on the NLRB's website (the only authority cited by HK), it has long been black letter law that the NLRA protects both union and nonunion employees. 29 U.S.C. § 157; *N.L.R.B. v. Phoenix Mut. Life Ins. Co.*, 167 F.2d 983, 988 (7th Cir. 1948); *Koch Supplies, Inc. v. N.L.R.B.*, 646 F.2d 1257, 1259 (8th Cir. 1981); *E.I. Du Pont De Nemours & Co. v. N.L.R.B.*, 707

F.2d 1076, 1079 (9th Cir. 1983); *Indiana Gear Works v. N. L. R. B.*, 371 F.2d 273, 276 (7th Cir. 1967); Memorandum GC 23-05, providing "Guidance in Response to Inquiries about the *McLaren Macomb* Decision" ("Guidance"). *Re: Guidance in Response to Inquiries About the McLaren Macomb Dec.*, MEMORANDUM GC 23-05, 2023 WL 3567920 (Mar. 22, 2023). HK provides no authority to the contrary and its argument is therefore without merit.

HK also cites dicta in a 2018 United States Supreme Court case, *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 521 (2018), claiming *Epic* "makes clear" that the NLRA is nothing more than a "statutory regime governing labor disputes and concerted action of employees to 'safeguard[] . . . workers' rights to join unions and to engage in collective bargaining.'" Sanctions Motion at 7. *Epic* does not stand for any such proposition,[4] and the Sanctions Motion fundamentally misrepresents not only the NLRA and its scope, but also how courts are tasked with applying the NLRA.

2. *The Holdings in McLaren, Big Green and other Cases are Applicable to the Instant Action*

With regard to Ms. McNeill's citation and reliance upon *McLaren*[5] and *Big Green*[6] HK returns to its needlessly hostile language by calling such reliance "farcical," because, as asserted by HK, there is no reasonable possibility the reasoning in those cases could apply to the NDP.[7]

---

[4] *Epic* holds that employers may force employees to individually arbitrate disputes. SCOTUS did not consider or rule on whether the NLRA applies to non-union employees. The issue present and decided by the Court was whether the NLRA preempted the Federal Arbitration Act. In the Court's opinion, Justice Gorsuch acknowledges that the NLRA protects employees' "other concerted activity" for "mutual aid and protection," not just that of collective bargaining or unionizing. Justice Gorsuch went on to state that such actions include things employees "just do" for themselves, but does nothing to preclude a clause requiring individual arbitration of legal disputes. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 512-13 (2018)

[5] *McLaren Macomb*, 372 N.L.R.B. 58 (2023)

[6] *Big Green Respt. and Kelsey Gray, an Individual Charging Party and Denver Newsp. Guild-Commun. Workers of Am., Loc. 37074, Afl-Cio Charging Party*, 27-CA-276068, 2023 WL 8873718 (Dec. 20, 2023)

[7] HK also argues NLRB cases are not binding on this Court. Nonetheless, it would be improper for the Court to ignore NLRB decisions. As set forth in the Motion to Modify, courts must determine whether a contract violates the NLRA when the NLRA is implicated. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 84, 102 S. Ct. 851, 860, 70 L. Ed. 2d 833 (1982) (citing NLRB decisions in support of its holding). NLRB decisions "merit greatest deference" by courts and will be given "controlling weight unless 'arbitrary, capricious, or manifestly contrary to the statute.'"

HK cites **no authority** for this position, and instead asserts only that because *McLaren* and *Big Green* are cases about non-disparagement provisions in severance agreements, the law cannot be applicable. Not only does the NLRB and the Memoranda formally issued by its Office of General Counsel expressly take the opposite position,[8] but so do practitioners across the country.[9] In fact, Ms. McNeill was unable to locate a single blog, article, or position by a lawyer, law review or other persuasive authority that takes HK's position that *McLaren* is limited solely to severance agreements in the context of collective bargaining. *McLaren* is just over a year old, so it is unsurprising there are no federal courts that have opportunity to opine on its application. This Court may disagree with Ms. McNeill, the NLRB and practitioners around the country, but Ms. McNeill's arguments are far from "farcical" and are certainly not sanctionable. The law is

---

*ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 324, 114 S. Ct. 835, 839, 127 L. Ed. 2d 152 (1994) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)).

