UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY LLC,

    Plaintiff,

vs.                                                Case No. 0:23-cv-60345-JB

KAYLA MARIE MCNEILL,

    Defendant.
_____/

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS**

Plaintiff Head Kandy LLC ("**Head Kandy**") replies in support of its Motion for Rule 11 Sanctions (the "**Sanctions Motion**") [ECF 260] and in response to Defendant Kayla Marie McNeill's ("**Ms. McNeill**") Opposition to Plaintiff's Motion for Sanctions (the "**Response**") [ECF 267], and in support states:

Despite the futility and untimeliness of her legal and factual arguments, Ms. McNeill in her Response doubles down on her claim that the National Labor Relations Act ("**NLRA**") somehow applies to—and invalidates—the non-disparagement provision of her Executive Employment Agreement, which the Court specifically found to be valid and enforceable and has enforced during this case through its Order Adopting Report and Recommendation, Granting Plaintiff's Expedited Motion for Preliminary Injunction, and Setting Bond (the "**Preliminary Injunction**") [ECF 152]. Ms. McNeill's NLRA arguments are wholly without merit and sanctionable. Ms. McNeill's insistence on continuing to pursue those arguments, and even to use her Response as an opportunity to cite new "evidence" and additional (and inapposite) authorities that were not raised in her Motion to Partially Vacate the Preliminary Injunction and Partial Motion to Dismiss (the "Motion to Vacate") [ECF 214], further supports an award of sanctions. Indeed,

{00083071:1}                                                        1

Magistrate Judge Strauss recently rejected Ms. McNeill's arguments and recommended the Court deny in its entirety Ms. McNeill's Motion to Vacate. [ECF 271].

*First*, although Ms. McNeill inexplicably continues (despite her own admissions and mounting evidence to the contrary) to pretend that she was not a "supervisor"[1] or "managerial employee"[2] entirely outside of the protections of the NLRA (if it applied at all, which it does not), that contention is patently frivolous based on the facts of this case. In reality, the record as it currently exists, as cited in Head Kandy's Opposition to Ms. McNeill's Motion to Vacate [ECF 231], already establishes as much.[3] Ms. McNeill's decision to continue to argue that she was not a managerial employee even despite those known facts, as Ms. McNeill did in her Motion to Vacate and in her Response, merits sanctions. Indeed, Magistrate Judge Strauss in his Report and Recommendation recently found that Ms. McNeill was a managerial employee because she "***unequivocally*** represented management interests and recommended actions that controlled [Head Kandy's] policy" as the "Creative Director" who was "in charge of the marketing team" and was

---

[1] The NLRA affords rights to "employees," not "supervisor[s]," 29 U.S.C. § 157, and defines "supervisor" as "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment," *id.* § 152(11).

[2] There is a judicially recognized exclusion of "managerial employees" because they are so clearly outside of the reach of the NLRA that Congress did not think a specific exclusionary provision necessary. *See NLRB v. Yeshiva Univ.*, 444 U.S. 672, 682 (1980). A "managerial employee" is one "aligned with management" who "represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy," *id.*, considering, inter alia, the employee's "actual job responsibilities, authority, and relationship to management," *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 290 n.19 (1974).

[3] Upon review of the evidence Head Kandy supplied the Court in support of its Opposition to McNeill's Motion to Vacate, if the Court is left with any doubt that Ms. McNeill was a "supervisor" and "managerial employee," Head Kandy will, at the Court's direction, submit additional evidence on this point which has come to light in discovery since Head Kandy filed its Sanctions Motion, including communications in which Head Kandy employees sought supervisory direction from Ms. McNeill or in which Ms. McNeill participated in various aspects of the company's decision-making along with other members of Head Kandy's management, deposition testimony of former Head Kandy employee Christopher Hines that Ms. McNeill was his "boss" and "the boss" and that she delegated business and personal tasks to him and other employees "because I'm the boss and you're going to do what I tell you," and deposition testimony of former Head Kandy employee Nicole Cook that Ms. McNeill "was the boss of the business … and she could do whatever she wanted to do."

"able to engage in content creation [and] product development without oversight of the marketing team." [ECF 271 at 12-13 (emphasis supplied)]. As such, Magistrate Judge Strauss concluded that Ms. McNeill "was responsible for the oversight and management of strategic initiatives and general operation activities of Plaintiff" and "had the authority to at least recommend hiring and firing other employees." [ECF 271 at 13-14].

