UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC,

    Plaintiff/Counterclaim Defendant,

v.                                                                                    CASE NO. 23-CV-60345-JB/JMS

KAYLA MARIE MCNEILL,

    Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC and JONATHAN ROSENBAUM,

    Third-Party Defendants.
_____/

**OPPOSITION MEMORANDUM TO EXPEDITED MOTION TO
ENFORCE THE PRELIMINARY INJUNCTION, FOR AN
ORDER TO SHOW CAUSE, AND FOR CIVIL CONTEMPT SANCTIONS**

    Defendant/Counterclaimant/Third-Party Claimant Kayla McNeill ("Ms. McNeill"), by and through her undersigned counsel, respectfully submits this opposition memorandum of law ("Response") in response to Plaintiff/Counterclaim Defendant Head Kandy, LLC's ("HK") Expedited Motion to Enforce the Preliminary Injunction, for an Order to Show Cause, and for Civil Contempt Sanctions (the "Contempt Motion") [ECF No. 266], and states as follows:

**INTRODUCTION**

    The Contempt Motion contains many incorrect statements in an attempt to support HK's audacious allegation that Ms. McNeill has engaged in a "pattern of repeated disregard of and disdain for this Court's authority[.]" Contempt Motion at 3-5.

    HK's Contempt Motion seeks to punish Ms. McNeill for a Video she posted—wherein she did not even identify HK or anyone associated with HK by name—and that she removed 48 hours after posting it by asking the Court to dismiss Ms. McNeill's recently filed Counterclaims and to

enter default against her. Under controlling law, those remedies are not available as civil contempt sanctions in this situation. Furthermore, Ms. McNeill has already complied with each of HK's other requests—that the Video be removed and that Ms. McNeill compensate HK for the attorneys fees it incurred to file the Contempt Motion. Thus, the Motion should be denied and Ms. McNeill should be permitted to deposit into the registry of the Court the amount of reasonable fees it sought to pay HK's attorneys and they refused to accept.

The factual statements in the Contempt Motion are also incorrect—specifically the pictue HK attempts to paint that Ms. McNeill has engaged in a "pattern of repeated disregard of and disdain for this Court's authority[.]" Contempt Motion at 3-5. It is necessary for Ms. McNeill to make online videos in order to earn a living; particularly, since she is currently the sole source of income for her family. Ms. McNeill's husband closed his business to work for HK to provide much needed technical expertise and as part of the couple's total commitment to the success of HK. Both Mr. and Mrs. McNeill were summarily fired on January 30, 2023; approximately two months after Ms. McNeill reported continual, vile sexual harassment she was subjected to at work by another HK employee/representative Jonathan Rosenbaum.

Nonetheless, the frequency of allegedly improper videos has greatly decreased since the Preliminary Injunction was entered on November 7, 2024; prior to the Video, there were no allegedly offending videos posted by Ms. McNeill.

Ms. McNeill did not intentionally violate the Preliminary Injunction. In the Contempt Motion, HK highlights Ms. McNeill's comments in the Video that she will probably "get in trouble" for talking about her prior work experience in order to support its allegation that she is not discouraged from "continued brazen violation[s] of the Preliminary Injunction." Contempt Motion at 3. However, Ms. McNeill has previously made the same statement in other posted

videos and explained that her comment was due to HK's repeated threats to take further legal action against her, regardless of the merits or if a formal dispute was ultimately initiated. Ms. McNeill's representations were recently echoed by another former employee of HK, Ms. Kaylin Culp. During her deposition that began on April 23, 2024, Ms. Culp testified that HK engaged in a pattern and practice of using threats of legal action against employees to coerce compliance with its demands, even related to routine and mundane business matters. Transcript of Deposition of Kaylin Culp ("Culp Tr."), attached hereto as **Exhibit A**. Nonetheless, Ms. McNeill respects the Court and all of its orders. She fully recognizes and appreciates her obligation to comply with all Court orders directed towards her conduct.

