**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

HEAD KANDY LLC,

      Plaintiff,

vs.                             Case No. 0:23-cv-60345-JB

KAYLA MARIE MCNEILL,

      Defendant.

_____/

**PLAINTIFF'S REPLY IN SUPPORT OF**
**EXPEDITED MOTION TO ENFORCE THE PRELIMINARY INJUNCTION,**
**FOR AN ORDER TO SHOW CAUSE, AND FOR CIVIL CONTEMPT SANCTIONS**

Plaintiff Head Kandy LLC ("**Head Kandy**") replies in support of its Expedited Motion to Enforce the Preliminary Injunction, for an Order to Show Cause, and for Civil Contempt Sanctions (the "**Third Contempt Motion**") [ECF 266] and in response to Defendant Kayla Marie McNeill's ("**Ms. McNeill**") Opposition Memorandum to Expedited Motion to Enforce the Preliminary Injunction, for an Order to Show Cause, and for Civil Contempt Sanctions (the "**Response**") [ECF 278], and in support states:

**Introduction**

By her Response, Ms. McNeill seeks license from the Court to violate the Court's Preliminary Injunction [ECF No. 152, adopting ECF 133], so long as she does so only until Head Kandy discovers the violation and so long as she pays a nominal amount Head Kandy may incur for its attorneys to demand Ms. McNeill cease the violation. Ms. McNeill has demonstrated that the Court's previous, repeated admonishments to "stay off social media" and not to "push[] the limits," and warnings that she will face monetary and other sanctions if she continues to violate the Preliminary Injunction, are not sufficient to coerce her compliance with the Preliminary

Injunction.  Ms. McNeill's violative comments made in her Facebook Live video first posted June 3, 2024 (the "**Video**") were not made on accident or due to a misunderstanding of the limits of the Court's Preliminary Injunction.  Indeed, in that Video Ms. McNeill disparaged Head Kandy while expressly and publicly recognizing that she will "get in trouble" for making such statements, further illustrating her lack of respect for this Court's orders and the futility of solely monetary sanctions.

Ms. McNeill's violation that is the subject of Head Kandy's Third Contempt Motion was her third since the Court entered the Preliminary Injunction.  She committed her latest (known) violation less than 60 days after the Court, for the second time, admonished her to "stay off social media" and "urged defense counsel to have another conversation with her, because it is incumbent upon you to make sure she understands not just what the limits are, but what the consequences of and the downsides of even pushing the limits are, even if its not found to be a violation." [4/12/2024 Contempt Hrg. Tr. at 101:19-102:15].  Now, by her Response, Ms. McNeill does not even argue her actions should not be found to be a violation.  Rather, Ms. McNeill essentially argues that the "consequences and the downsides" of a violation about which Magistrate Judge Strauss (and Judge Ruiz before him) warned her must be nil because, once caught violating the Preliminary Injunction again, she voluntarily removed the violative Video and offered to "compensate [Head Kandy] for the attorneys fees it incurred to file the Contempt Motion," and has now even gone so far as to seek to deposit into the registry of the Court what she believes is "the maximum amount of reasonable attorneys' fees [Head Kandy] could have incurred related to the Contempt Motion."  [Response at 2, 5].  Ms. McNeill in her Response, and in her counsel's e-mail attached as Exhibit B to it, even argues that because Ms. McNeill "sought to eliminate the

controversy" by voluntarily removing the offending post and offer to pay Head Kandy's attorneys' fees, "no controversy exists relate to the Contempt Motion." *Id.* at 5.

Ms. McNeill cannot be permitted to violate the Preliminary Injunction whenever she decides that paying Head Kandy's attorneys' fees incurred to send her counsel an e-mail demanding she cease violating the Preliminary Injunction is "worth it" for personal satisfaction or to drive traffic on her social media platforms to increase sales for her new businesses. The Court should find Ms. McNeill in contempt and impose a sanction commensurate with her recurring disregard of the Preliminary Injunction.

## <u>Argument</u>

### A. Ms. McNeill makes no attempt to argue that she did not post the Video or that the Video does not constitute a violation of the Preliminary Injunction.

