UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC,

    Plaintiff/Counterclaim Defendant,

v.                                                                                                  CASE NO. 23-CV-60345-JB/JMS

KAYLA MARIE MCNEILL,

    Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC and JONATHAN ROSENBAUM,

    Third-Party Defendants.
_____/

**OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Defendant Kayla McNeill ("Ms. McNeill"), by and through her undersigned counsel, pursuant to 28 U.S.C. § 636(b)(1), hereby respectfully submits the following objections to the Report and Recommendation entered June 11, 2024 by the Honorable Jared M. Strauss, U.S. Magistrate Judge, (the "Report") [ECF No. 271], which recommends denying Ms. McNeill's Motion to Partially Vacate the Preliminary Injunction and Partial Motion to Dismiss ("Motion to Vacate") [ECF No. 214] and granting Plaintiff's Expedited Motion to Enforce the Preliminary Injunction and for an Order to Show Cause (the "Motion to Enforce") [ECF No. 199]. In support of her objections, Ms. McNeill states as follows:

**I.    LEGAL STANDARD**

Pursuant to 28 U.S.C. § 636, "any party may serve and file written objections to . . . proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

## II.     INTRODUCTION

The Report arises out of two motions with competing interests regarding the Preliminary Injunction currently in place against Ms. McNeill ("PI"), which, as relevant hereto, prohibits Ms. McNeill from disparaging Plaintiff / Counterclaim Defendant Head Kandy, LLC ("Head Kandy") pursuant to that certain nondisparagement provision appearing in Ms. McNeill's Executive Employment Agreement (referred to as "NDP" and "EA," respectively). Head Kandy filed its Motion to Enforce, alleging that Ms. McNeill violated the PI by reaching out to an individual via private message on Facebook. Ms. McNeill filed her Motion to Vacate, alleging that the NDP is illegal and unenforceable pursuant to the National Labor Relations Act, 29 U.S.C.A. §§ 151-169 ("NLRA"). Thus, as Judge Strauss correctly points out in the Report, the primary determination for the Court is whether the NDP is enforceable. Without an evidentiary hearing (or any other testimony), Judge Strauss's Report finds that Ms. McNeill was a "managerial employee" during her entire tenure with Head Kandy and, therefore, the NLRA does not apply to her. Large parts of the Report are copied, verbatim, from Head Kandy's Opposition to the Motion to Vacate ("Response to Motion to Vacate") [ECF No. 321]; so much so that the Report copies the incorrect standard recited by Head Kandy for the modification of a preliminary injunction. *See Hodge v. Dep't of Hous. & Urb. Dev., Hous. Div., Dade Cnty., Fla.*, 862 F.2d 859, 862 (11th Cir. 1989) (articulating the standard for modifying a permanent injunction, not a preliminary injunction); Report at 6-7, cited by Head Kandy in Response at 4.

The Report, on one hand, entirely ignores the Statement of Facts sets forth in the Motion to Vacate (Motion to Vacate at 3-9) and, on the other, adopts verbatim Head Kandy's "facts." In addition, the Report goes out of its way to cite to facts not even brought up by Head Kandy, failing to hold Head Kandy to any burden of proof.

Ms. McNeill respectfully submits that the Report's finding, among others, that Ms. McNeill was a managerial employee, constitutes both legal and factual error. Thus, adoption of the Report's recommendations is inappropriate, as detailed below. The Report addressees the Motion to Vacate first and the Motion to Enforce second. Likewise, Ms. McNeill's Objections address the findings for each of the Motions in turn.

