**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-CV-60345- BECERRA/STRAUSS

HEAD KANDY, LLC,

      Plaintiff/Counterclaim Defendant,

v.

KAYLA MARIE MCNEILL,

      Defendant/Counterclaimant/Third-Party Claimant,

JEROME FALIC and JONATHAN ROSENBAUM,

      Third-Party Defendants.

_____/

<u>**RESPONSE AND OPPOSITION BRIEF TO PLAINTIFF'S MOTION TO DISMISS
KAYLA MCNEILL'S FAC OR, IN THE ALTERNATIVE, MOTION FOR A
MORE DEFINITE STATEMENT OR, IN THE ALTERNATIVE,
MOTION TO STRIKE**</u>

      Defendant, Kayla McNeill ("Ms. McNeill"), by and through her undersigned counsel, submits her response the to Plaintiff's Motion to Dismiss Kayla McNeill's First Amended Counterclaims [ECF No. 337] ("FAC") or, in the Alternative, Motion for a More Definite Statement, or, in the Alternative, Motion to Strike [ECF No. 360] (the "Motion").

**INTRODUCTION AND BACKGROUND**

      Head Kandy, LLC ("HK") claims that Ms. McNeill's founded and well-pled ("FAC") is an "attempt to deflect the focus of this litigation," notably failing to mention that HK's filing of its Complaint in the Southern District of Florida  was filed the day after learning about Ms. McNeill's first-in-time filed lawsuit in Colorado, as well as the Florida Commission on Human Relations' determination finding Ms. McNeill had established a prima facie case of harassment and retaliation on several grounds and granting her the right to bring her lawsuit in this forum (a prerequisite to

filing), as well as all of the other claims Ms. McNeill has against HK. There is no deflection on the part of Ms. McNeill, only Ms. McNeill consistently and meritoriously asserting her rights and large amount of damages she has incurred as a result of HK's inappropriate and unlawful actions.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as to, to 'state a claim to relief that is plausible on its fact.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint/counter-claim, and the plaintiff/counter-plaintiff receives the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678. Dismissal is proper under Rule 12(b)(6) only "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Dawn v. Nexdine Hosp'y,* 2024 U.S. Dist. LEXIS 88099, at \*4 (S.D. Fla. May 15, 2024). As such, *arguendo*, should the Court find that Ms. McNeill's pleading is not a "shotgun pleading", the appropriate remedy is to "dismiss or strike the shotgun pleading and give the plaintiff an opportunity to replead". *Weiland* at 1321 ftn. 10.

## ARGUMENT

## I.   MS. MCNEILL's COMPLAINT IS NOT AN IMPERMISSIBLE SHOTGUN PLEADING.

Pleading is pure statement; just as much as a letter addressed to your sweetheart or your wife or your friend. The plaintiff complains that he has such a case, and he tells you what it is. The defendant says either that that is not so, or something else is so, and he makes his statement. The true rule ought to be this: the statement ought to consist precisely of what has to be [proven]. It ought not to fall short, or go beyond.

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d. 1313 -1314 (11the Circ. 2015).

(*quoting* Logan Bleckley, "Pleading," 3 Ga. Bar. Assoc. Report 40, 41-42 (1866)). While the ideal

in pleading is stated above, the ideal is not required "to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6); *see Weiland*, 792 F.3d. at 1314. "A court will not grant a motion to dismiss unless the plaintiff fails to allege **any facts** that would entitle the plaintiff to relief." *Id.* (emphasis added). Ms. McNeill's FAC consists of over 60 pages of allegations which support, in detail, each claim. Ms. McNeill has not asserted every claim against every party to this litigation—rather, she has meticulously determined which claims she has against which parties and has asserted them with a level of specificity well beyond what is required. In addition, Ms. McNeill has filed a Motion for Leave to Amend ("Motion to Amend") to file a Second Amended Answer and Counterclaims ("SAC") contemporaneously herewith (proposed amended is Exhibit A to the Motion to Amend) that adds even further detail obtained through discovery. HK complains Ms. McNeill's Counterclaims are too lengthy and "shotgun" and, at the same time, complains Ms. McNeill has not alleged enough. Ms. McNeill is prepared to amend, again, to address HK's feigned concerns and to drop a party and three claims from this case in order to streamline (and HK has, to date, opposed the request to amend, as set forth in the Motion to Amend).

As for the concerns stated by HK that the Amended Counterclaim would "wast[e] scare judicial resources" or "inexorably broaden[] the scope of discovery", these arguments are baseless. The pending Motions to Dismiss were filed at the close of fact discovery (pending Ms. McNeill's request to reopen fact discovery based on several reasons that have nothing to do with the Amended Answer and Counterclaims). Ms. McNeill has already responded to ten (10) voluminous requests for production from HK and three sets of interrogatories.  Also, over a dozen depositions have been taken in this matter while allegations and nature of the causes of action were known by all Parties, HK has conducted extensive discovery on Ms. McNeill's claims.   HK has also had the opportunity to depose Ms. McNeill twice and ask her about any parts or portions of her Counterclaims.  As such, there is absolutely no "fatal[] defective[ness]" of the pleadings.

