UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60345-BECERRA/STRAUSS

**HEAD KANDY, LLC,**

    Plaintiff,

v.

**KAYLA MARIE MCNEILL,**

    Defendant.

_____/

## ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Rule 11 Sanctions ("Motion") [DE 260]. The Honorable Jacqueline Becerra has referred the Motion to me to take all necessary and proper action as required by law. [DE 265]. I have reviewed the Motion along with the Response [267] and Reply [DE 273] thereto, and all pertinent portions of the record. For the following reasons, the Motion is **DENIED**.[1]

---

[1] I previously issued a Report and Recommendation [DE 271] regarding two motions to which this Motion relates: Plaintiff's Expedited Motion to Enforce the Preliminary Injunction and for an Order to Show Cause ("Motion to Enforce") [DE 199] and Defendant's Motion to Partially Vacate the Preliminary Injunction and Partial Motion to Dismiss ("Motion to Vacate"). [DE 214]. I addressed those matters through a Report and Recommendation because the Motion to Vacate related to the Court's order of injunctive relief – a matter excepted from those that a magistrate judge may "determine" under 28 U.S.C. § 636(b)(1)(A) – while the Motion to Enforce sought a finding of civil contempt – falling within 28 U.S.C. §636(e)(6)(B). The instant motion is not excepted from § 636(b)(1)(A), and thus is one that a magistrate judge may "determine." Moreover, it is not "dispositive of a party's claim or defense" for purposes of Federal Rule of Civil Procedure 72. Plaintiff's Motion does not specify what type of sanction it seeks. However, even if the Motion sought dispositive relief, "'if the magistrate judge does not impose a dispositive sanction,' then the order is treated as not dispositive under Federal Rule of Civil Procedure 72(a)." *Sosa v. Carnival Corp.*, No. 18-20957-CIV, 2018 WL 6335178, at *7 (S.D. Fla. Dec. 4, 2018) (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995)). Therefore, because I am not granting a dispositive sanction, an Order, subject to objections and review under Rule 72(a)'s "clearly erroneous or contrary to law" standard, is appropriate.

## BACKGROUND

Plaintiff and Defendant have been embroiled in this highly litigious case for more than a year-and-a-half. I have more fully summarized the facts and background information in previous reports and recommendations. *See* [DE 133, 271]. Consequently, I provide a briefer summary of facts germane to this Motion here.

On February 22, 2023, Plaintiff filed its initial Complaint alleging, *inter alia*, that Defendant had committed breaches of restrictive covenants, including a non-disparagement provision of her Executive Employment Contract. [DE 1] at ¶¶ 36, 41–42. On June 6, 2023, Plaintiff filed an Expedited Motion for Preliminary Injunction, seeking to enforce restrictive covenants, including the non-disparagement provision. [DE 47]. Defendant responded [DE 66], and, on August 1, 2023, I held an evidentiary hearing. [DE 107]. On September 12, 2023, I issued a Report and Recommendation recommending that the Motion for Preliminary Injunction be granted [DE 133], which the Court adopted [DE 152] over Defendant's objections [DE 134].

On March 13, 2024, Plaintiff filed its Motion to Enforce seeking relief and damages for Defendant's alleged violation of the Court's preliminary injunction. [DE 199]. In response to Plaintiff's Motion to Enforce, Defendant argued, for the first time during this litigation, that the non-disparagement provision in the Executive Employment Agreement between Plaintiff and Defendant violated the National Labor Relations Act ("NLRA"), rendering the preliminary injunction invalid. [DE 209]. A week after filing her response to Plaintiff's Motion to Enforce, Defendant filed her Motion to Vacate. [DE 214]. The Motion to Vacate contained the same arguments Defendant raised in response to Plaintiff's Motion to Enforce.

On April 12, 2024, I conducted an evidentiary hearing on Plaintiff's Motion to Enforce. [DE 229]. On April 16, 2024, (before Defendant filed her reply on the Motion to Vacate) Plaintiff

served the instant Motion on Defendant (pursuant to Fed. R. C. P. 11(c)(2)) and then filed it on May 9, 2024. [DE 260]. The Motion raises the same arguments Plaintiff raised in its reply to its Motion to Enforce and response to Defendant's Motion to Vacate, charging that Defendant's attempt to apply the NLRA to this case is frivolous. On June 11, 2024, I submitted my report and recommendation on Plaintiff's Motion to Enforce and Defendant's Motion to Vacate. [DE 271].[2] I recommended denying Defendant's Motion to Vacate and granting Plaintiff's Motion to Enforce. As to the Motion to Vacate, I found that Defendant was a managerial employee and thus subject to a judicially-created exception to the NLRA's protections. *Id.* at 14. As to the Motion to Enforce, I found that Defendant had violated the Court's preliminary injunction, and I recommended that the Court award Plaintiff $26,794.66 in attorney's fees and costs to compensate Plaintiff for the expenses of efforts to enforce the preliminary injunction. *Id*. at 25. In determining the amount of compensation to recommend, I considered the significant time and expense Plaintiff had incurred in responding to Defendant's Motion to Vacate and the corresponding arguments Defendant had made against the Motion to Enforce. *Id*. at 24.

