```
 1            UNITED STATES DISTRICT COURT

 2         FOR THE SOUTHERN DISTRICT OF FLORIDA

 3

 4

 5

 6   HEAD KANDY LLC,              )
                                  )
 7            Plaintiff,          )
                                  )
 8     vs.                        ) No.0:23-cv-60345-JB
                                  )
 9   KAYLA MARIE MCNEILL,         )
                                  )
10            Defendants.         )
     _____)
11

12

13

14              AFTERNOON SESSION

15              REMOTE PROCEEDING

16         DEPOSITION OF RYAN THOMPSON

17          Friday, September 6, 2024

18              Tampa Bay, Florida

19

20

21

22

23      Reported by:  Kelli R. Hopper, CSR No. 7172

24

25
```

RYAN THOMPSON  - VOL. II - AFTERNOON SESSION                    JOB NO. 1164890
SEPTEMBER 06, 2024

```
 1                          APPEARANCES

 2

 3   For Plaintiff:      Bartlett, Loeb, Hinds, Thompson &
                         Angelos
 4                       BY MS. CARSON SADRO
                         Attorney at Law
 5                       101 Water Street
                         Suite 475
 6                       Tampa, Florida  33602
                         (813) 223-3888
 7                       CarsonS@blhtlaw.com

 8

 9

10

11   For Defendants:    Law Office of Antonio L. Converse
                        BY MR. ANTONIO L. CONVERSE
12                      Attorney at Law
                        600 17th Street
13                      Suite 2800 South
                        Denver, Colorado  80202
14                      (303) 228-9471
                        anthony@converselawgroup.com
15

16

17

18   The Videographer:   Matthew Paster

19

20   Also present:   Kayla McNeill
                     Brandi Webb
21

22

23

24

25
```

```
 1                          I N D E X

 2

 3   EXAMINATION BY                                     PAGE

 4   MR. CONVERSE                                       166

 5

 6

 7

 8

 9

10                         EXHIBIT INDEX

11   DEFENDANTS' EXHIBITS

12   Exhibit 5    Head Kandy's Rule 26(a)(1)            174
                  supplemental disclosures
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
2:56:01   1   Ms. McNeill.
2:56:01   2        BY MR. CONVERSE:
2:56:23   3        Q.  I believe you had said that you were
2:56:26   4   initially joking with Ms. McNeill about deleting
2:56:28   5   the account.
2:56:32   6        So did I understand you that the joking
2:56:41   7   transformed into an actual intent by the two of you
2:56:42   8   to delete the account?
2:56:44   9        A.  Yeah.  I believe in the text conversations
2:56:48  10   which you have, I believe -- I can't phrase
2:56:51  11   exactly, but I'm pretty sure it was like
2:56:54  12   Ms. McNeill kind of joked about, oh, I wish I could
2:56:56  13   just delete that account so they couldn't find
2:56:57  14   them.
2:56:58  15        And I think I said like, technically, I
2:57:01  16   think we could.
2:57:01  17        And then I don't know if there's
2:57:06  18   additional texts to that or -- but that -- that's
2:57:10  19   the route we ended up deciding to take.
2:57:17  20        Q.  And was it just that one charge that
2:57:23  21   Ms. McNeill expressed concern to you about Head
2:57:27  22   Kandy representatives finding?
2:57:29  23        A.  Yeah.  I think that the main concern was
2:57:32  24   that Hayzlee boutique charge.  I think it was quite
2:57:33  25   a large order.
```

| | | |
|---|---|---|
| 2:57:37 | 1 | And I just remember her saying in explicit |
| 2:57:41 | 2 | term if she was -- if they were ever to find that, |
| 2:57:45 | 3 | then she would, for lack of better terms, be in |
| 2:57:48 | 4 | trouble.  And so the intent was to hide that |
| 2:57:49 | 5 | charge. |
| 2:57:52 | 6 | Q.  Did she tell you why she would be in |
| 2:57:52 | 7 | trouble? |
| 2:57:54 | 8 | A.  Because she knew that Head Kandy had paid |
| 2:57:56 | 9 | for that. |
| 2:58:03 | 10 | Q.  Do you know if Ms. McNeill ever reimbursed |
| 2:58:06 | 11 | electric for that purchase? |
| 2:58:07 | 12 | A.  I do not know. |
| 2:58:14 | 13 | Q.  And you said it was large.  Just to better |
| 2:58:22 | 14 | understand the -- what you mean by large, are we |
| 2:58:23 | 15 | talking over $10,000? |
| 2:58:26 | 16 | A.  I don't recall the exact amount.  I don't |
| 2:58:29 | 17 | think it was that large.  I think it was like a |
| 2:58:31 | 18 | couple thousand.  Maybe 2- or 3,000 is my |
| 2:58:34 | 19 | understanding.  I don't know for sure though. |
| 2:58:44 | 20 | Q.  And then there's a new paragraph on this |
| 2:58:49 | 21 | Exhibit 5 that we're looking at, and it states: |
| 2:58:52 | 22 | "Identification of customers of Head Kandy |
| 2:58:55 | 23 | who purchased hair care and related |
| 2:59:00 | 24 | products from Bo Stegall and his company." |
| 2:59:04 | 25 | Do you have any knowledge on that topic? |

