**HEAD KANDY LLC vs KAYLA MCNEILL**
Sergio P. Negreira on 08/29/2024

```
 1                UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
 2                     FT. LAUDERDALE

 3
     HEAD KANDY LLC,                )
 4                                  )
                                    )
 5           Plaintiff,             )
                                    )
 6                                  )  CASE NO:  0:23-CV-60345-JB
     vs.                            )
 7                                  )
                                    )
 8   KAYLA MCNEILL,                 )
                                    )
 9                                  )
             Defendant.             )
10                                  )
                                    )
11                                  )
                                    )
12

13                     - - -

14        Deposition of Sergio P. Negreira,

15     The remote videoconference was taken by
                Colin Thompson, Esquire
16            Before Lourdes Valdes,
            Certified Professional Reporter,
17
                 On August 29, 2024,
18    Beginning at 11:00 a.m. & ending at 3:30 p.m.

19                     - - -

20

21

22

23

24

25
```

**EXHIBIT 11**

**HEAD KANDY LLC vs KAYLA MCNEILL**
Sergio P. Negreira on 08/29/2024

Page 2

```
 1                    APPEARANCES OF COUNSEL

 2
      For the Plaintiff:
 3
      Colin Thompson, Esquire
 4    Bartlett Web Hinds Thompson & Angelos
      100 N. Tampa Street
 5    Suite 2050
      Tampa, Florida 33602
 6    (813) 223-3888
      Colint@blhtlaw.com
 7
      Also present:
 8
      Jalen Larubbio
 9

10    For the Defendant:

11    Anthony Converse, Esquire
      Converse Law Group, P.C.
12    600 17st Street
      Suite 2800 South
13    Denver, Colorado 80202
      (303) 228-9471
14    Anthony@converselawgroup.com

15    Also present:

16    Amy Lagala - videographer

17    Kayla McNeill - plaintiff

18

19

20

21

22

23

24

25
```

**HEAD KANDY LLC vs KAYLA MCNEILL**
**Sergio P. Negreira on 08/29/2024**

```
                                                      Page 3
 1                    INDEX TO PROCEEDINGS

 2                    EXAMINATION INDEX

 3
     Sergio P. Negreira
 4                                              Page

 5   Exhibit Page                                 4

 6   Direct Examination by Mr. Thompson          5 - 87

 7   Cross Examination by Ms. Converse          87 - 88

 8   Certificate Page                             - 90

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**HEAD KANDY LLC vs KAYLA MCNEILL**
**Sergio P. Negreira on 08/29/2024**

