## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC,

     Plaintiff/Counterclaim Defendant,

v.                           CASE NO. 23-CV-60345-JB/JMS

KAYLA MARIE MCNEILL,

     Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC,

     Third-Party Defendant.

_____/

## HEAD KANDY'S MOTION FOR SUMMARY JUDGMENT

**BARTLETT LOEB HINDS
THOMPSON & ANGELOS**

**ETHAN J. LOEB**
FL Bar No. 668338
**EDWARD C. THOMPSON**
FL Bar No. 684929
**JALEN A. LARUBBIO**
FL Bar No. 1039258
**CARSON A. SADRO**
FL Bar No. 1026159

1001 Water St., Suite 475
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Plaintiff Head Kandy LLC*

Plaintiff/Counterclaim Defendant Head Kandy, LLC ("**Head Kandy**") moves for summary judgment on certain of its affirmative claims [ECF 187] and the counterclaims and affirmative defenses asserted by Defendant/Counterclaimant Kayla Marie McNeill ("**Ms. McNeill**") [ECF 337].

## Introduction

After almost two years of litigation before this Court, summary judgment against Ms. McNeill is now ripe for the Court's consideration. Here, Head Kandy seeks summary judgment on its claims for Ms. McNeill's breach of her Executive Employment Agreement and her fiduciary duty to Head Kandy as an employee and member.[1] These counts are directed against Ms. McNeill for conduct by Ms. McNeill that indisputably is: (i) self-dealing in nature; (ii) a misuse of company assets for her own personal purposes and to benefit her side businesses; and, (iii) a violation of restrictive covenants to which she had agreed. As it pertains to claims that Ms. McNeill brought, summary judgment is also appropriate on Ms. McNeill's counterclaims for breach of contract, civil theft, unpaid wages, intentional infliction of emotional distress, privacy torts, defamation, and workplace harassment. In sum, and on the factual record before the Court, summary judgment for Head Kandy is due to be granted.

## Argument

**I.      Head Kandy is entitled to summary judgment on its claims for breach of contract and breach of fiduciary duty.**

A.   Unrefuted evidence supports Head Kandy's claim for breach of fiduciary duty (Count II).

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey*

---

[1] Head Kandy has already obtained a Preliminary Injunction enjoining Ms. McNeill from continuing to violate the restrictive covenants after the lawsuit was filed. Undeterred by the Preliminary Injunction, Ms. McNeill has continued during this litigation to violate the restrictive covenants and this Court's Preliminary Injunction, which has resulted in one Report and Recommendation recommending Ms. McNeill be sanctioned for her violations, [ECF 271], and two pending Motions to Enforce [ECF Nos. 266, 432].

*v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002); *accord York Lingings v. Roach*, 1999 WL 608850, at *2 (Del. Ch. July 28, 1999) ("The elements of a breach of fiduciary duty claim are (1) that a fiduciary duty exists and (2) that the fiduciary breached that duty.").[2]

As to the first element—existence of a duty—employees (managerial or not) owe a fiduciary duty of loyalty to their employer. *See, e.g.*, *Werner Enterprises, Inc. v. Mendez*, 362 So. 3d 278, 282 (Fla. 5th DCA 2023). Likewise, the members of a limited liability company owe the company fiduciary duties analogous to those a director owes a corporation. *See Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451, at *8 n.33 (Del. Ch. Apr. 20, 2009). It is undisputed that Ms. McNeill was both an employee and a member of Head Kandy [SMF at ¶¶ 2, 6].[3] Thus, Ms. McNeill owed fiduciary duties to Head Kandy.

As to the second element—breach—the record evidence shows Ms. McNeill breached her fiduciary duty to Head Kandy at least by: (1) causing Head Kandy to hire and pay individuals for time individuals spent performing personal services for Ms. McNeill or services for Ms. McNeill's other business interests, under the false pretense that all time for which these individuals were paid was spent on legitimate Head Kandy business, [SMF at ¶¶ 16-18, 20-21]; (2) falsely representing that personal expenses and charges for supplies and inventory for unrelated ventures Ms. McNeill charged to the Head Kandy credit card were Head Kandy business expenses, directing and allowing Head Kandy funds to pay for those expenses, and failing to reimburse Head Kandy for those expenses, [SMF at ¶¶ 20-22, 24-27]; and, (3) leasing to Head Kandy a forklift, barn, and dumpster she owned, and overcharging for those items even though some of those items had no

---

[2] Head Kandy references both Delaware and Florida law because Ms. McNeill's fiduciary duties arise from her status both as an employee (governed by Florida law under the Executive Employment Agreement) and as a member of Head Kandy (governed by Delaware law under its Operating Agreement).

[3] Citations to "**SMF**" refer to Head Kandy's contemporaneously filed Statement of Material Facts in Support of its Motion for Summary Judgment [ECF 470].

business use, [SMF at ¶¶ 28-33]. *See, e.g.*, *Agnelli v. Lennox Miami Corp.*, 2022 WL 2788875, at *15 (S.D. Fla. July 15, 2022) (using company's assets for personal benefit, engaging in self-dealing, and misleading company about non-business expenses were breaches of fiduciary duty); *QC Commc'ns Inc. v. Quartarone*, 2014 WL 3974525, at *11 (Del. Ch. Aug. 15, 2014) (fiduciary who "convert[ed] th[e] company's assets to his own use" and "exploit[ed] those assets for his personal benefit," including for the benefit of his own side business, breached his duty).

