**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

HEAD KANDY, LLC,

      Plaintiff/Counterclaim Defendant,

v.                                CASE NO. 23-CV-60345-JB/JMS

KAYLA MARIE MCNEILL,

      Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC,

      Third-Party Defendant.

_____/

**HEAD KANDY'S AND MR. FALIC'S**
**REPLY IN SUPPORT OF THEIR *DAUBERT* MOTION**
**TO EXCLUDE TESTIMONY AND OPINIONS OF MELIA ARNETT-ARCHIE**

Plaintiff/Counterclaim Defendant Head Kandy LLC ("**Head Kandy**") and Third-Party

Defendant Jerome Falic ("**Mr. Falic**") reply in support of their *Daubert* Motion to Exclude

Testimony and Opinions of Melia Arnett-Archie (the "**Motion**") [ECF 434] and in response to

Defendant/Counterclaimant/Third-Party Claimant Kayla Marie McNeill's ("**Ms. McNeill**")

Opposition to *Daubert* Motion to Exclude Testimony and Opinions of Melia Arnett-Archie (the

"**Opposition**") [ECF 476],[1] and in support state:

---

[1] While Ms. McNeill apparently filed the Opposition on December 2, 2024, because it was filed under seal (it is unclear to Head Kandy and Mr. Falic why Ms. McNeill filed it under seal), Head Kandy and Mr. Falic were not served with the Opposition via the CM/ECF system. Counsel for Ms. McNeill e-mailed the Opposition, and other filings they made under seal on December 2, 2024, to counsel for Head Kandy and Mr. Falic for the first time after 10:00 P.M. on December 5, 2024. Head Kandy and Mr. Falic filed their Unopposed, Expedited Motion for Extension of Time to Respond to Ms. McNeill's Untimely Served Sealed Filings [ECF 483] on December 6, 2024, requesting the Court confirm its time to respond and reply to those sealed filings first provided to Head Kandy and Mr. Falic's counsel after 10:00 P.M. on December 5, 2024. Although that Motion

## Argument

Ms. Arnett-Archie's only disclosed opinions—based entirely on a statistical analysis of Head Kandy's sales as they relate to social media engagement, which Ms. Arnett-Archie ascribes entirely to Ms. McNeill—are that: (1) Ms. McNeill is entitled to $8,581.046.51 in "affiliate marketer commission" based on Head Kandy's sales from 2019 through 2022 [Report at 11], and (2) Ms. McNeill is entitled to $2,786,478.00 in "estimated lost future earnings" based on what Ms. Arnett-Archie (incorrectly) projects to be Head Kandy's 2023 and 2024 sales [Report at 12]. These disclosed opinions have nothing whatsoever to do with the disputed issues and claims in this case. Even if they did, they are the product of an unqualified and methodologically inadequate analysis (which Ms. Arnett-Archie is not qualified to perform in the first place), and ultimately would not assist the trier of fact in resolving this case.

In an attempt to save Ms. Arnett-Archie's purported opinions from exclusion, Ms. McNeill attempts by her Opposition to reinvent and recast the analysis Ms. Arnett-Archie actually undertook and the conclusions Ms. Arnett-Archie purported to reach, even attempting to ascribe to Ms. Arnett-Archie an entirely new and undisclosed opinion. Ms. McNeill's Opposition, however, is full of conclusory, unsupported, *ipse dixit* statements unconnected from the realities of this case and the actual opinions Ms. Arnett-Archie espouses.

### I.      Ms. Arnett-Archie's opinions lend nothing to the resolution of any claim or defense in this case.

Ms. Arnett-Archie's expressed opinions are not relevant to any claim or defense in this case, and Ms. McNeill in her Opposition offers nothing to change that fact. Instead, Ms. McNeill can point to only two issues in the case Ms. Arnett-Archie's opinions may bear on: (1) Ms.

---

remains pending, this Reply should be considered timely because it is filed seven days after Head Kandy and Mr. Falic first received the Opposition on December 5, 2024.

