UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC,

    Plaintiff/Counterclaim Defendant,

v.                                                                                        CASE NO. 23-CV-60345- JB/JMS

KAYLA MCNEILL,

    Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC,

    Third-Party Defendant.
_____/

## OPPOSITION TO JEROME FALIC'S MOTION FOR SUMMARY JUDGMENT

Defendant/Counterclaimant/Third Party Claimant Kayla McNeill ("Ms. McNeill"), by and through her undersigned counsel, hereby submits her opposition memorandum of law (the "Response") in response to Third-Party Defendant Jerome Falic's ("Mr. Falic") Motion for Summary Judgment (the "Falic Motion") [ECF No. 473], and states as follows:[1]

### INTRODUCTION

Upon Mr. Falic's retention of his close personal friend, Mr. Jonathan Rosenbaum, on behalf of Plaintiff/Counterclaim Defendant Head Kandy, LLC's ("HK," together with Mr. Falic, the "HK Parties") in July 2022, Ms. McNeill experienced immediate, severe and pervasive harassment by Mr. Rosenbaum. [Statement of Facts Material to Mr. Falic's Motion ¶¶ 1, 3, ("472 SOF"), filed contemporaneously herewith; Statement of Facts Material to HK's Motion for Summary Judgment ¶¶ 46-50, 55-58, 68-69 ("470 SOF"), filed contemporaneously herewith]. Each time Ms. McNeill

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in Ms. McNeill's contemporaneously filed Statement of Facts Material to Jerome Falic's Motion for Summary Judgment ("472 SOF").

1

rebuffed Mr. Rosenbaum's sexual advances or showed discomfort with his abusive language, Ms. McNeill endured severe retaliation, including Mr. Rosenbaum berating and belittling Ms. McNeill in front of both HK employees and other industry professionals. [*Id*. ¶ 56-58, 68]. On November 20, 2022, Ms. McNeill reported the sexual harassment to Mr. Falic, as HK's managing member. [*Id*. ¶ 69]. Immediately after reporting the harassment, Ms. McNeill was retaliated against by the HK Parties as punishment and an attempt to cover up the harassment. [*Id*. ¶ 38; 472 SOF ¶¶ 3, 10, 29]. As a result of this abhorrent behavior, Ms. McNeill has asserted claims against Mr. Falic for Intentional Infliction of Emotional Distress and Extreme and Outrageous Conduct. [*Id*. ¶ 29]. In addition, Mr. Falic refused to pay Ms. McNeill her earned and outstanding compensation, and stole certain personal property belonging to Ms. McNeill, giving rise to Ms. McNeill's claims for civil theft and violation of the Colorado Wage Act, C.R.S. § 8-4-101, *et seq*. ("CWA") [*Id*. ¶¶ 3, 6-8]. As described in detail below, and in Ms. McNeill's Response and Opposition Brief ("Opposition to MTD") [ECF No. 400, incorporated herein by this reference] to Mr. Falic's Motion to Dismiss McNeill's Amended Third Party Claims or, in the Alternative, Motion for a More Definitive Statement ("MTD") [ECF No. 377], the record reveals that the undisputed material facts support judgment in favor of Ms. McNeill, not Mr. Falic, as to liability on Ms. McNeill's pending claims against Mr. Falic.

## ARGUMENT

**I.   Ms. McNeill's Claims for Civil Theft under C.R.S. § 18-4-405 and Fla. Stat. §§ 772.11, 812.014 are Adequately Pled to Survive Mr. Falic's MTD and are Supported by Undisputed Facts within the Record**

Ms. McNeill alleges that Mr. Falic, through deception and fraud, obtained exclusive control over the McNeill Social Media Accounts, the content on the McNeill Social Media Accounts, Ms. McNeill's personal Forklift and the McNeill Units (collectively, the "Stolen Property") with the felonious intent to deprive Ms. McNeill of their use and value. [472 SOF ¶¶ 6, 7, 8, 11-13, 19-29].

