UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC,

    Plaintiff/Counterclaim Defendant,

v.                                                   CASE NO. 23-CV-60345-JB/JMS

KAYLA MARIE MCNEILL,

    Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC,

    Third-Party Defendant.

_____/

**HEAD KANDY'S AND MR. FALIC'S REPLY IN SUPPORT OF THEIR *DAUBERT* MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF TONIA WERNER, M.D.**

    Plaintiff/Counterclaim Defendant Head Kandy LLC ("**Head Kandy**") and Third-Party Defendant Jerome Falic ("**Mr. Falic**") reply in support of their *Daubert* Motion to Exclude Testimony and Opinions of Tonia Werner, M.D. (the "**Motion**") [ECF 459] and in response to Defendant/Counterclaimant/Third-Party Claimant Kayla Marie McNeill's ("**Ms. McNeill**") Opposition to Daubert Motion to Exclude Testimony and Opinions of Tonia Werner, M.D. (the "**Opposition**") [ECF 492], and in support state:

**Argument**

    By her Opposition, Ms. McNeill asserts that Dr. Werner's qualifications and methodology employed to determine a diagnosis for Ms. McNeill are sufficiently reliable under *Daubert*. While Dr. Werner may be qualified to diagnosis Ms. McNeill with a Major Depressive Disorder ("**MDD**")—and, although Ms. McNeill spills much ink detailing Dr. Werner's qualifications, Head Kandy and Mr. Falic did not argue otherwise— she is not qualified, and did not employ a reliable

1

methodology, to offer an opinion that Ms. McNeill suffered from legally cognizable "sexual harassment" and that it was the *cause of* the MDD with which Dr. Werner diagnosed Ms. McNeill.

**I.      Testimony that Ms. McNeill suffers from MDD as a result of "sexual harassment" is an improper legal conclusion.**

To prevail on her counterclaims and third-party claims by which she seeks "emotional distress damages," Ms. McNeill has the ultimate burden to prove she experienced actionable "sexual harassment." Ms. McNeill's burden, in part, will be to prove that she was "subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual advances, requests for sexual favors, and other conduct of a sexual nature." *See Speedway SuperAmerica, LLC v. Dupont*, 933 So. 2d 75, 80 (Fla. 5th DCA 2006). In her Opposition, Ms. McNeill attempts to ascribe a broader authority to an expert's ability to testify to an opinion that "embraces an ultimate issue" by incorrectly stating that the embrace may extend to providing the factfinder with a legal interpretation. [F.R.E. 704; Opp. at 3-4; *see Haney v. Mizell Memorial Hosp.*, 744 F. 2d 1467, 1473-75 (11th Cir. 1984)] In *Haney,* the Eleventh Circuit acknowledged that the distinction between admissible factual opinions or inadmissible legal conclusions is subtle. *Id*. at 1473. The Circuit Court affirmed the trial court's decision to exclude an expert from testifying both as to what the standard of care was and if the alleged conduct had fallen below that standard, especially where the expert was not shown to be familiar with the elements at issue in the action. *Id*. at 1474. Similarly here, the Court should not permit Dr. Werner to offer "expert" testimony that Ms. McNeill did in fact experience conduct constituting "sexual harassment" under the guise that such testimony simply "embraces an ultimate issue," rather than asserts a legal conclusion.

Allowing Dr. Werner to testify that Ms. McNeill now suffers from MDD "*as a result of* sexual harassment" indicates to the factfinder that the expert has determined that sexual harassment indeed occurred. While an expert may offer an opinion on an ultimate issue of fact, the expert may

2

not merely tell the jury what result to reach nor whether the "legal standard has been satisfied." *Cordoves v. Miami-Dade County*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. Mar. 2, 2015).

In her Opposition, Ms. McNeill attempts to avoid this principal set out in *Cordoves* by suggesting the *Cordoves* court concluded that "'sexual harassment' is not a term imbued with a 'specialized legal meaning that is more precise than the lay understanding of the term'" and, that because "'sexual harassment' has become widely accepted and routinely used in normal conversation," Dr. Werner is free to tell the factfinder Ms. McNeill experienced "sexual harassment." [Opp at 5]. The *Cordoves* court made no such specific determination. *Cordoves*, analyzing the ADA service-animal regulatory scheme, stands for the proposition that when an expert conveys to the factfinder whether conduct "tracks the language of the applicable statute," it is an impermissible legal conclusion. *Id*. At issue here, "sexual harassment" is quite literally the name of the charge and statute under which Ms. McNeill seeks relief. [ECF 337 at 82-83]. Because in this context the term has specialized legal meaning, it is of no matter that the term "sexual harassment" is also used "in normal conversation." The Court should find that any expert testifying, or directly implying, that Ms. McNeill suffered "sexual harassment" is an impermissible legal conclusion that must be excluded.

