## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC,

       Plaintiff/Counterclaim Defendant,

v.                              CASE NO. 23-CV-60345-JB/JMS

KAYLA MARIE MCNEILL,

       Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC,

       Third-Party Defendant.

_____/

### HEAD KANDY'S REPLY STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT[1]

**BARTLETT LOEB HINDS THOMPSON & ANGELOS**

**ETHAN J. LOEB**
FL Bar No. 668338
**E. COLIN THOMPSON**
FL Bar No. 684929
**JALEN A. LARUBBIO**
FL Bar No. 1039258
**CARSON A. SADRO**
FL Bar No. 1026159
1001 Water St., Suite 475
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Plaintiff Head Kandy LLC*

---

[1] As Head Kandy explained in its Motion to Strike [ECF 507], Ms. McNeill's Statement of Facts Material to Head Kandy, LLC's Motion for Summary Judgment [ECF 503] is due to be stricken, because it was late-filed and because the Response section is over the page limit and the "Additional Facts" section of it exceeds by nearly double the page limits prescribed by Local Rule 56.1(b)(2)(D).  In the event the Court declines to strike Ms. McNeill's filing or at least the over-the-page limit "Additional Facts" portion of it, Head Kandy, within its Motion to Strike, moved for a commensurate enlargement of pages within which to respond to Ms. McNeill's "Additional Facts."  [ECF 507].  Head Kandy's Motion remains pending.  Head Kandy has used nine pages to respond to Ms. McNeill's nine pages of "Additional Facts."

78.    Disputed.  The evidence Ms. McNeill cites does not establish the asserted fact.  While Ms. McNeill attempted to provide self-serving and conclusory testimony that she was never a resident of North Carolina, testimony establishes she worked in North Carolina after Head Kandy relocated there and primarily lived in her home in North Carolina during that time, returning to Colorado only "[w]hen [she] could."  [K.McNeill Dep. at 91:2-92:13, 117:23-118:16, 119:3-5; Falic Dep. 217:5-8; D.McNeill Dep. at 42:21-43:11].  Ms. McNeill physically worked from Head Kandy's North Carolina offices and warehouse on a daily basis after the company relocated.  [K.McNeill Dep. 289:8-24 ("My husband and I lived in that warehouse for eight years. … I was forced to be in there to help make sure that the company operated.")].

79.    Undisputed.

80.    Disputed insofar as Ms. McNeill suggests Mr. Falic in his individual, personal capacity held such authority; rather, Mr. Falic had that authority only in his capacity as Managing Member acting on behalf of Head Kandy.  [OA at § 7.1(a); Falic Dep. 203:24-204:3; Ex. 28 at ¶ 2].

81.    Disputed.  The evidence Ms. McNeill cites does not establish the fact asserted.  Lashed Out, LLC only had a "mascara business" until Ms. McNeill "decided to create the hair products." Since she had the "LLC," Ms. McNeill then "filed a d/b/a of Head Kandy under Lashed Out, LLC," under which she began to sell hair care products.  [K.McNeill Dep. 52:22-53:24].

82.    Undisputed.

83.    Undisputed.  The Executive Employment Agreement speaks for itself.

84.    Disputed.  Ms. McNeill had no individual "supervisor"; rather, Ms. McNeill herself was functionally in charge of Head Kandy's operations and was (and had the inherent authority of) a member/co-owner of the business.  [Falic Dep. 26:24-27:19, 38:21-39:23; Rosenbaum Dep. 169:2-12; Feldman Dep. 32:6-12, 44:3-7, 45:8-12, 48:9-15, 49:4-50:17].

85.   Disputed.  The evidence Ms. McNeill cites does not establish that Head Kandy had "no" policies, procedures, or protocols for "any" aspect of its business.  Ms. McNeill testified that during Ms. McNeill's time at Head Kandy, Kaylin Culp created "some type of policy for cell phones and things like that."  [K.McNeill Dep. 41:13-20].  Ms. Petri also implemented policies regarding accounting and finance.  [Petri Dep. 39:18-40:22].

