UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC,

    Plaintiff/Counterclaim Defendant,

v().                                                            CASE NO. 23-CV-60345-JB/JMS

KAYLA MARIE MCNEILL,

    Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC,

    Third-Party Defendant.

_____/

**HEAD KANDY'S REPLY IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

**BARTLETT LOEB HINDS
THOMPSON & ANGELOS**

**ETHAN J. LOEB**
FL Bar No. 668338
**E. COLIN THOMPSON**
FL Bar No. 684929
**JALEN A. LARUBBIO**
FL Bar No. 1039258
**CARSON A. SADRO**
FL Bar No. 1026159

1001 Water St., Suite 475
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Plaintiff Head Kandy LLC*

Plaintiff/Counterclaim Defendant Head Kandy, LLC ("**Head Kandy**") replies in support of its Motion for Summary Judgment (the "**Motion**") [ECF 471] and in opposition to Defendant/Counterclaimant Kayla Marie McNeill's ("**Ms. McNeill**") Opposition to Head Kandy LLC's Motion for Summary Judgment (the "**Opposition**") [ECF 505],[1] and in support states:

### Introduction

Head Kandy moved for summary judgment on two of its own claims and all 19 of Ms. McNeill's counterclaims. Ms. McNeill has now conceded Head Kandy is entitled to summary judgment on her counts 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 12, 14, and 17 inasmuch as she did not respond at all to the arguments and evidence Head Kandy presented, and did not identify any countervailing evidence to create a factual dispute, on those counterclaims.

As to the claims Ms. McNeill addresses in her Opposition, she has failed to show Head Kandy is not entitled to summary judgment. First, as to several of her counterclaims she addresses, Ms. McNeill attempts to fall back on the motion to dismiss standard, citing case law discussing that standard and arguing that the fact that she has "alleged" improper conduct must be sufficient for her counterclaims to survive, without identifying and presenting evidence to show any disputed issues of material fact. [Opp. at 3, 10]. Where Ms. McNeill purports in her Opposition to identify factual disputes supported by evidence, rather than properly stating a fact in her accompanying statement of facts and providing evidentiary support, she instead dumps string citations to deposition transcripts and other documents that she did not timely and properly identify nor file.[2]

---

[1] As set out in Head Kandy's and Mr. Falic's Motion to Strike Ms. McNeill's Untimely and Over-The-Page Limit Filings in Opposition to Motions for Summary Judgment [ECF 507], the Court need not consider, and Head Kandy need not reply to, Ms. McNeill's Opposition. Because that motion is still pending, however, Head Kandy files this Reply in an abundance of caution.

[2] Even as Head Kandy's counsel was preparing this Reply, on December 23, 2024, a full week after Ms. McNeill's Opposition was due to be filed, Ms. McNeill untimely purported to file the exhibits she references in her Opposition [ECF 510]. Head Kandy has moved to strike that additional untimely filing. [ECF 513].

1

Regardless, the supposed "disputed facts" Ms. McNeill attempts to put forth are immaterial to the relevant issues and the (late-filed) evidence she attempts to identify to support such facts do not do so. [Opp. at 7-8]. At bottom, no matter how often Ms. McNeill repeats her unsubstantiated allegations and unfounded characterizations, given her failure to identify record evidence or facts to support those allegations, no reasonable jury could find she should prevail on any of the claims remaining in this case. Head Kandy is entitled to summary judgment on those claims.

## Argument

To survive summary judgment, Ms. McNeill must demonstrate a genuine dispute of material fact as to each claim by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *accord* Loc. R. 56.1(a)(1)(B) (requiring "specific, pinpoint references to particular parts of record material"). The Court "need consider only the cited materials," Fed. R. Civ. P. 56(c)(3), and may "deem admitted" facts Ms. McNeill has failed to refute with properly cited evidence, Loc. R. 56.1(c). By her Opposition, Ms. McNeill has failed to specifically point to evidence creating a genuine dispute of material fact on Head Kandy's claims against her or her claims against Head Kandy entitling Head Kandy to summary judgment.