[8] *Challenge Mfg. Holdings, Inc., Respondent & Kahdeijra Lashay Gee, an Individual Charging Party*, No. 07-CA-286573, 2023 WL 2866336 (Apr. 10, 2023) (stating *McLaren's* holding applies equally to all non-disparagement provisions, not just those in severance agreements); *Re: Guidance in Response to Inquiries About the McLaren Macomb Dec*., MEMORANDUM GC 23-05, 2023 WL 3567920 (Mar. 22, 2023).

[9] *See, e.g.,* https://browngold.com/blog/non-disparagement-in-employment-post-mclaren-macomb/; https://www.laboremploymentlawblog.com/2023/03/articles/national-labor-relations-act/nlrb-general-counsel-releases-memo-concerning-confidentiality-and-non-disparagement-clauses-in-severance-agreements-post-mclaren/ https://www.apslaw.com/on-the-job/2023/03/29/the-end-of-an-era-separation-agreements-in-the-wake-of-mclaren-macomb-what-employers-need-to-know/; https://www.bsk.com/news-events-videos/nlrb-general-counsel-releases-guidance-on-board-rsquo-s-mclaren-macomb-decision; https://www.mslaw.com/mslaw-blog/nlrbs-general-counsel-offers-more-guidance-on-confidentiality-and-non-disparagement-decision; https://katzbanks.com/employment-law-blog/nlrb-curtails-scope-nondisparagement-confidentiality-provisions-severance/; https://ogletree.com/insights-resources/blog-posts/nlrb-holds-confidentiality-nondisparagement-provisions-illegal-in-severance-agreements-presented-to-section-7-employees/; https://www.saul.com/insights/blog/nlrbs-general-counsel-has-released-guidance-confidentiality-and-non-disparagement; https://www.dbllaw.com/blog/2023/04/07/nlrb-offers-guidance-on-mclaren/; https://www.wilmerhale.com/insights/client-alerts/20230328-nlrb-issues-post-mclaren-guidance; https://natlawreview.com/article/update-nlrb-general-counsel-issues-guidance-confidentiality-and-non-disparagement; https://www.pullcom.com/working-together/nlrb-issues-decision-impacting-non-disparagement-confidentiality-provisions-severance-agreements; https://www.hodgsonruss.com/newsroom-publications-14132.html; https://www.nutter.com/trending-newsroom-publications-shifting-nlrb-positions; https://www.cullenllp.com/blog/national-labor-relations-board-administrative-law-judge-decision-gives-insight-on-impact-of-mclaren-macomb-decision-and-related-guidance/; https://ogletree.com/insights-resources/blog-posts/nlrb-general-counsel-says-confidentiality-nondisparagement-clause-decision-applies-retroactively/?_gl=1*aho7c0*_up*MQ..*_ga*MTcwNDIyMzIxNC4xNzEzODA5MDY5*_ga_V4WT9JNBFT*MTcxMzgwOTA2OS4xLjEuMTcxMzgxMDg2OS4wLjAuMA; https://www.mofo.com/resources/insights/230410-nlrb-gc-broad-view-mclaren-macomb-decision; https://www.hahnlaw.com/insights/nlrb-provides-guidance-on-non-disparagement-and-confidentiality-provisions-in-severance-agreements-in-light-of-mclaren-macomb-decision/; https://www.vorys.com/publication-nlrb-limits-confidentiality-and-non-disparagement-clauses-in-severance-agreements.

clear sanctions are warranted only when **no reasonably competent attorney** could conclude Ms. McNeill's position is a reasonable interpretation of *McLaren* or a reasonable argument to change existing law in the 11th Circuit. *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F. Supp. 2d 1299, 1308 (S.D. Fla. 2011). The sheer number of well-respected practitioners across the country that agree with Ms. McNeill's interpretation forecloses this possibility.