Moreover, as Magistrate Judge Strauss observed in his Report and Recommendation, it is undisputed that Ms. McNeill, aside from being a "supervisor" and "managerial employee," was **a part owner of the company** at all relevant times, [ECF 271 at 13-14], and no further discovery would (or could) undo that reality.[4] If Congress thought it unnecessary to statutorily exclude management from NLRA protection, *Yeshiva Univ.*, 444 U.S. at 682, then surely the NLRA cannot possibly protect a company's owners. As Magistrate Judge Strauss observed, "[i]t seems axiomatic that an individual who owned 20% of a company and shared in allocations of profits and losses is closely aligned with management," and is therefore a managerial employee. [ECF 271 at 14 (quotation omitted) (also collecting NLRB decisions excluding stockholder employees from collective bargaining units)]. Ms. McNeill's argument to the contrary is legally unsupportable and patently frivolous in light of the facts of this case.

*Second*, Ms. McNeill's ongoing attempts to engraft on to this case the *McLaren Macomb*[5] decision—and especially her repeated misrepresentation that it is controlling—are unreasonable

---

[4] Even if Ms. McNeill's argument that Head Kandy stripped her of supervisory and managerial authority prior to the end of her employment had any merit—it does not, and Ms. McNeill's characterization of the events leading up to her termination is inaccurate, *see* ECF 231 at 19, making the "demotion" case law she cites in her Response inapposite—there is no dispute that Ms. McNeill remained an owner of the company at least until Head Kandy exercised its option to repurchase her ownership shares on February 17, 2023, **more than two weeks after her termination**. ECF 187 at ¶ 83; ECF 195-1 at 20 (¶ 37). And in any event, Ms. McNeill was certainly an owner, managerial employee, and supervisor at the time when she assented to the non-disparagement provision.

[5] 372 N.L.R.B. No. 58 (Feb. 21, 2023).

and incorrect.[6] On its face, this case has nothing at all to do with the holding of *McLaren Macomb* and has no similarity to the facts underlying that decision. In attempting to avoid sanctions for continuing to push this meritless argument, Ms. McNeill now asks the Court not to read what *McLaren Macomb* actually says—that the act of proffering a severance agreement containing an overbroad non-disparagement provision is itself unlawful, slip op. at 8—but rather to follow nonbinding guidance documents and take her chosen practitioners' word for it that the decision should apply outside of the context in which it actually says it does. To reiterate, in *McLaren Macomb*, the NLRB itself explicitly stated its holding was: "that an employer violates [the NLRA] when it proffers a severance agreement with provisions that would restrict employees' exercise of their NLRA rights." Slip op. at 8. The decision says nothing about post-employment restrictive covenants entered, as here, in connection with the sale of the assets of an entire business, and certainly not one where the seller becomes a partial owner and executive employee of the acquiring entity. Those circumstances, present here, plainly do not implicate the same concerns as the NLRB expressed in *McLaren Macomb* where an employee at termination is being required to choose between forgoing any severance benefits or accepting them and agreeing to potentially onerous restrictive covenants. Slip op. at 5, 8 (describing a separation agreement's "tendency to coerce [outgoing] employees" and "potential chilling effects" in favor of the employer as the policy bases for the decision). In any event, Ms. McNeill's repeated representation, which she reiterates yet again in her Response, that *McLaren Macomb* somehow renders the non-disparagement provision "void *ab initio*," requires the Court to read the *McLaren Macomb* decision as going much farther than its limited holding does, and is patently unreasonable.

---

[6] It bears mention that the NLRB's *McLaren Macomb* decision is currently being directly challenged in the courts. *See NLRB v. McLaren Macomb*, 6th Cir. Case Nos. 23-1335 (filed Apr. 12, 2023) and 23-1403 (filed May 3, 2023).

*Third*, the NLRA has nothing to do with this case, and despite that, Ms. McNeill is transparently trying to reframe the facts of this case to resemble some sort of alleged collective action so that she can use her NLRA argument as an after-the-fact attack on the non-disparagement clause. The Court should not condone, and should sanction, the injection of this wholly inapplicable law. To reiterate, as the Supreme Court recently explained in *Epic Systems Corp. v. Lewis*, the NLRA embodies Congress's policy "aimed at safeguarding, first and foremost, workers' rights to join unions and to engage in collective bargaining." 584 U.S. 497, 521 (2018) (cleaned up); *see also id.* at 523 (explicitly rejecting an "expansive reading of the NLRA"). Indeed, for that reason, "Section 7 cases have usually involved just what you would expect from the statute's plain language: efforts by employees related to organizing and collective bargaining in the workplace." *Id.* at 517-18 (collecting cases involving employee walkouts, union resignations, strikes, and requests for union representation, and other activities revolving around organizing and collective bargaining). None of that has happened, or has even been plausibly alleged, in this case.