## FACTUAL BACKGROUND

1. On November 7, 2023, the Court entered its Order Adopting Report and Recommendation, Granting Plaintiff's Expedited Motion for Preliminary Injunction, and Setting Bond [ECF No. 152], which, among other things, imposed a Preliminary Injunction upon Ms. McNeill.

2. On June 3, 2024, Ms. McNeill posted a Facebook live video to her personal Facebook account (the "Video").

3. On June 4, 2024, HK filed the Contempt Motion.

4. HK's counsel did not attempt to confer with the undersigned when they learned of the activity that is the subject of the Contempt Motion or during the 30-hour period between the activity taking place and the filing of the Contempt Motion.

5. On June 5, 2024, Ms. McNeill removed the Video in its entirety.

6. Also on June 5, 2024, counsel for Ms. McNeill contacted Plaintiff's attorneys to resolve the Contempt Motion and obviate the need for further Court involvement concerning the

3

Preliminary Injunction. *See* Email string last sent June 6, 2024 by Ethan J. Loeb, Esq., attached hereto as **Exhibit B**.

7. Ms. McNeill requested the amount of attorneys' fees incurred by HK at that time related to the Contempt Motion so she could voluntarily remit payment to HK. *Id*.

8. HK refused to provide the requested information or accept the funds in resolution of the dispute. *Id*.

9. On June 20, 2024, Ms. McNeill filed her Motion for Approval to Deposit Funds into Court Registry ("Motion to Deposit") in which she seeks approval to deposit $4,500 – the maximum amount of reasonable attorneys' fees HK could have incurred related to the Contempt Motion based upon prior billing statements submitted to the Court by HK – into the Registry of the Court. [ECF No. 277].

## **LEGAL STANDARD**

"The sanction for contempt serves 'two broad purposes: (1) coercing the contemnor to comply with a court order, or (2) compensating a party for losses suffered as a result of the contemptuous act.'" *Int'l Sch. Services, Inc. v. AAUG Ins. Co., Ltd.*, No. 10-62115-CIV, 2012 WL 4936054, at *8 (S.D. Fla. Oct. 17, 2012) (citing *United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999)). "When fashioning a sanction to secure compliance, a district court should consider the character and magnitude of the harm threatened by *continued contumacy* and the probable effectiveness of any suggested sanction in bringing about the result desired," which suggests there must be an "ongoing violation of a court order." *Highland Consulting Grp., Inc. v. Soule*, No. 19-CV-81636, 2021 WL 4991257, at *1 (S.D. Fla. June 17, 2021) (quoting *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1304 (11th Cir. 1991) (emphasis added in *Highland*) (quotations and citations omitted)). Finally, sanctions for civil contempt "may not be

4

so excessive as to be punitive in nature." *Citronelle-Mobile Gathering, Inc.*, 943 F.2d at 1304.

## ARGUMENT

Immediately upon review of the Contempt Motion, Ms. McNeill sought to eliminate the controversy. The day she learned of the dispute, Ms. McNeill voluntarily removed the entire Video. That same day, Ms. McNeill offered to compensate HK for all attorneys' fees it had incurred related to the Contempt Motion. Finally, Ms. McNeill filed a motion with the Court seeking approval to deposit the maximum amount of reasonable attorneys' fees HK could have incurred related to the Contempt Motion, based upon prior billing statements submitted by HK. *See* Motion to Deposit at 2. As such, Ms. McNeill submits that no controversy currently exists related to the Contempt Motion.