First, and most tellingly, Ms. McNeill this time does not even try to argue that she did not post the Video or make the statements in question nor that she was otherwise excused from compliance with the Preliminary Injunction's prohibition on disparagement. Although Ms. McNeill remarks in passing that the statements she made in the Video, in which she concededly "speak[s] about former [Head Kandy] employees that she hired," Response at 9, did not reference Head Kandy or any individual by name, Ms. McNeill also does not dispute that her statements violate the Preliminary Injunction.[1] And with good reason—the statements Ms. McNeill made, some of which are recounted in Head Kandy's Third Contempt Motion [ECF 266 at 6-7], are, by any measure, disparaging to Head Kandy, its management, and its employees. Indeed, based on

---

[1] Despite making no argument rebutting (or even attempting to counter) Head Kandy's showing that Ms. McNeill violated the Preliminary Injunction and effectively conceding the violation, Ms. McNeill nonetheless requests an evidentiary hearing. Response at 17. However, "when there are no disputed factual matters that require an evidentiary hearing, the court might properly dispense with the hearing prior to finding the defendant in contempt and sanctioning [her]." *Mercer v. Mitchell*, 908 F.2d 763, 769 n.11 (11th Cir. 1990). Although Head Kandy submits that holding a hearing at which Ms. McNeill is compelled to personally appear and answer for her wrongful conduct might do some good, the hearing need not necessarily be of an evidentiary nature.

Ms. McNeill's comments and their context, it was obvious to any observer, and particularly Ms. McNeill's devoted followers, that her disparaging remarks pertained to Head Kandy and its employees, and the relatives of the Head Kandy employees to whom Ms. McNeill referred realized specifically who Ms. McNeill was talking about.  *See* ECF 266 at 5-6 and Ex. C.

   **B. Ms. McNeill's removal of the Video and offer to pay some of Head Kandy's fees do not moot Head Kandy's Third Contempt Motion or absolve Ms. McNeill of additional consequences for her violations.**

   By her Response, Ms. McNeill claims, in essence, that there is nothing left for the Court to do and that the Court should deny the Third Contempt Motion because Ms. McNeill has removed the Video and offered to pay (at least in part) Head Kandy's attorney's fees.  Indeed, rather than risk another judicial finding of contempt against her, a full award of reasonable attorney's fees to Head Kandy in an amount determined by the Court, and further sanctions up to and including striking of pleadings and default judgment—each of which Head Kandy is still seeking by its Third Contempt Motion—Ms. McNeill (naturally) would rather avoid the full range of potential consequences by paying a small amount of attorney's fees to Head Kandy, and attempts to gaslight Head Kandy for bringing Ms. McNeill's (third) violation of the Court's Preliminary Injunction to the attention of the Court.  Of course, Head Kandy is under no obligation to "resolve" the Third Contempt Motion or to entertain or enable Ms. McNeill's post hoc efforts to avoid or minimize exposure for her own wrongful conduct, and Ms. McNeill should not be permitted to violate the Preliminary Injunction with impunity and simply buy her way out of it each time for a nominal sum.  *See Mercer*, 908 F.2d at 669 n.10 (explaining that the fact that due process requirements apply to civil contempt proceedings "in no way gives a party license to flout or willfully to disobey a court order by violating the order and then complying with the order before the contempt proceeding begins").

In *Mercer*, the Eleventh Circuit suggested two potential remedies where the defendant ceased its violation of the court's order prior to the contempt proceeding.  First, and as would be justified here given Ms. McNeill's pattern of disobedience, "the court may conclude that, even though the defendant is in technical compliance at the time of the proceeding, the defendant's prior conduct indicates that he will not continue to comply with the court's injunction" and may "hold the defendant in civil contempt and sanction him until he satisfies the court that he will indeed obey the injunction."  908 F.2d at 669 n.10.  Second, "if the court finds the defendant acted willfully or maliciously in disregarding the injunction," as Head Kandy suggests Ms. McNeill plainly did here, "then the court may cite the defendant for criminal contempt," and "[i]n such a case, … may fully vindicate its authority with a fine, imprisonment, or both."  *Id.*  Given the Court's prior repeated admonishments and warnings to Ms. McNeill, her repeated violations, and acknowledgements while violating that she would "probably get in trouble" for her conduct, the Court would be well within its discretion to find Ms. McNeill in civil contempt or initiate criminal contempt proceedings.[2]

### C. Whether Head Kandy suffered additional monetary damages from Ms. McNeill's conduct is immaterial to determining whether Ms. McNeill's conduct was contemptuous, and in any event, Head Kandy suffered further irreparable harm.