### III. OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS-- MOTION TO VACATE

#### A. Ms. McNeill Objects to Magistrate Strauss's Finding that she was a "Managerial Employee" Exempt from NLRA Protections

In order for an employee to fall within the judicially created "managerial exception"—exempting that employee from the NLRA's protections—the employee must meet a two-pronged test. First, managerial employees are only those who "formulate and effectuate management policies by expressing and making operative the decisions of their employer, utilizing discretion within, or even independently of, established employer policy." *NLRB v. Yeshiva University,* 444 U.S. 672, 682 (1980). Managerial employees are "much higher in the managerial structure" than supervisors. *Id.* at 283. Second, an employee only falls within the "managerial exception" if the employee is "aligned with management." *Id*. Therefore, "normally an employee may be excluded as managerial only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy." Whether or not a person is "managerial" must be determined on a case-by-case basis, with an

3

analysis of the authority actually held by the individual and the job duties actually performed by that individual. *N.L.R.B. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 286, 94 S. Ct. 1757, 1767, 40 L. Ed. 2d 134 (1974).

### 1. Ms. McNeill objects to the Report's finding that Ms. McNeill was a "managerial employee" under her EA

The Report finds that Ms. McNeill "formulated and effectuated management policies by expressing and making operative the decisions of [her] employer" because her Executive Employment Agreement states Ms. McNeill would have "oversight and management of strategic initiatives and general operational activities of [Plaintiff]." Report at 12. The Report's reliance on a selective quotation of a non-descript and self-serving description of Ms. McNeill's duties constitutes error. *Point Park Univ. v. N.L.R.B.*, 457 F.3d 42, 48 (D.C. Cir. 2006) (analysis of whether person was a managerial employee must look beyond "self-serving descriptions of the role") (citing *NLRB v. Yeshiva University,* 444 U.S. 672, 682 (1980)).

Ms. McNeill also objects to the Report's omission of and failure to consider the entirety of the relevant portion of Ms. McNeill's EA, which actually demonstrates Ms. McNeill was not a managerial employee:

> During the Term, the Company shall employ the Executive as "Creative Director" of the Company. The Executive shall have such responsibilities, duties, and authority as are consistent with her position and reasonably assigned to her by the Managing Member of the Company (the "**Managing Member**"). The Executive shall report directly to the Managing Member. The Executive shall fulfill her duties and responsibilities in a reasonable and appropriate manner and in compliance with all applicable Company policies and practices and the laws and regulations that apply to the EA.

[ECF No. 187-1 ¶ 2 at 2] (emphasis in original). *See, e.g.*, *Iowa Indus. Hydraulics, Inc.*, 169 NLRB 205, 210 (1968) (professionals hired to perform job in accordance with company policies under management direction were not managerial employees under the NLRA); *Twin Coast*

*Newspapers, Inc. d/b/a Long Beach Press-Telegram, Emp. & Los Angeles Newspaper Guild, Loc. 69, Afl-Cio, Petitioner*, 305 NLRB 412, 415 (1991) (area managers were not managerial employees even when they had authority to hire and fire; the ability to enter into and cancel contracts; the ability to make suggestions to improve the quality of customer service; and the ability to set distribution policy, among other things, where they were required to follow company policy and were supervised by a higher-ranking manager); *NLRB v. Yeshiva University*, 444 U.S. 672, 682 (1980) (professional employees functioning as project captains for work performed by teams of professionals are not managerial employees despite substantial planning responsibility and authority to direct and evaluate team members because such job duties are routine discharge of professional duties).

### 2. Ms. McNeill objects to the Report's failure to consider her demotion

Although the Report acknowledges that Ms. McNeill was demoted in December 2022 and that Ms. McNeill argues the demotion meant that the NLRA's supervisor exception "would not have applied to Ms. McNeill during the latter part of her employment or when Head Kandy has attempted to enforce the Non-Disparagement Provision," the Report finds that such demotion would not "invalidate" the NDP. Report at 13, n.11. Ms. McNeill objects to this finding. First, pursuant to the authority cited by Judge Strauss in support of the findings in the Report, the "determination of 'managerial,' like the determination of 'supervisory,' is to some extent necessarily a matter of the degree of authority exercised." *N.L.R.B. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 286, 94 S. Ct. 1757, 1767, 40 L. Ed. 2d 134 (1974). Thus, it stands to reason that if a person no longer has the authority to exercise managerial functions, they cannot be a managerial employee.