## MS. MCNEILL'S CLAIMS I THROUGH XXII STATE A CAUSE OF ACTION.

Ms. McNeill's Counterclaim meets the *Iqbal/Twombly* standard in its entirety.

### A.   Ms. McNeill's Contractual and Quasi-Contractual Claims (Counts 1, 2, 3, 4, and 11) all State a Cause of Action.

1.   *Ms. McNeill states a valid cause of action for Breach of Contract, Employment Agreement against HK.*

In order to adequately plead a breach of contract action Ms. McNeill must plead "(1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).  Ms. McNeill more than sufficiently alleged this in Count I. FAC at ¶¶ 90, 91(a) – (h), 94.  HK does not contest that the unaddressed provisions and breaches of Count I, i.e. ¶ 91 (c), (d), and (e). Motion, at p. 6 and the claim must survive. As for the purported remaining allegations contested by HK, the basis cited by HK fail as a matter of law and HK's Motion to Dismiss as to same must be denied.  First, HK states that Ms. McNeill's allegations are not properly based on any contractual provision.  Despite the Employment Agreement *clearly calling* for bonuses to be paid to Ms. McNeill. HK cites to incomplete phrases to take the unfounded position that somehow HK is not obligated to comply with the terms of the Employment Agreement, stating that "[W]hat is not in the contract cannot be the basis of a breach of contract action." Motion at p. 6.

An entire section of the Employment Agreement, Section 3 (P. 3 of the Agreement) is dedicated to "**Compensation and Benefits**", including section (b) **"Annual Bonus**." Specifically, the section on bonus reads:

> (b) ***Annual Bonus.***  In addition to the Base Salary described above, the Executive [Ms. McNeill] shall be eligible to receive an annual bonus at the end of each fiscal year (the "**Annual Bonus**") equal to ten percent (10%) of the amount by which the Company's Net Profit for each such year exceeds the Company's Net Profit for the immediately preceding year; <u>provided</u>, that, for purposes of

calculating the Annual Bonus for the fiscal year ended December 31, 2018, the parties shall assume that the Net Profit of the Company for the fiscal year ended December 31, 2017 was Nine Hundred Thousand Dollars ($900,000).

Section (3)(b) of the Employment Agreement further directs:

(b)  The Annual Bonus shall be paid to the Executive within ten (10) business days after the date on which the Managing Member receives the Company's audited financial statements for the applicable fiscal year and determines whether and to what extent the Annual Bonus has been achieved.

The contract clearly details an *annual* bonus and *annual* bonus analysis required to be undertaken by HK in order to provide Ms. McNeill an *annual* bonus.  Ms. McNeill has pled that HK did not determine such bonuses for the years of 2018, 2019, 2020, 2021 and 2022 FAC at ¶ 91(b).  Clearly failing to obtain financials related to the bonus and determine the annual bonus for Ms. McNeill over multiple years is a breach of the Employment Agreement, and properly alleged as same.  To seek dismissal on the argument that the Employment Agreement "does not set forth a date by which Head Kandy was required to 'obtain audited financial statements' or 'determine Ms. McNeill's bonuses," ignores that the contract references an *annual* bonus.

As for Paragraph 91(f) through (h), these breaches are also properly alleged against HK. HK is improperly attempting to get into a factual analysis of challenging the meaning of "reimbursements" under Section 4(c) of the Employment Agreement.   In no way does the Employment Agreement limit "reimbursements" owned under Section 4(c) to "monthly gap insurance premiums" as argued by HK in footnote 7 of its Motion.  Not only would this require an improper factual analysis as this stage in the litigation, to narrow the definition of "reimbursements" under the Employment Agreement without express reason would be rewriting the express terms of the contract.  For these reasons, Count I must survive in its entirety and this Honorable Court must deny HK's Motion as to Count I.

      2.   *Ms. McNeill states a valid cause of action for Breach of Contract, Amended and Restated Limited Liability Company Operating Agreement, against HK.*

HK as HK is trying to have its cake and eat it too.  Despite Ms. McNeill arguing at length for why HK was never a registered Florida entity with a valid certificate of good standing in Florida for the relevant time periods alleged in HK's Complaint and allegations [ECF Nos. 19, 30, and 34], the Court took jurisdiction in Florida over Ms. McNeill relying upon affidavits filed by HK claiming an "office" in Florida [ECF No. 151].  For example, the Court relied upon an affidavit by Ryan Thompson [ECF 41-1, ¶ 7; ECF No. 151, PP. 14-15] which stated there was a "HK LLC's accounting department located in Hollywood, Florida" dating back to June 2018.