## **LEGAL STANDARD**

Rule 11 is intended "to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (citation omitted). When an attorney signs and files a pleading (and other court papers), the attorney is certifying, *inter alia*, that: "(1) the pleading is not being presented for an improper purpose; (2) the legal contentions are warranted by existing law or a nonfrivolous argument to change existing law; and (3) the factual contentions have evidentiary support or will likely have evidentiary support after discovery." *Id.* (citing Fed. R. Civ. P. 11(b)). Consequently, sanctions

---

[2] The Court's consideration of that Report and Recommendation remains pending.

may be imposed under Rule 11 "when a party files a pleading or motion that '(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose.'" *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022) (quoting *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021)). .

In evaluating a motion for sanctions under Rule 11, a court must consider "(1) whether the party's claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Peer*, 606 F.3d at 1311 (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001)); *see also Benedek v. Adams*, 725 F. App'x 755, 761 (11th Cir. 2018) ("The standard used to evaluate an alleged violation of Rule 11 is 'reasonableness under the circumstances.'") (quoting *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994)). "[S]anctions are warranted when [a party] exhibits a 'deliberate indifference to obvious facts.'" *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). However, "they are not warranted when [a party's] evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law." *Id.* (footnote omitted). Similarly, "the purpose of Rule 11 is . . . not to deter novel legal arguments." *Id.*

## ANALYSIS

Plaintiff argues that Defendant's Motion to Vacate is objectively frivolous because it was based on legal arguments with no reasonable chance of succeeding, predicated on unsupported facts, and was brought for an improper purpose. As stated earlier, Plaintiff's arguments largely mirror those in its reply to its Motion to Enforce and response to Defendant's Motion to Vacate. While I ultimately found that Defendant's Motion to Vacate lacked merit and recommended it be denied, it was not so frivolous or indicative of bad faith to warrant sanctions under Rule 11.

### I. Reasonable Chance of Success of Legal Theories

#### A. Timeliness

Plaintiff first contends that Defendant's Motion to Vacate had no reasonable chance of success because its arguments are untimely. Specifically, Plaintiff emphasizes that the caselaw Defendant primarily relies upon, *McLaren Macomb*, 372 NLRB No. 58 (Feb. 21, 2023) and *Big Green Respondent & Kelsey Gray, an Individual Charging Party & Denver Newspaper Guild-Commc'ns Workers of Am., Loc. 37074, Afl-Cio Charging Party*, No. 27-CA-276068, 2023 WL 8873718 (Dec. 20, 2023), is not new and was readily available prior to the filing of the instant litigation and before the Court entered the preliminary injunction. [DE 260] at 5. Plaintiff consequently argues that Defendant could not seek to modify the preliminary injunction based on arguments that were available at the time of the preliminary injunction hearing, citing cases indicating that a court may only modify a preliminary injunction based on changed circumstances. *See, e.g.*, *Hodge v. Dep't of Hous. & Urban Dev., Hous. Div., Dade Cnty., Fla.*, 862 F.2d 859, 862 (11th Cir. 1989).

Plaintiff is correct that the primary authority for Defendant's arguments was available well before the preliminary injunction hearing. However, that fact did not create a waiver of the argument and prevent Defendant's Motion to Vacate from having a reasonable chance of success. The cases to which Plaintiff cites about when a court can reconsider or modify an injunction refer to changes in *factual* circumstances. But Defendant's Motion to Vacate was based on a legal argument that the contract provisions that the injunction enforced were unlawful to begin with. The Court should not — and cannot — enforce an order or contract provision that is illegal. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982) ("[A] federal court has a duty to determine whether a contract violates federal law before enforcing it."). Therefore, Defendant cannot waive

5

the defense of illegality of the contract.  *See Oscanyan v. Arms Co.*, 103 U.S. 261, 266–67 (1880); *I.U.B.A.C. Loc. Union No. 31 v. Anastasi Bros. Corp.*, 600 F. Supp. 92, 95 (S.D. Fla. 1984).  The Court cannot simply bury its head in the sand when Defendant proffers an allegation that the Court would be imposing an illegal order, even if Defendant makes the allegation long after litigation has commenced.  Instead, the Court must take the allegation seriously, and the fact that Defendant could have brought her arguments earlier did not eliminate a reasonable probability of their success.