| | | |
|---|---|---|
| 3:36:25 | 1 | your declaration, back on screen, and I want to |
| 3:36:26 | 2 | return it Paragraph Number 19. |
| 3:36:28 | 3 | Can you see that okay? |
| 3:36:28 | 4 | A.  Yes. |
| 3:36:30 | 5 | Q.  All right.  And when we were talking about |
| 3:36:33 | 6 | Paragraph 19 earlier, this is where you were |
| 3:36:36 | 7 | describing some of the personal work that |
| 3:36:39 | 8 | Ms. McNeill had you perform while you were working |
| 3:36:40 | 9 | for Head Kandy; right? |
| 3:36:41 | 10 | A.  Yeah. |
| 3:36:43 | 11 | Q.  And, Mr. Thompson, throughout your time |
| 3:36:46 | 12 | with Head Kandy, there were periods of time where |
| 3:36:48 | 13 | you worked both as an hourly employee; right? |
| 3:36:49 | 14 | A.  Yes. |
| 3:36:51 | 15 | Q.  And as a salaried employee? |
| 3:36:51 | 16 | A.  That's correct. |
| 3:36:53 | 17 | Q.  And those times that you were performing |
| 3:36:56 | 18 | personal services for Ms. McNeill, when did that |
| 3:36:58 | 19 | begin? |
| 3:37:00 | 20 | A.  Immediately.  I was doing personal errands |
| 3:37:03 | 21 | for her from the moment I started working for her |
| 3:37:06 | 22 | up until her departure in 2023. |
| 3:37:08 | 23 | Q.  So did it happen during the period of time |
| 3:37:10 | 24 | where you would have been both an hourly employee |
| 3:37:13 | 25 | and a salaried employee? |

```
3:37:13   1        A.   Yes.  That's correct.
3:37:17   2        Q.   And tell me what kind of personal services
3:37:21   3   or errands Ms. McNeill was having you perform?
3:37:24   4        A.   Yes.  So really depended on kind of the
3:37:26   5   timeframe, whether she was in town or not.  If she
3:37:29   6   would was in town it would have been stuff like
3:37:33   7   taking her kids to school or picking them up in the
3:37:35   8   afternoons, driving her to certain places.
3:37:38   9             When she was out of town, it would be like
3:37:43  10   going and paying water bills or going and paying a
3:37:43  11   bill.
3:37:47  12             I went and paid a bill one time in Buena
3:37:50  13   Vista, which is about a 30-minute drive, to a
3:37:51  14   lumberyard.
3:37:53  15             I delivered paperwork to a title company
3:37:55  16   for the sale of a spec home.
3:37:57  17             So there were lots of different errands
3:37:58  18   that I would have run.
3:38:01  19        Q.   Is that even an exhaustive list?
3:38:03  20        A.   No.
3:38:05  21        Q.   How many times or how frequently
3:38:09  22   throughout the month would Ms. McNeill have you
3:38:11  23   perform these errands for her?
3:38:11  24        A.   I would say --
3:38:12  25             MR. CONVERSE:  Objection.  Form.
```

```
3:38:13   1              THE WITNESS:  I would say a couple times a
3:38:17   2   week.  It wouldn't be inappropriate for me to
3:38:18   3   assume that.
3:38:18   4         BY MS. SADRO:
3:38:20   5         Q.  Okay.  And when Ms. McNeill was directing
3:38:23   6   you to go on these errands, was that while you were
3:38:24   7   working for Head Kandy?
3:38:25   8         A.  Yes.
3:38:26   9              MR. CONVERSE:  Objection.  Form.
3:38:29  10              I'm sorry.  I know you guys have it down,
3:38:31  11   but I need time to object in-between.  Sorry.
3:38:34  12              THE WITNESS:  That's okay.
3:38:34  13         BY MS. SADRO:
3:38:38  14         Q.  During the time that you -- during hours
3:38:40  15   that you were working for Head Kandy?
3:38:41  16         A.  Yes.
3:38:48  17         Q.  Would they happen throughout the middle of
3:38:48  18   the day?
3:38:52  19         A.  Yeah.  It happened in the mornings, in the
3:38:55  20   afternoons, sometimes in the evenings.  It really
3:38:56  21   just depended on the day.
3:38:59  22         Q.  Is that -- earlier Mr. Converse was
3:39:02  23   talking to you about doing favors for your friends;
3:39:03  24   right?  Do you remember that?
3:39:04  25         A.  Yeah.
```

```
3:39:06   1     Q.  Did the frequency that Ms. McNeill have
3:39:11   2   you perform services for just her, was that in your
3:39:14   3   opinion a favor for a friend?
3:39:18   4           MR. CONVERSE:  Objection.  Form.
3:39:21   5           THE WITNESS:  I would probably say that if
3:39:25   6   it were any other person and I was working a job, I
3:39:29   7   would not be performing the amount of errands or --
3:39:34   8   or favors as he stated for any other person.
3:39:34   9       BY MS. SADRO:
3:39:37  10     Q.  And the amount of time that you had to
3:39:41  11   spend working on Ms. McNeill's errands or personal
3:39:45  12   services, was that time taken away from the work
3:39:49  13   you were required to perform for Head Kandy?
3:39:50  14     A.  Yeah.
3:39:51  15           MR. CONVERSE:  Objection.  Form.
3:39:53  16           THE WITNESS:  Yeah.  I would -- I would
3:39:55  17   have to make up, you know, not make up time
3:39:58  18   specifically, but I would have to come back to
3:40:01  19   projects if I was working on something specific.
3:40:01  20       BY MS. SADRO:
3:40:07  21     Q.  All right.  Mr. Thompson, I want to talk
3:40:10  22   to you about another exhibit.
3:40:14  23           MS. SADRO:  Anthony, forgive me for a
3:40:17  24   moment.  I've forgotten which exhibit number it is.
3:40:18  25   There we are.  I landed on it.
```