```
 1                    EXHIBIT PAGE

 2    Exhibit                 Description            Page

 3    Plaintiff Ex. 1    Negreira Expert Report      9

 4    Plaintiff Ex. 2    Subpoena                    10

 5    Plaintiff Ex. 3    Report Totals/Tables        19

 6    Plaintiff Ex. 4    Composite                   23

 7    Plaintiff Ex. 5    Pueblo Bank Statement       32

 8    Plaintiff Ex. 6    McNeill Amex Statement      33

 9    Plaintiff Ex. 7    PB&T March 2019 Statement   41

10    Plaintiff Ex. 8    Amex Statement 4/2/19       42

11    Plaintiff Ex. 9    Amex & PB&T August Statement 46

12    Plaintiff Ex. 10   Checks McNeill              57

13    Plaintiff Ex. 11   June 2018 Pueblo Statement  61

14    Plaintiff Ex. 12   Petri Quick Analysis        72

15

16

17

18

19

20

21

22

23

24

25
```

Page 49

1    Q.   All right.  And then that is shown on your Exhibit H

2  that's part of Composite Exhibit 4 as well as a payment that was

3  made from Ms. McNeill's funds, correct?

4    A.   Yes.

5    Q.   Now, going over to the Amex statement for that time

6  period, would you agree with me, sir, that we do not see a

7  corresponding payment applied to the American, the Head Kandy,

8  American Express for that $2,258.72 amount?

9    A.   That's correct.

10    Q.   And so, like, the payments that were made on -- that

11  are shown on your Exhibit H on January 22, 2019 and March 4,

12  2019, you don't know whether the August 19, 2019 payment in the

13  amount of $2,258.72 was in fact made to cover Head Kandy

14  business expenses, correct?

15    A.   I don't know that for a fact, but it could have been.

16    Q.   Okay.  Great.

17    A.   Maybe Head can be a business expenses.

18    Q.   Okay.  All right.  Alright, sir.  So of these --

19  should we have gotten them all.  I just want to add up -- we've

20  got three, as I've shown and we've gone through so far, we've

21  got three payments that we were not able to find were applied to

22  the Head Kandy Amex, correct?

23         And I'm sorry, let me restate that.  We have three

24  payments shown on your Exhibit H that's part of Exhibit 4 to

25  this deposition that are not shown as being payments applied to

HEAD KANDY LLC vs KAYLA MCNEILL
Sergio P. Negreira on 08/29/2024

Page 50

```
1   the Head Kandy Amex, correct?

2        A.   That's correct.

3        Q.   And those total $31,400.35 plus $3903.45 plus

4   $2258.72.  I just did the math there on the screen, sir.  Those

5   total $9,346.52 in payments that are shown on your Exhibit H

6   that's part of Exhibit 4 in this depo but are not shown as

7   payments applied to the Head Kandy Amex, correct?

8        A.   To the Amex ending in -- yeah.  The 006.  That's

9   correct.

10        Q.   And if, sir, those payments were not made to cover

11   Head Kandy business expenses, would you agree with me that they

12   should be removed from this, your Exhibit H?

13        A.   No, I don't agree with that, because these are

14   payments that were made for both personal and business expenses.

15   These were the total payments made to American Express.

16        Q.   Okay.  But they were not made towards the Head Kandy

17   Amex.  That's all the charges that are subject to the K2 report

18   and your report are about, are they?

19             MR. CONVERSE:  Objection to the form.

20             THE WITNESS:  It's entirely possible that they could

21        have been other charges outside of the K2 report for

22        which she was paying, that I did not find in the K2

23        report.  And something I'd have to follow up on.