As to the third element (at least under Florida law)—causation of damages—damages are proximately caused by a breach of fiduciary duty when the defendant's conduct "foreseeably and substantially" caused the plaintiff's injury. *See Sutherlin v. Wells Fargo Bank N.A.*, 767 F. App'x 812, 819 (11th Cir. 2019). Here, Ms. McNeill's conduct clearly and directly caused Head Kandy damages, in an amount to be determined at trial, but at least in the amount of Head Kandy funds used not for a business purpose, but rather: (1) to pay employees who performed personal services for Ms. McNeill or services for her other businesses; (2) to make purchases for Ms. McNeill's personal use; and, (3) to pay Ms. McNeill for grossly inflated, and largely unnecessary, rentals.

Accordingly, the Court should enter summary judgment on Head Kandy's breach of fiduciary duty claim at least as to these breaches.

B. <u>As unrebutted evidence shows and the Court has already found, Ms. McNeill has breached the restrictive covenants of her Executive Employment Agreement after her employment and throughout this litigation, and the Court should enter a permanent injunction.</u>

i.     *Head Kandy prevails on its claim for breach of the restrictive covenants (Count I).*

The Executive Employment Agreement includes non-competition, non-solicitation, and non-disparagement provisions. [SMF at ¶ 7]. To prevail on its claim for Ms. McNeill's breaches of those restrictive covenants, Head Kandy must prove the usual elements of a breach of contract claim—"(1) a valid contract; (2) a material breach; and, (3) damages"—plus three extra elements:

(1) the restrictive covenant must be set forth in a writing signed by the person against whom enforcement is sought; (2) [there are] one or more legitimate business

> interests justifying the restrictive covenant; and (3) … the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction.

*Rauch, Weaver, Norfleet, Kurtz & Co. v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 630 (Fla. 4th DCA 2021) (cleaned up).

As to the traditional breach of contract elements, first, it is undisputed that the Executive Employment Agreement is a valid contract between Head Kandy and Ms. McNeill.  [SMF at ¶ 6]. Second, the Court has already found (and unrebutted record evidence readily supports) that Ms. McNeill has repeatedly breached the restrictive covenants by promoting hair-related products on her social media pages, soliciting Head Kandy's customers to buy competing hair-related products, and brazenly disparaging Head Kandy and its affiliated individuals and entities to her thousands of online followers on dozens of occasions after her termination and during the pendency of this litigation.  [SMF at ¶¶ 41, 43; *see also* ECF 133 at 25-34].  Ms. McNeill has also violated the restrictive covenants by soliciting and hiring former Head Kandy employees to work for her competing business within a year of their employment with Head Kandy.  [SMF at ¶ 44].  Third, while factual disputes remain as to the precise amount of Head Kandy's damages, "under Florida law, damages are automatically presumed where an enforceable restrictive covenant is violated." *Vital Pharms., Inc. v. Alfieri*, 2022 WL 1450042, at *7 (S.D. Fla. May 9, 2022).  As the Court has already recognized even without applying that presumption, evidence shows Head Kandy was damaged by Ms. McNeill's breaches, specifically including loss of sales and the concomitant loss of revenue and profits.  [SMF at ¶ 42; ECF 133 at 34-36; ECF 152 at 4-5].

As to the additional elements, first, the parties do not dispute that the restrictive covenants at issue here are set forth in writing in § 5 of the Executive Employment Agreement, which was signed by Ms. McNeill.  [SMF at ¶ 7; ECF 133 at 18].  Second, as the Court has recognized, Head Kandy has legitimate business interests justifying the restrictive covenants, including (as the Court

found) Head Kandy's interests in maintaining "customer goodwill" in the hair care space and its substantial relationships with existing and prospective customers.  [ECF 133 at 18-21].  Third, as the Court has found and Ms. McNeill in fact agreed in the Executive Employment Agreement, the restrictive covenants are reasonably necessary to protect Plaintiff's legitimate business interests in its customer relationships and customer goodwill.  [ECF 133 at 21-23].

Finally, Ms. McNeill's defenses to enforcement of the restrictive covenants either are without merit or (as the Court previously found) have been waived.  That is, the Court has already, explicitly or implicitly, rejected Ms. McNeill's 11th, 13th, 14th, and 15th affirmative defenses, which challenge the enforceability of the restrictive covenants, [ECF 133 at 23-25; ECF 152 at 2-4], and Ms. McNeill's 12th affirmative defense (that the restrictive covenants are unenforceable due to lack of consideration) is frivolous, because the Executive Employment Agreement provides for generous compensation to Ms. McNeill in exchange for her agreement to its terms [SMF at ¶ 6].  In any event, Ms. McNeill's affirmative defenses are wholly unsupported by record evidence.  For these reasons, Head Kandy is also entitled to summary judgment on these affirmative defenses.  *See State Farm Mut. Auto. Ins. Co. v. LaRocca*, 685 F. Supp. 3d 1354, 1360 (M.D. Fla. 2023) ("A court may dispose of affirmative defenses by summary judgment.").

Having proven the requisite elements, Head Kandy is entitled to summary judgment on its claim for Ms. McNeill's breach of the restrictive covenants.

ii.     *The Court should enter permanent injunctive relief enjoining Ms. McNeill from violating the restrictive covenants, each for their full contractual duration.*

Based on the unrebutted record evidence, the Court should enter permanent injunctive relief enforcing the restrictive covenants to which Ms. McNeill agreed.  "The standard for entry of a permanent injunction is essentially the same as a preliminary injunction except that the moving party must show actual success on the merits rather than a likelihood of success."  *Del Pino v.*