McNeill's claims for "civil theft … regarding the page," [Opp. at 6], and (2) Ms. McNeill's (unidentified) "defenses to [Head Kandy's] claims, including related to their purported damages in connection with the alleged restrictive covenants and the causality as it applies to actions or inactions of Ms. McNeill online," [Opp. at 3-4, 6].  Ms. Arnett-Archie, however, does not actually offer any opinion that would aid the trier of fact in resolving those issues.[2]

*First*, Ms. Arnett-Archie's disclosed opinions have no bearing on Ms. McNeill's claims for theft and conversion, because none of Ms. Arnett-Archie's purported statistical calculations actually correspond to the "value" of any social media page Ms. McNeill claims was taken.  *See, e.g.*, *Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F. Supp. 1567, 1576-77 (M.D. Fla. 1996) ("[D]amages in the context of civil theft normally correspond to the value of the property stolen by the defendant."); *Gillette v. Stapleton*, 336 So. 2d 1226, 1227 (Fla. 2d DCA 1976) ("[T]he measure of damages in an action for conversion is the fair market value of the property at the time of the conversion."); *AARRH Project LLC v. Sacco Farms LLC*, 2024 WL 4032292, at *9 (Colo. App. June 13, 2024) ("Certainly, the value of the stolen goods would be a valid measure of damages for civil theft.").  Indeed, Ms. Arnett-Archie agreed that she was "looking at the value of the engagement that Ms. McNeill's activities and presence caused and contributed to Head Kandy, ***not the value of the page itself***," and when asked again directly whether she was "offering an opinion as to the value of the page itself," Ms. Arnett-Archie responded, "No."  [Tr. at 41:7-42:2].

---

[2]  Moreover, the Court need not even reach these arguments, because (1) Ms. McNeill's civil theft and conversion claims are due to be dismissed or Head Kandy and Mr. Falic are entitled to summary judgment on those claims [ECF 360 at 9-11; ECF 362 at 3; ECF 471 at 11-12; ECF 473 at 3-4], and (2) Head Kandy is entitled to permanent injunctive relief because it has already shown that Ms. McNeill's post-termination violation of the restrictive covenants has caused it some quantum of damages, including intangible harm to its reputation and specific lost sales from particular customers, irrespective of other potential contributory causes [ECF 471 at 5-7].

Insofar as Ms. McNeill attempts to argue that Ms. Arnett-Archie offers some sort of opinion on the ownership of the Kandy Life Facebook page for the purposes of Ms. McNeill's theft claims [Opp. at 6], that is also not persuasive.  No such opinion appears in Ms. Arnett-Archie's disclosed written report, alone supporting its exclusion.  *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (a retained expert's written report "must contain … a complete statement of all opinions the witness will express"); *Martin-Viana v. Royal Caribbean Cruises Ltd.*, 2024 WL 2091979, at *7 (S.D. Fla. May 8, 2024) (excluding opinion that was at best only impliedly mentioned in expert's report and was not mentioned at all until the expert's deposition).  In fact, Ms. Arnett-Archie herself denied relying on the ownership of the Facebook page, testifying that the ownership of the page was "not consequential" in forming her opinions, and agreeing that "the opinions that [she] identified in [her] report" are "separate and apart from" the ownership or control of any page.  [Tr. at 40:2-40:14; *accord* Tr. at 40:19-41:6 (Ms. Arnett-Archie testifying that ownership of the page "doesn't matter" to her analysis)].[3]  At bottom, Ms. McNeill attempts to save Ms. Arnett-Archie from a *Daubert* challenge by claiming Ms. Arnett-Archie offered an opinion for the first time at her deposition, even though Ms. Arnett-Archie herself does not claim to hold, and disclaims any reliance on, that opinion, which is inadmissible in its own right anyway because it amounts to a legal conclusion on one of the elements of Ms. McNeill's theft claims.  *See, e.g.*, *Dudash v. S.-*

---

[3]  Moreover, Ms. Arnett-Archie's purported "opinion" in fact amounts to no more than her labelling the Kandy Life Facebook page Ms. McNeill's "personal" page at her deposition [Tr. at 25:24-26:4], admittedly without giving any consideration to the parties' actual "legal rights" (if any) in that page [Tr. at 38:23-40:1].  Thus, even if Ms. Arnett-Archie had disclosed that she would offer the opinion that Ms. McNeill "owned" the page in question, that purported "opinion" should still be excluded because it was reached without any basis whatsoever; that is, Ms. Arnett-Archie somehow reached that opinion without even knowing about, much less considering, the agreements setting out the parties' rights with respect to social media accounts and content.