The Court has not yet had an opportunity to address whether Colorado law or Florida law applies to Mr. Falic's conduct and the resultant claim for civil theft. Consequently, Ms. McNeill asserted, in the alternative, claims against Mr. Falic for civil theft under the relevant statutes of each State. [472 SOF ¶ 29]. In the Falic Motion, Mr. Falic argues that Ms. McNeill's claim for civil theft, under the laws of either State, fails for three reasons. First, Mr. Falic asserts that the civil theft claims "are duplicative of one or more contractual claims" and "merely describe alleged breaches of contract." [Falic Motion at 3]. Second, Mr. Falic argues that he never received any of the stolen property. [*Id*.]. Third, Mr. Falic avers that he did not possess the requisite felonious intent to commit theft. [*Id*.]. Each argument will be addressed in turn.

For summary judgment to be entered on a claim for civil theft, the claimant must prove, by undisputed clear and convincing evidence, the elements of civil theft. *Campbell v. Riggs*, 310 So. 3d 68, 71 (Fla. 4th DCA 2021). Evidence must be such that a reasonable jury might find that the elements "had been shown with convincing clarity." *Bullard v. U.S. Bank, N.A.*, No. 3:10cv434-MCR/CJK, 2012 U.S. Dist. LEXIS 90311, at *15 (N.D. Fla. June 30, 2012). Clear and convincing evidence standard can be met when evidence is inconsistent or conflicting; the standard cannot be met when the evidence is ambiguous. *See In re Guardianship of Browning*, 543 So. 2d 258, 273 (Fla. 2d DCA 1989) ("It is possible for the evidence . . . to be clear and convincing, even though some evidence may be inconsistent. Likewise, it is possible for the evidence to be uncontroverted, and yet not be clear and convincing."); *see also Fed. Ins. Co. v. Perlmutter*, 376 So. 3d 24, 34 n.7 (Fla. 4th DCA 2023) (recognizing that conflicting evidence can meet the standard for entry of summary judgment) (citing *Westinghouse Elec. Corp., Inc. v. Shuler Bros., Inc.*, 590 So. 2d 986, 988 (Fla. 1st DCA 1991).

A. **Ms. McNeill's Civil Theft Claims are Not in Tension with her Claim against HK for Breach of the EA**

Mr. Falic's first argument concerning a perceived overlap between the civil theft claims and Ms. McNeill's breach of contract claim against HK is fully addressed in Ms. McNeill's Opposition to MTD. In summary, Mr. Falic's argument is without merit because Ms. McNeill has alleged that Mr. Falic engaged in an intricate and sophisticated scheme of deceit and theft in order to divest Ms. McNeill of the Stolen Property without any compensation. *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. Dist. Ct. App. 2000) ("Where the property at issue is also the subject of a contract between the parties, a civil theft claim requires additional proof of 'an intricate sophisticated scheme of deceit and theft.'") (quoting *Trend Setter Villas of Deer Creek v. Villas on Green*, 569 So.2d 766, 767 (Fla. 4th DCA 1996)). The scheme involved, without limitation, Mr. Falic making false allegations against Ms. McNeill to justify terminating her and also asserting that such termination was "for cause"; unilaterally adopting the Resolutions on behalf of HK; claiming an option right on behalf of HK, to which HK was not entitled, to purchase the McNeill Units; refusing to pay the prescribed purchase price for the McNeill Units under the repurchase option set forth in the OA; instructing others to take control of the McNeill Social Media Accounts; instructing others to promote a separate business owned by Mr. Falic using the McNeill Social Media Accounts; refusing to provide Ms. McNeill her content that was uploaded to the McNeill Social Media Accounts; intentionally ignoring Ms. McNeill's report of harassment by Mr. Rosenbaum; and, instructing others to prevent Ms. McNeill from removing her forklift from HK's warehouse upon her termination. [472 SOF ¶¶ 3, 6-16, 19-28]. The actions undertaken by Mr. Falic go far beyond the contractual relationship between Ms. McNeill and HK. *See Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("This is not to say that there can never be a claim for civil theft or conversion if there is a contractual relationship between the parties, but

4

rather that the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract."). Thus, Ms. McNeil can maintain her civil theft claims and her breach of contract claim against HK.