**II.     Dr. Werner's opinion as to the cause of Ms. McNeill's MDD is unsupported by any methodology considered reliable under Daubert.**

Ms. McNeill is correct that Dr. Werner provided examples of the "five or more" symptoms she believes Ms. McNeill exhibited in forming her opinion that Ms. McNeill suffers from MDD. [Opp. at 3]. However, to support her contention that because Dr. Werner did so, Dr. Werner should then be permitted to step further and testify as to the *cause of* the MDD, Ms. McNeill attempts to defend Dr. Werner's methodology, which consisted entirely of obtaining and reviewing Ms. McNeill's own statements, including those she made on a "form [that] specifically asks about

3

physical or sexual abuse." [Opp. at 8]. That "methodology" employed by Dr. Werner is simply not enough for Dr. Werner to offer the opinion at trial that Ms. McNeill indeed suffered from "sexual harassment", and it was that "sexual harassment" that caused her MDD.

Although an expert is permitted to embrace an ultimate issue, it must be supported by "adequately explored legal criteria." *Haney*, 744 F.2d at 1474. At no point during her deposition, or within her report, did Dr. Werner describe any methodology that does anything beyond providing a diagnosis. Ms. McNeill, in her Opposition, points to Dr. Werner's testimony in which she attempted to explain how she is able to "determine why somebody is experiencing depression, and then make an analysis as to it being from a specific event." [Opp. at 7-8]. Dr. Werner explained that it, "comes from [Ms. McNeill], coming from her history. It was described in her medical records previously, so its coming from the collateral information." [Opp. at 7-8]. This review of Ms. McNeil's own statements and her "medical history," Ms. McNeill believes, is a sufficient methodology for Dr. Werner to be able to form a reliable opinion as a psychiatrist of the cause of MDD. She is wrong. A closer inspection of Dr. Werner's testimony the next page over confirms that her determination of the diagnosis and cause of Ms. McNeill's MDD relied upon "Ms. McNeill having told [Dr. Werner] the truth." [ECF 459-2 at 94:4-8]. As for Dr. Werner's reliance on the records of Dr. Wigington and Nurse McDowell, as Head Kandy and Mr. Falic argue in their *Daubert* Motion to Exclude Testimony and Opinions of James Wigington, M.D. and Dawn McDowell, FNP-C [ECF 449], Dr. Wigington and Nurse McDowell never made any independent determinations of the underlying cause of Ms. McNeill's reported symptoms. [ECF 449 at 9]. Rather, they, like Dr. Werner, simply wrote down what Ms. McNeill told them. *Id*.

At bottom, the "methodology" Ms. McNeill argues Dr. Werner used to form an opinion as to the cause of Ms. McNeill's MDD is nothing but a review of Ms. McNeill's own assertions that

4

she is depressed because she experienced sexual harassment. Stacking Ms. McNeill's own self-serving statements to Dr. Werner and her treaters without employing any further examination is not a reliable method under *Daubert* and impermissibly allows Ms. McNeill to testify through an expert. *See United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) ("[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."); *La Gorce Palace Condo. Ass'n, Inc v. Blackboard Specialty Ins Co.*, 586 F. Supp. 3d 1300, 1307 (S.D. Fla. 2022) (explaining that an expert "may not, under the guise of giving expert testimony, become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion") (cleaned up). As to causation, Dr. Werner offers nothing beyond a recitation of Ms. McNeill's version of events.

## Conclusion

For the above reasons, and all those set out in Head Kandy and Mr. Falic's Motion, Head Kandy and Mr. Falic respectfully request that the Court preclude Dr. Werner from offering any opinion or testifying that Ms. McNeill experienced "sexual harassment" or that the conduct in which Ms. McNeill alleges Head Kandy and/or Mr. Falic engaged was the cause of the depression with which Dr. Werner has diagnosed Ms. McNeill, and order such other and further relief the Court deems appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 20, 2024 I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jennifer@lawfortcollins.com,

jamie@lawfortcollins.com, Massey, Kelly & Priebe, PLLC, 125 S. Howes Street, Suite 1100, Fort Collins, CO 80521, *co-counsel for Defendant;*. and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

/s/ *Carson A. Sadro*
**ETHAN J. LOEB**
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
**EDWARD C. THOMPSON**
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
**JALEN A. LARUBBIO**
FL Bar No. 1039258
JalenL@blhtlaw.com
**CARSON A. SADRO**
FL Bar No. 1026159
CarsonS@blhtlaw.com
**BARTLETT LOEB HINDS THOMPSON & ANGELOS**
100 N. Tampa Street, Suite 2050
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Head Kandy LLC and Jerome Falic*