86.   Disputed.  While Head Kandy had no formal human resources "department" and no individual dedicated exclusively to human resources within Head Kandy itself, human resource functions were performed not only by Kayla McNeill, but also by Kaylin Culp, who testified to her role in onboarding employees and signing forms as "department manager and human resources."  [Culp. Dep. 17:3-18; *see also* Rosenbaum Dep. at 109:12-14].  Additionally, individuals who performed services for other companies in which Mr. Falic held an ownership interest (and worked out of the same office in Florida as Head Kandy operated) provided payroll processing and other human resources services to Head Kandy.  [Falic Dep. at 57:15-58:15].

87.   Disputed insofar as the evidence Ms. McNeill cites does not establish any of the facts stated.  Undisputed insofar as Head Kandy was provided services by individuals who also performed services for other companies in which Mr. Falic also held an ownership interest. Disputed insofar as Ms. McNeill suggests that those companies are "unrelated" to Head Kandy; they are, as is apparent from Ms. McNeill's own stated fact, related by common ownership and operate out of the same office in Florida as Head Kandy operated.  [Falic Dep. 218:4-12].

88.   Disputed.  The evidence Ms. McNeill cites does not establish the fact asserted.  Moreover, while it had been Ms. McNeill's job to do so before, in or around July 2022, Head Kandy brought in Ms. Kleitias Petri specifically to review and reconcile Head Kandy's financial books and records.  [Petri Dep. 9:15-10:06].

89.    Disputed.  The statement is conclusory and subjective, and the evidence Ms. McNeill cites does not establish the statement. Head Kandy's operations were supported by "loans from each of the partners."  [Falic Dep. 67:16-19].

90.    Disputed. The evidence Ms. McNeill cites does not establish the fact asserted. Instead, as the cited testimony itself confirms, Head Kandy made payments directly to American Express to pay charges Ms. McNeill made on the subject credit card.  [K.McNeill Dep. 103:20-104:05].

91.    Undisputed.

92.    Disputed.  Ms. McNeill cites no evidence to support the stated fact.

93.    Disputed.  Ms. McNeill cites no evidence to support the stated fact.  Ms. McNeill, not Mr. Thompson, was responsible for identifying, and not causing Head Kandy to pay for, her personal expenses she charged to the credit card.  [ECF 41-1 ¶ 8].  Mr. Thompson, as Ms. McNeill's assistant, performed these tasks at Ms. McNeill's direction.  [ECF 41-1 ¶¶ 1, 9, 12].

94.    Disputed.  Ms. McNeill cites no evidence to support the stated facts.  Mr. Thompson did not perform these activities of his own volition, but rather, submitted Ms. McNeill's expense reports as directed by Ms. McNeill.  [ECF 41-1 ¶¶ 1, 9, 12].

95.    Disputed.  Ms. McNeill cites no evidence to support the stated fact.  Ms. McNeill did not pay the balance of the subject credit card each month, but rather, allowed Head Kandy to pay for at least $256,732.80 of expenses for which there is no supported Head Kandy business purpose. [Petri Dep. 193:21-196:13; ECF 463-1 at "Summary" tab, cell A217]

96.    Disputed.  Ms. McNeill cites no evidence to support the stated fact.  Beginning in or about October 2018, Head Kandy made payments directly to American Express. [Petri Dep. 182:04-19; *see also* K.McNeill Dep. 103:20-104:05 (confirming Head Kandy payments directly to American Express)].

97.     Disputed.  Ms. McNeill cites no evidence to support the stated fact.  At Ms. McNeill's direction, Head Kandy paid not only for business expenses Ms. McNeill charged to the subject credit card, but also for at least $256,732.80 of expenses for which there is no supported Head Kandy business purpose.  [Petri Dep. 193:21-196:13; ECF 463-1 at "Summary" tab, cell A217].