I.  **No genuine dispute of material fact exists as to Head Kandy's claims against Ms. McNeill for breach of fiduciary duty and breach of contract.**

Ms. McNeill's argument as to Head Kandy's claim against her for breach of her fiduciary duty appears incomplete and relies on the incorrect motion to dismiss standard and an unpled defense. [Opp. at 3]. As far as Head Kandy can discern, Ms. McNeill's primary argument appears to be that Head Kandy somehow "ratified" what conduct she apparently concedes amounted to breaches of her fiduciary duty. [Opp. at 3-4]. As an initial matter, Ms. McNeill did not raise

2

"ratification" as an affirmative defense to any claims. [ECF 337 at 12-15].[3]  Assuming she may now rely on her unasserted "ratification" defense, Ms. McNeill points to no record evidence to support it. [*See, e.g.*, ECF 503 at ¶ 34 (reading, in its entirety, "Disputed. HK approved and ratified all of Ms. McNeill's conduct.")].  Moreover, even if "ratification" is a defense to a fiduciary duty claim, and even if a party's "intent to ratify" is often a jury question, as Ms. McNeill claims, there can be no jury question where Ms. McNeill cites nothing even remotely supporting her theory she could present to a jury.[4]  *See Irvine v. Cargill Inv. Servs., Inc.*, 799 F.2d 1461, 1463 (11th Cir. 1986) ("Defendants have cited no case in which a defense of … ratification has been successfully maintained … against breaches of fiduciary duty.  Even assuming that these defenses could be appropriately invoked against such claims, the record before us shows insufficient evidence to support giving the instruction on affirmative defenses to the jury.").

Ms. McNeill goes on to, in cursory and conclusory fashion, to assert that "there are fact issues as to whether the things [Head Kandy] complained of ever occurred," such as "whether Ms. McNeill ever used HK employees, the warehouse and forklift, or whether Ms. McNeill ever caused HK to pay for a single personal expense for personal benefit to begin with." [Opp. at 4].  Ms. McNeill, however, cites no facts or evidence to show such disputes.  The only evidence in the record, to the contrary, shows that Ms. McNeill breached her fiduciary duty by:  (1) using Head Kandy employees for her personal benefit, including causing individuals who performed no Head Kandy business tasks whatsoever to be put on on the company's payroll, [ECF 470 at ¶¶ 16, 17]; (2) leasing an unfinished barn, an unneeded dumpster, and a dilapidated forklift to Head Kandy at exorbitant rates, [ECF 470 at ¶¶ 28, 29, 31, 32]; and, (3) causing Head Kandy to pay for hundreds

---

[3] All of Ms. McNeill's purported affirmative defense are insufficiently pleaded.  Head Kandy has moved to strike each of them. [ECF 363].
[4] Ms. McNeill has no right to a jury trial on Head Kandy's claims anyway because she waived such right by contracts between her and Head Kandy.

3

of thousands of dollars' worth of her expenses that had no apparent business purpose or business documentation, including multiple indisputably personal purchases such as race car parts, a pool pump, lap band surgery, and products for her other businesses, [ECF 470 at ¶¶ 21, 22, 25].[5]

As to Head Kandy's claim for breach of contract, first, Ms. McNeill contends that the findings made on that claim at the preliminary injunction stage "were made on an incomplete record" and are "not binding at a trial on the merits" or at summary judgment. [Opp. at 4-5]. Even assuming that is correct, however, Ms. McNeill points to no new evidence that would change the Court's conclusions. That is, faced with the same (and in fact, additional) evidence of Ms. McNeill's breaches (which have continued throughout this litigation) and the irreparable harm that conduct has caused to Head Kandy [ECF 470 at ¶¶ 41-44], the Court should reach the same conclusion now that the issue is ripe for a final adjudication on the merits. *See, e.g.*, *Lincare, Inc. v. Markovic*, 2024 WL 1050531, at *6 (M.D. Fla. Mar. 11, 2024) (entering permanent injunction when defendant had not "elicited *any* evidence that contradicts or undermines the evidence upon which the Court relied in entering its preliminary injunction order") (emphasis in original); *United States v. Prater*, 2005 WL 2715401, at *6 (M.D. Fla. Sept. 23, 2005) (similar).

Second, Ms. McNeill includes a heading and a single sentence "argument" section seemingly suggesting that the Colorado Wage Act somehow overrides the Executive Employment Agreement's requirement that Ms. McNeill repay to Head Kandy any annual bonus upon breach of the restrictive covenants. That is incorrect [ECF 470 at ¶ 11 (electing Florida law)], and moreover, has nothing at all to do with Head Kandy's own claim for breach of contract.