HK also misconstrues the holding in *McLaren* and *Big Green*, stating the legal holdings therein have no applicability to the instant case because, according to HK, this case "does not involve, and has never involved, any allegations, much less any claim, related to collective bargaining, union activity, or anything that qualifies as a labor dispute." Sanctions Motion at 8. HK's position is, again, without support and belied by the considerable authority, including Supreme Court precedent, cited herein and in the Motion to Modify. It is **irrelevant** whether or not concerted activity has occurred in this case (as discussed below, it did). Instead, the Court's consideration must be whether the NDP ***could have a tendency*** to chill Section 7 rights—not whether Ms. McNeill actually exercised those rights. Motion to Modify at 14; *Stericycle, Inc. & Teamsters Loc. 628*, 372 NLRB No. 113 (Aug. 2, 2023); *Cintas Corp. v. N.L.R.B.*, 482 F.3d 463, 467–68 (D.C. Cir. 2007) (The "mere maintenance of a rule likely to chill section 7 activity, whether explicitly or through reasonable interpretation, can amount to an unfair labor practice even absent evidence of enforcement."). HK's argument that filing the Motion to Modify is sanctionable conduct is without merit. Not only is it reasonable for Ms. McNeill to ask the Court to review the breadth of the Preliminary Injunction and determine whether the NDP violates the NLRA, the Court is ***required*** to do so. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83–86 (1982).

    3.   *Disclaimer within the NDP Does Not Render Otherwise Illegal NDP Enforceable*

HK also contends that arguments advanced by Ms. McNeill concerning the

unenforceability of the NDP are frivolous, have no reasonable chance of success and are sanctionable because the NDP contains a "savings clause." Sanctions Motions at 9. However, that position is also belied by considerable authority holding disclaimers almost identical to the one HK relies on are **not sufficient**.[10] For example, the NLRB has long held that general disclaimers like the one contained within the NDP do not "save" an otherwise overly broad, unenforceable provision:

> A "savings clause" refers to a provision in a policy stating that it should not be construed or applied in a manner that interferes with employees' rights under the NLRA . . . savings clauses are not sufficient to cure overbroad social media policies. Thus, employers must have properly tailored policies, and cannot rely on these savings clauses alone to otherwise cure overbroad provisions.

National Labor Relations Board, Report of the Acting General Counsel Concerning Social Media Cases (May 30, 2012) (internal citations omitted). A savings clause cannot be general and generic, like the savings clause in the NDP, but must alert employees to the panoply of protected rights under the NLRA. *First Transit, Inc.*, 360 NLRB 619, 621–22 (2014). Even then, the savings clause may not be sufficient. For example, in *Entergy Nuclear Operations, Inc. & United Gov't Sec. Officers of Am., Loc. 25*, 367 NLRB No. 135 (May 21, 2019) the NLRB found an even more specific "savings clause"[11] that did list some of the rights within the panoply insufficient to render the provision NLRA-compliant. The NLRB found that the non-disparagement clause prohibiting "untrue or disparaging communications" was impermissibly

---

[10] The provision of the NDP HK relies on states: "This Section 5(d) does not, in any way, restrict or impede the Executive from exercising protected rights to the extent that such rights cannot be waived by agreement, including, without limitation, the Executive's rights under the National Labor Relations Act, or rights to communicate with any other administrative or regulatory agency to report suspected unlawful conduct, or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency . . ."

[11] The "savings clause" in *Entergy* provided: "Nothing in this Code is intended to restrict an employee's rights under any federal, state or local labor or employment law, or regulation . . . These employee rights include, but are not limited to the right to engage in protected concerted activity for mutual aid and protection, and the right to engage in protected concerted activity relating to wages, hours and other terms of employment such as the right to discuss his or her wages, benefits and working conditions with others." *Entergy Nuclear Operations, Inc. & United Gov't Sec. Officers of Am., Loc. 25*, 367 NLRB No. 135 (May 21, 2019).

overbroad, as it did not specify the prohibition was only prohibiting maliciously false or intentionally untrue statements. *Id.* Because the "savings clause" did not specifically "contain any language expressly addressing untrue or disparaging statements" or otherwise connect the general "savings clause" to the language prohibiting all disparaging language in any way, it was not sufficient to "save" the unenforceable non-disparagement provision. *Id.* The NLRB noted that both the non-disparagement provision and the "savings clause" would be construed against the employer drafter. *Id.*[12]

NLRB cases,[13] advice memoranda, secondary sources[14] and practitioners across the country have reiterated these principles.[15] Thus, while the argument may be a matter of first