Ms. McNeill's post ad hoc attempts to characterize herself as some sort of protector and spokesperson on alleged harassment and discrimination, based on flimsy evidence[7] and made in the face of a plethora of factually and legally well-supported legitimate reasons for her termination, do not save her argument. Indeed, the Supreme Court in *Epic Systems* recently cautioned against expansive application of the NLRA over areas governed by other federal statutes. *See id.* at 524 (declining to find a collective action right to pursue wage and hour claims under the NLRA when the FLSA, which "actually regulate[s] wages and hours," does not so provide). So too here, where countless other federal and state laws (e.g., Title VII) directly and specifically prohibit harassment

---

[7] The evidence in support of that position that Ms. McNeill appends to her Response contains primarily self-serving hearsay statements sworn to by Ms. McNeill's relatives and close friends. The purported "Affidavit of Kaylin Culp," ECF 267-1 at 1-4, Ms. McNeill's right-hand-woman, is not even signed or notarized and, therefore, has no evidentiary value.

and discrimination and are the proper vehicles (and provide the applicable protections) for those claims, whether individual or class based. And most tellingly, as the Court has now recognized [ECF 271 at 21 n.14], Ms. McNeill makes no argument (because she cannot) that any of her violative conduct postdating the entry of the Preliminary Injunction actually involved any NLRA-protected speech within the scope of Section 7, further demonstrating that Ms. McNeill's Motion to Vacate is a sanctionable last-ditch effort at avoiding the consequences of her own violations.

*Fourth*, and perhaps most fundamentally, as should have been readily apparent to her counsel from the time the Motion to Vacate was filed, Ms. McNeill's NLRA arguments are untimely because the NLRB's *McLaren Macomb* decision, which entirely underpins those arguments, was issued **months before** Ms. McNeill filed her papers and presented argument to the Court to avoid the entry of the Preliminary Injunction. Therefore, even if the *McLaren Macomb* decision were applicable to the facts of this case (which it is not), Ms. McNeill cannot show that there has been any change in circumstances or the law since entry of the Preliminary Injunction to legally justify its modification. *See, e.g.*, *Hodge v. Dep't of Hous. & Urban Dev., Hous. Div., Dade Cnty., Fla.*, 862 F.2d 859, 861-62 (11th Cir. 1989) ("Before exercising its power to modify [an injunction], a court must be convinced by the party seeking relief that existing conditions differ so substantially from those which precipitated the decree as to warrant judicial adjustment."); *CreeLED, Inc. v. Individuals, Partnerships & Unincorporated Ass'ns Identified on Schedule "A"*, 2023 WL 5036192, at *3 (S.D. Fla. Aug. 8, 2023) ("Modification of an injunction is proper only when there has been a change of circumstances between entry of the injunction and the filing of the motion that would render the continuance of the injunction in its original form inequitable.").[8]

---

[8] Although Ms. McNeill in her Response suggests that the plain rule enunciated in *CreeLED* only applies to modification or reconsideration of a *permanent* injunction and that some different standard applies to a *preliminary* injunction, *CreeLED* quotes the applicable rule from *VPR Brands, LP v. Shenzen Weiboli Tech. Co. Ltd.*, 2023 WL 3600666, at *2 (S.D. Fla. Apr. 19, 2023), which applied the rule to a motion to vacate a preliminary injunction, and

{00083071:1}    6

Instead of acknowledging the well-established state of the law in this Court and the Eleventh Circuit, Ms. McNeill in her Response (as she did in her Motion to Vacate) cites nonbinding and inapposite authorities and misstates this Court's and Circuit's precedents. For example, in *Canal Authority of Florida v. Callaway*, the Fifth Circuit stated the usual rule—that modification of a preliminary injunction is appropriate when there has been a change in fact or law since the preliminary injunction was entered—but suggested that because the district court had entered the preliminary injunction "under a mistaken view of the law"—the district court employed an incorrect standard and factors for granting a preliminary injunction and misapplied the burden of proof—the preliminary injunction should be reconsidered "in light of the correct standards." 489 F.2d 567, 578 (5th Cir. 1974). *Callaway,* however*,* does not stand for the much broader proposition that a party subject to a preliminary injunction may fail to bring a legal argument against the merits of a preliminary injunction before the preliminary injunction is entered even though the argument was plainly available at that time, then wait to spring that argument upon the Court and the opposing party at an advantageous point in the litigation, such as when the party subject to a preliminary injunction has been caught repeatedly violating it. Indeed, such a rule would invite chaos and gamesmanship.[9]

---

in turn relied on *CWI, Inc. v. LDRV Holdings Corp.*, 2013 12123229, at *2 (M.D. Fla. Oct. 16, 2013), in which the court did the same. Further, contrary to Ms. McNeill's contentions, those cases do not differentiate between whether the alleged changed circumstance is one of fact or one of law. That logic is consistent with judicial practice across a whole host of circumstances in which courts disfavor legal arguments raised after the initial opportunity to do so has come and gone. Ms. McNeill's attempts to rewrite the applicable standard to suit her purposes are without merit.