Moreover, the Video did not cause irreparable harm to HK. Within the Contempt Motion, HK includes a certification pursuant to Local Rule 7.1(d)(2) due to its request for expedited relief. Contempt Motion at 1, n.1. In doing so, HK and its counsel certified that the Video is "causing further (and ongoing) irreparable harm to Head Kandy." *Id*. However, it is impossible for HK to suffer irreparable harm from the Video and HK does not offer any basis for its certification within the Contempt Motion. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Blue-Grace Logistics LLC v. Fahey*, 8:21-cv-2523-KKM-CPT, at *8 (M.D. Fla. Feb. 7, 2022) (citing *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir. 1990)). Recently, on April 19, 2024, HK served its Third Supplemental Disclosures upon Ms. McNeill pursuant to Fed. R. Civ. P. 26(e) (the "Disclosures"), attached hereto as **Exhibit C**. Therein, HK disclosed that "HK, as a business enterprise, presently carries no value" and its managing member and partial owner, Jerome Falic, will testify to such fact. Disclosures ¶ 1(b), at 2. Thus, at the time the Video was uploaded, there was no business to be

5

damaged, either monetarily or reputationally. Consequently, it is indisputable that HK was not harmed by the Video, much less that it caused HK to suffer "irreparable harm."

I. **Ms. McNeill Voluntarily Took All Reasonable Actions to Provide HK its Requested Relief**

HK filed its Contempt Motion on June 4, 2024, seeking sanctions against Ms. McNeill for posting the Video. HK did not confer with the undersigned prior to filing the Contempt Motion. HK asks the Court for four things in its Contempt Motion: (1) that the Court order Ms. McNeill to remove the Video from public view; (2) for the Court to "impose a hefty financial penalty on Ms. McNeill for each day the Video remains viewable online"; (3) "impose monetary sanctions against Ms. McNeill to compensate HK for the attorney's fees it has incurred in being forced to deal with yet another violative statement by Ms. McNeill"; (4) to dismiss her claims; and, (5) enter an order of default against her.[1] Contempt Motion at 3.

Ms. McNeill removed the Video on June 5, 2024, the day after HK filed its Contempt Motion. The Video was removed approximately 48 hours after it was uploaded. Thus, the Court need not order Ms. McNeill to take the Video down or impose monetary sanctions on her, as she has already removed the Video and is voluntarily seeking to compensate HK for attorneys' fees it incurred.

With regard to damages incurred by HK, HK does not provide any factual allegations to demonstrate that it suffered actual damages as a result of the Video. Instead, HK only seeks

---

[1] FRCP 41(b) gives the Court authority to dismiss an action or a claim for failure to comply with a court order, but does not authorize a court to default a party. Instead, default is permitted under FRCP 37 for discovery violations that are not at issue in this case. While the Court also possesses "inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal" for "[a]t the very least, the inherent power . . . to fill in the interstices [between the other sanctioning mechanisms]." *In re Amtrak "Sunset Limited" Train Crash in Bayou Canot, AL on Sept. 22, 1993*, 136 F. Supp. 2d 1251, 1265–66 (S.D. Ala.), *aff'd sub nom. In re Amtrak*, 29 F. App'x 575 (11th Cir. 2001). In addition to the other reasons set forth herein, default is not an available sanction in this case, where F.R.C.P. 41(b) addresses the situation presented in the Contempt Motion.

compensation for the attorneys' fees it incurred related to the Contempt Motion. On June 5, 2024, the undersigned emailed HK's counsel stating that Ms. McNeill would like to voluntarily resolve the Contempt Motion by paying HK's fees. HK did not provide any portion of its billing statement and would not agree to resolve the Contempt Motion. As a result, Ms. McNeill reviewed the billing records associated with prosecuting a motion related to enforcement of the Preliminary Junction involving more complex issues than the Contempt Motion (the "Billing Records"). [ECF Nos. 233, 233-1, 233-2]. Based upon the Billing Records, Ms. McNeill determined that reasonable attorneys' fees for drafting the Contempt Motion should not exceed $4,500. Presently, Ms. McNeill seeks the Court's approval to deposit that amount into the Court's Registry. *See* Motion to Deposit. Should HK provide a billing statement that evidences additional reasonable fees for necessary work related to the Contempt Motion prior to the filing of this Response, Ms. McNeill is willing pay the difference. Thus, the Court need not impose a monetary sanction on Ms. McNeill, as she has already offered to resolve the Contempt Motion by paying HK's reasonable attorney fees to avoid wasting judiciary resources and further expenses for either party, such as through a costly evidentiary hearing on the matter.