Ms. McNeill suggests that Head Kandy cannot be awarded contempt sanctions because it has suffered no damages from Ms. McNeill's conduct in that Head Kandy has disclosed that Head Kandy "as a business enterprise, presently carries no value."  [Response at 5-6].  Of course, Ms. McNeill's conduct in violation of the restrictive covenants of her Executive Employment

---

[2] Given that Ms. McNeill is currently using her social media presence and the traffic she generates to drive sales for her new business, WhipiCo, Head Kandy suggests as a possible coercive measure that Ms. McNeill be ordered to disclose the revenue generated by WhipiCo during the time and for the day after the Video remained posted and to disgorge that revenue. Ms. McNeill should not be permitted to profit from conduct that clearly (and that she does not dispute) violates the Court's Preliminary Injunction.  It is likely that if Ms. McNeill is unable to do so, her violative conduct will finally cease.

Agreement, which the Court enjoined by the Preliminary Injunction, is precisely the reason Head Kandy "as a business enterprise, presently carries no value." Thus, Ms. McNeill by her argument inconceivably suggests that once a person by its conduct so harms a business that it has no value, the person can no longer be enjoined from continuing such conduct. That is nonsensical, and not not the law.

Indeed, Head Kandy need not demonstrate the specific monetary harm that it may suffer as the result of Ms. McNeill's conduct in violation of the restrictive covenants of her Executive Employment Agreement and, in turn, the Preliminary Injunction, in which the Court necessarily found Head Kandy suffered a "threat of irreparable harm" from Ms. McNeill's violations. [ECF 133 at 36-37; ECF 152]. Irreparable harm includes harm to reputation (which is the chief concern of the non-disparagement provision of Ms. McNeill's Executive Employment Agreement in the first place), *see, e.g.*, ECF 133 at 36-37 (explaining that Head Kandy's "goodwill and relationships with its customers [are] something that monetary remedies cannot adequately recompense," and collecting cases discussing harm to reputation).[3] Such "reputational harm" does not necessarily have an ascertainable monetary component that provides value to Head Kandy "as a business enterprise." In other words, whether Head Kandy has any current value "as a business enterprise," has no bearing on the harm it suffers from being the subject of disparaging remarks by Ms. McNeill, which seriously threat the ability of Head Kandy to return to profitability and create positive business value.

Head Kandy is entitled to a contempt finding against Ms. McNeill by the Court and may also be awarded nominal damages recognizing the wrong Ms. McNeill has committed by her latest

---

[3] Of course, despite Ms. McNeill's argument to the contrary, at the time Head Kandy filed the Third Contempt Motion, when the Video was still available online, Head Kandy was actively incurring irreparable harm to its reputation, which ongoing harm properly formed part of the basis of Head Kandy's request for expedited consideration.

violation.  *See Tom James Co. v. Morgan*, 141 F. App'x 894, 898-900 (11th Cir. 2005) (permitting contempt sanction including a nominal damages award, and also remanding for the trial court to consider imposing additional sanctions based on a broader interpretation of the court's inherent authority).  Additionally, the fact that Ms. McNeill has offered to pay what she believes are Head Kandy's reasonable attorneys' fees for brining the Third Contempt Motion does not moot the controversy or supersede the Court's ability to determine itself the appropriate amount of attorneys' fees and other sanctions to award as a result of Ms. McNeill's repeated contemptuous disregard of the Preliminary Injunction and to coerce her future compliance with it.

**D. Ms. McNeill's targeting of witnesses who have testified or may testify against her is an additional basis supporting significant sanctions.**

Ms. McNeill, making extensive argument and citing case law on witness intimidation, misstates Head Kandy's arguments concerning the circumstances of her violation.  Head Kandy is seeking contempt sanctions for Ms. McNeill's violation of the Preliminary Injunction—i.e., her disparaging statements made in the Video concerning Head Kandy, its management, and its employees.  Head Kandy merely points out that Ms. McNeill's disparaging statements, in this instance, take on an additional, more severe dimension (and therefore are all the more deserving of judicial attention and substantial sanctions) because they pertain to individuals who have been, or may be, witnesses against Ms. McNeill in this case and appear designed to bully such individuals.  Further, Ms. McNeill's statements did not occur in isolation; rather, they were made after Ms. McNeill's counsel cross-examined Nicole Cook—who had already provided significant testimony against Ms. McNeill, and whose sister is one of the subjects of Ms. McNeill's latest statements made in the Video—by raising unrelated factual matters (Ms. Cook's husband's alleged purchase of videos made by Ms. McNeill to sell featuring her engaged in fetish-based pornographic acts) in an attempt to sow discord in Ms. Cook's marriage and discredit her adverse testimony.  In