5

In addition, despite the Report's statement that Judge Strauss considered Ms. McNeill's argument "on the merits" (Report at 12), the Report fails to acknowledge law directly supporting Ms. McNeill's argument. *N.L.R.B. v. Leland-Gifford Co.*, 200 F.2d 620, 625 (1st Cir. 1952) ("We agree, however, that not only an actual demotion in rank, but also a reversion to routine production work for such an extended and wholly indefinite period of time that the erstwhile supervisor could reasonably be said to have become a rank and file production worker for all practical purposes, would work a loss of supervisory status even though both title and theoretical power remained and might perhaps with an expansion in force be resumed at some vague time far in the future"); *Babcock & Wilcox Co. v. N.L.R.B.*, 683 F.2d 858, 860–61 (4th Cir. 1982) ("[W]e do not suggest that once one is a supervisor he may never become an employee. The demotion or promotion of a worker may change his status for some purposes of the [NLRA]. We recognize that in some situations, a decision must be made as to whether a worker who frequently shifts from supervisory jobs to typical employee functions is ultimately a 'supervisor' or an 'employee.'").

Ms. McNeill objects to the Report's finding that Ms. McNeill failed to address the managerial exception in the Motion to Vacate briefing. Report at 13, n.11. As set forth in Ms. McNeill's Statement of Facts within the Motion to Vacate (and acknowledged by the Report), Ms. McNeill alleges that the demotion stripped her of all duties, which would necessarily include any "manager duties." Motion to Vacate ¶ 8 at 5.

Ms. McNeill also objects to the Report's finding which suggests that the analysis would be different in the context of the demotion of a supervisor versus a managerial employee. Report at 13, n.11. That finding is belied by *Bell Aerospace*, which is clear that "managerial status is not given to 'rank and file employees'"—the same rationale announced in *Leland-Gifford* and

6

*Babcock. N.L.R.B. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 286, 94 S. Ct. 1757, 1767, 40 L. Ed. 2d 134 (1974). Even if Ms. McNeill was, at one time, a managerial employee, her demotion in December 2022, two months prior to her termination, returned her to a rank and file employee entitled to NLRA protections.

Ms. McNeill also objects to the Report's finding that she provided no authority for the proposition that the demotion functioned to invalidate the NDP, which she executed over three years earlier. Report at 13, n.11. As set forth in the Motion to Vacate, the *McLaren* decision applies retroactively to invalidate all illegal NDPs. Motion to Vacate at 2. As such, when the NLRA's protections applied to Ms. McNeill, December 1, 2022 at the latest, the illegal NDP became unenforceable against her, and it was error for Magistrate Strauss to determine otherwise.

    **3.**    **Ms. McNeill objects to the Report as it did not consider the fact that Ms. McNeill was covered under the NLRA even if she was a manager for refusing to condone Head Kandy's unfair labor practices**

As addressed in Ms. McNeill's Motion to Vacate at p. 12 and her Reply in support thereof a pp. 9-10, the NLRA protects a manager who is retaliated against, such as being fired, because they are refusing to act on their employer's behalf in committing an unfair labor practice against employees (*Parker-Robb Chevrolet*, 262 N.L.R.B. 402 (1982), *enf'd. sub. nom. Automobile Salesmen Union v. N.L.R.B.*, 711 F.2d 383 (D.C. Cir. 1983)) or when the supervisor's discharge is part of an integral pattern of employer conduct aimed at squelching protected employee activity (*N.L.R.B. v. Downslope Indus., Inc.*, 676 F.2d 1114, 1119 (6th Cir. 1982)). The Report ignores these well-established exceptions entirely and does not even consider Ms. McNeill's SOF ¶¶ 10-13 in her Motion to Vacate setting forth why Ms. McNeill is still protected even if she were exempt from NLRA's protections. The well-established exceptions should apply

equally to the managerial and supervisory exceptions. *Denholm v. Smyrna Ready Mix Concrete, LLC*, No. 5:20-CV-320-REW, 2021 WL 297571, at *6 (E.D. Ky. Jan. 28, 2021). Even if the Report's finding that Ms. McNeill was a managerial employee was correct, Ms. McNeill is still afforded the NLRA's protections under the well-established exceptions set forth in *Parker-Robb* and *Downslope*.