Now HK is trying to separate its claims, claiming Ms. McNeill must sue it in the state in which HK has tried to distance itself in order to take jurisdiction over Ms. McNeill in Florida.  HK sued Ms. McNeill for allegations of breaches of fiduciary duty as, specifically, a 20% owner, her obligations of which are governed by the Operating Agreement. [ECF No. 187, ¶ 140].  Moreover, in Paragraph 150 of its Second Amended Complaint, HK alleges "McNeill's breaches of her fiduciary duty caused damage in Florida, through the loss of sales revenue received in Head Kandy's Florida bank account, through harm to the assets and good will of Head Kandy, **a Florida citizen**, and through harm to the value of the investment of Head Kandy Members who are citizens and residents of Florida.   HK has forum-shopped this entire litigation to apply as much pressure on Ms. McNeill as possible, to have her expend more resources and put her in a forum away from her home and where she worked.  For example, HK got the case in Colorado dismissed *on the basis that it had to be arbitrated.*  HK never filed arbitration and brought its claims in Florida, forcing Ms. McNeill's responsive Counterclaims into Florida, even though they belong in Colorado and HK never followed through on the grounds it used to dismiss the Colorado action.

The Jurisdiction clause cited by HK in the Operating Agreement allegedly governs "any suit, action, or proceeding between the parties arising in whole *or in part* under or in connection with this Agreement…." [ECF No. 362-1, Section 12.4(b).]  The allegations upon which HK brings its suit against Ms. McNeill clearly arise in part or in connection to the Operating Agreement of HK under which Ms. McNeill's 20% ownership was addressed.  Minimally, HK waived its right to enforce this provision by electing to sue in Florida on actions and processing arising our of or connecting to the Operating Agreement just because its managing members live in Florida.

3.  *Ms. McNeill states a valid cause of action for Breach of Contract, Loan Agreement, against HK, and a valid cause of action for Breach of Contract, Forklift Lease, against HK.*

Ms. McNeill has stated a valid cause of action for Breach of Contract on the Loan Agreement against HK and Breach of Contract on the Forklift lease. HK cannot dismiss a validly pled causes of action for breach of the Loan Agreement or breach of the Forklift Lease against HK based on Statute of Frauds as the allegations are pled.

"Where no time is agreed on for the complete performance of a contract, if it clearly appears, from the object to be accomplished and the surrounding circumstances, that the parties intended that it should extend for a longer period than a year, it is within the statute of frauds…" *Lundstrom Realty Advisors, Inc. v. Schickedanz Bros.-Riviera Ltd.*, 856 So. 2d 1117, 2003 Fla. App. LEXIS 15719 (Fla. 4th DCA 2003); *see also* § 725.01, Fla. Stat. *See Conner, I v. Walt Disney Co.*, 827 So. 2d 318, 319 (Fla. 5th DCA 2002) ("Generally, the statute of frauds is an affirmative defense that cannot be raised in a motion to dismiss unless the complaint affirmatively shows the conclusive applicability of such defense to bar the action.")

HK cites *Ocwen Loan Servicing, LLC v. Delvar*, 180 So. 3d 1190, 1193-94 (Fla. 4th DCA 2015) in support of its argument, but this was not a 12(b)(6) decision, and the Court did not make a determination as to the applicability of the statute of frauds at the motion to dismiss stage.

While generally,

> [a] lease contract is not enforceable by way of action or defense unless: (a) In a lease contract that is not a consumer lease, the total payments to be made under the lease contract, excluding payments for options to renew or buy, are less than $1,000; or (b )There is a writing, signed by the party against whom enforcement is sought

Fla. Stat. 680.201(1);

There are exceptions to the rule pursuant to Fla. Stat. 680.201(4) in which,

> [a] lease contract that does not satisfy the requirements of subsection (1), but which is valid in other respects, is enforceable:  (b) if the party against whom enforcement is sought admits in the party's pleading, testimony, or otherwise  in court that a lease contract was made, but the lease contract is not enforceable under this provision beyond the quantity of goods admitted; or (c) With respect to goods that have been received and accepted by the lessee.

Fla. Stat. 680.202 allows the use of "parol or extrinsic evidence" to explain or supplement a writing by: (1) "course of dealing or usage of trade or by course of performance; and (2) By evidence of consistent additional terms." "Under Florida law, '[a] contract may be binding on a party despite the absence of a party's signature.'" *Access Telecom, Inc. v. Numaxx World Merchs., Ltd. Liab. Co.,* No. 1:13-CV-20404-, 2013 U.S. Dist. LEXIS 199860, at *8 (S.D. Fla. Nov. 25, 2013). In *Access Telecom, Inc.,* the court rejected the argument that a forum selection clause was unenforceable because it was not signed, or incorporated into a signed document. *Id*. at 9.

As indicated in the statute, there are other indicia of assent to a contract such as performance, and in the case of goods or other types of personal property, offer and acceptance of that property pursuant to the terms of lease agreement. *Access Telecom, Inc.* at 8 ("*noting* that party assented to the contract by performing under the contract."); *Consol. Res. Healthcare Fund I, Ltd.*

*v. Fenelus*, 853 So. 2d 500, 503-04 (Fla. Dist. Ct. App. 2003)).  The rationale stated in these cases reflects the practical need to enforce parties' agreements by reviewing all evidence of that agreement.  Since the "object of a signature is to show mutuality or assent," absent a signature, courts will find "other ways" to determine assent. *Access Telecom,* at *8 (S.D. Fla. Nov. 25, 2013).