### B. Applicability of Section 7 and *McLaren*

Defendant's Motion to Vacate was premised on the idea that Section 7 of the NLRA widely protects an employee's right to speak about the conditions of employment, and that Section 8 prohibits interference with that right including (as discussed in *McLaren* and other authorities Defendant cites) through broad non-disparagement provisions.  Plaintiff argues that Defendant's motion was frivolous because this case has nothing to do with collective bargaining or union organizing.  Yet, while the NLRA is primarily aimed at protecting union organizing and collective bargaining, the statutory language is not so limited and, as Defendant points out, Section 7 can more broadly protect communications about conditions of employment.

Defendant's reliance on *McLaren* and *Big Green* as well as a memorandum by the National Labor Relations Board's ("NLRB") general counsel to argue that a non-disparagement requirement like the one at issue here burdens communications protected by Section 7 is not objectively frivolous either.  Although my previous report and recommendation [DE 271] discussed those three supporting materials, I did not fully discuss how they may be distinguishable from the case at hand because I found that NLRA's managerial exception applied, thereby obviating the need for any further discussion on the matter.  At the very least however, there are

6

some non-binding authorities, from a recent NLRB decision to the NLRB's general counsel memorandum, that apply *McLaren's* holding to situations outside the context of a severance agreement. *See Challenge Mfg. Holdings, Inc., Respondent & Kahdeijra Lashay Gee, an Individual Charging Party*, No. 07-CA-286573, 2023 WL 2866336 (Apr. 10, 2023); *Re: Guidance in Response to Inquiries About the McLaren Macomb Decision*, No. MEMORANDUM GC 23-05, 2023 WL 3567920, at *4 (Mar. 22, 2023). As a result, while Defendant lacked concrete binding authority (or substantial persuasive authority), there is at least some support for the theory that Section 8 would prohibit non-disparagement provisions even outside the non-union, and non-severance agreement, contexts. Therefore, Defendant's argument for applying those concepts here were not objectively frivolous.

### C. Savings Clause

Nor was it frivolous to argue that the burden on Section 7 rights described in *McLaren* and *Big Green* would apply here despite the savings clause in Defendant's Executive Employment Agreement. During the April 12, 2024, evidentiary hearing on Plaintiff's Motion to Enforce, I questioned Defendant on how the Executive Employment Agreement violates the NLRA when the agreement contains a provision explicitly stating that it did not "restrict or impede [Defendant] from exercising protected rights . . .including, without limitation, [Defendant's] rights under the National Labor Relations Act." [DE 230–1] at 7. In her reply to her Motion to Vacate, Defendant provided the Court with several non-binding NLRB decisions purporting to illustrate that general disclaimers or "savings clauses" within employee agreements do not render an employer's otherwise impermissible prohibition lawful. *See Entergy Nuclear Operations, Inc. & United Gov't Sec. Officers of Am., Loc. 25*, 367 NLRB No. 135 (May 21, 2019); *Giant Eagle, Inc.*, 39 NLRB

7

AMR 31 (June 22, 2011); *Tpi Iowa, LLC, Respondent & Douglas Vollers II, an Individual*, No. JD-93-16, 2016 WL 5340240 (N.L.R.B. Div. of Judges Sept. 22, 2016).

As I noted in my previous report and recommendation, I found that this argument was a "close question, particularly given that the carve out is explicitly tied to the non-disparagement provision, as opposed to being placed elsewhere among broader employment policies and is not limited only to union votes." [DE 271] at 10 n.7. Nonetheless, I found that the NLRA did not apply to Defendant and did not decide the issue. Because the argument is a close call, and the NLRB decisions cited in Defendant's reply provide her some support, I cannot say that Defendant's claim was objectively frivolous.

### D.  Managerial and Supervisor Exceptions

Finally, Plaintiff argues that Defendant's failure to recognize that she falls within the supervisor and managerial exceptions to the FLSA renders her Motion to Vacate frivolous. I ultimately found that the managerial exception applied to Defendant (without reaching the supervisor exception). That finding, however, is not dispositive of whether her Motion to Vacate was brought in bad faith or was objectively frivolous. Notably, application of these exceptions requires a case-by-case approach with few bright-line rules. *See N.L.R.B. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 290 n.19 (1974); *Waldau v. Merit Sys. Prot. Bd.*, 19 F.3d 1395, 1399 (Fed. Cir. 1994). While Defendant did not address the managerial exception in her reply to the Motion to Vacate, failing to address one argument (out of at least five) is not grounds by itself for awarding Rule 11 sanctions. Moreover, Defendant did address the "supervisor exception." And though these two exceptions are separate and distinct from one another, they do have considerable overlap.