24   BY MR. THOMPSON:  (Resuming)

25        Q.   Okay.
```

HEAD KANDY LLC vs KAYLA MCNEILL
Sergio P. Negreira on 08/29/2024

Page 57

1      going to see if this works, because this doesn't always

2      work.  Hang on.  Sorry.  Maybe I can do it this way here.

3      All right, Anthony, I'm just emailing it to you.

4            MR. CONVERSE:  Got it.

5   BY MR. THOMPSON:  (Resuming)

6      Q.   And this is Exhibit 10, so I'll put that in the

7   subject.

8            Okay.  All right, so are you able to see this on the

9   screen?

10     A.   Yes.

11     Q.   All right.  So this is check at the top here $16,000

12  even to Ms. McNeill.  Check is dated August 26, 2019.  And it

13  says on the back of the check, if you can make that out for

14  electronic deposit.  And it looks like it says Chase checking

15  underneath that.  Do you agree?

16     A.   I can't make it out.  It says for electronic deposit,

17  but I can't make out the other part.

18     Q.   Okay.  And there's another one of -- on the second

19  page, another check, August 26, 2019, for $16,209.02, which the

20  back of it is endorsed, looks like it says for electronic

21  deposit at Chase.  Do you see that?

22     A.   Yes.

23     Q.   All right.  And if we add those two numbers up, we've

24  got the $16,209.02 plus the $16,000 equals $32,209.02.

25     A.   Okay.

Page 58

1      Q.   So does it appear that Head Kandy sent to Ms. McNeill

2   another $32,209.02 on or about August 26, 2019, that Ms. McNeill

3   deposited into her Chase Bank account?  Is that what it appears,

4   sir?

5      A.   Yes.

6      Q.   Now, if we go back to your Exhibit I, which is

7   deposits received from Head Kandy, that amount is not included

8   on in your Exhibit I, is it?

9      A.   No, it's not.

10     Q.   Okay.  Do you agree that it should be included?

11     A.   It may very well have to be included or not.  I'd have

12   to follow up on that.  I hadn't seen those checks before.

13     Q.   Sure.  And if, sir, those were to be included because

14   they were for the -- to reimburse or to pay the $32,209.10 that

15   Ms. McNeill paid from her Pueblo account, would you agree, sir,

16   then that would reduce the variance or the amount that your

17   analysis shows is owed to Ms. McNeill by the 32,209.02?

18     A.   No, I don't agree with that.  If anything, she was

19   paid more to get reimbursed for her business expenses.  So, not

20   understanding.  Not sure I understand the question.  Sorry.

21     Q.   Okay, so you have, within the amount that you have

22   shown that Ms. McNeill paid to the American Express card, you

23   have the $32,209.10 included in that amount, correct?

24     A.   That's right.

25     Q.   All right.  And that's on your exhibit we've marked as

HEAD KANDY LLC vs KAYLA MCNEILL
Sergio P. Negreira on 08/29/2024

Page 59

1    Exhibit 3, paragraph 59.  That's included in that $1,768,456.94,

2    that was that Ms. McNeill paid.  And that's how we get to

3    subtracting out the deposit sent to Ms. McNeill for payment --

4    that's how we get to the ultimate variance and the amount that

5    you say is owed to Ms. McNeill, correct?

6         A.   Yes.

7         Q.   But the $32,209.02 that Ms. McNeill was paid and

8    deposited into her Chase Bank account is not included in the

9    $1,231,265.92 in your table for paragraph 59, correct?

10        A.   That's correct.

11        Q.   So if we include that $32,209.02 into the amount of

12   deposits that was sent to Ms. McNeill, that would reduce the

13   variance of $137,594.72, reduce it by $32,209.02, correct?

14             MR. CONVERSE:  Objection to the form.

15             THE WITNESS:  If I could verify that those that check

16        was deposited for payments for the reimbursement, doing the

17        math, that would reduce the 537.

18   BY MR. THOMPSON:  (Resuming)

19        Q.   Do you know why Ms. McNeill received on August 26,

20   2019 a total of $32,209.02?  You know, sir?

21        A.   I do not know.

22        Q.   And do you know why Ms. McNeill, on August 27, 2019,

23   the very next day, transferred out over Chase Bank, $32,200 to

24   her Pueblo account?

25        A.   I don't know.

**HEAD KANDY LLC vs KAYLA MCNEILL**
**Sergio P. Negreira on 08/29/2024**

Page 60

1    Q.   And so, sir, do you know as you sit here today,

2  whether the $32,209.10 payment that Ms. McNeill made to Amex on

3  August 28, 2019 was using the funds that she received to her

4  Chase Bank on August 26, 2019 and transferred into her Pueblo

5  account on August 27, 2019?

6    A.   I don't know.

7    Q.   And do you have an opinion one way or the other as you

8  sit here today as to whether Ms. McNeill was reimbursed by Head

9  Kandy for the $32,209.10 Amex payment she made on August 28,