*AT&T Info. Sys., Inc.*, 921 F. Supp. 761, 765 (S.D. Fla. 1996).[4]  As it did at the time the Court entered the Preliminary Injunction, Head Kandy readily satisfies the requisite elements.  [ECF 133 at 13-40].  In short, nothing has changed since the Court entered the Preliminary Injunction based on the extensive evidence Head Kandy presented at that time.  There is no new contrary evidence.  In fact, the only new evidence is of ***additional subsequent breaches*** of the restrictive covenants (and the Preliminary Injunction) by Ms. McNeill.  [SMF at ¶¶ 43-44].  Indeed, since then, Magistrate Judge Strauss has found violations of the restrictive covenants by Ms. McNeill, and recommended granting Head Kandy's motions to enforce the Preliminary Injunction sanctioning Ms. McNeill based on her violations.  [ECF 177 at 1; ECF 271 at 17-21, 25].[5]

Given that Head Kandy has proven the requisite elements and there is no countervailing evidence in the record, the Court should enter permanent injunctive relief enforcing each of the restrictive covenants against Ms. McNeill to the complete extent agreed upon in the Executive Employment Agreement.  That is, under Florida law, Head Kandy is entitled to the full benefit of each of the restrictive covenants, meaning that (particularly given that Ms. McNeill repeatedly participated in prohibited activities during the course of this litigation) the Court should enjoin Ms. McNeill for the full duration specified in the Executive Employment Agreement as to each prohibition calculated from the date permanent injunctive relief is entered.  *See, e.g.*, *Capelouto v. Orkin Exterminating Co. of Fla.*, 183 So. 2d 532, 534-35 (Fla. 1966) (affirming injunction with full restrictive period beginning after entry rather than at employee's resignation because employer was "entitled to have a period of two years during which [employee] would not be in competition with it," especially when employee "participated in the prohibited activities during the course of

---

[4]  The Court has already rejected Ms. McNeill's 17th and 18th affirmative defenses, which attack the "adequate remedy at law" and "irreparable harm" elements of the claim.  [ECF 133 at 35-37].
[5]  Two additional motions seeking to hold Ms. McNeill accountable for additional violations of the Preliminary Injunction also remain pending.  [ECF Nos. 266, 432].

the litigation," because to do otherwise "would be to nullify … the effectiveness of such agreements"); *Orkin Exterminating Co. v. Bailey*, 550 So. 2d 563, 565 (Fla. 4th DCA 1989) (same); *Kverne v. Rollins Prot. Servs. Co.*, 515 So. 2d 1320, 1321-22 (Fla. 3d DCA 1987) (same).

C. Record evidence shows that Ms. McNeill has also breached the Executive Employment Agreement by challenging and continuing to challenge the restrictive covenants and raising and continuing to raise equitable defenses to their enforcement (Count I).

Head Kandy is also entitled to summary judgment with respect to Ms. McNeill's breach of § 5(g)—by which she agreed the restrictive covenants were "fair and reasonable" and that she would not "challenge the enforceability" of the restrictive covenants or "raise any equitable defenses to its [sic] enforcement"—which Ms. McNeill has repeatedly and unabashedly violated during this case. [SMF at ¶¶ 10, 45]. Head Kandy has, to date, incurred $299,432.50 in attorney's fees, which continue to accumulate, from being forced to overcome equitable defenses and challenges to enforceability Ms. McNeill unequivocally agreed she would not raise. [SMF at ¶ 45].[6] Head Kandy is entitled to summary judgment on that claim. *See, e.g.*, *Wilmington Trust, N.A. v. Estate of Gonzalez*, 2016 WL 11656681, at *10-11 (S.D. Fla. Nov. 1, 2016) (granting summary judgment on plaintiff's entitlement to attorney's fees as damages for defendants' breach of promises not to sue and not to raise defenses).

II. **Because there is no genuine dispute of material fact, Head Kandy is entitled to summary judgment on Ms. McNeill's counterclaims and affirmative defenses.**

In addition to the below, Head Kandy incorporates the arguments in its pending Motion to Dismiss [ECF 360] and Motion to Strike [ECF 363] regarding the insufficiency and futility of Ms. McNeill's counterclaims and affirmative defenses, which also support summary judgment.

---

[6] Currently pending is a report and recommendation [ECF 271] recommending that Head Kandy be awarded $26,794.66 as a sanction against Ms. McNeill, representing a portion of attorney's fees and costs actually incurred by Head Kandy from enforcement efforts made necessary by one of Ms. McNeill's numerous violations of the Preliminary Injunction. If the Court adopts Magistrate Judge Strauss's recommendation, that amount could properly be deducted from Head Kandy's total attorney's fees and costs.

Because Ms. McNeill's operative complaint is a largely indiscernible shotgun pleading [ECF 360 at 2-5], Head Kandy addresses Ms. McNeill's claims herein to the best of its understanding.

**Breach of Executive Employment Agreement (Count 1)**.  Under Florida law [SMF at ¶ 11], Ms. McNeill must prove "(1) a valid contract; (2) a material breach; and (3) damages." *Murciano v. Garcia*, 958 So. 2d 423, 423 (Fla. 3d DCA 2007).  Head Kandy is entitled to summary judgment based on the evidence in the record because, even assuming Ms. McNeill's claimed breaches could be breaches at all as a matter of law (they cannot, *see* ECF 360 at 5-6), Ms. McNeill can neither establish a material breach by Head Kandy nor show damages from claimed breaches.

First, insofar as Ms. McNeill's claims of breach relate to Head Kandy's non-payment of a bonus [ECF 337 at ¶ B.91(a)-(c)], that claim fails.  No bonus is owed to Ms. McNeill, because under §§ 3(b) and 5(f) of the Executive Employment Agreement, Ms. McNeill has now forfeited any bonus (and would have had to repay had one been paid to her) because of her above described and proven breaches of the restrictive covenants [SMF at ¶ 8].[7]  Thus, summary judgment on Ms. McNeill's bonus-related claims is warranted because Ms. McNeill has suffered no damages.  *See, e.g.*, *Fla. Virtual Sch. v. K12, Inc.*, 2023 WL 6294569, at *3 (M.D. Fla. Sept. 5, 2023) (summary judgment granted when plaintiff could not show actual damages from breach).