*Owners Ins. Co.*, 2017 WL 1969671, at *2 (M.D. Fla. May 12, 2017) ("No witness may offer legal conclusions or testify to the legal implications of conduct.").

*Second*, Ms. Arnett-Archie's opinions do not support Ms. McNeill's supposed defenses to the "requested injunctions," [Opp. at 4] or to Head Kandy's "purported damages in connection with the alleged restrictive covenants," [Opp. at 6]. While Ms. McNeill claims Ms. Arnett-Archie opines that "sales connected to Ms. McNeill would drop if Ms. McNeill were terminated, regardless of any other factor," [Opp. at 4], that is an egregious overstatement by Ms. McNeill of what Ms. Arnett-Archie actually stated in her Report—which is that Ms. McNeill's "absence" "likely contributed to a decrease in sales" in 2023 and 2024, [Report at 8].[4] Ms. McNeill provides nothing other than *ipse dixit* assertions to connect that purported opinion to any claim or defense related to the restrictive covenants, and wholly fails to explain how that opinion would counteract the evidence Head Kandy has presented throughout this case of tangible and intangible harms it has suffered from Ms. McNeill's violation of the restrictive covenants.

At bottom, as Head Kandy and Mr. Falic explained in their Motion, Ms. Arnett-Archie's two opinions—that Ms. McNeill is entitled to percentages of Head Kandy's sales as an "affiliate commission" or as post-termination "projected revenue" [Report at 4]—have nothing to do with any claim actually at issue and no foundation in the facts of this case. That is, Ms. McNeill has not pleaded any claim for entitlement to the alleged damages Ms. Arnett-Archie purports to calculate, making Ms. Arnett-Archie's disclosed opinions wholly irrelevant and therefore unhelpful.

---

[4] Ms. Arnett-Archie also admitted that she completely ignored and failed to consider any factor other than social media engagement [Tr. at 119:6-15, 128:12-132:6], making it impossible for her to opine that Ms. McNeill's presence or absence was the only factor driving Head Kandy's sales.

II.     **Ms. Arnett-Archie's methodology, which she does not describe sufficiently to survive a *Daubert* challenge, is demonstrably flawed and is unreliable.**

Ms. McNeill, without any real support or assessment of Ms. Arnett-Archie's methodology, much less any coherent counter to Head Kandy's and Mr. Falic's reliability arguments, claims that Ms. Arnett-Archie's opinions "are methodologically sound."  But that is demonstrably untrue.

Despite Ms. McNeill's frivolous contention that the Motion included only "bald, unexplained statements that [Ms. Arnett-Archie's methodology] is 'flawed'" [Opp. at 4], Head Kandy and Mr. Falic extensively detailed the problems with Ms. Arnett-Archie's methodology in their Motion.  First among those problems is that Ms. Arnett-Archie could not describe how she reached her results other than to broadly state that she used Microsoft Excel to run an analysis. [Tr. at 139:21-142:14].  Ms. McNeill echoes that testimony in her Opposition, arguing "Plaintiffs [sic] are able to recreate and test Ms. Arnett-Archie's results by using an easily accessible spreadsheet program such as Excel."  [Opp. at 12].  But that is not true.  Rebuttal expert David DeRamus, Ph.D., attempted to replicate Ms. Arnett-Archie's results, but could not do so based on the information she provided.  [ECF 434-3 at ¶ 94].[5]  Thus, Ms. Arnett-Archie has failed to "explain her methodology in a way that permits the methodology to be tested and vetted for reliability."  *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1236 (S.D. Fla. 2022).