> B. **Physical Possession of the Stolen Property by Mr. Falic is Not a Requisite Element of Ms. McNeill's Claims for Civil Theft**

As to Mr. Falic's second argument, Florida law only requires Mr. Falic to have "obtained or used, or endeavored to obtain or use" Ms. McNeill's "property." *Taylor v. Trapeze Mgmt., LLC*, No. 0:17-cv-62262-KMM, 2018 U.S. Dist. LEXIS 50972, at *19 (citing *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009)); *see also Hawthorne v. Lyons*, 192 So. 3d 1279, 1280 (Fla. 1st DCA 2016). "Property" is anything of value, including "rights, privileges, interests and claims." *Balcor Property Management, Inc. v. Ahronovitz*, 634 So. 2d 277, 280 (Fla. 4th DCA 1994). Thus, the Stolen Property constitutes "property" under Florida law. Similarly, Mr. Falic commits civil theft under Colorado statute if he "obtains, retains or exercises control over anything of value of another without authorization or by threat or deception[.]" C.R.S. § 18-4-401(1). Despite HK's unsupported assertion to the contrary, the record does not show a dispute over ownership rights to the Stolen Property. [Falic Motion at 4]. Moreover, Mr. Falic has not claimed to have any ownership interest in the forklift or the content on the McNeill Social Media Accounts. At the time the Resolutions were adopted, Ms. McNeill had exclusive rights to the McNeill Units. [472 SOF ¶ 8, 19].

With regard to the McNeill Social Media Accounts, the only *post hoc* arguments made in defense of the theft–which are advanced by HK, not Mr. Falic–are that LO sold the McNeill Social Media Accounts to HK as part of the APA and that each of the McNeill Social Media Accounts is a "work made for hire," entitling HK to assert ownership over the McNeill Social Media Accounts, under Section 8(a) of the EA, not Ms. McNeill. [HK's Motion for Summary Judgment at 12, (the

5

"HK Motion"), ECF No. 471]. These arguments are made to confuse the Court because the McNeill Social Media Accounts did not even exist until November 6, 2018, approximately six months after the closing of the APA. [472 SOF ¶ 6; 470 SOF ¶¶ 1-2]. Even if the Social Media Accounts were in existence at the time the APA was consummated, LO still could not have conveyed them because it did not own them. [472 SOF ¶ 6]. Moreover, the McNeill Social Media Accounts were established as personal, not business, accounts by Ms. McNeill. [*Id.*]. They were not created at the instigation of or under the direction of HK. Consequently, the Stolen Property is entitled to protection under the civil theft statutes of both Florida and Colorado.[2]

### C.  Mr. Falic Acted with Felonious Intent when he Deprived Ms. McNeill of the Stolen Property

A Court has complete authority to determine the "felonious intent" element of a claim of civil theft. *See Bostic v. Bodie*, No. 22-60661-CIV, 2023 U.S. Dist. LEXIS 56817, at *21-22 (S.D. Fla. Mar. 31, 2023) (*citing Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th DCA 2000)). It is undisputed that Mr. Falic deprived Ms. McNeill of the McNeill Units through his unilateral adoption of the Resolutions. The record clearly and convincingly establishes felonious intent by Mr. Falic. Mr. Falic's intent to deprive Ms. McNeill of the McNeill Units started at least as early as November 28, 2022, when Ms. McNeill received the First Retaliation Letter from HK. [470 SOF ¶ 38]. No complaint or negative allegation pertaining to Ms. McNeill's conduct during her multi-year tenure with HK had been made prior to the First Retaliation Letter. [*Id.*]. In the First Retaliation Letter, HK and Mr. Falic disclosed their desire and felonious intent to steal (for personal gain) the McNeill Units and place Ms. McNeill in significant financial distress. [*Id.*]. The First

---

[2] Ms. McNeill notes that, to avoid compensating her for the damages inflicted upon her, the HK Parties currently assert that the McNeill Units have been worthless since the fall of 2022. [470 SOF ¶ 40]. However, at the time the HK Parties stole the McNeill Units, and long before Ms. McNeill asserted her counterclaims and third-party claims against the HK Parties, the HK Parties determined Ms. McNeill's initial capital contribution (purportedly $720,000) to be less than the fair market value of the McNeill Units. [472 SOF ¶¶ 21, 23-24].