98.     Disputed insofar as Ms. McNeill suggests that Ylse Lopez worked for an "unrelated" company and insofar as it states the full statements were to be submitted "as expense reports."  The email attached to Ms. McNeill's Declaration states only that Head Kandy needs to "have Amex bills showing all amount and details" and nothing about "expense reports."  [ECF 53-2 (Ex. 4)].

99.     Disputed.  Ms. McNeill cites no evidence to support the stated fact.

100.    Undisputed that In July 2022 Mr. Falic, as managing member of Head Kandy, retained Jonathan Rosenbaum as a consultant for Head Kandy.

101.    Disputed.  Ms. McNeill cites no record evidence to support the stated fact.

102.    Undisputed insofar as the Executive Employment Agreement provides that Ms. McNeill could earn a bonus under specific circumstances.

103.    Disputed.  Ms. McNeill cites no record evidence to support the stated fact.  Ms. Petri had calculated a bonus amount Ms. McNeill could be owed assuming the financial information she had at the time was accurate.  [Petri Dep. 210:3-11, 213:16-19].

104.    Undisputed.

105.    Disputed.  Ms. McNeill cites no evidence to support the stated fact, and the stated fact is premised on a legal conclusion that § 3(b) the Executive Employment Agreement affirmatively required Head Kandy to "secure[]" audited financials.  Ms. Petri testified that Head Kandy was not required to obtain audited financial statements as a matter of course.  [Petri Dep. 209:14-19].

106.  Undisputed that counsel for Head Kandy sent Ms. McNeill a letter on November 28, 2022.  [ECF 187-2].  Disputed insofar as Ms. McNeill, conclusorily and without evidentiary support, characterizes that letter as "retaliation"; rather, the November 28, 2022, letter set out conditions for Ms. McNeill's continued employment based on Ms. McNeill's violations of the Executive Employment Agreement and her fiduciary duty to the company, which are described extensively with supporting evidence in Head Kandy's Statement of Material Facts.

107.  Disputed.  The letter in question, which is the only evidence Ms. McNeill cites for her conclusory statements, contains no "disclos[ure]" of anyone's "desire" or "felonious intent to steal (for personal gain)" any of Ms. McNeill's property to "inflict significant financial distress upon Ms. McNeill," or that there had been no complaints or allegations of impropriety prior to the date of the letter.  The letter reminds Ms. McNeill of her obligations and Head Kandy's rights under the applicable agreements.  [ECF 187-2].

108.  Undisputed.  The December 1, 2022, letter speaks for itself.  [ECF 214-1].

109.  Undisputed.  The December 1, 2022, letter speaks for itself.  [ECF 214-1].

110.  Disputed.  In Mr. Falic's testimony cited in support of this fact, Mr. Falic is discussing the conditions under which Head Kandy was willing at the time to permit Ms. McNeill's continued employment, including that Head Kandy would, as part of that compromise, allow Ms. McNeill to "engage in other business ventures during your off-hours provided that they do not conflict with Head Kandy's business or take away from your work for the company" and set out conditions to which Head Kandy would, going-forward, agree to certain of Ms. McNeill's "side ventures."  [ECF 214-1 at 3].  Mr. Falic, in the testimony Ms. McNeill cites, merely acknowledged the letter's contents when they were read to him by Ms. McNeill's counsel, and did not "admit" that Ms. McNeill was "permitted to engage in other business ventures during her off hours."

111.  Ms. McNeill does not state a fact in Paragraph 111, but rather, merely lists of string of cites after stating only "Head Kandy, LLC."  Accordingly, no response is required.

112.  Undisputed.  The December 16, 2022, letter speaks for itself.  [ECF 187-3].

113.  Ms. McNeill does not state a fact in Paragraph 113, but rather, merely identifies a document filed at ECF 187-4.  Head Kandy does not dispute that document is so filed.