---

[5] Most of Ms. McNeill's responses to those facts stated by Head Kandy lack any evidentiary support whatsoever. [ECF 503 at ¶¶ 21, 22, 25, 28, 29, 31, 32]. Those that ostensibly contain citation to some record evidence [ECF 503 at ¶¶ 16, 17] are actually wholly unsupported by the record evidence that Ms. McNeill cites and are belied by documentary evidence in the record.

Finally, Ms. McNeill's primary argument against summary judgment for Head Kandy on its breach of contract claim is a rehash of arguments she made in a previous attempt to sidestep consequences for her blatant violation of the Preliminary Injunction. Ms. McNeill once again claims that the non-disparagement provision in the Executive Employment Agreement is invalid under the National Labor Relations Act ("**NLRA**").[6] But that again is patently incorrect.

As a preliminary matter, Ms. McNeill's NLRA arguments say nothing at all about the non-competition and non-solicitation provisions of the Executive Employment Agreement. Ms. McNeill mounts neither a legal challenge to those provisions nor a proper factual challenge to the record evidence Head Kandy has cited of Ms. McNeill's breach of those provisions. [ECF 470 at ¶¶ 41, 44].[7] Accordingly, Head Kandy is entitled to summary judgment on its breach of contract claim based at least on those provisions. As to the non-disparagement provision, Ms. McNeill claims, in essence, and despite Judge Strauss's findings, that she was not a managerial employee, but was merely an ordinary "rank-and-file" employee. [Opp. at 5-8]. That bald assertion is entirely incorrect, and plainly unsupported by the record, for multiple reasons.

First, as Judge Strauss found and Ms. McNeill does not dispute, Ms. McNeill was an owner and member of Head Kandy throughout her entire involvement with the company, including during and after her termination. [ECF 470 at ¶¶ 2, 40; ECF 503 at ¶ 2; ECF 495 at ¶ 19; ECF 271 at 13-14]. As such, Ms. McNeill's interests were necessarily "aligned with management" such that she is not entitled to the protections of the NLRA as a matter of law. [ECF 271 at 14 (collecting cases finding that owners of a company are not entitled to NLRA protection)]. That undisputed

---

[6] This is yet another challenge by Ms. McNeill to the enforceability of the restrictive covenants, despite her contractual agreement not to raise such challenges, on which claim Ms. McNeill has identified no factual dispute and for which claim Head Kandy is entitled to its attorney's fees as special damages. [ECF 470 at ¶¶ 10, 45; ECF 471 at 8].

[7] Ms. McNeill's responses to those stated facts completely lack citation to record evidence or cogent explanation. [ECF 503 at ¶¶ 41 ("Disputed."), 44 ("Disputed. HK terminated them.")].

5

fact alone is fatal to Ms. McNeill's NLRA argument. Indeed, extending NLRA protection to someone in Ms. McNeill's position as an owner and executive would make a mockery of the entire purpose of the Act—to protect powerless laborers from owners and management seeking to exploit them. 29 U.S.C. § 151 (explaining that the purpose of the NLRA is to prevent "[t]he denial by some employers of the rights of employees" by "restoring equality of bargaining power between employers and employees").

In any event, the record shows that Ms. McNeill, despite her baseless protestations to the contrary, was a managerial employee and a supervisor.[8] [ECF 515 at ¶¶ 81, 84]. Indeed, Mr. Falic delegated to Ms. McNeill the entire day-to-day operations of Head Kandy. [ECF 472 at ¶ 14]. On the other hand, the (untimely filed and otherwise improper) evidence to which Ms. McNeill points at most suggests that others might also have had supervisory roles over certain aspects of the business or that there were at times individuals above Ms. McNeill in the managerial chain. The mere fact that there may have been other managerial or supervisory employees, however, does nothing to show that Ms. McNeill herself was not *a* manager or supervisor. Because there is extensive evidence in the record that Ms. McNeill fulfilled managerial and supervisory functions regardless of who else might have also done so, and because the only evidence to which Ms. McNeill points does not show otherwise, no factfinder could conclude Ms. McNeill was not a managerial or supervisory employee.