---

[12] This is in line with the NLRB's recent holding that, in determining whether a contract provision has a "reasonable tendency to interfere with, restrain, or coerce employees who may engage in activities protected by Section 7," the provision must be interpreted "from the perspective of the reasonable employee who is economically dependent on her employer and thus inclined to interpret an ambiguous rule to prohibit protected activity she would otherwise engage in. The reasonable employee interprets rules as a layperson, not as a lawyer." *Stericycle, Inc. & Teamsters Loc. 628*, 372 NLRB No. 113 (Aug. 2, 2023).[12] If such reasonable employee "could reasonably interpret a rule to restrict or prohibit Section 7 activity," the employer's rule is illegal and unenforceable. *Id.*

[13] *See, e.g.*, *Muse Sch. Ca*, 200 L.R.R.M. (BNA) ¶ 1807 (N.L.R.B. Div. of Judges Sept. 8, 2014) (finding, in part, that a savings clause that stated "will not be interpreted to interfere with [the employee's] ability to engage in activities protected under the National Labor Relations Act ("NLRA")" was "vague as to the conduct being repudiated" and violated the NLRA); *Tpi Iowa, LLC, Respondent & Douglas Vollers II, an Individual*, No. JD-93-16, 2016 WL 5340240 (Sept. 22, 2016) (finding that a savings clause that stated the employer's social media guidelines "are not intended to prohibit associates from exercising their right to engage in protected concerted activity under the National Labor Relations Act" … "[did] not advise employees when a rule [was] overly broad and what rights employees [had] pursuant to Section 7," noting that "such a provision is designed to protect the respondent but not employees" and the clause "[did] not save [the employer] from liability from the overly broad rules contained in the social media guidelines.") (internal quotations omitted); *Giant Eagle, Inc.*, 39 NLRB AMR 31(June 22, 2011) (finding a savings clause that merely referenced the NLRA was not sufficient to overcome the illegal social media policy and finding that an employer "may not prohibit employee activity protected by the Act and then seek to escape the consequences of the prohibition by a general reference to rights protected by law. This is because employees may very well not know what conduct is protected and, rather than take the trouble to get reliable information on the subject, would elect to refrain from engaging in conduct that is in fact protected by the Act.") (internal quotations and citations omitted).

[14] *Challenge Mfg. Holdings, Inc., Respondent & Kahdeijra Lashay Gee, an Individual Charging Party*, No. 07-CA-286573, 2023 WL 2866336 (Apr. 10, 2023); *Echostar Techs., L.L.C.*, No. 27-CA-066726, 2012 WL 4321039 (Sept. 20, 2012); *Cox Communications, Inc.*, 40 NLRB AMR 25 (October 19, 2012); Essential Facts: Employment § 9:12. Employee rights in the absence of a union (2024 Ed.) (West).; Guide to HR Policies and Procedures Manuals § 7:57, The NLRB's restrictions on social media policies (2024 Ed.) (West).

[15] *See, e.g.*, https://www.mintz.com/insights-center/viewpoints/2226/2023-03-27-nlrb-general-counsel-releases-guidance-wake-mclaren; https://www.gtlaw.com/en/insights/2023/3/nlrb-rules-broad-yet-common-severance-agreements-are-unlawful#:~:text=A%20prominent%20%E2%80%9Csavings%20clause%E2%80%9D%20or,necessarily%20cure%20overly%20broad%20provisions; .

impression for this Court, the argument is far from frivolous and is supported by existing authority. In addition, the Preliminary Injunction does not include any language similar to the purported savings clause.  Instead, the Preliminary Injunction prohibits Ms. McNeill from, in relevant part:

> [M]aking, publishing, or communicating to any person or in any public forum any defamatory, disparaging, or otherwise negative or degrading comments, remarks, or statements concerning Plaintiff, or its affiliates, or their businesses or any of their respective employees, officers, existing and prospective clients, suppliers, investors, and other associated third parties.

Preliminary Injunction at 14. Thus, the Motion to Modify cannot be frivolous or sanctionable, even if the Court was to determine that the NDP is enforceable in view of the "savings clause," because the Preliminary Injunction does not include any limiting language.

**D.**     **Ms. McNeill was Not a "Managerial Employee" or "Supervisor" during Times Relevant**

As further support for its Sanctions Motion, HK argues that the NLRA cannot apply to Ms. McNeill because she was a supervisor/managerial employee of HK. Ms. McNeill's employment status during the relevant times is a disputed fact in this matter and the parties are currently conducting discovery on the issue.  Nonetheless, HK demands the Court adopt its self-serving conclusion and, consequently, sanction Ms. McNeill and her counsel. HK's argument is contradicted both by evidence in this case that HK was aware of when it filed its Sanctions Motion and applicable authority.