[9] This obvious reality cuts against the out-of-circuit cases Ms. McNeill cites which purportedly treat "equity," rather than changed circumstances, as the primary consideration in assessing modification of a preliminary injunction. *See* Response at 5. In other words, putting aside the fact that those cases do not reflect the law of this Court, there is certainly nothing "equitable" about permitting an enjoined party, whether intentionally or through lack of diligence, to delay in asserting legal arguments it could have previously raised until enforcement efforts are brought against it and a contempt hearing is scheduled, as Ms. McNeill has done here.

Another case Ms. McNeill cites in her Response (though she conveniently does not point out this part to the Court in her briefing) implicitly recognizes as much, explaining (in accordance with the Southern District's and Eleventh Circuit's views) that in considering whether to vacate or modify a preliminary injunction, "the district court should not consider arguments that could have been raised at the time the preliminary injunction was issued." *Centennial Broadcasting, LLC v. Burns*, 433 F. Supp. 2d 730, 733-34 (W.D. Va. 2006) (internal quotation omitted).  Similarly, in *Warrior Trading, Inc. v. Jaffee*, this Court specifically found that modification was **not** appropriate because "Defendant identifies no change in the law or facts of the case, nor any other changed circumstances." 2019 WL 13236247, at *1 (S.D. Fla. July 25, 2019).  Accordingly, Ms. McNeill's counsel should have known before filing her Motion to Vacate that it was untimely and therefore has no chance of being successful.

Finally, even aside from the merits (or lack thereof) of Ms. McNeill's arguments, "zealous advocacy" is no excuse for presenting to the Court arguments that are factually and legally frivolous, particularly when the timing of when those arguments were asserted strongly suggests foul play and tactical manipulation of the judicial process.  *See, e.g.*, *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (11th Cir. 1993) (explaining that "an attorney's loyalties to a client do not outweigh the duty an attorney owes to the Court and to the justice system" and imposing sanctions on an attorney for asserting an untenable position).  In this case, rather than asserting her NLRA arguments at any other point—even though the seminal decision on which she relies was decided by the NLRB before this litigation even began—Ms. McNeill waited to spring that argument on Head Kandy and the Court until after she had been accused of violating (for at least the second time) the Preliminary Injunction, mere days before the Court had scheduled an in-person contempt hearing on the matter.  Ms. McNeill then attempted to use her Motion to Vacate

as an excuse to ask to postpone the contempt hearing—a request the Court rejected, and in so doing recognized the dubiousness of the timing of Ms. McNeill's filing—at which hearing Ms. McNeill then failed to personally appear to testify or to answer for her violations. It is clear that the Motion to Vacate, which is also substantively without merit, was merely an attempt at avoidance. Even more troubling, the Motion to Vacate is emblematic of a pattern exhibited by Ms. McNeill throughout this entire litigation, which is reflected throughout the docket, to delay and detract as much as possible, even if doing so requires her to make unfounded and meritless assertions, in an ultimate effort to evade the consequences of her actions. The reality is that Ms. McNeill has violated and continues to violate the Preliminary Injunction with impunity. Ms. McNeill's dilatory efforts to forestall the orderly and efficient litigation of this case, including by her Motion to Vacate, are sanctionable.

*Respectfully submitted,*

/s/ *Ethan J. Loeb*
**ETHAN J. LOEB**
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
**EDWARD C. THOMPSON**
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
**JALEN A. LARUBBIO**
FL Bar No. 1039258
JalenL@blhtlaw.com
UniqueA@blhtlaw.com
**CARSON A. SADRO**
FL Bar No. 1026159
CarsonS@blhtlaw.com
**BARTLETT LOEB HINDS THOMPSON & ANGELOS**
100 N. Tampa Street, Suite 2050
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Plaintiff Head Kandy LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2024 I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jennifer@lawfortcollins.com, Massey, Kelly & Priebe, PLLC, 125 S. Howes Street, Suite 1100, Fort Collins, CO 80521, *co-counsel for Defendant;*. and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

/s/ *Ethan J. Loeb*
**ETHAN J. LOEB**
FL Bar No. 668338