Finally, as discussed in detail in the following Section, HK's request that the Court strike Ms. McNeill's unrelated pleadings **and** enter a default judgment against her on all of HK's claims are wholly improper remedies. This is true even if the Court were to take all facts alleged by HK at face value–which it is precluded from doing under the controlling case law discussed below.

II.     **Court Should Decline HK's Request for Draconian Sanctions**

    A.     **Standard for Imposition of Litigation-Ending Sanctions**

The 11th Circuit has "articulated with crystalline clarity the outer boundary of the district court's discretion in these matters: dismissal with prejudice is plainly improper unless and until the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate

7

to correct such conduct." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1339 (11th Cir. 2005) (collecting cases); *Hildebrand v. Honeywell, Inc.,* 622 F.2d 179, 181 (5th Cir.1980). The "sanction of dismissal with prejudice is so unsparing," and courts in the 11th Circuit "strive to afford a litigant his or her day in court, if possible." *Id.* Dismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances. *Jones v. Graham,* 709 F.2d at 1458. To that end, the Court must find that there are no lesser sanctions available to "serve the interest of justice," such as a specific finding that any lesser sanction would **punish** the party moving for sanctions. *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985). Dismissal is not a "possible" contempt sanction "where the record does not show that [the non-movant] was ever given any specific warnings about dismissal nor issued any prior sanctions." *Garcia v. Pajeoly Corp.*, No. 18-23399-CIV, 2019 WL 5260248, at *2 (S.D. Fla. Aug. 20, 2019) ("draconian relief here is not warranted because no prior warnings of dismissal or lesser sanctions were sought or assessed against Plaintiff"). As acknowledged by HK, even when multiple violations of a preliminary injunction have occurred, striking pleadings is an improper punitive sanction. *Highland Consulting Grp., Inc. v. Soule*, No. 19-CV-81636, 2021 WL 4991257, at *1 (S.D. Fla. June 17, 2021).

        **B.**      **Both Dismissal of Ms. McNeill's Claims and Entry of Default Judgment Against Her are Improper Sanctions**

As discussed above, Ms. McNeill has already complied with HK's request that the Video be removed—in fact, Ms. McNeill voluntarily removed the Video the day after she learned of the dispute through the filing of the Contempt Motion (had HK conferred with Ms. McNeill at any time, the Contempt Motion would have been unnecessary as Ms. McNeill's actions evidence her willingness to voluntarily remove the Video). In addition, the undersigned reached out to HK's counsel and requested their relevant billing statements so Ms. McNeill could pay the attorneys'

8

fees HK incurred, as of that date, related to the Contempt Motion. HK's attorneys refused, so Ms. McNeill instead looked at the billing statement submitted by HK related to a similar, although more complex, motion and filed the Motion to Deposit to obtain approval to deposit $4,500 into the Registry of the Court for HK's benefit. Thus, there is no continuing violation and HK has ***no damages***, including attorney fees incurred in filing the Contempt Motion. Thus, HK cannot meet the elements for contempt sanctions. *See* Section II(A), above.

Still, Ms. McNeill recognizes HK's concern with the mere posting the Video, which is why her counsel immediately reached out to HK's counsel so that she could pay their attorney fees for filing the Contempt Motion. Ms. McNeill did not purposefully or willfully violate the Preliminary Injunction—she believed she was able to speak about former HK employees that she hired, and even then, she did not use any names in the Video (the Video does not make any reference "Head Kandy" or any individual by name).