its assessment of Head Kandy's Third Contempt Motion, seeking contempt sanctions for Ms. McNeill's disparaging comments in the Video, the Court can and should consider those additional factual circumstances in fashioning appropriate sanctions.

### E.  The Court may strike pleadings or enter default judgment as a sanction.

Head Kandy, as it did in its Third Contempt Motion, recognizes that federal courts hold differing views on the propriety of striking pleadings or entering default judgment as a sanction for civil contempt.  *Compare Teledyne Techs. Inc. v. Shekar*, 739 F. App'x 347, 351-52 (7th Cir. 2018) (default judgment was appropriate sanction when multiple contempt findings did not change defendant's behavior or stop his violations of preliminary injunction); *H&R Block Enters., LLC v. Livsey*, 2022 WL 18584761, at *3-4 (W.D. Mo. Jan. 3, 2022) (striking answer and entering default judgment as a sanction for defendant's repeated violation of preliminary injunction enforcing contractual restrictive covenants entered into as part of a sale of a business), *with Highland Consulting Grp., Inc. v. Soule*, 2021 WL 4991257, at *1 (S.D. Fla. June 17, 2021) (finding that striking pleadings and entering default judgment would be unduly punitive under the circumstances).  Nonetheless, because Ms. McNeill has now violated the Preliminary Injunction for a third time in the seven months since it was entered—which conduct followed a months-long crusade of similar conduct against Head Kandy in violation of her Executive Employment Agreement and reoccurred this time despite Ms. McNeill's own express recognition that she will "get in trouble" for her statements—and because the threat of civil contempt and modest monetary sanctions has not changed Ms. McNeill's behavior,[4] a more drastic remedy is warranted, and

---

[4]  Although Ms. McNeill is correct that Judge Strauss's Report and Recommendation ("**R&R**") recommending a sanction of $25,000 in attorney's fees against Ms. McNeill [ECF 271] was entered several days after Ms. McNeill posted the Video, the evidentiary hearing that led to Judge Strauss's R&R occurred several weeks before the Video was posted, and Head Kandy at that time provided the amount of attorney's fees it was seeking (which were approximately double the amount Judge Strauss actually recommended be imposed as a sanction).  Thus, Ms. McNeill's claim that she did not know she could be facing substantial sanctions should not be believed.  Obviously, the specter of substantial sanctions was not enough to deter her from engaging in another violation.

indeed, necessary to ensure Ms. McNeill's compliance with this Court's orders.  At the very least, the Court can and should expressly put Ms. McNeill on notice that striking of pleadings and entry of default judgment are on the table for any further violations of the Preliminary Injunction.

<u>Conclusion</u>

For these reasons and the reasons set forth in Head Kandy's Third Contempt Motion, Head Kandy respectfully requests that the Court find Ms. McNeill in contempt; impose sanctions up to and including attorney's fees, a coercive fine, disgorgement, striking of pleadings, entry of default judgment, and/or commencement of criminal contempt proceedings; and order such other and further relief the Court deems appropriate.

*/s/ Ethan J. Loeb*

**ETHAN J. LOEB**
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
**EDWARD C. THOMPSON**
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
**JALEN A. LARUBBIO**
FL Bar No. 1039258
JalenL@blhtlaw.com
UniqueA@blhtlaw.com
**CARSON A. SADRO**
FL Bar No. 1026159
KerriR@blhtlaw.com
**BARTLETT LOEB HINDS**
**THOMPSON & ANGELOS**
100 N. Tampa Street, Suite 2050
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Plaintiff Head Kandy LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 27, 2024 I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jennifer@lawfortcollins.com, Massey, Kelly & Priebe, PLLC, 125 S. Howes Street, Suite 1100, Fort Collins, CO 80521*, co-counsel for Defendant;*. and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

/s/ *Ethan J. Loeb*
*Attorney*