4. **Ms. McNeill objects to the Report's finding that Ms. McNeill was "unequivocally" aligned with Head Kandy solely based on her ownership interest.**

The Report found it "axiomatic" that Ms. McNeill was closely aligned with Head Kandy management due solely to the fact she was a 20% owner of Head Kandy. Report at 13-14. The Report also found that, solely because Ms. McNeill was an owner of Head Kandy, she must have "recommended actions that controlled [Head Kandy's] policy." *Id.* at 13. The Report cites no factual evidence to support this conclusion, which is error. In addition, the Report ignores Ms. McNeill's SOF and argument that she was ***not*** aligned with Head Kandy's management, which is why she met with Jerome Falic to lodge complaints about workplace conditions in refusal to participate in Head Kandy's unfair labor practices, including discouraging employees from complaining about sexual harassment. Motion to Vacate at 10; Reply in Support of Moton to Vacate at 12-13. If ownership alone automatically aligned an employee with their company's management, derivative lawsuits would not exist and employee-owners would not be entitled to sue their companies. It was error for Judge Strauss to look beyond pled facts to conclusively hold ownership equals alignment (directly quoting from Head Kandy's Opposition brief, which is equally devoid of any factual support for the argument).

5. **Whether Ms. McNeill was a "managerial employee" is a factual question Judge Strauss improperly and prematurely determined**.

8

Whether a person qualifies as a "managerial employee" is a mixed question of fact and law. *N.L.R.B. v. Yeshiva Univ.*, 444 U.S. 672, 691, 100 S. Ct. 856, 867, 63 L. Ed. 2d 115 (1980). The determination cannot be made "on the basis of conclusory rationales rather than examination of the facts of each case" and must be rationally supported both based on articulated facts and consistent with the NLRA. *Id.* The Report premised its finding that Ms. McNeill was a managerial employee on:

- Judge Strauss's belief that Ms. McNeill "formulated and effectuated management policies by expressing and making operative the decisions of [her] employer." Report at p. 12. Judge Strauss does not cite to any factual support for this assertion, instead citing to *Aerospace*.
- Ms. McNeill "unequivocally represent[] management interests and recommend[] actions that controlled Plaintiff's policy" based upon nothing more than her ownership interest in Head Kandy. Report at p. 14.
- Ms. McNeill was "responsible for the oversight and management of strategic initiatives and general operation activities of Plaintiff" based upon a selective self-serving quote from Ms. McNeill's OA.
- Ms. McNeill "had the authority to at least recommend hiring and firing other employees" based upon Ms. McNeill's Motion to Vacate. Report at p. 13-14.
- Ms. McNeill was "able to engage in content creation [and] product development without oversight of the marketing team and was in charge of the marketing team" based on Ms. McNeill's testimony at the Preliminary Injunction hearing. Report at p. 13.

Thus, aside from the employment agreement, the only factual support supporting the Report's finding that Ms. McNeill was a managerial employee is 1) that she was able to recommend hiring and firing other employees and 2) that she engaged in content creation without oversight and was in charge of the marketing team. Neither of these facts supports a finding that Ms. McNeill was a managerial employee. *See*, *e.g.*, Iowa Indus. Hydraulics, Inc., 169 NLRB 205, 210 (1968) (professionals hired to perform job in accordance with company policies under management direction were not managerial employees under the NLRA); Twin Coast Newspapers, Inc. d/b/a Long Beach Press-Telegram, Emp. & Los Angeles Newspaper Guild, Loc. 69, Afl-Cio, Petitioner, 305 NLRB 412, 415 (1991) (area managers were not

9

managerial employees even when they had authority to hire and fire; the ability to enter into and cancel contracts; the ability to make suggestions to improve the quality of customer service; and the ability to set distribution policy, among other things, where they were required to follow company policy and were supervised by a higher-ranking manager); *NLRB v. Yeshiva University*, 444 U.S. 672, 682 (1980) (professional employees functioning as project captains for work performed by teams of professionals are not managerial employees despite substantial planning responsibility and authority to direct and evaluate team members because as such job duties are routine discharge of professional duties).