    4. *Ms. McNeill states a valid cause of action for Unjust Enrichment against HK.*

  "Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Fla. Power & Light Co. v. Nuclear Energy Inst., Inc.*, No. 18-cv-80118, 2018 U.S. Dist. LEXIS 80042, at *15 (S.D. Fla. May 10, 2018) (citing *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005) (citation omitted)).  Ms. McNeill has pled a cause of action for unjust enrichment against HK.

  Rule 8(d)(2) of the Federal Rules of Civil Procedure provides that "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2); *see Fla. Power & Light Co. v. Nuclear Energy Inst., Inc.*, No. 18-cv-80118, 2018 U.S. Dist. LEXIS 80042, at *15.  Additionally a party "may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3); *Id.*   "Thus, a plaintiff may plead inconsistent or alternative theories of relief." *Manicini Enterprises, Inc. v. Am. Exp. Co.*, 236 F.R.D. 695, 699 (S.D. Fla. 2006); *see also Corp. Co. of Miami v. Great Lakes Transportation Holding LLC*, No. 12-80502-CIV, 2012 U.S. Dist. LEXIS 192305, 2012 WL 12868722, at *6 (S.D. Fla. Dec. 19, 2012) ("While Plaintiff's breach of contract claim ultimately cannot survive alongside the unjust enrichment ... claim[], alternative pleading practice is acceptable for purposes of this early stage of the proceedings.").  *Id.* at 17. The law is clear Ms. McNeill may maintain breach of contract and unjust enrichment claims simultaneously.

HK also argues (misrepresenting the terms of that certain Asset Purchase Agreement between the parties ("APA")) that Ms. McNeill's "Kandy Life with Kayla" Facebook is governed by the APA, so she cannot maintain a claim for unjust enrichment. Motion at 260, ¶. 9.  HK goes beyond Ms. McNeill's pleading and delves into factual issues that, at the end of the day, do not matter, as Ms. McNeill can maintain both claims in the alternative. However, HK's arguments are also demonstrably false by review of the agreements it relies on, and require determination of the  disputed meaning of several contracts.   For example, HK argues Ms. McNeill's personal social media page is covered under the definition of "Works" under the Employment Agreement. On its face the Employment Agreement does not define "Works" to include other items over which Ms. McNeill has ownership. Per HK's reading of the contract terms, which it urges this Court to adopt wholesale despite Ms. McNeill's allegations, all of Ms. McNeill's personal possessions could be considered "Works." Contract interpretation issues that rely on facts are not proper to decide on a Motion to Dismiss and Ms. McNeill is entitled to both her breach of contract and unjust enrichment claims based on the facts plead in her FAC (and SAC, should she be entitled to file it).

### B.  Ms. McNeill's Theft and Conversion Claims (Counts 5, 6, and 10) all State a Cause of Action.

HK moves to dismiss, or in the alternative, move for a more definite statement regarding Ms. McNeill's claims for Civil Theft and Conversion.  HK argues, but without adequate support, that: Ms. McNeill does not plead any defined and quantifiable interest in the property; does not plead damages separate from her contractual claims; and does not allege "felonious intent." Motion at pp. 9-10.

HK's first stated issue with Counts 5, 6, and 10 of Ms. McNeill's Counterclaim is that the property alleged stolen or converted is not "adequately defined." *Id.* at ¶9.    The stolen and

converted property by HK is absolutely adequately defined as to each addressed item: (1) Ms. McNeill's Personal Social Media Accounts"; (2) "Social Media Content"; (3) Forklift; and (4) her 20% Ownership Interest in HK.  FAC at ¶¶ 37-39, 47-50, 59-74, 75-84. It is not "nebulous" to specifically identify her 20% Ownership Interest in HK, nor to specifically identify Pages by name and number.  FAC at ¶ 77 (identifying the stolen Facebook page by Page ID 1642077422564196].  Ms. McNeill has also pled quantifiable injuries.  FAC at ¶¶ 38, 55, 56, 69, 70, 75, 124.

HK incorrectly asserts that for property to be taken under the Civil Theft Statute, it must have a *physical location*.  Motion at p. 10.  Defendant likens Ms. McNeill's property rights in her social media account and its content to some "vague, amorphous, and presently unrealized interest," citing *Balcor Property Management, Inc. v. Ahronovitz*, 634 So. 2d 277, 280 (Fla. 4th DCA 1994).  The *Balcor* case only reconfirms Ms. McNeill's rights to sue under the allegations she has pled, reconfirming that "property is defined in the statute **as anything of value and includes "rights, privileges, interests and claims."** *Id.* (**emphasis added**).  Ms. McNeill's legal 20% ownership interest in HK, the forklift, her personal Facebook page, and her social media content are all of value and are all realized property interest held by Ms. McNeill, intellectual or otherwise.