As Defendant did throughout her reply to the Motion to Vacate, she cited non-binding authority to at least plausibly support her position regarding the supervisory exception. *See* [DE 248] at 8–9. Defendant argued that even if she was a supervisor, the NLRA's protections still applied to her because she was demoted from her supervisory position before being terminated and because she was engaged in "concerted action for the mutual aid and protection of employees." As to the first argument (about the effects of what Defendant described as her demotion) neither party sufficiently analyzed, or supported with case law, their assertions about how the alleged demotion should or should not affect a non-disparagement agreement that Defendant accepted well before the alleged demotion. As to the second argument, Defendant alleges she was helping report sexual harassment against other coworkers.[3] There are non-binding caselaw and secondary sources that provide some support to her contention that the NLRA protects such an activity as a supervisor. *See N.L.R.B. v. Downslope Indus., Inc.*, 676 F.2d 1114, 1119–20 (6th Cir. 1982); Steven C. Kahn, *et al.*, *Legal Guide to Human Resources* § 4:31 (2024). Thus, Defendant's argument that the NLRA applies to her even as a supervisor is not objectively frivolous, and Rule 11 sanctions are not warranted.

## II.   Bad Faith

Plaintiff argues that Defendant brought her Motion to Vacate in bad faith, with the improper purpose to obstruct the proceedings, subject Plaintiff to last-minute surprise, and evade compliance with the preliminary injunction and the Executive Employment Agreement. In

---

[3] Plaintiff argues that Defendant's claims about sexual harassment and abuse towards her and other employees are "outlandish" and lack any "competent or credible evidence in the record." [DE 260] at 11. Defendant's counterclaims (filed after the Motion), and the contentious disputes that have followed in the time since the Rule 11 Motion and Motion to Vacate were filed, illustrate that the facts surrounding Defendant's sexual harassment allegations are hotly contested. At the very least, the Court is not in a position to determine the truth of those allegations at this stage, much less to conclude that those allegations are so lacking in evidentiary support as to be frivolous.

9

addition to characterizing the Motion to Vacate's arguments as frivolous (for the reasons discussed above), Plaintiff points to the timing of the Motion to Vacate (coming only after Plaintiff had sought to enforce the preliminary injunction) as evidence of Plaintiff's obstructionist purpose. Defendant responds that the Motion to Vacate was not brought for an improper purpose and is an example of zealous advocacy brought based on developing authority.

The timing of Defendant's Motion to Vacate puts her on dangerous ground. Defendant's delay in raising her arguments did not make them frivolous, effect a waiver, or eliminate any chance of success, for the reasons described above. Yet Defendant continues to shut her eyes to the fact that she could have – and should have – brought these arguments in response to the motion for preliminary injunction almost a year before she filed her Motion to Vacate. Defendant's arguments in support of her Motion to Vacate relied upon cases that were decided prior to the initiation of this litigation and before the motion for preliminary injunction. Defendant does not provide any good explanation for failing to raise this issue earlier (whether in response to the original motion for preliminary injunction or, curiously, in any way as part of her proposed answer [DE 195–1] that she filed with her motion to stay in February before Plaintiff's Motion to Enforce).[4] In short, the timing of the Motion of the Vacate could justify an inference of bad faith.

Moreover, Defendant's failure to raise this issue earlier is not without consequences. Allowing open-ended attacks on the preliminary injunction stymies the rest of the judicial proceedings and only increases costs for both parties. And the timing of Defendant's Motion to Vacate – coming seemingly only in response to Plaintiff's Motion to Enforce after Defendant had

---

[4] She also does not appear to have included her NLRA theory as an affirmative defense in her Answer filed on June 10, 2024, [DE 268] nor her Amended Answer [DE 337] despite raising other arguments against the enforceability of the restrictive covenants.

(by my findings) violated the preliminary injunction – significantly increased the time and expense required to address the Motion to Enforce (for both the Court and the parties).

Ultimately, because I find that Defendant's arguments (while not meritorious) were not frivolous, I decline to infer that the timing of the Motion to Vacate alone merits a finding of bad faith. I also note that I included the added time and expense Plaintiff incurred in responding to the Motion to Vacate in determining the amount of attorney's fees Defendant should owe if the Court adopts my Report and Recommendation and finds her in contempt. *See* [DE 271]. Thus, to the extent that the timing of Defendant's Motion to Vacate complicated the proceedings and harmed Plaintiff, the sanction I have recommended addresses that harm. Therefore, I decline to further order sanctions under Rule 11.

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Rule 11 Sanctions [DE 260] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 16th day of October 2024.

Jared M. Strauss
United States Magistrate Judge