10 2019?

11   A.   No, I don't have an opinion on that.  I have to

12 verify.

13   Q.   And as you sit here today, you have not verified that,

14 correct?

15   A.   No.

16   Q.   Okay.  And before I just showed you those two checks

17 from Head Kandy that were written on August 26, 2019 you were

18 not aware of them, correct?

19   A.   That's correct.

20   Q.   And neither Ms. McNeill nor her lawyers had provided

21 to you those checks, correct?

22   A.   Not that I recall.

23   Q.   All right, going back to Exhibit I, which is part of

24 Composite Exhibit 4, you have here the very first payment, which

25 was a -- or, I'm sorry, deposit received from Head Kandy to pay

**HEAD KANDY LLC vs KAYLA MCNEILL**
Sergio P. Negreira on 08/29/2024

1  the American Express credit card.  You have identified and paid

2  a payment date of June 4, 2018, in the amount of $50,993.48,

3  correct?

4      A.  Yes.

5      Q.  And that's -- that's money that was sent from Head

6  Kandy that was deposited into Ms. McNeill's Pueblo Bank and

7  Trust account so that, to cover amounts that she paid to the

8  Head Kandy Amex, correct?

9      A.  That's correct.

10     Q.  What is the source of the $50,993.48?

11     A.  Yeah, the bank statement.

12     Q.  Yeah, the bank statement.  All right.  I'm sorry.  I'm

13  just trying to pull up the bank statement.

14         MR. THOMPSON:  Okay.  We will mark the June 2018

15     Pueblo account statement as Exhibit 11.

16         (Whereupon Plaintiff Exhibit Number 11 was marked for

17     identification).

18         THE COURT REPORTER:  Confirmed.

19  BY MR. THOMPSON:  (Resuming)

20     Q.  All right, sir, so is this the bank statement that

21  from which you pulled the $50,993.48 payment?

22     A.  That's possible.

23     Q.  All right, sir, so I'm going to Zoom in on that

24  payment amount, and --

25     A.  It may be 150 instead of 50.  We were working out of

**HEAD KANDY LLC vs KAYLA MCNEILL**
**Sergio P. Negreira on 08/29/2024**

1    that one probably very darkened, so --

2         Q.   Sure.  So would you agree with me that the payment

3    should actually be $150,993.48, not $50,993.48?

4         A.   Most likely, yeah.  Now that I see it on your version,

5    it zoomed in.  It looks like 150.

6         Q.   Okay, so if that is 150, we have to add $100,000 to

7    the total amount of deposits received from Head Kandy, so that

8    it would be $1,331,265.92, correct?

9         A.   That's correct.

10        Q.   All right.  And if we go back to your tables, then

11   just making that correction reduces the variance or the amount

12   that you say Ms. McNeill is owed by $100,000, correct?

13        A.   That would do that, yeah.  Mathematically, that would

14   reduce that amount.

15        Q.   Okay.  All right, so it reduces that amount to

16   $37,594.72, correct?

17        A.   That's correct.

18        Q.   All right.  And then if you found that the $32,209.10

19   that we saw was deposited into Ms. McNeill's Chase account was

20   also for the covering of the American Express payment she made,

21   then we would need to reduce it further.  The 37,594, by that

22   32,209.10, correct?

23        A.   Mathematically, that's correct.  But in the same

24   token, I don't -- I look at the Exhibit G expenses because we

25   added that to be conservative.  So I would still go into Exhibit

**HEAD KANDY LLC vs KAYLA MCNEILL**
Sergio P. Negreira on 08/29/2024

Page 75

1  you had, opines that that Head Kandy owes to Ms. McNeill because

2  she actually overpaid the Amex.

3          Are you able to see that on the screen, sir?

4      A.  Yes.

5      Q.  Okay.  All right.  So now if we make no other changes

6  and consider nothing else that we've talked about today, we did

7  see that the $50,993.48 deposit from June 4, 2018, was actually

8  $150,993.48.  You recall that?

9      A.  Yes.

10     Q.  So doing nothing else to your, to what we've talked

11  about today, just that recognition changes your opinion such

12  that the amount owed, based on your current analysis, would be

13  $37,594.72.  Correct?

14         MR. CONVERSE:  Objection to the form.

15         THE WITNESS:  That -- since we picked the wrong number

16     because that one was hidden and the one we had, I still

17     have to make 100% verification.  I'd like to see the native

18     or the unmarked to make 100% sure.  But if that is, in

19     fact, 150, that number mathematically would go down to

20     37,594.

21  BY MR. THOMPSON:  (Resuming)

22     Q.  Okay.  And that takes into account all of the payments

23  made from McNeill's personal bank to any of the Amex that were

24  shown on her, on her statements, correct?

25     A.  Repeat that question.