Second, Ms. McNeill's claimed breaches based on her termination and the contractual consequences flowing therefrom, including nonpayment of Ms. McNeill's base salary for the remainder of the contractual term [ECF 337 at ¶ B.91(d)-(f)], fail because the record shows Head Kandy terminated Ms. McNeill in accordance with the "for cause" provision of her Executive Employment Agreement [§ 4(a)(ii)] due to Ms. McNeill's wrongful conduct.  [SMF at ¶¶ 37-38].  There is no evidence, beyond Ms. McNeill's speculation, that Head Kandy terminated Ms. McNeill

---

[7]  For these same reasons, Head Kandy is also entitled to summary judgment on its affirmative claim for declaratory relief that Ms. McNeill is not owed a bonus (Count V).

for any other reason, certainly not one that would be "without cause." *See Schultz v. Am. Airlines, Inc.*, 449 F. Supp. 3d 1301, 1311 (S.D. Fla. 2020) (disregarding "wholly-uncorroborated, self-serving testimony" when "the thrust of that testimony" contradicted the documentary record); *Francois v. JFK Med. Ctr. Ltd. P'ship*, 370 So. 3d 324, 329-30 (Fla. 4th DCA 2023) ("[A] unilateral claim from the plaintiff that the defendant is lying, standing alone, is not enough to avert summary judgment.").[8]

Moreover, Ms. McNeill has not disclosed the elements or a computation of the alleged damages that could potentially be recovered from these alleged breaches as required by under Rule 26(a). [Disclosures at 14-15]; *see City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 905 (11th Cir. 2013) (affirming summary judgment after exclusion of damages evidence because of inadequate disclosure); *Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*, 663 F. Supp. 3d 1294, 1303-04 (M.D. Fla. 2023) (explaining that a list of categories of damages and corresponding amounts without explanation or calculations is inadequate under Rule 26).

Finally, even if the Executive Employment Agreement obligated Head Kandy to reimburse business expenses incurred by Ms. McNeill [ECF 337 at ¶ B.91(g)], there is no competent evidence that Ms. McNeill overpaid any Head Kandy business expenses. To the contrary, the evidence shows Ms. McNeill still owes Head Kandy for personal expenses (or at the very least, expenses for which she provided no business justification whatsoever) she caused Head Kandy to pay under the guise that they were legitimate Head Kandy business charges. [SMF at ¶¶ 24-27].[9]

---

[8] Insofar as Ms. McNeill asserts a breach based on her "suspension" or "demotion," Ms. McNeill has not disclosed, and there is no, evidence that she suffered any damages from those actions alone and distinct from her termination.

[9] Head Kandy move to exclude Ms. McNeill's expert Sergio Negreira [ECF 433], but even if Mr. Negreira's opinion survives, it actually supports Head Kandy's position. That is, once Mr. Negreira's undebatable numerical errors are corrected, even his math (which simply parrots Ms. McNeill's claims about the nature of the various expenses she charged to Head Kandy's credit

Accordingly, Head Kandy is entitled to summary judgment on Ms. McNeill's Count 1.

**Breach of Operating Agreement (Count 2)**.  Even if Ms. McNeill's claim for breach of the Operating Agreement was properly before this Court (it is not, *see* ECF 360 at 6-7), summary judgment for Head Kandy is still warranted.  That is because, without the unreliable opinion of her expert Daniel Korczyk, which Head Kandy moved to exclude [ECF 430], there is no evidence of any damages to Ms. McNeill caused by the breach she alleges.  *See, e.g.*, *Brandin v. Gottlieb*, 1998 WL 668651, at *5 (Del. Ch. Sept. 18, 1998) ("In order to prevail on a claim for breach of contract, [claimant] must prove damages.").  To the contrary, the only record evidence shows that Ms. McNeill suffered no damages, because her membership units were worthless at the time they were reacquired by Head Kandy.  [SMF at ¶ 40].  Thus, Head Kandy is entitled to summary judgment.

**Breach of Loan Agreement and Forklift Lease (Counts 3 & 4)**.  Under Florida law, to be enforceable, an agreement that cannot be performed within a year of its making (like the Loan Agreement) or a lease where total payments to be made exceed $1,000 (like the Forklift Lease) must be made in a writing signed by the party to be charged therewith.  *See* §§ 680.201(1) & 725.01, Fla. Stat.  There is no evidence that either the Loan Agreement or Forklift Lease were embodied in a signed writing; in fact, the only testimony definitively shows that these agreements ***were not*** formally written.  [SMF at ¶¶ 13, 28].

Additionally, essential details of these claims were neither pled [ECF 360 at 7-8] nor disclosed.  For example, there is no evidence of the term of the Forklift Lease or the interest rate and repayment terms of the Loan Agreement, and therefore no ability to ascertain Ms. McNeill's damages.  Nor did Ms. McNeill provide sufficient calculations of either of those amounts in her Rule 26(a) disclosures.  *See, e.g.*, *Go Mobile Flooring*, 663 F. Supp. 3d at 1303-04.

---

card) shows that Ms. McNeill did not overpay Head Kandy's business expenses, but rather, on net, caused Head Kandy to pay for her personal expenses.  [SMF at ¶ 26; ECF 433 at 6-7].