Additionally, Ms. McNeill is incorrect in her assertion that Ms. Arnett-Archie's sole reliance on outlier data points "goes to the weight" of her testimony rather than its admissibility. [Opp. at 5].  As Head Kandy and Mr. Falic pointed out in their Motion, when inclusion or exclusion

---

[5]  As Ms. McNeill stated could easily be done by "Plaintiffs" using "Excel," counsel for Head Kandy and Mr. Falic (who have similar qualifications as Ms. Arnett-Archie) attempted to input the figures Ms. Arnett-Archie purported to use into Microsoft Excel and run a Pearson analysis, but did not arrive at Ms. Arnett-Archie's results, and in fact, produced a plot of the data points that makes clear the data is not linear at all.

of data points makes the expert's results "skewed, misleading, and overall unreliable" for their intended purpose, exclusion is appropriate. *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1301 (N.D. Fla. 2017). Despite Ms. McNeill's baseless protestations, that is the case here—Ms. Arnett-Archie herself testified that to form her opinion, she was "looking for outliers in the sales data," and agreed that the data she used in her statistical analysis did not represent "all the dates on which there was … social media engagement," but rather was "just the ones [she] identified looking for … steep increases or decreases in sales." [Tr. at 73:24-74:13, 76:20-24]. Ms. Arnett-Archie's decision to use only the most drastic data points (and therefore those that were necessarily most helpful to the ultimate opinion she sought to reach) to the exclusion of all others causes her opinions to be inherently skewed and misleading, and Ms. McNeill provides nothing to show otherwise. Making matters even worse, Ms. Arnett-Archie admittedly completely ignored, and in fact assumed away, numerous other logically impactful outside variables [Tr. at 128:12-132:6], grossly oversimplifying her already unreliable analysis, and necessarily leading her to the conclusion she sought to reach.

Ms. McNeill offers no other colorable defense of Ms. Arnett-Archie's methodology on its merits, and instead repeatedly accuses Head Kandy and Mr. Falic of conflating the reliability and helpfulness prongs of the analysis, of course ignoring the fact that Ms. Arnett-Archie satisfies neither. Ironically, Ms. McNeill immediately goes on to blend the reliability and qualification prongs, arguing in essence that Ms. Arnett-Archie's methodology is unimpeachable because she is qualified by her experience in some unspecified area of expertise. [Opp. at 3]. That is incorrect—even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant." *In re Trasylol Prods. Liab. Litig.*, 2013 WL 3353833, at *12 (S.D. Fla. July 3, 2013)

(quotation omitted); *accord United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) ("If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong."). Here, as explained in greater depth in the Motion and below, Ms. Arnett-Archie has no material qualifications in statistics, and has (at least as far as she was able to explain) no meaningful experience in statistics that could serve as a sufficient foundation for her purported statistical analysis. *See Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1201 (11th Cir. 2010) ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.  The trial court's gatekeeping function requires more than simply taking the expert's word for it.") (quotations omitted).

Ms. McNeill also wrongly suggests, as she has across her *Daubert* Oppositions, that experts offering "nonscientific" opinions can simply use their "knowledge and experience," apparently without any cogent supporting explanation, to give whatever opinion they like.  [Opp. at 3-4].  But that cannot be correct either.  *See Thomas v. Evenflo Co.*, 2005 WL 6133409, at *3 (N.D. Ala. Aug. 11, 2005) ("[T]he unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express.").  Particularly here, statistical analysis is not the type of "nonscientific" expertise that lends itself to expert testimony based solely on amorphous claims of relevant experience—there are recognized, objective methods one must employ, which Ms. Arnett-Archie cannot adequately explain and does not seem to have followed.[6]  83 Reference

---

[6]  For that reason, this case is readily distinguishable from *Nature's Products, Inc. v. Natrol, Inc.*, a case in which an expert was permitted to testify concerning the FDA's application of compliance standards, not mathematics or statistics.  2013 WL 11275370, at *6 (S.D. Fla. Oct. 8, 2013).

Guide on Statistics, 2004 WL 48151, at *4 ("In litigation, statistical experts normally bring to bear established and well-defined procedures for analyzing data."); *see also* [Mot. at 10-14].