6

Retaliation Letter stated that HK could "cancel" her Ownership Interest in HK and "void" all of its financial obligations to her, without providing any authority for such extreme actions. [*Id.*]. Ms. McNeill was also threatened with termination in the First Retaliation Letter. [*Id.*]. Nonetheless, when Ms. McNeill received the Second Retaliation Letter three days later, she was informed that she was in fact "permitted to engage in other business ventures during [her] off-hours provided they do not conflict with [HK's] business or take away from [her] work for the company," specifically including, an "athleisure business under White Pineapple[.]" [*Id.*]. This admission by HK clearly and convincingly shows that the allegation against Ms. McNeill for breach of fiduciary duty for ordering some leggings samples and talking about them on the McNeill Social Media Accounts was pretextual (particularly since Mr. Falic previously had Ms. McNeill develop haircare products for a different company he owns, Hard Candy, LLC). As such, HK and Mr. Falic changed the basis for their pretextual "for cause" termination of Ms. McNeill with every notice of breach they sent her, beginning eight days after she reported the harassment to Mr. Falic. A reasonable jury can find that the facts surrounding Ms. McNeill's termination and Mr. Falic's failure to follow the express re-purchase requirements in the OA for the McNeill Units establish, "with convincing clarity," that Mr. Falic possessed the requisite felonious intent to steal Ms. McNeill's personal property. *Bullard v. U.S. Bank, N.A.*, No. 3:10cv434-MCR/CJK, 2012 U.S. Dist. LEXIS 90311, at *15.

Additionally, Mr. Falic unilaterally decided to adopt the Resolutions on behalf of HK for the purpose of increasing his personal ownership interest in HK. Mr. Falic accomplished this theft by alleging, without any evidence, that Ms. McNeill improperly charged more than $1,000,000 in personal expenses to her credit card for the purpose of having HK pay for the expenses. However, HK has now had to admit that the potential personal charges are not more than $256,000. This conduct provides additional evidence of Mr. Falic's felonious criminal intent to enact a scheme to

7

steal Ms. McNeill's personal property. Thus, it would only be appropriate to award Ms. McNeill, not Mr. Falic, summary judgment on Ms. McNeill's claims for civil theft against Mr. Falic.

## II. Ms. McNeill is Entitled to Judgment as a Matter of Law, as to Liability, on her Claim under the CWA

It is undisputed that HK owes Ms. McNeill bonus amounts that have not been paid. [470 SOF ¶ 37]. Because Mr. Falic falls within the broad definition of "employer" for purposes of the CWA (which Mr. Falic now acknowledges allows for personal liability under the definition of "employer" provided by the Fair Labor Standards Act[3]). Mr. Falic is clearly an employer within the meaning of the CWA, which Mr. Falic correctly acknowledges includes "any person acting directly or indirectly in the interest of an employer." 29 U.S.C. 203(a), (d). An individual "who acts directly or indirectly in the interest of an employer in relation to an employee, including an individual corporate officer, owner, participating shareholder, manager, or supervisor, may be subject to individual liability for FLSA violations." INFO #11A Individual Liability Under the CWA and HFWA 06.30.2021 (colorado.gov) (citing *Lopez v. Next Generation Constr. & Envtl., LLC*, No. 16-cv-00076-CMA-KLM, 2016 U.S. Dist. LEXIS 154769, at *7-8, 2016 WL 6600243, at *4 (D. Colo. Nov. 8, 2016). To hold an individual liable, the party must either have been "involved in the day-to-day operation or [had] some direct responsibility for the supervision of the employee." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986)). In evaluating individual liability, courts examine the "economic reality of the relationship between the parties." *Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1210 (11th Cir. 2013) (quoting *Rodriguez v. Jones Boat Yard, Inc.*, 435 F. App'x 885, 887 (11th Cir. 2011)). Factors considered include "whether the