114.  Undisputed.  The January 30, 2022, letter speaks for itself.  [ECF 187-5].

115.  Undisputed that Ms. McNeill filed such a suit, disputed that Ms. McNeill is or ever was entitled to any of the relief she sought therein.

116.  Undisputed.

117.  Undisputed.

118.  Undisputed.  The Resolution speaks for itself.  [ECF 187-6].

119.  Disputed insofar as Ms. McNeill suggests that Mr. Falic's "unilateral[]" execution of the Resolutions was improper.  Mr. Falic explained that, pursuant to his agreement with his brothers Simon and Leon (two of the other 20% members of Head Kandy), he had the authority to speak and act on their behalf, and therefore enacted the Resolutions on behalf of Head Kandy with the approval of a majority of Head Kandy's membership.  [Falic Dep. 204:18-23].

120.  Undisputed. The Operating Agreement speaks for itself.  [ECF 311-2 § 8.5].

121.  Disputed.  The full provision Ms. McNeill selectively quotes reads:

> "**Executive**" means Kayla Marie McNeill and any Substituted Member or any Additional Member who is classified as an Executive by the Managing Member pursuant to **Section 8.5**.  Notwithstanding anything to the contrary contained herein, in no event shall the term "**Executive**" include any Member or any Affiliate of any Member notwithstanding that such Member or Affiliate thereof is employed by, or is a member of the management of, the Company.

[OA (ECF 360-3) at § 1.1 (p. 5)].

122.  Undisputed.  The quoted portion of the Operating Agreement speaks for itself.

123. Undisputed that Head Kandy's Resolutions referenced "the amount originally paid for McNeill's units," but disputed that "the amount originally paid for McNeill's units" is the proper calculation of the purchase price due pursuant to the Operating Agreement under the circumstances of this case.  [OA (ECF 360-3) at § 8.5(a)].

124. Undisputed.  The quoted portion of the Operating Agreement speaks for itself.

125. Undisputed insofar as the cited provision of the Operating Agreement does specifically mention any "credit against" or "setoff."  Disputed insofar as Ms. McNeill contends that the Operating Agreement "does not allow for credit against or setoff," which is a legal conclusion not a statement of fact.

126. Undisputed that Ms. McNeill has not received any payment for her membership units in Head Kandy.  Disputed that § 8.5 of the Operating Agreement "set forth" that Ms. McNeill is entitled to any payment under the circumstances of this case.  Ms. McNeill was terminated for cause.  [Falic Dep. 107:5-122:7; ECF 187-5 at 2-3; ECF 187-6 at 1; Ex. 28 at ¶ 6].  Ms. McNeill was terminated "for cause," because of, among other reasons, her misuse of company resources for the benefit of herself, her family, and her side businesses.  [Falic Dep. 107:5-122:7; ECF 187-5 at 2-3; ECF 187-6 at 1; Ex. 28 at ¶ 6].  Regardless, because the fair market value of Ms. McNeill's membership interest was $0 at the time they were reacquired by Head Kandy, [ECF 464-1 at ¶¶ 12, 63, 65], Ms. McNeill was never entitled payment for it.  [ECF 311-2 at § 8.5].

127. Undisputed.  The Resolution speaks for itself.

128. Undisputed.  The Asset Purchase Agreement speaks for itself.

129. Disputed.  The evidence Ms. McNeill cites does not establish the majority of the asserted facts.  Head Kandy does not, however, dispute that the referenced page was created on November 6, 2018.

130. Disputed.   The evidence Ms. McNeill cites does not establish the asserted facts. Undisputed that the referenced Facebook page was created on November 6, 2018.  Disputed that either the Facebook or Tik Tok accounts were "personal"; they were the primary accounts used for Head Kandy business, Head Kandy paid for promotion of those accounts, and Ms. McNeil used those pages to promote Head Kandy products.  [Falic Dep.  116:5-8; K.McNeill Dep. 73:10-24].