Ms. McNeill tries to sidestep those obvious conclusions by arguing that even if she was a managerial and supervisory employee for the entire duration of her employment with Head Kandy,

---

[8] As discussed in Head Kandy's prior briefing on the issue [ECF Nos. 215, 231, 333], which Head Kandy incorporates herein by this reference, there are two separate NLRA exclusions for managerial employees and supervisors, both of which apply to Ms. McNeill. Judge Strauss rested his decision on the managerial employee exception and did not reach the supervisor exception. Either, however, would be fatal to the defense Ms. McNeill raises.

she was "demoted" in the few weeks preceding her termination such that she no longer held managerial and supervisory roles. That, however, is a blatantly misleading characterization of the facts. Upon discovering Ms. McNeill's self-dealing conduct—in which she was only even able to engage at all because of her ownership and functional control of the business—Head Kandy warned Ms. McNeill of the consequences she might face for her conduct if her conduct was not rectified, and discussed with Ms. McNeill various terms for her continued employment, including potential changes to her role. [ECF 515 at ¶ 110]. During part of that time, Head Kandy removed Ms. McNeill from her day-to-day role with the company so that Ms. McNeill could consider the terms by which her employment might continue despite her conduct and repay to Head Kandy the damage she had caused the business. Ms. McNeill refused to do so and, therefore, was terminated. [ECF 470 at ¶¶ 36, 37]. That is a far cry from a run-of-the-mill "demotion." It defies common sense that an executive who otherwise would not be protected by the NLRA could gain NLRA protection simply by committing acts detrimental to the company so as to prompt a demotion or suspension. Under Ms. McNeill's theory, Head Kandy would have been better off simply terminating Ms. McNeill immediately rather than giving her chances to correct her improper and unethical behavior, a result which the law certainly does not and should not encourage.

Additionally, making even clearer applying the NLRA to void the non-disparagement provision would be inappropriate in this case, Ms. McNeill agreed to the non-disparagement provision as part and parcel of an arm's length business sale transaction by which she received nearly $3 million, a substantial membership share in, and stayed on as an executive of the successor entity. [ECF 470 at ¶¶ 2, 6]. Those are not the coercive circumstances of the severance agreements handed to a desperate laborer who is being forced out the door, as occurred in the decisions on which Ms. McNeill relies.

7

In sum, Ms. McNeill's NLRA defense is without merit, and Head Kandy is entitled to summary judgment on its claim for breach of the Executive Employment Agreement, including both as to the non-disparagement provision and as to the remaining restrictive covenants and other provisions Ms. McNeill violated.

**II.    Head Kandy is entitled to summary judgment on each of Ms. McNeill's "employment" counterclaims.**

Contrary to Ms. McNeill's suggestion, courts routinely grant summary judgment on "employment claims" when the record evidence shows no genuine dispute of material fact. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1025 (11th Cir. 2000) ("Summary judgment is hardly unknown, or for that matter rare, in employment discrimination cases, more than 90 percent of which are resolved before trial, many of them on the basis of summary judgment for the defendant. … The long and short of it is that the summary judgment rule applies in job discrimination cases just as in other cases.") (cleaned up). Here, because there are no genuine disputes of material fact as to Ms. McNeill's FCRA claims, summary judgment in Head Kandy's favor is warranted.

A. <u>The record confirms that Ms. McNeill's FCRA claims are time-barred.</u>

First, Ms. McNeill cites case law discussing timeliness of hostile work environment claims. Problematically for Ms. McNeill, however, the cases she cites involve multiple instances of allegedly harassing conduct, ***at least some of which occurred within the statutory period*** of a year before the claim was brought. That is not what happened in this case. Here, Ms. McNeill brought her claims before the FCHR exactly one year after her termination, on January 30, 2024. Every single one of the alleged events Ms. McNeill claims constitute harassment allegedly occurred months before the resulting cutoff date of January 30, 2023. [ECF 470 at ¶¶ 48, 50, 53, 55-58, 61, 63, 65, 66, 68]. Ms. McNeill points to no evidence of the contrary and identifies no harassing act after January 30, 2023. In fact, no instance of workplace harassment could have possibly occurred in the two months preceding Ms. McNeill's termination, because Ms. McNeill, by her own

8

admission, was no longer working from Head Kandy's offices and warehouse during that time. [ECF 503 at ¶ 112]. The one and only event related at all to Ms. McNeill's FCRA claims that occurred within a year of her bringing those claims to the FCHR was her January 30, 2023 termination. As Head Kandy has explained, it is well-established that acts of harassment that occurred outside of the statutory period (here, months previously) cannot be made timely by a discrete act (e.g., a termination) that occurred within the statutory period. [ECF 360 at 19-22]. Accordingly, Ms. McNeill's FCRA harassment/hostile work environment claims are untimely.[9]