First, the determination of whether Ms. McNeill was a "manager" or "supervisor" of HK at some point during her employment pursuant to the NLRA's legal definition is a highly fact intensive inquiry that would not be proper to resolve until discovery on the topic has concluded. It certainly is not appropriate to resolve the dispute without any evidence for the purpose of supporting an award of sanctions. However, to the extent Ms. McNeill held a managerial or

supervisory role at any point during her employment, HK expressly stripped her of any and all managerial or supervisory authority as of December 1, 2022 (two months prior to Ms. McNeill's termination), when HK sent Ms. McNeill a letter through its counsel stating: "You will no longer have an active role in the operations of the business or management of Head Kandy. You will no longer be permitted to instruct company employees to work on your behalf, except for Ryan, unless specifically directed by company management." Exhibit A to Motion to Modify at 1-2 [ECF No. 214-1].

Therefore, it is indisputable that, at very latest, Ms. McNeill was not in a managerial or supervisory position as of two months prior to the end of her employment. The law is clear that under these circumstances, such a demotion (to the extent Ms. McNeill ever was a manager or supervisor as defined by the NLRA, which she disputes) also entitled Ms. McNeill to full NLRA protection. *N.L.R.B. v. Leland-Gifford Co.*, 200 F.2d 620, 625 (1st Cir. 1952) ("We agree, however, that not only an actual demotion in rank, but also a reversion to routine production work for such an extended and wholly indefinite period of time that the erstwhile supervisor could reasonably be said to have become a rank and file production worker for all practical purposes, would work a loss of supervisory status even though both title and theoretical power remained and might perhaps with an expansion in force be resumed at some vague time far in the future"); *Babcock & Wilcox Co. v. N.L.R.B.*, 683 F.2d 858, 860–61 (4th Cir. 1982) ("[W]e do not suggest that once one is a supervisor he may never become an employee. The demotion or promotion of a worker may change his status for some purposes of the [NLRA]. We recognize that in some situations, a decision must be made as to whether a worker who frequently shifts from supervisory jobs to typical employee functions is ultimately a 'supervisor' or an 'employee.'"). This fact is critical as to HK's efforts to enforce the NDP as to Ms. McNeill's

**post-employment actions**. As of December 1, 2022, at the very latest, Ms. McNeill was not a supervisor or manager and. even if the NDP was enforceable against her at some point prior to that, it was unenforceable as of that date.

However, even if the supervisor/managerial exception did apply, Ms. McNeill's Motion to Modify would still not be frivolous or sanctionable because the NLRA also provides protections for such individuals. The NLRA protects supervisors or managers who are retaliated against, such as being fired, because they are refusing to act on their employer's behalf in committing an unfair labor practice against employees. *Parker-Robb Chevrolet*, 262 N.L.R.B. 402 (1982), *enf'd. sub. nom. Automobile Salesmen Union v. N.L.R.B.*, 711 F.2d 383 (D.C. Cir. 1983). Here, Ms. McNeill was fired for refusing to allow Mr. Rosenbaum to harass and abuse her and other employees. Motion to Modify, SOF ¶¶ 10-13. Specifically, Ms. McNeill conversed with another female employee about her discomfort with Mr. Rosenbaum and being forced to do yoga with him. *Id*. ¶ 11. Ms. McNeill told Mr. Rosenbaum they would no longer be doing yoga with him and then submitted a harassment complaint to Mr. Falic regarding Mr. Rosembaum's conduct on behalf of herself and other female employees–including, specifically, that he had made her and another female employee do yoga while he positioned himself behind them and required them to expose their feet. *Id*. ¶¶ 10-13. Eight days later, in retaliation for her complaint, Ms. McNeill was accused of materially breaching the Employment Agreement and threatened that HK "would be within its right to remove [her] as a company officer . . . and to cancel [her] ownership Units and void any remaining financial obligations owed to [her]." *Id*. ¶ 13. This is the exact kind of action taken by a supervisor (refusal to assist her employer in violations of law) that justifies applying the NLRA to a supervisor. *Parker-Robb Chevrolet*, *supra*.