In addition, dismissal would be improper because Ms. McNeill has not yet been monetarily sanctioned, so the Court cannot make the essential finding that "lesser sanctions are inadequate." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1339 (11th Cir. 2005). On June 11, 2024, Magistrate Judge Jared M. Strauss entered a Report and Recommendation [ECF No. 271] recommending that the Court deny Ms. McNeill's Motion to Partially Vacate Preliminary Injunction and Partial Motion to Dismiss [ECF No. 214], grant HK's Expedited Motion to Enforce the Preliminary Injunction [ECF No. 199], and sanction Ms. McNeill in the amount of $25,000 for attorneys' fees incurred by HK related to the dispute. The Report and Recommendation was entered after Ms. McNeill posted the Video—thus, she was not aware Magistrate Judge Strauss was recommending sanctions or that the recommendation would include such a heavy financial penalty. The Report and Recommendation has not yet been adopted by the Court, so there are no

current sanctions imposed on Ms. McNeill. Dismissal is improper in this situation. *Garcia v. Pajeoly Corp.*, No. 18-23399-CIV, 2019 WL 5260248, at *2 (S.D. Fla. Aug. 20, 2019) ("draconian relief here is not warranted because no prior warnings of dismissal or lesser sanctions were sought or assessed against Plaintiff"); *Highland Consulting Grp., Inc. v. Soule*, No. 19-CV-81636, 2021 WL 4991257, at *1 (S.D. Fla. June 17, 2021) (dismissal an improper sanction even if the preliminary injunction were violated many times). Ms. McNeill understands and appreciates the import of the Preliminary Injunction. Ms. McNeill takes her obligations seriously and, should she be ordered to pay HK sanctions, she will do so immediately. She now understands the breadth of the Preliminary Injunction and will not again post about HK, even without identifying it by name.

Finally, Ms. McNeill's conduct is a far cry from the egregious conduct involved in the cases where a dismissal or default was found to be the only sanction that could redress the behavior. HK cites *Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347, 348 (7th Cir. 2018); *H&R Block Enterprises, LLC v. Livsey*, No. 20-00863-CV-W-BP, 2022 WL 18584761, at *6 (W.D. Mo. Jan. 3, 2022) and *Esprit Stones Priv. Ltd. v. Rio Stone Grp. Inc*, No. 6:19-CV-637-CEM-LHP, 2022 WL 18492526, at *2 (M.D. Fla. Sept. 15, 2022) (none of which are controlling over this Court) in support of its position that Ms. McNeill's claims should be dismissed or a default judgment should be entered against her. Not one of the cases relied upon by HK is remotely similar to this situation.

In *Teledyne*, the defendant-appellant Shekar engaged in a "campaign of defiance, deceit, and delay" regarding his compliance with a preliminary injunction order which ordered him to produce computers for inspection and to turn over confidential information to plaintiff in discovery. *Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347, 348 (7th Cir. 2018). Shekar failed to turn over the computers, deleted the relevant information, and perjured himself to the Court on multiple occasions. At the time the default was entered, Shekar had still failed to "purge" himself

of the civil contempt by "multiple contempt findings, large attorneys' fees awarded to Teledyne [that were not paid], [and] threats of compulsory imprisonment," all which had been met by "unrelenting and unrepentant dishonesty." *Id*. at 351.

In *Livsey*, the defendant sold his business to H&R Block, signed a non-compete agreement, and then immediately went to compete with a different company. *H&R Block Enterprises, LLC v. Livsey*, No. 20-00863-CV-W-BP, 2022 WL 18584761, at *3 (W.D. Mo. Jan. 3, 2022). The court ordered Livsey to return documents belonging to H&R Block, to cease competitive activities, and to cease several other "substantial and persistent" violations of the parties' contract. Livsey failed to come into compliance with the court's order, failed to pay sanctions, and failed respond to H&R Block's Motion to enforce the court's show cause order. *Id*. Livsey also filed a false affidavit with the court that contradicted many prior statements and facts. *Id*. The court entered default given that Livsey would not take actions to purge himself of the civil contempt despite previous sanctions to get Livsey to come into compliance. *Id*.