In addition, the Report ignored the following facts pled by Ms. McNeill in support of the fact that she was not a manager or supervisor during all relevant time periods:

- Ms. McNeill's main job duties were product development and running HK's social media platforms (primarily Facebook). Motion to Vacate at pp. 4-8.
- In July 2022, HK retained Mr. Rosenbaum to take over management of HK. Prior to Mr. Rosenbaum's retention, Ms. McNeill managed some other employees, but, for the most part, she and all other HK employees reported to Mr. Falic and Mr. Rosenbaum. In addition, Ms. McNeill was in contact with her supervisors several times a day seeking approval for all of her employment activities. *Id.*
- On December 1, 2022, Ms. McNeill was stripped of all director, manager and executive duties. Ms. McNeill no longer had any independent authority with respect to any part of her position and was relegated to a low-level employment position. *Id.*
- While Ms. McNeill, at times, had some authority over other employees, Ms. McNeill did not have the right to exercise that authority independently. Instead, she sought approval from her supervisors regarding hiring and firing decisions, discharge of employees, payment of employees, and general direction of employees. *Id.*
- Ms. McNeill's primary duty was to develop and promote HK's products, not to act in a supervisory capacity. SOF ¶ 6. It is, therefore, unlikely the supervisor exception applied to Ms. McNeill's employment with HK even before she was demoted in late 2022. Motion to Vacate, p. 12.

Pursuant to the law relied upon in the Report, Judge Strauss was required to engage in a factual analysis which should have, at minimum, included consideration of the facts set forth in Ms. McNeill's Motion to Vacate and Reply in support thereof.

Ms. McNeill also objects to the Report's finding that a factual hearing was not necessary or that Ms. McNeill intended solely to present evidence at the April 12 hearing on the Motion to Enforce "that, to the extent she had been a supervisor for Defendant and was thus exempt from the NLRA s protections, by the time she was terminated, she was no longer a supervisor and that she had been terminated (in part) for refusing to violate the rights of other employees under Section 7 of the NLRA." Report at 5, n.4. Had Ms. McNeill's witnesses been able to testify, they would have testified to the matters set out in the Motion to Vacate. As set forth above, it was legal error for Magistrate Strauss to determine Ms. McNeill's managerial status without engaging in fact-finding, which, at minimum, should have included a factual hearing.

6. **Ms. McNeill objects to the Report's finding that the burden was on her to challenge Head Kandy's assertion of the managerial exception.**

"The party asserting managerial status has the burden of proving it." *Union Square Theater Management*, 326 NLRB 70, 71 (1998); *In Re S. Monterey Cnty. Hosp.*, 348 NLRB 327, 333 (2006). Yet, although Head Kandy's Opposition to the Motion to Vacate contained even fewer facts than the Report itself (Head Kandy points solely to the self-serving statement from the EA and Ms. McNeill's ownership in Head Kandy to support a finding that Ms. McNeill was a managerial employee), the Report shifts the burden to Ms. McNeill, stating she should have addressed the managerial exception herself. Report at 11-12. Head Kandy did not meet its burden of proving the managerial exception applies and the Report's finding to the contrary is error.

7. **Ms. McNeill objects to the Report to the extent it found Ms. McNeill admitted she was a "managerial employee" under the NLRA.**

The Report acknowledges that while Ms. McNeill's Answer, filed on June 10, 2024, denies that she was a manager at all times relevant to the claims and allegations, and states that she does not need to respond to Plaintiff s allegation that she was a managerial employee, in a

11

proposed Answer filed months prior Ms. McNeill "admits to being a key managerial employee." The operative Answer is the one filed on June 10, 2024, and it is error for the Report to determine the previously filed proposed Answer functions as an admission she was a managerial employee exempt from the NLRA's protections.