Courts are well-aware that with the advent of social media and digital communication "an intellectual property right" has emerged in an individual's "persona and likeness" and his/her ability to "control" and have dominion over the use of "his or her identity."  *See, Taylor v. Trapeze Mgmt., LLC*, No. 0:17-cv-62262-KMM, 2018 U.S. Dist. LEXIS 50972, at *23 S.D. Fla. ( Mar. 26, 2018) (finding "Defendants' unauthorized use of Plaintiffs' images and likenesses is sufficient to state a claim for conversion at this stage in the proceedings").   While the advent of social media and technology may have inadvertently vested social media influencers with a burgeoning

intellectual property right that may be considered novel, it is by no means unquantifiable.  As set forth above, Ms. McNeill's has adequately plead that her ownership in the Page is not a part of the assets she sold in pursuant to the APA, particularly as it was not even in existence yet at the time of the sale of Lashed Out, LLC.  FAC at ¶ 14, 16. Thus, pursuant to Ms. McNeill's FAC, which must be accepted as true for purposes of a Motion to Dismiss, Ms. McNeill has more than adequately plead the Page was stolen from her and is not subject to any contractual agreement between the parties.

Finally, Defendants assert as grounds for their Motion to Dismiss that Ms. McNeill fails to allege "the requisite felonious intent" on the part of Defendants.  Defendants allege that while Ms. McNeill uses the term "felonious intent" in stating her claim for civil theft, her allegations are conclusory.  This claim is also without merit as "Florida law does not require the pleading of an element of felonious intent in order to state a civil theft claim." *Krupa v. Platinum Plus, LLC*, No. 8:16-cv-3189-T-33MAP, 2017 U.S. Dist. LEXIS 39261, at *21-22 (M.D. Fla. Mar. 20, 2017); *Taylor*, No. 0:17-cv-62262-KMM, 2018 U.S. Dist. LEXIS 50972, at *23 (same).  Notwithstanding, Ms. McNeill has pled allegations which support allegations of felonious intent. FAC at ¶¶ 37-39, 47-50, 59-74, 75-84. HK admits it is in fact pled, and second, Florida law does not require plaintiffs to plead specific language of felonious intent when asserting a civil theft claim.  *See Taylor v. Trapeze Mgmt., LLC*, No. 0:17-cv-62262-KMM, 2018 U.S. Dist. LEXIS 50972, at *19.

Finally, HK argues that Ms. McNeill failed to allege a wrongdoing separate and distinct from an alleged breach of contract. This is inaccurate.  FAC at ¶¶ 37-39, 47-50, 59-74, 75-84; *see also* [ECF No. 72] (stating specifically that "Mr. Falic, and HK, through Mr. Falic's sole actions, engaged in an intricate sophisticated scheme of deceit and theft in order to divest Ms. McNeill of her Ownership Interest without payment. The scheme involves, but is not limited to, unilaterally passing the Resolution without other member input (when a majority vote was required)…"); *see*

*also* [ECF No. 73] ("Mr. Falic and HK, through Mr. Falic's actions, converted Ms. McNeill's Ownership Interest into interests for the other members of HK for their own personal benefit through fraud and false pretenses.") *See Woods v. Brian Gaines & Lrmp Corp.*, 2022 Fla. Cir. LEXIS 3186, \*20 (citing *Gersh v. Cofinan*, 769 So. 2d 407 (Fla. 4th DCA 2000) ("Where the property at issue is also the subject of a contract between the parties, a civil theft claim requires additional proof of 'an intricate sophisticated scheme of deceit and theft'") but is *not barred* by the existence of a contract itself. *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("This is not to say that there can never be a claim for civil theft or conversion if there is a contractual relationship between the parties, but rather that the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract."). Ms. McNeill has specifically alleged that, due to the offset HK employed outside of the Operating Agreement, HK stole her membership interest from her, and dependent upon Court and jury decision, could result in separate and distinct amount of damages. Ms. McNeill has adequately pled how the civil theft or conversion went beyond the contractual relationship between the parties, to the extent applicable.

The arguments supporting the civil theft claim herein additionally apply to the adequacy of the pleading of the conversion claims, as "[a] claim for civil theft is "essentially a conversion in which the defendant acted with criminal intent." *Primerica Life Ins. Co. v. Guerra*, 2016 WL 10591985, at \*2 (S.D. Fla. Dec. 29, 2016). Florida law requires that a plaintiff prove that a defendant "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [plaintiff]'s property with (3) 'felonious intent' (4) either temporarily or permanently to (a) deprive [plaintiff] of its right to or a benefit from the property or (b) appropriate the property to [defendant]'s own use or to the use of any person not entitled to the property." *Taylor v. Trapeze Mgmt., LLC*, No.

0:17-cv-62262-KMM, 2018 U.S. Dist. LEXIS 50972, at *19 (citing *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009)). Ms. McNeill has adequately pled conversion.

**C. Ms. McNeill's Colorado Wage Act Claim (Count 7) States a Cause of Action.**

Ms. McNeill has adequately pled a Colorado Wage Claim act. Ms. McNeill is an employee and HK is an employer. *See,* Response to Falic Motion to Dismiss.