**HEAD KANDY LLC vs KAYLA MCNEILL**
Sergio P. Negreira on 08/29/2024

1      Q.   I'm sorry.  Sure.  To get to that $37,594.72 that

2    includes all of the payments that actually, all the payments

3    that are shown on your Exhibit H that's marked as Exhibit H to

4    Exhibit 4 to this deposition, right?

5      A.   That's correct.

6      Q.   Okay.  All right.  So after all of those payments,

7    everything else being equal, it would be your opinion that Ms.

8    McNeill overpaid the Amex and his owed $37,594.72, correct?

9           MR. CONVERSE:  Objection to the form.

10          THE WITNESS:  As it stands now, if I do end up making

11      that $100,000 adjustment, it would be $37,000.

12   BY MR. THOMPSON:  (Resuming)

13      Q.   And that's assuming there's no other adjustments.  You

14   know, you talked about some other things, and I showed you some

15   other things that we think should be changed, but I'm saying

16   making no other change?

17      A.   And that's assuming we don't look at that other

18   $53,844 that would stay at 37, assuming that 100,000 adjustment

19   is necessary.

20      Q.   All right.  So then that would mean before January 30,

21   2023, when Ms. McNeill made a $99,577.73.  So before she made

22   that payment, then she had not overpaid the Amex such that Head

23   Kandy would owe her money, correct?

24          MR. CONVERSE:  Objection to the form.

25          THE WITNESS:  Well, if you take that 99,577 out, then

**HEAD KANDY LLC vs KAYLA MCNEILL**
Sergio P. Negreira on 08/29/2024

1      obviously the number would go back up 100,000.

2  BY MR. THOMPSON:  (Resuming)

3      Q.   Sure.  So if she was -- I mean, let's get our -- there

4  it is.  Let's get our calculator back over here.  So if the --

5  if it was $37,594.72, that after including that $99,000 payment,

6  you would find that Head Kandy owes to Ms. McNeill.  If we take

7  out that $99,577.73 payment, then we're actually where Ms.

8  McNeill has underpaid by $61,983.01, assuming everything else

9  stays the same in your analysis.  Correct?

10     A.   But I would agree on the math with you.  But remember,

11  there's still other work that we would have to do to get -- to

12  look at that 53,844 as well.

13     Q.   Okay, so.  And that's -- and I agree.  I understand.

14  And I'm just saying everything else being the same, right?

15     A.   I mean, in an ideal situation, the number zero, right?

16  Because that means everyone got it wrong.  Right?  So she didn't

17  overpay, she didn't underpay, she was paid the right amount,

18  etc, etcetera.

19          And, you know, we're going back and forth around zero

20  with these smaller numbers.  And, you know, I have a feeling

21  that whenever the real number is very, very close to zero.

22     Q.   Right.  And the, you know, we just backed out that

23  99,000 but leading a few days before that $99,000 payment, Ms.

24  McNeill had a made a $8,540.41 payment as well, correct?

25     A.   Yeah, that's as indicated on that table.

HEAD KANDY LLC vs KAYLA MCNEILL
Sergio P. Negreira on 08/29/2024

Page 78

1      Q.   And during the month of December of 2022, she made

2   1,2,3,4,5,6,7,8,9,10, other payments, correct?

3      A.   Yes.

4      Q.   And all of those were included to get to your ultimate

5   corrected under our hypothetical of the 37,594.72 owed to her,

6   correct?

7      A.   Assuming that 100,000 adjustment has to be made.  Yes.

8      Q.   So then, prior to making any of these payments between

9   December 5, 2022, and January 30, 2023, would you agree with me

10   then that assuming that $100,000 adjustment needs to be made to

11   reduce your ultimate opinion to $37,594.72, that Ms. McNeill had

12   actually underpaid the American Express for her personal

13   expenses?

14      A.   Again, I'd have to do a little more work on the 53 to

15   summarily say that.

16      Q.   Sure.  And so, assuming the 53 or 54, whatever it was,

17   stays the same?

18      A.   Well, right now I'm assuming they're personal, but

19   they may very well be all business related.

20      Q.   Okay.

21      A.   So those numbers --

22      Q.   Sure.  So, well, then, let's do it.  What's the --

23   brought back over our calculator because we had said that after

24   backing out the $99,577.73, that it would result in everything

25   else being equal.  Assuming that hypothetical, it would result

Page 79

1  in an underpayment by Ms. McNeill, $61,983.01, correct?

2       A.   I kind of lost you there.  I spaced out a little bit.

3       Q.   I can restate.  So we have -- we had the -- shown up

4  here, the adjusted $37,594.72 --

5       A.   Mathematically, it gets to negative 61, right.

6       Q.   Okay, so that means that's an underpayment by Ms.

7  McNeill, $61,983.01?