**Civil Theft (Counts 5 and 6) and Conversion (Count 10)**.  As the record evidence bears out, Ms. McNeill's civil theft claims fail for the reasons stated in Head Kandy's Motion to Dismiss, including that:  (1) Ms. McNeill makes no claim separate from conduct that amounts, at most, to a breach of contract, *see, e.g.*, *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1573-74 (S.D. Fla. 1993); and, (2) there is no evidence whatsoever (certainly not clear and convincing evidence) of felonious intent of Head Kandy, *see, e.g.*, *Palmer v. Gotta Have It Golf Collectibles, Inc.*, 106 F. Supp. 2d 1289, 1303 (S.D. Fla. 2000).  Instead, there is (in the light favorable to Ms. McNeill) merely evidence of bona fide disputes over the parties' respective rights to the subject property.  [SMF at ¶¶ 2, 9, 30, 40].  That is not enough.  *See Sanchez v. Encinas*, 627 So. 2d 489, 490 (Fla. 3d DCA 1993) (when "the record shows, at most, a bona fide dispute over the right to the property in question," that "negates the wrongful intent required to sustain a claim for theft").[10]  Additionally, Ms. McNeill has not adequately disclosed damages resulting from the alleged theft of the subject property under Fed. R. Civ. P. 26(a)(1), nor has she supplemented her inadequate disclosures to do so (as she said she would) [Disclosures at 14-15].  *See, e.g.*, *Hotels.com*, 549 F.

---

[10]  Under Florida choice of law rules, civil theft is a tort, so the "most significant relationship" test determines the applicable law.  *See, e.g.*, *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1340 (M.D. Fla. 2006).  As to claims involving injury to property, "the local law of the state where the injury occurred determines the rights and liabilities of the parties unless … some other state has a more significant relationship … to the occurrence, the thing and the parties."  Restatement (Second) of Conflict of Laws § 147.  Factors include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Restatement (Second) of Conflict of Laws § 145.  Here, the forklift is in North Carolina [SMF at ¶ 30], and the social media accounts and content and ownership interest in Head Kandy are governed by agreements under Florida or Delaware law and based on the parties' relationship in Florida (where Head Kandy's principal place of business is located) and North Carolina (where Head Kandy's warehouse, where Ms. McNeill worked leading up to her termination, is located) [SMF at ¶¶ 2, 3, 5, 11, 12].  Colorado law does not apply, and Ms. McNeill does not bring a North Carolina law claim.  To the extent the Court concludes that Colorado law applies, Ms. McNeill's claims fail for the same reasons.  *See, e.g.*, *Million v. Grasse*, 549 P.3d 1043, 1051 (Colo. App. 2024); *Scott v. Scott*, 428 P.3d 626, 633 (Colo. App. 2018).

App'x at 905.  And in any event, there is no evidence in the record of damages arising out of the alleged theft of Ms. McNeill's supposed social media accounts and content or her forklift.

**Colorado Wage Act (Count 7)**.  Head Kandy is entitled to summary judgment on this claim because, as stated in Head Kandy's Motion to Dismiss, Ms. McNeill's cursory allegations of Colorado residency are belied by her allegations showing she worked in North Carolina leading up to her termination; thus, that the Colorado Wage Act ("**CWA**") cannot apply to this case as it is pled.  [ECF 360 at 11].  The record evidence confirms Ms. McNeill worked from Head Kandy's North Carolina offices and warehouse beginning nearly two years prior to her termination [SMF at ¶ 12], *see Ewton v. Matrix Analytics, Inc.*, 2022 WL 4536231, at *2 (D. Colo. Sept. 28, 2022) ("[T]he [CWA] only applies to employees in Colorado"), and Ms. McNeill's Executive Employment Agreement elects Florida law [SMF at ¶ 11].  Moreover, Ms. McNeill did not disclose damages for "lost wages" or provide any computation supporting her disclosed "approximate[]" amount of "unpaid compensation," nor did she define either category.  [Disclosures at 14-15].  *See Hotels.com*, 549 F. App'x at 905; *Go Mobile Flooring*, 663 F. Supp. 3d at 1303.  Finally, the record definitively shows Head Kandy does not owe Ms. McNeill any unpaid salary, bonus, or business expenses anyway [SMF at ¶¶ 8, 23-27, 37, 38], and Ms. McNeill is not owed "unpaid vacation" under the terms of her Executive Employment Agreement, *see Engelhardt v. Svensk Mgmt., Inc.*, 2009 WL 10668300, at *8 (S.D. Fla. Sept. 3, 2009) (explaining that under Florida law, an employee's entitlement to, and conditions for, a pay-out of accrued but unused vacation time depends on the employment agreement between the parties).

**Privacy Torts (Counts 8 and 9)**.  As Head Kandy explained in its Motion to Dismiss [ECF 360 at 11-12], summary judgment is appropriate because Ms. McNeill sold her social media accounts and content to Head Kandy and consented to Head Kandy's commercial use of promotional materials created by or including Ms. McNeill.  [SMF at ¶¶ 2, 9].  *See, e.g., Nat'l*

*Football League v. Alley, Inc.*, 624 F. Supp. 6, 10 (S.D. Fla. 1983) (contractual consent waived of § 540.08 rights).  Further, there is no evidence that Head Kandy misappropriated Ms. McNeill's likeness at all, no evidence that Head Kandy engaged in any new uses of Ms. McNeill's likeness after her employment ended and she was no longer directly responsible for Head Kandy's marketing, and no evidence (or Rule 26(a) disclosure) of any damages therefrom.