Because Ms. Arnett-Archie's methodology, as described above and in the Motion, is not adequately explained and is in fact hopelessly flawed, the Court should grant the Motion.

### III.   Ms. Arnett-Archie is not qualified to perform statistical analyses or to use them to formulate opinions, nor does her social media experience obviate the need to show actual qualifications before using statistics to reach her opinions.

Ms. McNeill claims that Ms. Arnett-Archie is qualified to perform statistical analyses and to render opinions based on those analyses based on her "multifaceted and diverse background" and her "skills with data analysis gleaned from her [corporate] experience." [Opp. at 8]. But as Head Kandy and Mr. Falic explained in their Motion, Ms. Arnett-Archie lacks sufficient education, training, or specific experience in statistics to qualify as an expert in that particular field. [Mot. at 7-10]. Ms. Arnett-Archie is a lawyer who claims to have occasionally used statistics in her practice, mostly in her prior in-house counsel positions within the realm of data privacy, but now purportedly to advise social media clients in her own practice. That experience alone does not make her a statistics expert. Indeed, if it did, everyone who has some rudimentary exposure to basic statistics (including every lawyer who has ever used statistical principles in litigation or to advise a client) could be certified as an expert in that field based solely on their own (equally vague and boilerplate) claims of experience. Similarly, if Ms. Arnett-Archie's cursory academic exposure to statistical concepts was sufficient to qualify her as an expert in statistics, then anyone who has attended an undergraduate institution would be so qualified. That too cannot be the case. Ms. Arnett-Archie, at bottom, is not minimally qualified to offer expert opinion founded on purported statistical analyses she herself performed.

To avoid the inevitable conclusion that Ms. Arnett-Archie is not qualified to serve as a testifying expert in statistics, Ms. McNeill attempts to recast Ms. Arnett-Archie as an expert in "image and social media." [Opp. at 11]. But that effort is not persuasive. Ms. Arnett-Archie's opinions are, by her own admission, based on her purported statistical analysis of Head Kandy's social media engagement and sales. [Report at 1 (explaining that the purported use of "statistical methods" was "critical in drawing a clear, evidentiary line between the engagement efforts spearheaded by Ms. McNeill and the financial ramifications experienced by [Head Kandy], ultimately informing the estimation of damages related to lost sales and opportunities," which is the stated purpose of the report)]. It is well-established that "the subject matter of [an expert's] testimony must be within the scope of [the expert's] expertise." *Restore Robotics, LLC v. Intuitive Surgical, Inc.*, 2022 WL 19408080, at *2 (N.D. Fla. Feb. 7, 2022). It is equally well-established that "[e]xpertise in one field does not qualify a witness to testify about others." *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1368 (11th Cir. 2014). Whatever experience-based expertise Ms. Arnett-Archie may have in "social media law," it does not qualify her to perform, and present as authoritative, statistical analyses in support of her factually baseless calculations of Ms. McNeill's alleged damages. Because Ms. Arnett-Archie offers no other opinions that are not tied to her statistical analysis, her testimony and opinions should be excluded entirely.

<u>Conclusion</u>

For the above reasons and those stated in the Motion, Head Kandy and Mr. Falic respectfully request that the Court grant the Motion, reject Ms. McNeill's arguments in her Opposition, exclude Ms. Arnett-Archie's testimony and opinions from this case in their entirety, and order such other and further relief the Court deems appropriate.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 12, 2024 I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jennifer@lawfortcollins.com, jamie@lawfortcollins.com, Massey, Kelly & Priebe, PLLC, 125 S. Howes Street, Suite 1100, Fort Collins, CO 80521*, co-counsel for Defendant;.* and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

/s/  Edward C. Thompson
**ETHAN J. LOEB**
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
**EDWARD C. THOMPSON**
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
**JALEN A. LARUBBIO**
FL Bar No. 1039258
JalenL@blhtlaw.com
**CARSON A. SADRO**
FL Bar No. 1026159
CarsonS@blhtlaw.com
**BARTLETT LOEB HINDS**
**THOMPSON & ANGELOS**
1001 Water St., Suite 475
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

***Counsel for Head Kandy LLC***
***and Jerome Falic***

11