---

[3] In the MTD, Mr. Falic cites clearly overruled caselaw, arguing that individuals cannot be liable under the CWA. That argument is frivolous. Having the benefit of Ms. McNeill's Opposition to MTD, Mr. Falic now acknowledges that individuals can be employers under the CWA.

alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997)); INFO #11A, *citing Inniss v. Rocky Mountain Inventory, Inc.,* 385 F. Supp. 3d 1165, 1167 (D. Colo. 2019); *Herman v. RSR Sec. Servs.,* 172 F.3d 132, 139 (2d Cir. 1999) (citing Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).  The determination of whether an individual is an employer under the FLSA "does not depend on technical or 'isolated factors but rather on the circumstances of the whole activity.'" *Id.*; *Miller v. Dirty Pit Craft House LLC*, No. 23-CV-00183-GPG-SBP, 2024 WL 4110792, at *3 (D. Colo. Mar. 24, 2024).

Under either Florida or Colorado law, Mr. Falic is clearly an employer liable for wages owed to Ms. McNeill. Contrary to Mr. Falic's argument (where he suggests he had no involvement in either the day-to-day management of the company or management of employees) Mr. Falic was intensely involved in the management of HK.  [472 SOF ¶ 14].  Mr. Falic and Mr. Rosenbaum testified extensively that Mr. Falic, indisputably, was HK's managing member, principal owner, and granted authority and control over the hiring and firing of employees (including his decision to terminate Ms. McNeill); engaging consultants and other contractors (including retaining Mr. Rosenbaum); delegating responsibility over aspects of HK's operations (including deciding to use employees of other businesses owned by Mr. Falic to run payroll for HK); setting the terms and conditions of employee and contractor compensation (including those for Ms. McNeill and Mr. Rosenbaum); HK's payroll; conditions of employment; HK's regular business meetings with employees and consultants and approving actions; exclusive authority to direct HK's attorneys to act on behalf of HK; management of Ms. McNeill's day-to-day activities; and, keeping HK's business records.  [*Id.*; 470 SOF ¶ 14].  This is more than sufficient to hold Mr. Falic personally liable for the unpaid bonus amounts.

### III.     Ms. McNeill has Suffered Severe Emotional Distress as a result of Mr. Falic's Appalling Conduct

In her 470 SOF and 472 SOF, Ms. McNeill details Mr. Falic's serious and disturbing conduct which gives rise to her claims for Intentional Infliction of Emotional Distress ("IIED") and Extreme and Outrageous Conduct against him. The SOFs provide ample examples supporting Ms. McNeill's allegations regarding the abusive behavior she endured while an employee of HK, describing Mr. Rosenbaum's comments, actions, and capricious and volatile behavior towards her and other HK employees. [472 SOF § 10; 470 SOF ¶¶ 38, 46-52, 55-58, 60-61, 65-68]. In addition, the SOFs detail Mr. Falic's failure to adequately prevent such actions and affirmative actions he took to ensure such failures come to light, rather than remedying them. [472 SOF ¶¶ 3, 6-16, 19-28; 470 SOF ¶¶ 38, 46-52, 55-58]. In chronicling Mr. Rosenbaum's, HK's and Mr. Falic's conduct and statements towards her, Ms. McNeill paints a graphic picture of the hostile environment that existed and persisted, as well as the injury inflicted upon her on a daily basis from the moment Mr. Rosenbaum was retained until her employment with HK was terminated. [*Id*. ¶¶ 38, 46-52, 55-58, 60-61, 65-68]. Ms. McNeill's recitation of the facts indicates the hostile environment was created by both the actions and inactions of Mr. Rosenbaum, HK and Mr. Falic. [*Id.*]. Conversely, Mr. Falic maintains that Ms. McNeill merely asserts "unsubstantiated allegations of harassment" and that her depression is not adequately "severe." [Falic Motion at 6].