131.  Disputed.  This "fact" is a legal conclusion and is not supported by the cited evidence.

132.  Disputed.  The evidence Ms. McNeill cites does not support the stated fact, and Ms. McNeill purports to cite evidence that is not presently in the record.  Mr. Falic's testimony, with respect to Ms. McNeill's claimed ownership of a particular social media account, was that "Kayla argued the point" but Head Kandy's counsel "confirmed otherwise."  [Falic Dep.  115:23-116:1]. Moreover, on the same day Ms. McNeill claims Head Kandy "acknowledged" her ownership, Head Kandy's counsel sent Ms. McNeill a letter stating that the ownership of the social media accounts "remains an open point of disagreement."  [ECF 214-1 at 2].

133.  Disputed.  The evidence Ms. McNeill cites does not support the stated fact.  Head Kandy obtained the login information to the social media accounts in question because Head Kandy in fact owned those accounts and intended to continue to use them for its business.  [Falic Dep. at 115:23-116:1].

134.  Disputed.  In addition to its extensive payments to "boost" the page, Head Kandy asserts ownership over the pages in question based on, inter alia, the Asset Purchase Agreement and the Executive Employment Agreement.  [ECF Nos. 187-1, 360-2].

135.  Disputed.  Mr. Falic testified extensively regarding the expenses Head Kandy incurred with respect to its social media pages including "boosting," and with respect to "boosting" stated

8

"Let me just say that we boost them – they just push it through.  They go out and, you know, as many viewers as possible."  [Falic Dep. 116:18-21].

136. Disputed insofar as Ms. McNeill suggests that Mr. Falic held or exercised these authorities in his personal capacity.  Mr. Falic held and exercised his authority, if at all, in his capacity as an owner/member and/or the Managing Member of Head Kandy.  [Falic Dep. 203:24-204:3; Ex. 28 at ¶ 2].  Finally, Ms. McNeill's statement that "[t]his is more than sufficient to hold Mr. Falic personally liable for the unpaid bonus amounts" is a (disputed) legal conclusion.

137. Disputed.  Ms. McNeill cites no record evidence to support the stated fact.

138. Disputed.  Ms. McNeill cites no record evidence to support the stated fact.

139. Disputed.  Ms. McNeill cites no record evidence to support the stated fact.

140. Disputed insofar as Ms. McNeill purports to claim there existed a written "Forklift Lease."  Beginning sometime in 2021, Ms. McNeill leased an outdated forklift she had purchased for "like $6,000 or $7,000" to Head Kandy for $1,000 per month, [K.McNeill Dep. 431:8-18, 432:11-19], with no signed writing governing the lease, [K.McNeill Dep. 429:1-11; Falic Dep. 205:17-206:4].

141. Disputed.  Ms. McNeill cites no record evidence to support the stated fact.  Head Kandy offered to allow Ms. McNeill to retrieve the forklift from Head Kandy's North Carolina property.  [Rosenbaum Dep. 191:17-192:5; Ex. 19 at 1-2].

142. Undisputed.

143. Undisputed.

144. Ms. McNeill does not state a complete fact in paragraph 144.  Accordingly, no response is required.  Disputed to the extent Ms. McNeill states a fact or thought in paragraph 144, because Ms. McNeill cites no record evidence to support any such fact or thought.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 26, 2024 I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jennifer@lawfortcollins.com, jamie@lawfortcollins.com, Massey, Kelly & Priebe, PLLC, 125 S. Howes Street, Suite 1100, Fort Collins, CO 80521*, co-counsel for Defendant;.* and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

/s/ *Edward C. Thompson*
**ETHAN J. LOEB**
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
**EDWARD C. THOMPSON**
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
**JALEN A. LARUBBIO**
FL Bar No. 1039258
JalenL@blhtlaw.com
**CARSON A. SADRO**
FL Bar No. 1026159
CarsonS@blhtlaw.com
**BARTLETT LOEB HINDS THOMPSON & ANGELOS**
1001 Water St., Suite 475
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Head Kandy LLC*

10