B. <u>There is no record evidence of conduct amounting to actionable harassment.</u>

Even if Ms. McNeill's harassment claims were timely, Ms. McNeill points to no evidence even coming close to showing actionable harassment. Instead, Ms. McNeill extensively discusses her "allegations"—which have conveniently grown more dramatic in each filing she makes—without any citation whatsoever to record evidence. [Opp. at 10]. But what matters at summary judgment is record evidence, not "allegations" or statements of lawyers in legal briefs. And here, the only evidence cited to the Court (by Head Kandy and not Ms. McNeill, no less) is Ms. McNeill's own self-serving deposition testimony in which she recounts various instances of supposed harassment based on sex, age, and religion. But, for the reasons laid out in the Motion, none of that conduct, even favorably viewing Ms. McNeill's sworn testimony and ignoring any countervailing evidence, comes close to the requisite severity or pervasiveness necessary to prevail on her claims. [ECF 471 at 17-19].

C. <u>Even if actionable retaliation occurred, there is no evidence whatsoever of pretext.</u>

Finally, as to her retaliation claim, Ms. McNeill suggests that Head Kandy's legitimate reasons for her termination were false and pretextual. [Opp. at 10-11]. But whether Head Kandy's

---

[9] Ms. McNeill's suggestion that the FCHR "specifically determined" her claims were "timely asserted" [Opp. at 9] is immaterial, as FCHR "findings" have no preclusive effect on the Court.

9

stated reasons for Ms. McNeill's termination turned out to be totally accurate is immaterial, and Ms. McNeill's own belief that her termination was retaliatory is insufficient to create a genuine dispute of material fact on the issue. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head. The question is whether her employers were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints … as cover for [retaliation]."). Ms. McNeill cites no other competent and admissible record evidence, much less any that actually suggests pretext.[10]

## Conclusion

For the above reasons, Head Kandy respectfully requests that the Court grant this Motion and Head Kandy's Motion to Dismiss [ECF 360], reject Ms. McNeill's arguments in the Opposition, enter judgment in favor of Head Kandy, enter a permanent injunction enjoining Ms. McNeill from violating the restrictive covenants for their specified terms, award Head Kandy its proven damages, retain jurisdiction to award Head Kandy its attorney's fees and costs, and grant such other and further relief the Court deems appropriate.

---

[10] The only evidence Ms. McNeill cites is something she calls "Ex. 1," even though there is no "Exhibit 1" to her Opposition nor to her late-filed notice of filing exhibits [ECF 510]. Ms. McNeill late-filed a declaration of Brandi Webb, attached to which are text messages purporting to be between Ms. Webb and another Head Kandy employee, which seem to relate to the purported fact for which Ms. McNeill cites "Ex. 1." The Court should not consider, and should strike, that evidence because it is untimely filed, was not previously disclosed to Head Kandy, and because Ms. McNeill never disclosed Ms. Webb as having such knowledge or facts to support Ms. McNeill's defenses. [ECF 513]. The Court also need not consider those messages because they are inadmissible hearsay within hearsay. In any event, the purported evidence amounts to screenshots of two text messages, wholly divorced from their surrounding context with no bearing on the pretext inquiry, because it does not show that the real reason for Ms. McNeill's termination was retaliation rather than because of the harm Ms. McNeill was causing to the company.

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on December 26, 2024 I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jennifer@lawfortcollins.com, jamie@lawfortcollins.com, Massey, Kelly & Priebe, PLLC, 125 S. Howes Street, Suite 1100, Fort Collins, CO 80521*, co-counsel for Defendant;*. and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

/s/ Edward C. Thompson
**ETHAN J. LOEB**
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
**EDWARD C. THOMPSON**
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
**JALEN A. LARUBBIO**
FL Bar No. 1039258
JalenL@blhtlaw.com
**CARSON A. SADRO**
FL Bar No. 1026159
CarsonS@blhtlaw.com
**BARTLETT LOEB HINDS THOMPSON & ANGELOS**
1001 Water St., Suite 475
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

***Counsel for Head Kandy LLC***