Instead of forcing her fellow female employee to continue doing yoga with Mr. Rosenbaum, Ms. McNeill refused to allow her to submit to harassing behavior by reporting the unlawful conduct to Mr. Falic on behalf of both women. Motion to Modify, SOF ¶¶ 10-12. Ms. McNeill also went against Mr. Rosenbaum's direction, telling her co-worker to no longer attend yoga and to make up excuses if she needed to, refusing to engage in HK's practice of forcing employees to submit to harassment and allowing a place to complain about working conditions even when it was HK's policy not to allow such complaints. *Id.* Ms. McNeill was served with a notice of breach of her employment agreement eight days after the complaint and precipitously fired thereafter. *Id*. ¶ 13. This termination was a part of HK's campaign to squelch protected activity (including this lawsuit, which attempts to prohibit Ms. McNeill from speaking out about HK's harassing treatment of employees). In addition, Ms. McNeill was disciplined and threatened a mere eight days after making the complaint for other employees and herself, and refusing to abide by HK's rule that she not speak badly about HK or make complaints. *Id.* Thus, even if Ms. McNeill falls within the supervisor or executive exceptions, the NLRA still applies to her.

**E.     <u>Ms. McNeill's Actions are Protected by Section 7</u>**

HK further argues that Ms. McNeill's Motion to Modify is sanctionable because none of her actions are covered under Section 7. Sanctions Motion at 11-12. Thus, HK asks the Court to first overstep its jurisdiction in determining what activity is or is not concerted activity under Section 7, which is exclusively within the purview of the NLRB, and then to sanction Ms. McNeill and her counsel based upon the determination that none of Ms. McNeill's actions are concerted. Similar to other arguments advanced in the Sanctions Motion, this argument is devoid of support. First, the Court cannot determine whether Ms. McNeill has engaged in protected

concerted activity. *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83–86 (1982). The only thing the Court can—and must—do is to determine whether the NDP, ***as drafted***, is a violation of the NLRA. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83–86 (1982). Thus, not only is the question of whether Ms. McNeill has engaged in concerted activity irrelevant to the Motion to Modify, it is also something the Court cannot decide (including whether the statements made by Ms. McNeill after employment constitute concerted activity). *Id.*

In addition, HK's conclusion, that Ms. McNeill has not engaged in concerted activity, is incorrect. The law has established that complaining about harassment and discrimination outside of union or collective bargaining actions is concerted activity.  Thus, the allegations in this case squarely fit within the scope of the NLRA.  *Fresh & Easy Neighborhood Mkt.*, Inc., 361 NLRB 151 (2014); *N.L.R.B. v. Downslope Indus., Inc.,* 676 F.2d 1114, 1118 (6th Cir. 1982); 128 Harv. L. Rev. 785, 790 (Aug. 11, 2014) (reiterating complaints about sexual harassment fall within NLRA's protection); *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565 (1978); *Phoenix Transit Sys. v. N.L.R.B.*, 63 F. App'x 524, 525 (D.C. Cir. 2003); *N.L.R.B. v. Downslope Indus., Inc.*, 676 F.2d 1114, 1119 (6th Cir. 1982); *Colart Americas Inc. v. Nat'l Lab. Rels. Bd.*, No. 22-3462, 2024 WL 701783, at *2 (3d Cir. Feb. 21, 2024).

Further, federal courts have found that publishing information regarding sexual harassment in the workplace is protected NLRA activity. *See Phoenix Transit Sys. v. N.L.R.B.*, 63 F. App'x 524, 525 (D.C. Cir. 2003). While it is true that a supervisor's own participation in concerted activity is not always protected, "a well-recognized exception has developed to allow reinstatement when the supervisor's discharge is part of an integral pattern of employer conduct aimed at squelching protected employee activity. *N.L.R.B. v. Downslope Indus., Inc.*, 676 F.2d

1114, 1119 (6th Cir. 1982). In addition, a supervisor's conduct is protected by Section 7 when the supervisor is disciplined for refusing to commit an unfair labor practice. *Id.*