Finally, in *Esprit*, a default was entered where the party had "shown its willingness to defy a court order, and since making misrepresentations to the [c]ourt regarding settlement . . . []refused to litigate this case." *Esprit Stones Priv. Ltd. v. Rio Stone Grp. Inc*, No. 6:19-CV-637-CEM-LHP, 2022 WL 18492526, at *3 (M.D. Fla. Sept. 15, 2022). There, after the defendant (i) lied to the court on multiple occasions, (ii) failed to respond to the court, opposing counsel or his own counsel regarding a settlement agreement he represented to the court that the parties had reached to avoid further litigation, and (iii) failed to sign the settlement agreement or further participate in litigation, the court entered a default judgment against him. *Esprit Stones Priv. Ltd. v. Rio Stone Grp. Inc*, No. 6:19-CV-637-CEM-LHP, 2022 WL 18492526, at *3 (M.D. Fla. Sept. 15, 2022).

### C. No Allegations Provided by HK Demonstrate Ms. McNeill Engaged in Witness Intimidation

Plaintiff makes the bold and unfounded statement suggesting witness intimidation in a Footnote 4 on Page 6 of the Contempt Motion, which states: "It is readily apparent that Ms. McNeill is making such comments in an effort to discourage further testimony against her in this litigation and make it known that testimony against her will result in online public disparagement and humiliation." Contempt Motion at 6, n.4. Again, no single person was named in the video. It is in fact Plaintiff misconstruing its statements in Footnote 4, in another attempt to put slanted comments about Ms. McNeill into the record. Plaintiff further uses Footnote 4 to argue that questioning a witness about biases and questions concerning witness credibility are somehow "effort[s] to intimidate the witness."[2] This argument is not in the main body of the argument but rather dropped in as a footnote as Plaintiff knows questioning a witness about biases is not improper and certainly not witness intimidation.

Witness intimidation is a heavy standard that involves threats made or actions taken to dissuade or prevent witnesses from giving testimony. *See LECTURE: WITNESS INTIMIDATION, 12 Fla. St. U.L. Rev. 239, 240.* For example, such intimidation generally involves punitive actions and coercion. *See Bagattelle Condo. Ass'n v. Palm Beach Polo Holdings*, 2010 Fla. Cir. LEXIS 1246, *6 (wherein the Court found witness intimidation when the Sole member of a Condominium Association, Mr. Straub, unilaterally suspended a testifying owner's membership and told that testifying owner "that his golf membership 'might' be reinstated if Mr. Bushey [the testifying

---

[2] Plaintiff categorizes legitimate questions from Mr. Converser in the deposition regarding why Ms. Cook may dislike Ms. McNeill (thus not being credible in the testimony Ms. Cook is giving of Ms. McNeill) as an attempt to "rattle" Ms. Cook. *See* Contempt Motion at 6, n.4. As will come out further in discovery, Ms. McNeill was the person who made it out of Ms. McNeill and Ms. Cook's small town. Resentment and reasons Ms. Cook would not like Ms. McNeill or be a credible witness as testifying about the working conditions of HK are completely relevant and appropriate.

owner] made a large donation to Mr. Straub's favorite charity and admit he was wrong and change his sworn testimony.")

In direct contrast it was Ms. Cook who stated in her testimony that it was not important enough for her to talk to her partner about Ms. McNeill because her and her partner are on "opposite ends", meaning her partner does not agree and would get into arguments about what is occurring to Ms. McNeill. [Cook, Tr. P. 163, lines 8-12]. Counsel for Defendant had an obligation to explore this and to understand what biases may exist with Ms. Cook about Ms. McNeill. Ms. Cook admits in the record that Ms. McNeill was the topic of dispute between her and her husband, which would clearly cause a bias and potential incentive to see Ms. McNeill fail. [Cook, Tr. P. 170, line 10].