B.  **During the April 12 hearing, Ms. McNeill did not concede that the General Counsel's memo lacks legal force in and of itself**

Ms. McNeill objects to Magistrate Judge Strauss's finding that Ms. McNeill conceded that "the General Counsel's memo lacks legal force in and of itself." Report at 9 n.6. The following was the full exchange on the topic at the April 12 hearing:

> 11 THE COURT: What legal force does the guidance of the
> 
> 12 general counsel of the -- a memo of the -- guidance memo of the
> 
> 13 general counsel of the NLRB have?
> 
> 14 MR. CONVERSE: It's not binding on this court neither
> 
> 15 is *McLaren*. It needs to be given considerable deference, but
> 
> 16 it's not binding authority.
> 
> 17 THE COURT: And I'm sorry. Did you say *McLaren* is not
> 
> 18 binding authority either?
> 
> 19 MR. CONVERSE: What I'm saying is that the NLRA case
> 
> 20 law is not binding, or the NLRB case law is not binding on this
> 
> 21 court.

[ECF No. 230 at 17:11-21].

IV.   **OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS-- MOTION TO ENFORCE**

A.   **Ms. McNeill Objects to Magistrate Judge Strauss' Finding that that "Defendant's statements about Plaintiff's owners were "disparaging" because (A) the alleged violated order was not valid and lawful as to the disparagement provision, *supra*; (B) under Magistrate Judge Strauss' own definition of "disparaging" and**

12

**surrounding law the statements cannot be defamatory, disparaging, or otherwise negative or degrading**

Magistrate Judge Strauss cited the legal standard for granting a motion for contempt, which included that "Courts have the inherent power to enforce compliance with their *lawful* orders by the exercise of contempt powers." (*Campos v. Chavam Enterprises, Inc.*, No. 15-14370-CIV, 2021 WL 1178548, at *2 (S.D. Fla. Feb. 16, 2021) (citing *Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1992)) (*emphasis added*); and movant on a contempt motion to meet its initial burden must prove the allegedly violated order was valid and lawful and that the order was clear and unambiguous. *S.E.C. v. Greenberg*, 105 F. Supp. 3d 1342, 1345 (S.D. Fla. 2015). As is explained in more depth in Section I, *supra*, the NLRA does apply to Ms. McNeill and the Executive Employment Agreement's non-disparagement clause is void *ab initio* as it is overly broad and interferes with her rights under the NLRA.

B. **Under Magistrate Judge Strauss's own definition of "disparagement" wherein the statement must "unfairly" castigate or detract, there cannot be a finding of unfair castigation under the present record**

While the Court has stated falsity is not a pre-requisite of finding a statement to be disparaging[1], the Court *has* defined disparagement to include the element of *unfairness*. [ECF No. 271 at 19; ECF No. 133 at 31].

In fact, the Court noted that "[b]ecause the terms 'defamatory' or 'disparaging' are **not** defined in the Executive Employment Agreement, this Court must "ascertain the plain and ordinary meaning" of those terms. *State Farm Fl. Ins. Co. v. Crispin*, 290 So. 3d 150, 152 (Fla. 5th DCA 2020) (**emphasis added**) [ECF No. 133 at 30] and that "in Florida, *Black's Law*

---

[1] While the Court in ECF No. 133 defined "defamatory" as a statement or communication "tending to harm a person's reputation . . . [b]y subjecting the person to public contempt, disgrace, or ridicule, or by adversely affecting the person's business" under BLACK'S LAW DICTIONARY (11th ed. 2019), it is agreed by the Court that falsity is a consideration when examining the tort of defamation. *See* 1 LN Practice Guide: FL Civil Discovery 1.38 (2024) ("the elements of defamation are a false and defamatory statement of fact concerning another…."), *see also* ECF No. 133 at 31.

13

*Dictionary is a valid source for determining the plain and ordinary meaning of an undefined contractual or statutory term.*" *Id.* (citing *Broward Cnty. v. Fla. Carry, Inc.*, 313 So. 3d 635, 639 (Fla. 4th DCA 2021)).