**D. Ms. McNeill's Privacy Tort Claims (Counts 8 and 9) all State a Cause of Action.**

Ms. McNeill adequately pleads her Privacy Tort Claims. HK's sole argument to dismiss Ms. McNeill's adequately plead Privacy Tort Claims, similar to the claims discussed above, is that, somehow, Ms. McNeill's image and likeness was included in the "works made for hire" in Section 8(a) of the Employment Agreement in perpetuity. First, Ms. McNeill adequately pleads the Employment Agreement does not say anything of the sort. In reality, nothing in Section 8(a) grants HK an exclusive, never-ending right or license to utilize Ms. McNeill's likeness and image for profit and gain or otherwise, including her face and signature. To read this into the contractual provision at this stage of the pleadings would not only be procedurally incorrect but legally incorrect, as Section 8(a) makes *no reference to this whatsoever*, as adequately plead by Ms. McNeill.

Under Section 540.08 of the Florida Statutes, "[n]o person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent." Fla. Stat. § 540.08 (2007); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006) ("The Florida legislature enacted section 540.08 in order to expand the remedies available under the common law right against misappropriation.") Ms. McNeill has adequately alleged that HK has done exactly what the statute prohibits—use her images and likenesses for a

commercial or advertising purpose without her consent. Section 8(a) of the Employment Agreement does not on its face or otherwise contradict that nor provide any grounds for dismissal of her claims. FAC at ¶¶ 85-86, 137-139, 141-143]

The common law protection against misappropriation of likeness is substantially the same as the statutory right of publicity under section 540.08 of the Florida Statutes. *Almeida v. Amazon, com, Inc.,* 456 F.3d 1316, 1320 n. 1 (11th Cir. 2006) (recognizing that the statute permits a party to proceed under available common law invasion of privacy theories). *Taylor v. Trapeze Mgmt., LLC*, No. 0:17-cv-62262-KMM, 2018 U.S. Dist. LEXIS 50972, at *15. Thus, those claims should also survive a motion to dismiss.

### E.  Ms. McNeill's Emotional Distress Claims (Counts 12, 13, and 14) all State a Cause of Action.

Cognizant of the law's prohibitions against making "'naked assertion[s]' devoid of 'factual enhancement'", Ms. McNeill details the serious and disturbing allegations constituting her claims for Intentional Infliction of Emotional Distress ("IIED") and Extreme and Outrageous Conductagainst Defendants HK, Mr. Falic. [1]  *Weiland* at 1330.  Ms. McNeill's FAC provides ample examples to support her allegations regarding Mr. Rosenbaum's sexual harassment, describing his comments, actions, and capricious, and volatile behavior towards her and other employees and HK's and Mr. Falic's failure to adequately prevent and remedy such actions.  Mr. Rosenbaum was a manager and HK is charged with his actions as if they were its own. Further, in chronicling Mr. Rosenbaum's, HK's and Mr. Falic's conduct and statements towards her, Ms. McNeill paints a graphic picture of the hostile environment that existed and persisted, and the injury inflicted upon her on a daily basis over a period of months.  Ms. McNeill's narrative indicates the hostile environment created both by Mr. Rosenbaum's, HK's and Jerome Falic's

---

[1] Ms. McNeill has voluntarily agreed to dismiss her claims against Mr. Rosenbaum and her Negligent Infliction of Emotional Distress claims to streamline this case, as set forth in the Motion to Amend.

actions and inaction.   Conversely, Defendants, Mr. Falic and HK move to dismiss these allegations, alleging the "conduct" concerns non-parties to this case, while also complaining of "vague and conclusory references of alleged harassing and discriminatory conduct." Motion at n. 5.

"The viability of a claim for intentional infliction of emotional distress is highly fact-dependent, and turns on the sum of the allegations in the specific case at bar." *Vernon v. Med. Mgmt. Assocs.*, 912 F. Supp. 1549, 1558 (S.D. Fla. 1996).  Accordingly, Courts have found that a Plaintiff has succeeded on a claim for intentional infliction of emotional distress ("IIED") in various circumstances. *Stockett v. Tolin,* 791 F. Supp. 1536, 1556 (S.D. Fla. 1992), (holding "that cumulative sexual harassment, including repeated groping and kissing, offensive touching and other physical abuse and attacks, as well as repeated verbal licentiousness, could be viewed cumulatively by an ordinarily prudent person as outrageous"); *Urquiola v. Linen Supermarket, Inc.,* 1995 U.S. Dist. LEXIS 9902, 1995 WL 266582 (M.D. Fla. 1995) (denying "defendant's motion to dismiss after noting that the plaintiff's allegations 'went beyond mere harassment or verbal abuse.'")) The alleged conduct included constant sexually explicit, demeaning and vulgar language accompanied by repeated acts of kissing, groping and other physical abuse). Finally, in *Albert v. National Cash Register,* the court denied a motion to dismiss after explaining that the plaintiff's allegations established a "pervasive pattern of constant harassment" based on her gender, race and religion.  874 F. Supp. at 133.