8       A.   Correct.  Mathematically, it's 61,000.

9       Q.   Okay.  So then let's put back in -- let's -- if we

10  assume that all of those small transactions were actually

11  legitimate business, Head Kandy, business expenses, that is --

12  That is how much?

13      A.   $53,844.

14      Q.   Okay.  So if we assume all those, then we still have

15  an underpayment by Ms. McNeill of $8,139.01 after all the

16  payments she made through January 17, 2023, correct?

17      A.   Mathematically, it's correct.  I'm not going to go as

18  far as underpayment or overpayment at this point.  There's still

19  some further verification that I need to do.  I'll agree with

20  you mathematically, that those numbers are negative 8139.01.

21      Q.   Well, what other verification besides, because we

22  assumed here that for purposes of this that that entire 54,000

23  and the ones that you said you would need to go back and look

24  closer, we said, let's just assume those are business expenses.

25  So what else is there that you would still need to go and take a

**HEAD KANDY LLC vs KAYLA MCNEILL**
Sergio P. Negreira on 08/29/2024

1    look at?

2         A.   Well, number one, why you were removing the 99,577

3    also those checks that were, you know, paid for her, I need to

4    also verify that 100,000 off the native bank statement as well.

5         So I can't agree with you.  You're not -- I'm not going to

6    agree with you with overpayment or underpayment based on your

7    corrections and your assertions and differences, I'm just going

8    to agree with you mathematically.

9         Q.   And I'm just -- just trying to oppose the

10   hypothetical.  I understand that you want to dig into that

11   hundred and make sure that it is 150, not 50, but assuming that

12   it is, assuming it is 150 and not 50, and assuming the other

13   way, that that entire 54,000 that right now in your report, you

14   categorize as personal expenses, assuming those were all

15   recategorized as legitimate business expenses, now with those

16   hypotheticals, prior to making the $99,577.73 payment on January

17   30, 2023, then Ms. McNeill will have underpaid for personal

18   expenses of $8,139.01, correct?

19        A.   Again, you lost me that question.  But like I said

20   before, I'm just going to agree with you mathematically, so.

21        Q.   You can read all the numbers are -- what additional

22   information do you need for that -- my hypothetical that I'm

23   posing to you.  What else do you need to verify?

24        A.   Could you repeat the question, please?

25        Q.   Sure.  What other, as I understand it, you can't agree

**HEAD KANDY LLC vs KAYLA MCNEILL**
Sergio P. Negreira on 08/29/2024

1  based on the hypothetical facts that I put forth because you

2  need some additional information, is that right?

3      A.   Yes.

4      Q.   What additional information do you need?

5      A.   I would need to kind of reflect on what we just went

6  over and put a list together, potentially, and look at it.  I

7  can't give you a list right now.  I have to really think about

8  where we've been and what I would need to make any changes.

9      Q.   So, I'm trying to make it, as you know, take out as

10  many variables and disagreements as we can because we started

11  with your opinion that Ms. McNeill had overpaid her Amex by

12  $137,594.72, correct?

13      A.   Yes.

14      Q.   All right.  And I've asked you to then let's just put

15  it in the calculator as we go.  $137,594.72 -- I've asked you to

16  assume that that Pueblo Bank statement is correct in stating

17  that Ms. McNeill received a deposit of $150,993.48 rather than

18  $50,993.48.  Are you with me?

19      A.   Yep.

20      Q.   Okay.  So, if we assume that, would you agree with me

21  then that the overpayment goes down to $37,594.72?

22      A.   I'll agree.  Mathematically, at this point, I'm not

23  going to agree or opines to overpayment or underpayment until I

24  look at the documents and make those adjustments myself.

25      Q.   Right.  Well, I'm not asking you to go back and

 1  analyze them.  That's why I'm giving you a hypothetical.  As an

 2  expert, you can answer the hypotheticals.

 3          And I'm asking you to assume, as we go, every other

 4  bit of information that you put in your report is correct.  And

 5  then we'll add in as hypothetical assumptions, changes to it.

 6  Do you understand?

 7      A.   Yep.  But I'm still not going to answer based on any

 8  plus or minus adjustments, just mathematically.  If you think

 9  -137 it's 37.

10      Q.   Sure.  I mean, would you agree with me that when you

11  -- your opinion is that Ms. McNeill is owed $137,594.72?  That's