**Unjust Enrichment (Count 11)**.  Even if Ms. McNeill's unjust enrichment claim was not wholly foreclosed by the existence of express contracts governing its subject matter (which it is, *see* ECF 360 at 8-9), there is still no record evidence to support Ms. McNeill's claims that Head Kandy was unjustly enriched by her labor, forklift, social media accounts, and payment of business expenses.  Instead, record evidence establishes:  Head Kandy paid Ms. McNeill all she was owed under the Executive Employment Agreement in return for her labor, [SMF at ¶ 37]; Ms. McNeill sold her social media accounts to Head Kandy as part of a multi-million-dollar transaction, [SMF at ¶¶ 2, 9]; Ms. McNeill did not overpay for Head Kandy's business expenses (and in fact underpaid for her personal expenses she charged to Head Kandy), [SMF at ¶¶ 23-27]; and, Head Kandy paid Ms. McNeill in supposed total "lease" payments far more than her forklift was worth, [SMF at ¶ 29].  Those facts on their face wholly belie any notion of "unjust" enrichment.

**Intentional Infliction of Emotional Distress ("IIED") and "Extreme and Outrageous Conduct" (Counts 12 and 14)**.  "Only in extremely rare circumstances will courts uphold claims for intentional infliction of emotional distress." *Gonzalez-Jimenez de Ruiz v. United States*, 231 F. Supp. 2d 1187, 1199 (M.D. Fla. 2002).  As explained in Head Kandy's Motion to Dismiss, Ms. McNeill failed to allege sufficient conduct or injury to even state an IIED claim.  [ECF 360 at 13-14].  Unsurprisingly, the evidence in the record does not come close to establishing such a claim either.  Instead, the record (when viewed in the light most favorable to Ms. McNeill) at most shows that Head Kandy did not respond to Ms. McNeill's unsubstantiated allegations of harassment to

Ms. McNeill's satisfaction, and that Head Kandy ultimately terminated Ms. McNeill upon discovering her own wrongful conduct.  [SMF at ¶¶ 37-38].[11]  That is a far cry from establishing actionable "extreme and outrageous" conduct by Head Kandy.  *See, e.g.*, *Crawford v. Mangos Caribbean Restaurant, LLC*, 2020 WL 10056405, at *20 (N.D. Ga. 2020) (claim against employer for failure to stop supervisor's harassment of employee failed under analogous Georgia law); *Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1560 (S.D. Fla. 1996) (similar claim was due to be dismissed).  Likewise, the record shows (at most) that Ms. McNeill suffers from depression and would benefit from therapy and medications [SMF at ¶ 74], which symptoms (even if there was any evidence of a causal connection with Head Kandy's conduct) do not come close to establishing the requisite "severe" emotional distress, *see, e.g.*, *Corbin v. Prummell*, 655 F. Supp. 3d 1143, 1165-66 (M.D. Fla. 2023) (allegations that plaintiff "is still seeing a mental health therapist and experiencing depression, nightmares, and anxiety" failed to "establish that the emotional distress was severe enough to satisfy the high bar in an IIED claim").

**Defamation (Count 17)**.  When asked to specifically identify the statements she attributes to Head Kandy and contends are defamatory, Ms. McNeill could not do so.  [SMF at ¶ 75].  Regardless, some categories of statements Ms. McNeill appears to claim were defamatory merit judgment for Head Kandy as a matter of law.  First, statements made by Head Kandy or its representatives during this litigation, including in pleadings, other filings, and oral testimony, are subject to the litigation privilege and cannot be actionable.  *See, e.g.*, *DelMonico v. Traynor*, 116 So. 3d 1205, 1217 (Fla. 2013).  Second, statements about Ms. McNeill made between Head Kandy employees are not actionable, either because they were not published to a third party or because they pertained to a matter of workplace concern.  *See Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830,

---

[11]  Again, as explained in Head Kandy's Motion to Dismiss [ECF 360 at 13 n.9], Head Kandy is not liable for *Mr. Rosenbaum's* alleged harassing conduct, but rather, is only liable for *its own* acts.

834 (Fla. 3d DCA 2007) (statements between officers or managerial level employees are not actionable for lack of publication, and statements made to rank and file employees are not actionable if they pertain to, inter alia, a matter in which the speaker and listener have a mutual interest). Third, Head Kandy is not liable for statements made by its employees at all unless the employee acted as an agent of Head Kandy within the authorized scope of employment and made the statement as part of the actual performance of his or her job duties. *Schreidell v. Shoter*, 500 So. 2d 228, 232-33 (Fla. 3d DCA 1986). Finally, Ms. McNeill cannot rely on statements of which she has no knowledge beyond what others have told her, and of which there is no record evidence other than her own testimony. *See Molenda v. Hoechst Celanese Corp.*, 60 F. Supp. 2d 1294, 1303 (S.D. Fla. 1999) ("Plaintiff concedes that he has no personal knowledge as to the statements—he only learned of the comments from others. Clearly, Plaintiff's deposition testimony constitutes double-hearsay and, as such, cannot be used to defeat summary judgment.").

The only statements Ms. McNeill could, based upon her personal knowledge, specifically identify as coming from any particular individual, in the performance of the speaker's authorized Head Kandy duties, and being published outside of this litigation to parties outside of Head Kandy are those Ms. McNeill claims Mindy McDermaid made during a Facebook Live broadcast on Head Kandy's page. During that broadcast, Ms. McNeill claims Ms. McDermaid stated that: (1) Ms. McNeill "started a brand" and needed Mr. Falic's help and money for the brand to grow; and, (2) Ms. McNeill and Mr. Falic amicably decided to no longer stay together as business partners. [SMF at ¶ 76]. But these statements are not defamation, either because they are truthful, or because they cannot possibly be injurious to Ms. McNeill even if they are not truthful (and there is no evidence in the record of any injury from these statements, nor did Ms. McNeill ever disclose under Rule 26(a) any damages arising from this claim). *See Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) ("A false statement of fact is the *sine qua non* for recovery in a defamation

action.”); *Block v. Matesic*, 2023 WL 8527670, at *8 (S.D. Fla. Dec. 8, 2023) (statements that are not facially defamatory are only actionable upon proof of actual, special damages).  Moreover, there is no evidence (certainly not clear and convincing evidence) of actual malice by Head Kandy.  *See, e.g.*, *Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 294 (Fla. 2d DCA 2001) (public figure defamation plaintiff “must prove actual malice with clear and convincing evidence”). [12]

**FCRA Sex/Sexual Harassment (Counts 18 & 21)**. [13]  To prove a hostile work environment based on sexual harassment, Ms. McNeill must show, inter alia, that the harassment was, both objectively and subjectively, “sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive working environment.”  *Lockett v. Choice Hotels Int’l, Inc.*, 315 F. App’x 862, 865-66 (11th Cir. 2009).