"The viability of a claim for intentional infliction of emotional distress is highly fact-dependent, and turns on the sum of the allegations in the specific case at bar." *Vernon v. Med. Mgmt. Assocs.*, 912 F. Supp. 1549, 1558 (S.D. Fla. 1996). Accordingly, courts have found that a claimant has succeeded on a claim for IIED in various circumstances. *Stockett v. Tolin,* 791 F. Supp. 1536, 1556 (S.D. Fla. 1992) (holding "that cumulative sexual harassment, including repeated groping and kissing, offensive touching and other physical abuse and attacks, as well as repeated verbal

10

outrageous"); *Urquiola v. Linen Supermarket, Inc.,* 1995 U.S. Dist. LEXIS 9902, 1995 WL 266582 (M.D. Fla. 1995) (denying "defendant's motion to dismiss after noting that the plaintiff's allegations 'went beyond mere harassment or verbal abuse.'" Alleged conduct included constant, sexually explicit, demeaning and vulgar language accompanied by repeated acts of kissing, groping and other physical abuse). Finally, in *Albert v. National Cash Register Co.*, 874 F. Supp. 1328 (S.D. Fla. 1993), the court denied a motion to dismiss after explaining that the plaintiff's allegations established a "pervasive pattern of constant harassment" based on her gender, race and religion. 874 F. Supp. at 1330.

Mr. Falic cites *Vernon*, claiming summary judgment should be granted on Ms. McNeill's intentional infliction of emotional distress claim. [Falic Motion at 6]. However, *Vernon* holds that "Florida courts have allowed claims for [IIED] in a wide variety of situations." *Vernon*, 912 F. Supp. at 1557. In *Vernon*, the misconduct alleged "touching, squeezing, hugging, tickling, and making lewd remarks." *Id*. at 1552. In the case at bar, the facts are more egregious, Ms. McNeill alleges that Jon Rosenbaum (Mr. "Rosenbaum") emerged from the bathroom after taking a shower completely naked. Ms. McNeill had to contend with Mr. Rosenbaum's full-frontal nudity. This type of indecent exposure, is not mere innuendo, but rather conduct outrageous enough to be considered criminal. *K.J.C. v. City of Montgomery*, No. 2:17-cv-91-ALB, 2020 U.S. Dist. LEXIS 2695, at *1 (M.D. Ala. Jan. 8, 2020) (granting a Motion for Default Judgment Against Defendant Morris Leon Williams, Jr. a police officer, after he exposed himself to the Plaintiff and sexually assaulted her in her own apartment.).

*Vernon* goes on to state that IIED are available in the sexual harassment context and that: "The viability of a claim for intentional infliction of emotional distress is highly fact-dependent, and turns on the sum of the allegations in the specific case at bar." *Vernon*, 912 F. Supp. at 1558. For example, the *Vernon* court references a DC Circuit court opinion that found IIED "where the

11

complaint alleged that the defendant touched the plaintiff in a sexual manner, caressed her body, attempted to kiss her and verbally pressured her for sexual relations." *Id.* at 1559 (citing *Stewart v. Thomas,* 538 F.Supp. 891, 894 (D.D.C.1982)).  Ms. McNeill acknowledges that *Vernon* focuses on both physical and verbal abuse and asserts sufficient evidence exists here to overcome summary judgment, where the claim is highly fact-dependent.  Ms. McNeill has alleged that Mr. Rosenbaum, whom Mr. Falic recruited, who is a best friend of Mr. Falic, and who Mr. Falic allowed to engage in such actions unchecked, grazed her leg on more than one occasion and then presented his completely naked body, penis forward, to her in her office, mere feet from her. [470 SOF ¶ 58].  While this is not the traditional "physical" touching the courts focus on, this is an act that could be a criminal sex act, had it been reported. Ms. McNeill felt that Mr. Rosenbaum would have raped her, had she not been fortunate enough to leave her door to her office open that day.