Finally, HK argues that Ms. McNeill's assertions of harassment, abuse and retaliation are "unsupported," "unfounded," "create[d] out of whole cloth," "outlandish" and will never become claims in this litigation. HK then reasons that such denials and assertions are grounds for Ms. McNeill and her counsel to be *sanctioned*. This is nonsensical; particularly, given that Ms. McNeill's harassment claims are not even at issue in this case, let alone adjudicated on their merits. Pursuant to the Court's May 8, 2024 Scheduling Order [ECF No. 259], the deadline for Ms. McNeill to file her Answer, Counterclaims and Third-Party Complaint, June 10, 2024, has not yet passed as of the filing of this Response. Additionally, Ms. McNeill has already disclosed to HK that she will assert counterclaims for harassment and retaliation under North Carolina law, which does not require exhaustion. It is equally nonsensical to suggest Ms. McNeill manufactured harassment claims to delay this litigation when she reported the harassment and abuse to HK in November 2022, before HK began its retaliatory attack upon her and ultimately filed this lawsuit. Given that the merits of Ms. McNeill's yet to be filed counterclaims are not presently ripe for determination, if the Court considers HK's argument in deciding the Sanctions Motion, Ms. McNeill requests that the Court reserve determination of the Sanctions Motion until the dispute has been resolved by the trier of fact. To the extent the Court does not delay its determination and considers HK's denials in entering its order on the Sanctions Motion, Ms. McNeill has attached hereto, as **Exhibit A**, affidavits from many individuals that have first-hand knowledge of the harassment Ms. McNeill (and other employees) endured at the hands of Mr. Rosenbaum, in addition to detailed accounts of her report of that harassment in November 2022. HK allowed the harassment and abuse to occur, retaliated against Ms. McNeill for reporting it

and now calls her a liar; all the while seeking unfounded sanctions. If any party has improperly delayed or needlessly complicated this litigation, it is HK.

**F.    <u>Motion to Modify was Not Filed for an Improper Purpose</u>**

As set forth herein, the Motion to Modify was not filed for an improper purpose, but was filed based on developing authority which holds that the NDP is not legal and is unenforceable. Just because some of the legal issues raised in the Motion to Modify are a matter of first impression for the Court, does not mean they are invalid arguments brought for an improper purpose. Pursuant to both Colorado's and Florida's Rules of Professional Conduct governing attorneys, an attorney has a duty to zealously represent their client's interests. Colorado Rules of Professional Conduct Preamble at 9 ("These principles include the lawyer's obligation zealously to protect and pursue a client's legitimate interests[.]"); Rules Regulating the Florida Bar at Chapter 4: Preamble ("As an advocate, a lawyer zealously asserts the client's position under the rules of the adversary system."). To sanction arguments supported by authority, including reputable secondary sources such as the Harvard Law Review, and the legal community as a whole, would not only violate the purpose behind the Court's inherent power to sanction (which should never be done when a party advances arguments in order to create new precedent), but would also encourage attorneys to violate their duty of zealous advocacy for fear of sanctions.

### III.    <u>CONCLUSION</u>

For the reasons set forth herein and the arguments advanced in the Motion to Modify, Ms. McNeill respectfully requests an order from the Honorable Court denying HK's Sanctions Motion, in its entirety, and for such further and additional relief the Court deems just and proper.

**DATED** this 6th day of June, 2024.

Respectfully Submitted,

By: _/s/ Laura E. Burgess_
Laura E. Burgess, Esq.
Florida Bar No. 0105073
L.E. Burgess P.A.
5966 S Dixie Highway, Suite 300
Miami, FL 33143
Tel.: 305.942.8044
Alt. Tel.: 713.818.5055
laura@leburgesslaw.com

AND

By: _/s/ Antonio L. Converse_
Antonio L. Converse, Esq.
Admitted *Pro Hac Vice*
Converse Law Group, P.C.
600 17th Street, Suite 2800 South
Denver, CO 80202
Tel: 303.228.9471
anthony@converselawgroup.com

AND

By: _/s/ Jennifer A. Tiedeken_
Jennifer A. Tiedeken, Esq.
Admitted *Pro Hac Vice*
Davis & Ceriani, P.C.
1600 Stout Street, Suite 1710
Denver, CO 80202
Tel:  303.534.9000
jtiedeken@davisandceriani.com

COUNSEL FOR KAYLA MCNEILL

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2024, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF and through that filing served all counsel of record.


*/s/ Laura E. Burgess*