Additionally, Ms. Cook acknowledges in her own testimony that the contents of a majority of this litigation is "public knowledge" [Cook, Tr. P. 163, lines 8-12]. It is now HK's counsel that has placed the deposition record into the public record. The items HK complains about were not even referenced in Ms. McNeill's video which is the subject of the instant Motion regarding Ms. Cook and her husband. Moreover, Ms. Cook's testimony is inconsistent, wherein she admits she did have a dispute with her partner about her partner viewing or being in possession of pictures or videos of Ms. McNeill, and even more says "…then I found out that Chris purchased them…" [Cook, Tr. P. 178, 14-15]. Then lines later, after being led by her attorney that "Mr. Converse was educating you that Chris knew about these photos….", Ms. Cook contradicts herself and states that she "didn't know" and was only educated that her husband knew about this during the deposition [Cook, Tr. 179, lines 17-19]. Then Ms. Cook admits she knew about the videos since 2016. [Cook, Tr. 179, line 23].

In the event Plaintiff is in any way seeking a sanction for witness intimidation, which is not clearly stated, such relief is not warranted and unsupported under law and facts. *Santana v. Telemundo Network Grp., LLC,* No. 6:20-cv-1157-WWB-LHP, 2022 U.S. Dist. LEXIS 213262, at *1 (M.D. Fla. July 1, 2022) (adopted May 17, 2022) addresses a claim of witness intimidation concerning contacting a witness with images intentionally sent to a specific witness trying to create a fabricated image wherein the Court denied Defendants' Motion to Dismiss for witness intimidation.

In the *Santana* case, it was alleged that Plaintiff's husband, Dominick Cicale, who had initiated a state court case separate from the federal case, doctored a photograph of a deponent (witness Luis Roldan) and a coworker to make it appear that the deponent Roldan was having an affair, and sent the cropped image to Roldan's life partner and mother of his children via both text message and email. In *Santana*, the Motion alleged that because of husband Cicale's conduct, that the deponent Roldan refused to appear as a witness in the *Santana* case. The Report and Recommendation recommended the Court deny the motion to dismiss for witness tampering, and the Court adopted the Report and Recommendation and Denied Defendants' Motion to Dismiss for Witness Intimidation. *Id*.

In *Santana*, the Court, found that Defendants, Telemundo and Universal, failed to present clear and convincing evidence that Plaintiff's husband's actions rose to witness tampering and were egregious enough to warrant dismissal of the action. While the Court deemed the husband's actions *improper* the Court did not find that communication to the witness (sent via text and email to potentially suggest to the witness' wife that the husband was having an affair) was egregious enough to warrant dismissal of this action. *Cf. Quiroz v. Superior Bldg. Maint., Inc.*, 06-21594-CIV, 2008 WL 3540599, at *8-9 (S.D. Fla. Aug. 12, 2008) (wherein Court dismissed action as

14

sanction where plaintiff **attempted to pay witnesses in exchange for perjured testimony and then offered false sworn statements to oppose the defendant's motion to dismiss**); *Cf. Lanier v. Greaves*, No. 02-20100-CIV, 2006 WL 680547, at *1 (S.D. Fla. Mar. 13, 2006) (dismissing action where there was clear and convincing evidence at trial that the plaintiff tampered with a witness by attempting to induce the witness to provide favorable testimony in exchange for a portion of any money recovered in the lawsuit).

Ms. McNeill's conduct is markedly distinguishable from that involved in *Santana*. First, there was no direct communication sent with any intent to change any witness's testimony. In *Santana*, Roldan had not yet testified in the federal case matter and in fact refused to testify after the actions of Cicale. Ms. McNeill made no statements with the intention to prevent anyone from testifying and, while unnamed, Ms. Cook already gave testimony in the case matter which can be used at trial as Ms. Cook is a permanent resident of Colorado and not within the state of Florida.