The term "negative" was added by the Court into the Preliminary Injunction Order [ECF No. 152; ECF No. 133], despite not actually being written in Section 5(d) of the Executive Employment Agreement.  [ECF No. 1-1][2].  This was explained in Ms. McNeill's proposed findings of fact and law on Plaintiff's Motion for Preliminary Injunction [ECF No. 117 at 23]; *see also* [ECF No. 271 at 3] (wherein there is no reference to a ban on "negative" and "truthful" statements).  As such, it is clear it was never the intention of the parties to ban *truthful* remarks. While the Preliminary Injunction Order presently has added in "otherwise negative or degrading comments" into the actual language of the EA [ECF No. 152 at 14], it was only added as can be gleaned from the record pursuant to another portion of the definition stated in the Report and Recommendation on the Preliminary Injunction Motion [ECF No. 133 at 31] that a "statement cast in a negative light *may* amount to a disparagement…" but not *must.  Id.*   It was certainly not added because it was direct language from the EA.  This is critical for two reasons: (1) Ms. McNeill never agreed per law under contract not to make "*negative*"[3] statements under Contract;

---

[2] The term "negative" is in fact nowhere located in the EA.
[3] While Defendant acknowledges "negative" was added into the language of Strauss' Report and Recommendation [ECF No. 133] and the Preliminary Injunction Order [ECF No. 152], such language was pulled from the definition of disparagement by the Court which stated that "Any statement cast in a negative light may amount to disparagement" without also applying the requirement enunciated by the Court to the definition per BLACK'S LAW DICTIONARY's definition (and the actual full definition and definition used in order to Sanction Ms. McNeill from the Motion to Enforce), which is that the statement cause *unfair* castigation.  Magistrate Judge Strauss has made an finding that "Defendant's statements about Plaintiff's owners were 'disparaging.'" [ECF No. 271, at 19].  Also as cited in Ms. McNeill's Reply to Motion to Vacate the Preliminary Injunction [ECF No. 248, p. 3], precedent has dictated that a preliminary injunction should be reconsidered for good cause, including a mistaken view of law. *See, also, Wi-Lan Inc. v. HTC Corp.,* 951 F. Supp. 2d 1291, 1291-92 (M.D. Fla. 2013) (citing *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,*476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986); *Reyher v. Equitable Life Assur. Soc. of U.S.,* 900 F.Supp. 428, 430 (M.D.Fla.1995); *Sussman v. Salem, Saxon & Nielsen, P.A.,* 153 F.R.D. 689, 694 (M.D.Fla.1994)).  Here, it is clear also that there is a mistaken view of the law to claim Ms. McNeill contracted to not say negative truthful comments, when on the face of the record she only contracted to not say "defamatory or disparaging" remarks, which must relate to "unfair castigation."

(2) all statements "cast in a negative light" are not *absolutely immediately* disparagement per law even without the additional required analysis of whether the statements are "an *unfair* castigation or detraction."

Ms. McNeill agrees with the finding (limited to what is quoted) that Ms. McNeill "did not explicitly say Plaintiff, or its investors and associated third parties, owned Hard Candy". [ECF No. 271 at 18]. Ms. McNeill objects to the finding that Ms. McNeill's statements "clearly cast" HK owners in a negative light by Ms. McNeill making *truthful* and objectively fair statements about events that have occurred and are supported by the record (affidavits, pleadings[4], declarations, expert reports).[5]

Ms. McNeill objects to the finding that her statement that "her 'company was taken from me by the owners of [H]ard [C]and is analogous to the statements accusing Head Kandy of stealing her company which the Court found justified the preliminary injunction in the first place", therefore automatically require sanctioning. [ECF No. 271 at 19] (citing ECF No. 133 at 31).