In *Albert*, the Court cautions that while "[l]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities….Plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."  The Court further recognized that since acts constituting extreme and outrageous conduct are a matter of law, it is **premature**

to dismiss an IIED claim where "Plaintiff has alleged a pervasive pattern of constant harassment on the part of Defendants." *Id.* at 1331.  The Court reasoned that while "[t]his may, or may not be distinguishable from the 'petty indignities' and 'occasional acts' or oppression that would not be actionable under this theory of relief . . .  determining as a matter of law whether Defendants' alleged conduct is actionable for intentional infliction of emotional distress" without any record evidence such as the Defendants answers, would be premature.  *Albert v. Nat'l Cash Register Co.,* 874 F. Supp. 1328, 1331 (S.D. Fla. 1993).

"Extreme and outrageous conduct is defined as conduct that is 'beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Dawn v. Nexdine Hospital*,  2024 U.S. Dist. LEXIS 88099 at 10 (S.D. Fla. May 15, 2024). Rosenbaum approaching Ms. McNeill and "standing in front of her completely naked and front-facing Ms. McNeill, showing his penis" goes "beyond all possible bounds of decency" and is not a "petty indignity" as evidence by Ms. McNeill's emotional outburst in running out of the building into the safety of her car in the parking lot and sobbing uncontrollably. *Albert supr*a. Moreover, rather than go back into the building and risk running into Mr. Rosenbaum again, Ms. McNeill texted Ms. Culp to come outside and join her in her car in order to discuss with Ms. Culp the preceding events.  Mr. Rosenbaum, in addition to his full-frontal nudity, had a pervasive pattern of constantly making harassing comments to Ms. McNeill on a daily basis, whether in-person or by phone or text, which HK and Mr. Falic condoned and promoted. Ms. McNeill's severe emotional distress caused by Defendants' extreme and outrageous intentional conduct are detailed in pp. 20-48 of the FAC. In addition, Ms. McNeill details the allegations that give rise to her claims under the Florida Civil Rights Act in explicit and granular detail in her Claims for Relief thereunder. FAC Claims for Relief 18-22.

### F.  Ms. McNeill's Defamation Claim (Count 17) States a Cause of Action.

Ms. McNeill pleads a valid cause of action for Defamation against HK.  HK's argument to attempt to dismiss Count 17 is merely that her allegations are "conclusory" Motion at p. 18] leaving out that Ms. McNeill specifically pleads in Paragraph 113 of the Amended Counterclaim specific examples of the falsely accused "illicit business practices" including: "embezzling company funds, mistreating employees, unauthorized use of a company credit card, engaging in deceitful marketing practices and mishandling of corporate records."  FAC at ¶ 113]. Ms. McNeill has met the obligations cited to in fact by HK to allege "certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred."  *Fowler v. Taco Viva, Inc.*, 646 F. Supp. 152, 157-`58 (S.D. Fla. 1986).  All three of those categories are present in Ms. McNeill's Amended Counterclaim.

### G.  Ms. McNeill's FCRA Claims State a Cause of Action.

#### 1.  *The claims are not time barred.*

Pursuant to *Amtrak v. Morgan*, 536 U.S. 101 (2002), "[a] hostile work environment claim was comprised of a series of separate acts that collectively constituted one 'unlawful employment practice;'" therefore, it was immaterial "that some of the component acts of the hostile work environment fell outside the statutory time period,  . . . provided that an act contributing to the claim occurred within the filing period." *Amtrak* at 107. The Supreme Court's reasoning highlights Ms. McNeill's detailing of Mr. Rosenbaum's behavior as his actions are not viewed by the Court in isolation, but rather in the context of his whole course of conduct.  *Figueroa v. P.G. Sec., Inc.*, 2020 U.S. Dist. LEXIS 98413, at *17 (S.D. Fla. June 3, 2020) (stating "evidence of harassment is considered both cumulatively and in the totality of the circumstances.")

The Court further noted that "[h]ostile work environment claims are different in kind from discrete acts because their very nature involves repeated conduct"; hence, the use of the term

"practice" describing the conduct. As further detailed by the Court, "'unlawful employment practice' cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years." *Amtrak* at 106. Hence, Defendants claim that Ms. McNeill's FCHR's claims are time barred are without merit, as corroborated by the FCHR findings, which specifically determined that Ms. McNeill's claims were timely asserted.

1.  *The claims do not fail to state a claim.*

The Florida Commission on Human Relations ("FCHR" or "Commission"), in its analysis of Ms. McNeill's claims not only adopts, but also specifically references the U.S. Supreme Court's holding in *Amtrak*.  Further, the Commission not only found Ms. McNeill's complaints of discrimination and retaliation to be timely, but also determined that Ms. McNeill "proved a prima facie claim of harassment" relying on the Supreme Court's rationale.  [ECF No.360-1]. Specifically, the FCHR found that Ms. McNeill "proved a prima facie claim" of her complaints of discrimination based on (i) sex (female);" (ii) "based on age (37)";  (iii) "based on religion (Christian)", and that Ms. McNeill was (iv) "subjected to  sexual harassment." [ECF No. 360-1] Moreover, the Commission found that HK's "response to Complainant's [Ms. McNeill's] report of harassment were insufficient."  [ECF No. 360-1].