12  what's stated in your report as updated with the tables that you

13  provided me this morning, correct?

14      A.   That's correct.

15      Q.   All right.  And if Head Kandy actually gave Ms.

16  McNeill a deposit of $100,000 more than you added up, that

17  number goes down, the overpayment goes down to $37,594.72.

18  Isn't that right?

19      A.   Maybe.  I'd still have to verify everything.

20      Q.   If that is the only change we make.  I mean, are you

21  saying that there's other errors in your report that you know

22  of, that you need to go back and verify and change?

23      A.   No, I'm just saying I can't verify right now based on

24  what we did.  I have to go back.

25      Q.   Right.  I'm asking you then to assume that the rest of

Page 83

1   your report and the entire analysis is 100% correct, other than

2   that hundred thousand dollar mistake in the deposit?

3        A.   I've already answered your question.

4        Q.   No, you've not.  You've answered me mathematically,

5   which wasn't the question.  I'm giving you a hypothetical.

6             So, under my hypothetical, and you don't have to agree

7   that the facts of the hypothetical are correct, but under the

8   hypothetical, if we just increase the amount that Head Kandy had

9   deposited by $100,000, then your opinion would have to be

10  everything else the same, Ms. McNeill overpaid by $37,594.72,

11  correct?

12       A.   I already answered the question.

13       Q.   No, I'm sorry, sir, you didn't.  You answered, the

14  math adds up.

15       A.   No, I answered that question.  We could have the court

16  reporter read it back.  But you've been asking the same question

17  ten times.  And I already answered it.

18       Q.   And I'm trying to get an answer to the question.  Not

19  that $137,594.72 - $100,000 equals $37,594.72 because that's

20  what you told me.

21            Now I'm asking you is that if we added another hundred

22  thousand dollars in payments by Head Kandy, would your opinion

23  have to be, everything else being equal, that Ms. McNeill

24  overpaid by $37,594.72?

25            MR. CONVERSE:  Objection to the form.

**HEAD KANDY LLC vs KAYLA MCNEILL**
Sergio P. Negreira on 08/29/2024

Page 84

1          THE WITNESS:  I've already answered that question, Mr.

2      Thompson.

3  BY MR. THOMPSON:  (Resuming)

4      Q.   Is that answer yes?

5          MR. CONVERSE:  Objection.

6  BY MR. THOMPSON:  (Resuming)

7      Q.   It's a yes or no question.  Either that would be your

8  opinion with that additional one fact, or it wouldn't be your

9  opinion?

10     A.   My answer is, I already answered the question.

11     Q.   Okay.  Would you tell me if your answer is yes or no?

12  I don't have a yes or no on the record.

13         MR. CONVERSE:  Same objection.

14         THE WITNESS:  I don't have to answer it in a yes or no

15     form.  I already answered the question before.

16  BY MR. THOMPSON:  (Resuming)

17     Q.   So you don't have an opinion as to whether increasing

18  the dependency deposits that Head Kandy made by $100,000 would

19  result in $100,000 reduction of the amount that you contend Ms.

20  McNeill overpaid?

21         MR. CONVERSE:  Objection to the form.

22         THE WITNESS:  I already answered the questions.

23  BY MR. THOMPSON:  (Resuming)

24     Q.   What was that answer?

25     A.   Look it up in the transcript.

**HEAD KANDY LLC vs KAYLA MCNEILL**
Sergio P. Negreira on 08/29/2024

Page 85

1    Q.   Was the answer to your answer agreeing with the math?

2    A.   I already answered the question, Mr. Thompson.  Can we

3  move on?

4    Q.   Well, we may have to come back again.

5    A.   That's fine.  It's your Nickels.

6    Q.   I want to look at Exhibit 3, updated report tables,

7  paragraph 59.  We'll just talk in terms of math.

8         For the total payments made from Ms. McNeill's

9  personal bank account, would you agree that for every dollar

10  that we reduce that amount, the amount of the payments Ms.

11  McNeill made from her personal bank account, the amount of the

12  variance or the overpayment also goes down by a dollar?  Under

13  the math.

14    A.   If you mathematically reduce the 1.7, it's going to

15  adjust another numbers.  Yes.

16    Q.   If we reduce the amount of payments made from Ms.

17  McNeill's personal bank account by a dollar, the variance or the

18  overpayment is also reduced by a dollar, is that correct?

19    A.   I think I just answered that question.

20    Q.   No, you didn't.  Is that correct?

21    A.   I already answered that question.

22    Q.   No, no.

23    A.   We're not going to answer a question with a dollar in

24  it.  It's the same question.  The same answer.

25    Q.   No.  But you said it changes the number.  You didn't