Factors going to the objective prong include “(1) the frequency of the … conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee’s job performance.”  *Id.*  Here, as explained in Head Kandy’s Motion to Dismiss [ECF 360 at 13], the conduct Ms. McNeill alleges, even if true, does not rise to the requisite severity or pervasiveness.  Record evidence fails to support Ms. McNeill’s outlandish allegations, but rather (in the light most favorable to Ms. McNeill, and putting aside ample controverting evidence) shows merely that Ms. McNeill and Mr. Rosenbaum mutually engaged in a few arguably risqué conversations [SMF at ¶

---

[12]  The evidence shows Ms. McNeill is a public figure because she has a substantial social media following, has been the online promotional face of various businesses (including Head Kandy), and is well known among her devoted followers and in the circles in which she travels.  [SMF at ¶ 1].  *See generally Berisha v. Lawson*, 141 S. Ct. 2424, 2429 (2021) (Gorsuch, J., dissenting from denial of certiorari) (noting that under current law, “private citizens can become ‘public figures’ on social media overnight” by “their notoriety in certain channels”).

[13]  For the reasons explained in Head Kandy’s Motion to Dismiss [ECF 360 at 19-22], these claims and Ms. McNeill’s other FCRA “harassment” claims (Counts 18 through 21) are untimely, and Head Kandy is entitled to judgment as a matter of law on those claims for that reason alone.

53], that Mr. Rosenbaum and Ms. McNeill once participated at the same time in a yoga session [SMF at ¶ 56], that Mr. Rosenbaum once used the restroom without closing the door and once sought a towel from Ms. McNeill after showering and before boarding a flight [SMF at ¶¶ 55, 58], and two instances of de minimis and non-sexual touching [SMF at ¶¶ 47, 48, 50]. As indicated by cases finding as a matter of law that similar—and far more egregious—conduct was not objectively "severe or pervasive," there is no genuine dispute of material fact on this claim, and Head Kandy is entitled to summary judgment. *See, e.g.*, *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 807-08 (11th Cir. 2012) (grabbing plaintiff's buttocks, putting an arm around her shoulder, and kissing her, along with repeated vulgar comments and solicitations, were not severe or pervasive); *Lockett*, 315 F. App'x at 866-67 (daily crude sexual remarks over several months and "two incidents of brief touching" were not severe or pervasive); *Mitchell v. Pope*, 189 F. App'x 911, 913 (11th Cir. 2006) (supervisor's repeated sexual advances and sexually explicit comments and conduct, along with three instances of touching or attempted touching, were not severe or pervasive); *Peters v. Cosco & Assocs., Inc.*, 2022 WL 19408073, at *8-9 (N.D. Fla. Jan. 19, 2022) (repeated sexual comments and explicit solicitations in the workplace were not severe or pervasive).

Additionally, Head Kandy is entitled to summary judgment based on the subjective prong, because evidence shows that Ms. McNeill herself frequently initiated sexual conversations at work [SMF at ¶ 54], made sexual jokes with Mr. Rosenbaum and sent revealing pictures to Mr. Rosenbaum within the same conversations she now claims were harassment [SMF at ¶ 53], and continued to chat with in a friendly manner, and even praise, Mr. Rosenbaum after each of the alleged harassing acts and even after she supposedly reported those acts to Mr. Falic [SMF at ¶¶ 49, 51, 59, 69, 70, 72, 73], indicating Ms. McNeill did not actually consider Mr. Rosenbaum's conduct to be "so severe or pervasive as to constitute an abusive environment or alter the terms of her employment." *Guthrie*, 460 F. App'x at 807 (delay in reporting, along with evidence plaintiff

corresponded and joked with alleged harasser after supposed harassment, showed lack of subjective severity or pervasiveness).

**FCRA Age (Count 19)**.  Even if the FCRA protected Ms. McNeill from age-based acts (it does not, because it is undisputed that Ms. McNeill is and was under 40 years old [SMF at ¶ 67]) [ECF 360 at 23], there is no evidence in the record of age-based harassment, much less any severe or pervasive age-based harassment.  Rather, the only evidence of any statements or actions related to Ms. McNeill's age at all amounts to various passing comments on Ms. McNeill's relative youth and inexperience.  [SMF at ¶ 68].  That is a far cry from the severe or pervasive age-based harassment that Ms. McNeill must show to prevail on this claim.  *See, e.g.*, *Sclafani v. City of Margate*, 2023 WL 4363537, at *5 (S.D. Fla. July 6, 2023) (episodic offensive utterances, while arguably insensitive, were not intimidating or physically threatening, were not severe or pervasive, and could not withstand summary judgment); *Greene v. Sch. Bd. of Broward Cnty.*, 2014 WL 3950387, at *9 (S.D. Fla. Aug. 12, 2014) (summary judgment due when record lacked evidence of age-based harassment).  Therefore, the Court should grant summary judgment.