When Ms. McNeill flew to Mr. Falic's office to tell him what she had been enduring as an HK employee, Mr. Falic purposefully, and with felonious intent to do so, engaged in a scheme of theft and humiliation against Ms. McNeill, with the intent of leaving her destitute (which has worked).  [472 SOF ¶¶ 3, 6-13, 15].  In addition to losing her home (Ms. McNeill is living in a motorhome with her husband and three children at the time of this filing), Ms. McNeill has been in a deep depression for the last two years.  [*Id.* ¶ 17].  She has been suicidal numerous times, and has been unable to care for herself or her children for months on end.  [470 SOF ¶ 74].  The campaign of abuse Mr. Falic initiated and has continued, to this day, rise to the level of the unconscionable conduct the law prevents against—this is not a one-time encounter, but years of torment from Mr. Falic.  Such actions surely must, with the repeated, daily verbal harassment endured by Ms. McNeill, rise to the level of IIED if an attempted kiss is enough.

IV. **Personal Liability for Mr. Falic as to Ms. McNeill's Third-Party Claims is Appropriate**

Mr. Falic's argument that he cannot be held liable for his own misdeeds is a gross

12

misstatement of black letter corporate law (applicable in both Delaware and Florida) that if a corporate officer personally engages in a tort, he may be held liable (the so-called "participation doctrine").  *Heronemus v. Ulrick*, No. CIV.A.97C-03-168-JOH, 1997 WL 524127, at *2 (Del. Super. Ct. July 9, 1997) ("corporate officer actively involved in that the officer directed, ordered, ratified, approved or consented to the tort" may be held liable); *Heldenmuth v. Groll*, 128 So. 3d 895, 896 (Fla. 4th DCA 2013).  In addition, Mr. Falic ignores the plain language of the OA, which also permits for such liability: personal liability for "fraud, deceit, gross negligence, willful misconduct or unlawful acts by the Managing Member."  [472 SOF ¶ 5; Falic Motion at 8]; Del. Code Ann. tit. 6, § 18-303 and 306 (West).  As discussed extensively in Section I, above, Mr. Falic engaged in his own tortious conduct in order to steal the McNeill Units and the McNeill Social Media Accounts with felonious intent, and he can certainly be held liable, in his individual capacity, for such actions.

## CONCLUSION

For the reasons set forth herein, Ms. McNeill respectfully requests an order from the Court denying, in full, the Motion and, instead, granting judgment, as to liability, in her favor on the subject claims.  Ms. McNeill also seeks such further and/or additional relief which the Court deems just and proper.

DATED this 16th day of December, 2024.

        Respectfully Submitted,

        By: */s/ Laura Burgess*
        Laura E. Burgess, Esq.
        Florida Bar No. 0105073
        L.E. Burgess P.A.
        5966 S Dixie Highway, Suite 300
        Miami, FL 33143
        Tel.: 305.942.8044
        Alt. Tel.: 713.818.5055
        laura@leburgesslaw.com

        and

        By: */s/ Antonio L. Converse*
        Antonio L. Converse, Esq.
        Admitted *Pro Hac Vice*
        Converse Law Group, P.C.
        600 17th Street, Suite 2800 South
        Denver, CO 80202
        Tel: 303.228.9471
        anthony@converselawgroup.com

        and

        By: */s/ Jennifer A. Tiedeken*
        Jennifer A. Tiedeken, Esq.
        Admitted *Pro Hac Vice*
        125 S. Howes Street, Suite 1100
        Fort Collins, CO 80521
        Tel: 970.482.5058
        jennifer@fortcollinslaw.com

        COUNSEL FOR KAYLA MCNEILL

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2024 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and through that filing served all counsel of record.

By: */s/ Laura Burgess*
    Laura Burgess