Unlike in *Santana* where images were sent directly to an individual who had not yet testified, the current set of facts in the present matter does not meet any threshold of witness intimidation. Further different from the instant case, the husband Cicale was an active member of the Banonno crime family, for which he held an official captain position and was part of the administration, meaning "controlling and help run the crime family". He was arrested for murder in the aid of racketeering; Cicale served 8.5 years of his sentence. The Court considered that this may render the e-mail and text message communication to the witness "more sinister" but noted that such the witness' knowledge of such criminal history *did not deter him from sitting for a deposition* in the *Colstar* case. Ms. Cook in her affidavit vaguely swears under oath to "continued attacks[,]" yet does not state with specificity anything about those alleged "continued attacks." However, Ms. Cook clearly had no issue to sit for her deposition; and there are no allegations that

her sister would refuse to sit for any deposition. There is also no evidence Ms. Cook will not testify moving forward due to any comments made by Ms. McNeill, again where she was not even named. Also, unlike *Santana,* where the person sending correspondence to the witness was an unknown person with extensive criminal history, comparatively, Ms. Cook has known Ms. McNeill for years, her husband is friends with Ms. McNeill's husband (which causes "disputes"), and there is no indication, allegation or even suggestion that Ms. Cook feels actually threatened by Ms. McNeill. No one did not appear for any sworn testimony, or has sworn they would not appear because of any statements by Ms. McNeill, and Ms. Cook has in fact provided additional sworn testimony in the affidavit following the video.

Plaintiff further improperly suggests that Mr. Converse improperly crossed Ms. Cook stating he was trying to "rattle" her (Motion at 6). However, credibility of a witness and witness bias is proper for cross examination. Bias or prejudice of a witness has an important bearing on his credibility and evidence showing such bias is relevant. *Webb v. State*, 336 So. 2d 416 (Fla. 2d DCA 1976). It is proper to elicit facts tending to show bias or prejudice of a witness in cross-examination of that witness. *Davis v. Ivey*, 93 Fla. 387, 112 So. 264 (1927). Bias, interest, motive, and animus are never collateral matters on cross-examination and are always proper. *U.S. v. Abel*, 469 U.S. 45 (1984); Wallace v. State, 26 So. 713, 722-23 (Fla. 1899). A defendant must be afforded wide latitude to demonstrate bias or possible motive for a witness's adverse testimony. Daniels v. State, 34 So. 2d 1166, 1167 (Fla. 2d DCA 1979).

## **CONCLUSION**

Ms. McNeill respectfully requests an order from the Court denying the Contempt Motion on the briefing submitted by the parties. If the Court declines to do so, Ms. McNeill requests that any order from the Court imposing sanctions related to the Contempt Motion be limited to an

amount of not more than $4,500 – the amount Ms. McNeill currently seeks to deposit into the Court's Registry – as reasonable attorney fees incurred by HK for any and all necessary work performed related to the Contempt Motion. Finally, Ms. McNeill respectfully requests an evidentiary hearing prior to a determination of any other issues or sanctions related to the Contempt Motion.

**DATED** this 20th day of June, 2024.

Respectfully Submitted,

By: /s/ *Laura E. Burgess*
Laura E. Burgess, Esq.
Florida Bar No. 0105073
L.E. Burgess P.A.
5966 S Dixie Highway, Suite 300
Miami, FL 33143
Tel.: 305.942.8044
Alt. Tel.: 713.818.5055
laura@leburgesslaw.com

AND

By: /s/ *Antonio L. Converse*
Antonio L. Converse, Esq.
Admitted *Pro Hac Vice*
Converse Law Group, P.C.
600 17th Street, Suite 2800 South
Denver, CO 80202
Tel: 303.228.9471
anthony@converselawgroup.com

AND

By:  <u>/s/ Jennifer A. Tiedeken</u>
Jennifer A. Tiedeken, Esq.
Admitted *Pro Hac Vice*
Massey, Kelly & Priebe, PLLC
125 S. Howes Street, Ste 1100
Fort Collins, CO 80521
Tel: 970.482.5058
jennifer@fortcollinslaw.com

***Counsel for Kayla McNeill***

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and through that filing served all counsel of record.

By:  <u>/s/ Laura E. Burgess</u>
Laura E. Burgess, Esq.