First of all, the record supports Plaintiff's taking of the Company by Ms. McNeill was improper. HK has even at this point in time retracted nearly $500,000.00[6] from its initial claim of funds allegedly fraudulently taken by Ms. McNeill. Despite this, HK continues to pursue its claims related to same, impliedly taking the position that its "taking" of Ms. McNeill's funds are valid. In the corporate world, and in the world in general, if a person does something *wrong* and the result in response is the person's loss of something (here membership interest), the general public does not absolutely or necessarily view that in a negative light at all. In fact, in many

---

[4] The Proposed Counterclaim, which is now a filed Counterclaim [ECF No. 268] is referenced in footnote 13 of the Report. [ECF No. 271 at 19].
[5] Or on which the Court did not allow testimony; therefore, it is an objectionable finding without opportunity to present testimony on same prior to sanctioning Ms. McNeill for statements which are and will be supported by evidence that they are certainly fair castigations.
[6] Contradicting HK's own Corporate Resolution which resulted in Ms. McNeill's loss of her 20% ownership in HK.

instances, the public frequently supports the taking from the wrongdoer.[7] For this reason, if HK maintains it is right in its claims, it cannot simultaneously and in good faith claim that objectively saying company membership interest immediately triggers a "negative" light or "negative" inference. This is not comparable to using the word stolen.[8] This is where Plaintiff is in a catch-22. Plaintiff wants to maintain it *rightfully* took the 20% membership interest from Ms. McNeill, but that by rightfully taking it, it is an act taken in a negative light. To construe it as a negative *must mean that HK wrongfully took the company*. If HK wants to admit it wrongfully took the company from Ms. McNeill, then a finding that sharing such taking with the public is "negative" could maybe, and only then, be found. However, HK is continuing to deny that it wrongfully took the 20% interest from Ms. McNeill.

Ms. McNeill also objects to stating supported statements of "retaliation and sexual harassment" cannot be disparagement as found as a finding by Magistrate Judge Strauss. [ECF No. 271 at 19-20]. Ms. McNeill also objects to Magistrate Judge Strauss' findings regarding the witness' reaction to any statements without taking testimony on same, including that the influencer had no trouble making connections [ECF No. 271 at 20]. Ms. McNeill also objects to the finding that Ms. McNeill "knew her statements, and other information to which she was pointing the influencer, would show Plaintiff's owners in a negative light" as no testimony was taken as to intent or as to any item.

## **CONCLUSION**

---

[7] For example, if a person was found criminally guilty of stealing funds from a trust, objectively, no one would find the statement that management of that trust was taken away from that person because it would be seen by the public (or objectively) to be the right move or result.

[8] Ms. McNeill does not conceded this fair statement as it occurred as disparagement, however, for purposes of the findings in the Report, Ms. McNeill herein is merely distinguishing why it cannot be found automatically that the two statements are "analogous" for warranting sanctions.

Wherefore, Ms. McNeill respectfully requests that the Court not adopt the above-referenced findings of fact and conclusions of law and, instead, enter an order consistent with the arguments set forth herein, the record before the Court and all applicable laws.

DATED this 12th day of July, 2024.

Respectfully Submitted,

By: /s/ Laura E. Burgess
Laura E. Burgess, Esq.
Florida Bar No. 0105073
L.E. Burgess P.A.
5966 S Dixie Highway, Suite 300
Miami, FL 33143
Tel.: 305.942.8044
Alt. Tel.: 713.818.5055
laura@leburgesslaw.com

and

By: /s/ Antonio L. Converse
Antonio L. Converse, Esq.
Admitted *Pro Hac Vice*
Converse Law Group, P.C.
600 17th Street, Suite 2800 South
Denver, CO 80202
Tel: 303.228.9471
anthony@converselawgroup.com

and

By: /s/ Jennifer A. Tiedeken
Jennifer A. Tiedeken, Esq.
Admitted *Pro Hac Vice*
Massey, Kelly & Priebe, PLLC
125 S. Howes Street, Ste 1100
Fort Collins, CO 80521
Tel: 970.482.5058
jennifer@fortcollinslaw.com

**Counsel for Kayla McNeill**

17

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and through that filing served all counsel of record.

*/s/ Laura E. Burgess*