To prevail on a sexual harassment claim, a plaintiff must establish the following:

> (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic; (4) the harassment was severe or pervasive enough to affect the terms and conditions of her employment and/or create a discriminatory abusive working environment; and (5) a basis for holding the employer liable exists."

*Dawn v. Nexdine Hosp'y,* 2024 U.S. Dist. LEXIS 88099, at *6-7 (S.D. Fla. May 15, 2024) (quoting *Hulsey v. Pride Rests., LLC*, 367 F.3d 1238 (11th Cir. 2004).  Florida law requires that the harassment is "both subjectively and objectively hostile." *Id*. at 7. In order to assess whether

harassment is "objectively severe and pervasive", courts look to the following: (1) "the frequency of the conduct; (2) the severity of the conduct; (3)  whether the conduct was physically threatening and humiliating or just a mere utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance."  Ms. McNeill has alleged that Mr. Rosenbaum made comments to her and other staff members on a daily basis during the entire period of his employ, that she was clearly threatened by his behavior in choosing to confront her in her office completely nude, and that HK condoned Mr. Rosenbaum's behavior, had no policies or procedures in place to protect her, and is liable for his conduct as result of these and other actions. FAC at pp. 20-48, Claims for Relief 18-22.  Ms. McNeill's reaction in running out of the building sobbing, to the safety of her car, evidence that she viewed Mr. Rosenbaum's conduct as physically threatening. Furthermore, her comment to her co-worker, Amber, that Rosenbaum would have raped her "if her door had been shut" further corroborate the objective inference of threat established by Ms. McNeill's leaving the building and remaining in her car, even going as far as to call co-workers to her car, rather than return to the building and risk facing Mr. Rosenbaum again. HK's conduct in allowing Ms. McNeill to go harassment and abused unchecked, failing to protect her from such conduct, and ultimately responsible for the conduct as a result, undoubtedly interfered with Ms. McNeill's work performance. Mr. Rosenbaum was Ms. McNeill's direct supervisor and she had to interact with him on a daily basis. Ms. McNeill's attempts to avoid him-taking refuge in her car after he exposed himself to her, trying to avoid yoga with him, begging HK to do something about the harassment by reporting it to both Bryan Feldman and Jerome Falic, and HK not only doing notihng about it, but continuing to allow it to occur are all allegations beyond sufficient to support her claims. FAC at pp. 20-48.

Ms. McNeill has also sufficiently alleged harassment on the basis of religion and age, as determined by the FCHR and as plead in detail in her FAC at pp. 20-48.

Finally, the FCHR determined that "Complainant ["Ms. McNeill"] proved a prima facie claim of retaliation." [ECF No. 360-1].  The Commission, upon reviewing Ms. McNeill's detailed accounting analysis of her personal American Express card for business, found that "any personal purchases made on the card after 2018 were reimbursed by Complainant." [ECF No. 360-1]. Consequently, HK's claims that Ms. McNeill had "run the company into the ground" were "pretextual" and "Complainant proved a prima facie claim of retaliation." [ECF No. 360-1]. Ms. McNeill pleads in granular detail the harassment, her complaints thereof, and HK's retaliation, and she has more than met the burden to establish a prima facie case of each claim of harassment and retaliation she assets. FAC at pp. 20-48.

## CONCLUSION

For the reasons set forth herein, Ms. McNeill respectfully requests an order from this Honorable Court denying in full HK HK's Motion to Dismiss Kayla McNeill's FAC or, in the Alternative, Motion for a More Definite Statement, or, in the Alternative, Motion to Strike [ECF No. 360] and granting her such further and/or additional relief which the Court deems just and proper.

Dated this 1st day of October, 2024.

Respectfully Submitted,

By: */s/ Laura Burgess*
Laura E. Burgess, Esq.
Florida Bar No. 0105073
L.E. Burgess P.A.
5966 S Dixie Highway, Suite 300
Miami, FL 33143
Tel.: 305.942.8044
Alt. Tel.: 713.818.5055
laura@leburgesslaw.com

and

By: */s/ Antonio L. Converse*
Antonio L. Converse, Esq.
Admitted *Pro Hac Vice*
Converse Law Group, P.C.
600 17th Street, Suite 2800 South
Denver, CO 80202
Tel: 303.228.9471
anthony@converselawgroup.com

and

By: */s/ Jennifer A. Tiedeken*
Jennifer A. Tiedeken, Esq.
Admitted *Pro Hac Vice*
125 S. Howes Street, Suite 1100
Fort Collins, CO 80521
Tel: 970.482.5058
jennifer@fortcollinslaw.com

*COUNSEL FOR KAYLA MCNEILL*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2024, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF and through that filing served all counsel of record.

*/s/ Laura E. Burgess*