**FCRA Religion (Count 20)**.  There is no evidence in the record of any religion-based harassment of Ms. McNeill.  Rather, the only evidence related to religion at all consists of innocuous jokes [SMF at ¶ 63], conversations concerning global geopolitics held in Ms. McNeill's presence [SMF at ¶ 65], Ms. McNeill's claim that she was told not to post about religion on Head Kandy's social media [SMF at ¶ 66], and Ms. McNeill's claim that while Jewish employees received certain holidays off of work, Ms. McNeill (a Christian) did not receive Christian holidays off of work, even though she had never requested those days off work. [SMF at ¶¶ 60-62].  That evidence, even if fully credited, is undoubtedly not the severe or pervasive harassment necessary for Ms. McNeill to prevail on this claim.  *See, e.g.*, *Lara v. Raytheon Tech. Serv. Co.*, 476 F. App'x 218, 221 (11th Cir. 2012) (comments or behaviors not related to religion were not actionable at

all, and comments about religion were not actionable because they were not "threatening or humiliating," but rather, were at most mere "offensive utterances"); *Al-Hafnawi v. Pub. Health Trust of Miami-Dade Cnty., Fla.*, 2020 WL 3839832, at *9 (S.D. Fla. July 8, 2020) (collecting cases in which far more egregious religion-based comments and conduct still could not support harassment claim).  Moreover, by this claim, Ms. McNeill in truth claims not harassment, but rather disparate treatment based on religion, which (also baseless) claim she cannot bring.  [SMF at ¶ 46].  Finally, Ms. McNeill could not have subjectively perceived such comments to be sufficiently severe or pervasive to constitute actionable harassment, as evidenced by her participation in—and agreement with—antisemitic commentary with other employees describing Mr. Falic as "a fucking greedy pig" and delighting in the suggestion Mr. Falic would go on social media and "curl his little Jewish sideburns" to try to "keep customers" if Ms. McNeill were to leave Head Kandy.  [SMF at ¶ 64].  Therefore, Head Kandy is entitled to summary judgment.

**FCRA Retaliation (Count 21)**.  To prove retaliatory termination by circumstantial evidence, Ms. McNeill must satisfy the well-established test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[14]  Ms. McNeill must first make a prima facie case of retaliation; if she does so, Head Kandy must show "a legitimate, non-discriminatory reason for the adverse employment action," and if Head Kandy does that, Ms. McNeill "must show that this reason is a pretext for retaliation."  *Russell v. City of Tampa, Fla.*, 737 F. App'x 922, 924 (11th Cir. 2018).

Even assuming Ms. McNeill can prove a prima facie case of retaliation, the record is replete with legitimate reasons for her termination.  Evidence shows that Ms. McNeill during her employment caused Head Kandy to unwittingly pay her personal expenses, hired and caused Head Kandy to pay employees to perform personal services for her, and used and directed Head Kandy

---

[14]  There is no direct evidence of retaliation.  *See Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016) (retaliation claims "can be established by direct or circumstantial evidence").

resources for the benefit of herself, her family, and her side businesses.  [SMF at ¶¶ 16-33].  Head Kandy witnesses testified, and documentary evidence shows, Ms. McNeill was terminated for those reasons, not in retaliation for alleged reporting of sexual harassment.  [SMF at ¶ 38].[15]

Moreover, Ms. McNeill cannot point to evidence other than her own speculation to show that Head Kandy's numerous evidentiarily supported bases for terminating her were pretextual. Thus, summary judgment is warranted.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (reason not pretextual "unless it is shown both that the reason was false, and that discrimination was the real reason"); *Furcron*, 843 F.3d at 1313-14 ("conclusory allegations" of pretext do not create factual dispute); *Russell*, 737 F. App'x at 924 (same); *Lockett*, 315 F. App'x at 868-69 (summary judgment due when assertions of pretext were "purely speculative and unsubstantiated by any evidence," particularly given evidence that the decisionmaker fired plaintiff based on belief she violated company policy).

<u>Conclusion</u>

For the above reasons, Head Kandy respectfully requests that the Court grant this Motion and Head Kandy's Motion to Dismiss [ECF 360], enter judgment in favor of Head Kandy, enter a permanent injunction enjoining Ms. McNeill from violating the restrictive covenants for their specified terms, award Head Kandy its proven damages, retain jurisdiction to award Head Kandy its attorney's fees and costs, and grant such other and further relief the Court deems appropriate.

---

[15]  In fact, even if Head Kandy did not have multiple independently sufficient bases to terminate Ms. McNeill, there is unrebutted evidence in the record that Ms. McNeill had formulated an intention, long before her supposed retaliatory termination, to leave Head Kandy and start her own business [SMF at ¶ 39], which is likewise fatal to her retaliation claim.  *Cf. Ferrare v. Morton Plant Mease Health Care, Inc.*, 2014 WL 5336481, at *7 (M.D. Fla. Oct. 20, 2014) (retaliation claim under false claims statute failed when "[plaintiff's] testimony shows that it is only her 'belief' that she was terminated because of her [protected activity]" and the evidence showed she "intended to quit anyway, and had begun plans to open her own … company").

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on December 2, 2024 I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jennifer@lawfortcollins.com, jamie@lawfortcollins.com, Massey, Kelly & Priebe, PLLC, 125 S. Howes Street, Suite 1100, Fort Collins, CO 80521*, co-counsel for Defendant;.* and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

*/s/  Ethan J. Loeb*
**ETHAN J. LOEB**
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
**EDWARD C. THOMPSON**
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
**JALEN A. LARUBBIO**
FL Bar No. 1039258
JalenL@blhtlaw.com
**CARSON A. SADRO**
FL Bar No. 1026159
CarsonS@blhtlaw.com
**BARTLETT LOEB HINDS**
**THOMPSON & ANGELOS**
1001 Water St., Suite 475
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

***Counsel for Head Kandy LLC***