UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC,

    Plaintiff/Counterclaim Defendant,

v.                                                                 CASE NO. 23-CV-60345-JB/JMS

KAYLA MARIE MCNEILL,

    Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC,

    Third-Party Defendant.

_____/

## HEAD KANDY AND MR. FALIC'S MOTION TO STRIKE JURY DEMAND

Plaintiff/Counterclaim Defendant, Head Kandy, LLC ("**Head Kandy**") and Third-Party Defendant, Jerome Falic ("**Mr. Falic**"), move to strike Defendant/Counterclaimant/Third-Party Claimant, Kayla McNeill's ("**Ms. McNeill**") demand for jury trial in her Amended Answer, Counterclaims, Third-Party Complaint and Jury Demand [ECF 337], and in support, states:

### Introduction

Ms. McNeill executed a series of unequivocal waivers of her right to a jury trial that were conspicuously contained within the agreements between Ms. McNeill and Head Kandy that form the basis of all of the claims at issue in this action. Ms. McNeil, therefore, is not entitled to a jury on Head Kandy's claims against her nor on the nineteen claims she has attempted to assert against Head Kandy and Mr. Falic, to the extent any of her claims survive Head Kandy's pending Motions to Dismiss and Motions for Summary Judgment.

1

**Relevant Procedural and Factual Background**

In 2018, Head Kandy, LLC was formed to purchase for nearly $3,000,000.00 all the assets of Ms. McNeill's former company, Lashed Out, LLC, including its social media networking platforms, and to thereafter own and operate the "Head Kandy" brand and business. Head Kandy's purchase of the assets of Lashed Out, LLC was made pursuant to the terms of an Asset Purchase Agreement ("**APA**", here attached as **Exhibit A**). As part of the transaction set out in the APA, in addition to receiving nearly $3,000,000.00, Ms. McNeill became a high-ranking executive of Head Kandy, LLC, and entered into an Executive Employment Agreement with Head Kandy (the "**Employment Agreement**" or "**EEA**," an executed copy of which is here attached as **Exhibit B**).[1] Also as part of the transaction, Ms. McNeill became a 20% member of Head Kandy, LLC and executed and became a party to the Amended and Restated Limited Liability Company Operating Agreement of Head Kandy, LLC ("**Operating Agreement**" or "**OA**", here attached as **Exhibit C**). (the APA, Employment Agreement, and the Operating Agreement are collectively referred to herein as the "**Agreements**").

In early 2023, Head Kandy brought this action contending, among other things, that Ms. McNeill engaged in a pattern of self-dealing and competitive activity in violation of the terms of her Employment Agreement, including the violation of restrictive covenants contained therein, and in breach of her fiduciary duties to Head Kandy. [Head Kandy's operative Complaint is its Second Amended Complaint (the "**Complaint**)," ECF 187]. On November 7, 2023, the Court entered an Order Adopting Report and Recommendation, Granting Plaintiff's Expedited Motion for Preliminary Injunction, and Setting Bond whereby the Court found Ms. McNeill had violated the

---

[1] The execution of the Employment Agreement was a condition of the APA and the form of it is attached to the APA as Exhibit D.

restrictive covenants of her Employment Agreement and preliminarily enjoined her from further violations. [ECF 152].

In turn, Ms. McNeill has attempted to assert nineteen counterclaims and third-party claims against Head Kandy, and its managing member, Jerome Falic. Ms. McNeill's claims are based on alleged breaches of her Employment Agreement, the Operating Agreement, other agreements she contends exist between her and Head Kandy, and a variety of tort claims arising from sexual harassment and other discrimination she alleges she endured as an employee of Head Kandy. [Ms. McNeill's operative pleading is her Amended Answer, Counterclaims, Third-Party Complaint and Jury Demand (the "**Counterclaims**"), ECF 337].[2] Ms. McNeill has requested a jury trial on "all issues so triable."

## The Jury Waivers

By the APA, Operating Agreement, and Employment Agreement, the parties agreed and contracted to broad-sweeping jury waivers that cover the claims the parties have asserted against each other in this action. First, Section 12.4(d) of the Operating Agreement states, in all capital letters:

> TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW THAT CANNOT BE WAIVED, THE PARTIES HEREBY WAIVE, AND COVENANT THAT THEY WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT, OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING ARISING IN WHOLE OR IN PART UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE CONTEMPLATED TRANSACTIONS, WHETHER NOW EXISITING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. THE PARTIES AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED-FOR AGREEMENT AMONG THE PARTIES IRREVOCABLE TO WAIVE THEIR RIGHTS TO

---

[2] By her Counterclaims, Ms. McNeill also attempted to assert third-party claims against Jonathan Rosenbaum, which she has since dropped. [ECF 425]. Head Kandy's and Mr. Falic's Motions to Dismiss Ms. McNeill's claims against them remain pending. [ECF 360, 362].

> TRIAL BY JURY IN ANY ACTION WHATSOEVER BETWEEN OR AMONG THEM RELATING TO THIS AGREEMENT OR ANY OF THE CONTEMPLATED TRANSACTIONS, WHICH ACTION WILL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

Similarly, Section 10.15(c) of the APA states:

> [Each party] waives all right to trial by jury in any action (whether based on contract, tort or otherwise) arising out of or relating to this Agreement or the transactions contemplated hereby, or its performance under or the enforcement of this Agreement;

Finally, Section 17 of the Employment Agreement states, in all capital letters:

> TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW THAT CANNOT BE WAIVED, EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, AND COVENANTS THAT IT WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT, OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING IN WHOLE OR IN PART UNDER, RELATED TO, BASED ON OR IN CONNECTION WITH THE RESTRICTIVE COVENANTS, WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN TORT OR CONTRACT OR OTHERWISE. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR COPY OF THIS SECTION 17 WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF EACH PARTY TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

These waivers cover the transactions at issue in Head Kandy's claims against Ms. McNeill. The waivers also cover the transactions and alleged facts that give rise to Ms. McNeill's Counterclaims for: Breach of Contract, Executive Employment Agreement (Counterclaim 1); Breach of Contract, Section 8.5 of the Operating Agreement (Counterclaim 2); Breach of Contract, Loan Agreement (Counterclaim 3); Breach of Contract, Forklift Lease (Counterclaim 4); Colorado Civil Theft (Counterclaim 5); Florida Civil Theft (Counterclaim 6); Invasion of Privacy (Counterclaim 8); Invasion of Right of Publicity (Counterclaim 9); Conversion (Counterclaim 10); Unjust Enrichment (Counterclaim 11); Defamation (Counterclaim 17); Harassment/Hostile Work Environment on the basis of: Sex (Counterclaim 18), Age (Counterclaim 19), and Religion (Counterclaim 20); Sexual Harassment (Counterclaim 21); and Retaliation (Counterclaim 22). The

4

Court, therefore, should strike Ms. McNeill's jury demand as to each of Head Kandy's claims against Ms. McNeill and each of her Counterclaims.

## Argument

For a civil litigant to demand a jury, it must have the right to one under either a federal statute or the Seventh Amendment. *See* Fed. R. Civ. P. 38(a). However, "[a] party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." *Bakrac, Inc. v. Villager Franchise Systems, Inc.*, 164 Fed. App'x 820, 823 (11th Cir. 2006). To determine whether a waiver is knowing and voluntary, courts consider: "(1) the conspicuousness of the provision in the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel." *Bray v. PNC Bank, N.A.*, 196 F. Supp. 3d 1282, 1286 (M.D. Fla. July 15, 2016) (citing to *Allyn v. Western United Life Assur. Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. Dec. 10, 2004).[3]

### I. The jury waivers in the Agreements are enforceable.

Generally, unambiguous contractual jury waiver clauses are enforceable. *See, e.g., Martorella v. Deutsche Bank Nat. Tr. Co.*, 2013 WL 1136444, at *1 (S.D. Fl.a Mar. 18, 2013). Here, Ms. McNeill, and Head Kandy, LLC, unambiguously waived any right to a trial by jury for any dispute arising "under or in connection with," or "relating to" the Agreements or any of transactions "contemplated" in or by the Agreements. In *Martorella*, the Court considered a jury waiver that contained language waiving the right to a "trial by jury in any action, proceeding,

---

[3] The Eleventh Circuit has not determined whether the party seeking to enforce a jury trial waiver or the party opposing the waiver bears the burden of proving the validity of the waiver. Rather, the Eleventh Circuit looks to the five factors outlined in *Allyn*. *See Collins v. Countrywide Home Loans, Inc.*, 680 F. Supp. 2d 1287, 1295 (M.D. Fla. Jan. 5, 2010).

claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this [Agreement]." *Martorella*, 2013 WL 1136444 at, *1. That language not only mirrors the same language to which Ms. McNeill agreed in the Agreements at issue in this case, but the language agreed to by Ms. McNeill was set out in all capital letters in their own distinguished paragraphs. *See Acciard v. Whitney*, 2011 WL 4902972, at *2 (M.D. Fla. Oct. 13, 2011) (enforcing a waiver that was "identified with a bold-face heading, set forth in a separately numbered paragraph . . . and consists of unambiguous plain English.").

Further, Ms. McNeill is a well-educated entrepreneur who, by her own testimony, has successfully established two businesses. [Deposition of Kayla McNeill ("McNeill Tr.") (the cited portions of which are here attached as **Exhibit D**) at 52:14-21, 131:13-17]. Even where a party to a contract is not "particularly sophisticated" nor has any specialized experience in the field in which they are contracting, the jury waiver cannot be avoided where it is written in a way that the average person could understand. *See Collins,* 680 F. Supp. 2d at 1295. The three jury waivers agreed to by Ms. McNeill are plain on their face and warn the average person who may consider the agreement that they will "waive their rights to a trial by jury in any action whatsoever." *See e.g., id*. at 1295 (enforcing a waiver with similar language); *Bakrac* 164 F. App'x at 822 (enforcing similar language); *Allyn* 347 F. Supp. 2d at 1252 (enforcing waiver to "any jury trial in any action, proceeding, or counterclaim brought by either lender or borrower against each other.").

Ms. McNeill had the ability to negotiate through her counsel, Jennifer Schlachter, who represented her during the negotiation of the Agreements. [McNeill Tr. at 50:12-18, 63:19-25, 64:1-2]. There is nothing in the record that would indicate Ms. McNeill was forced to sign the terms of the Agreements as originally written. Indeed, Ms. McNeill testified that prior to signing the Agreements, she was able to meet with Jerome Falic in person to discuss the direction of the

6

company and their unique perspectives and experiences in the beauty business. [McNeill Tr. at 46:10-25, 47:1-18, 51:2-11]. Throughout these conversations, and through her counsel following them, Ms. McNeill had the opportunity to negotiate any portion of the Agreements as originally written or simply could have walked away if she found the terms unreasonable. *See Collins*, 680 F. Supp. 2d at 1295 (declining to accept Plaintiff's argument that they were unable to negotiate the terms of the agreement without supporting evidence in the record). Even if Ms. McNeill attempted to persuade this Court that she was negotiating with a larger, more powerful corporation than her own, that still would not be enough to relieve her of the jury waiver she consented to. "[A] term in a contract waiving a party's right to a jury trial is not unenforceable even though one party to a contract is a large corporation and the other party is simply an individual who is in need of the corporation's services." *Id*.

This waiver is not unconscionable or contrary to public policy. As demonstrated *supra*, the jury waiver language contained in the Agreements is the type of language regularly enforced by courts within the Eleventh Circuit. The language of the waiver provisions was clear and conspicuous. McNeill is a sophisticated party in her own right and even if she was not "particularly sophisticated," she was represented by counsel and the language as written can be easily understood by the average person. The Court should find that the jury waiver provisions executed by Ms. McNeill in the Agreements are valid and enforceable.

**II.     Ms. McNeill waived her right to demand a jury as to Head Kandy's claims.**

To the extent that Ms. McNeill intended for her jury demand, listed only after her own counterclaims, to apply to the claims made by Head Kandy, that demand is barred. In executing both the Operating Agreement and the Employment Agreement, Ms. McNeill took on fiduciary duties to act in Head Kandy's best interest, including duties of care and loyalty. All of Head

7

Kandy's claims assert that Ms. McNeill breached her fiduciary duty by using her position as an owner and executive of Head Kandy to act against the company's interest, making false and defamatory statements about the company, and misusing company resources for her own benefit. Ms. McNeill's duties arise out of and in connection with the Operating Agreement, which clearly states that the parties to the contract waive "any right to trial by jury" for a claim arising either "in whole or in part in connection with the [LLC Agreement] or any of its contemplated transactions." [Ex. B at § 12.4].

Additionally, in Count 1 of its Complaint, Head Kandy makes specific allegations that Ms. McNeill violated the restrictive covenants in Section 5 of the Employment Agreement. [ECF 187]. In the Employment Agreement, Ms. McNeill specifically waived her right to a jury on "any issue, claim, demand, action or cause of action arising in whole or in part under, related to, based on or in connection with the restrictive covenants." [Ex. A at § 17 of the EEA]. On its face, Count 1 addresses those exact issues the parties contracted would not be triable by a jury. For all of these reasons, the Court should strike Ms. McNeill's jury demand as to Head Kandy's claims.

### III. Ms. McNeill waived her right to a jury on her Counterclaims under the Operating Agreement.

The Operating Agreement specifically states that the parties to the contract waive "any right to trial by jury" for a claim arising either "in whole or in part in connection with the [Operating Agreement] or any of its contemplated transactions." [Ex. B at § 12.4]. The Operating Agreement clearly contemplates Ms. McNeill's role as an "Executive" employee and her Employment Agreement. The Operating Agreement defines "Executive" as "Kayla Marie McNeill" and distinguishes between her role as a Member and an Executive of Head Kandy. [*Id.* at § 1.1]. By that incorporation, the Operating Agreement contemplates any employment agreement entered with an Executive—Ms. McNeill—by outlining that a termination of her

8

employment for "cause" applies "with respect to any *Executive* [and] will have the meaning given to such term in *any applicable employment agreement*." *Id*. (emphasis supplied). This intention is further supported in Section 8.5(a) of the Operating Agreement which contemplates Head Kandy's option to repurchase "Executive Units" "subject to the other express provisions of any other agreements with the Company (*including any employment agreement*) to which an Executive may be subject." Because Ms. McNeill's counterclaims arise out of the Operating Agreement and her employment contemplated by it, Ms. McNeill waived her right to a jury under the Operating Agreement on the following claims:

**Counterclaim 1** (Breach of the Employment Agreement). The waiver contained in the Operating Agreement is broad and covers *any* action arising, in whole or in part, under or in connection with the Agreement and any of its contemplated transactions. [Ex. C at § 12.4(d)]. By the Operating Agreement's contemplation that Ms. McNeill, the defined "Executive," may enter into an employment agreement—which she did and now claims Head Kandy breached it—this jury waiver extends to the Employment Agreement that was ultimately executed by Ms. McNeill and Head Kandy, and Ms. McNeill has no right for this claim to be heard by a jury.

**Counterclaim 2** (Breach of Section 8.5 of the Operating Agreement). Ms. McNeill clearly and unambiguously waived her right to a jury trial on this claim. Section 8.5 establishes the mechanism by which Head Kandy or its Members may purchase any units previously owned by another executive upon their termination. Ms. McNeill must base this claim on the rights she alleges were conveyed to her upon the execution of the Operating Agreement. Therefore, the jury waiver applies to this allegation and Ms. McNeill has no right for it to be heard by a jury.

**Counterclaim 3** (Breach of the Loan Agreement). The waiver contained in the Operating Agreement reaches further and precludes Ms. McNeill's claim for breach of the "loan agreement"

9

from being heard by a jury.[4] Section 4.2 of the LLC Agreement provides for the ability of its Members to fund Head Kandy's ongoing operations through "intercompany advances or other credit support from the Members." Again, where Ms. McNeill claims she has made a monetary contribution by providing Head Kandy, LLC with credit support, this claim is governed by the Operating Agreement and remains subject to the jury waiver.

**Claims under the Florida Civil Rights Act** ("**FCRA**") (Counterclaim Nos. 18-22). Similar to Ms. McNeill's claim for breach of the Employment Agreement, the Operating Agreement's jury waiver extends to Ms. McNeill's claims for employment harassment and retaliation.. That is because Ms. McNeill's employment by Head Kandy "aris[es] in whole or in part under or in connection with [the Operating Agreement" and is one of the expressly "contemplated transactions" of the Operating Agreement. [OA § 12.4(d)].

Courts within the Eleventh Circuit have considered whether claims made under the FCRA are subject to a jury waiver provision. The analysis employed by these courts is the same waiver analysis employed for any other claim for which a person has a constitutional right to a jury trial. While a person may originally be entitled to a jury trial on FCRA claims, they "may waive a constitutional right to a jury trial so long as the waiver is knowing and intentional or voluntary." *Aponte v. Brown & Brown of Florida, Inc.*, 2019 WL 12536008, at *1, *5 (M.D. Fla. Feb. 21, 2019) (enforcing a jury trial waiver for claims of disability discrimination under the FCRA); *see also, e.g., Szittai v. Centurytel Service Group, LLC*, 2022 WL 2073016, at *1 (M.D. Fla. June 9, 2022) (enforcing a jury waiver provision for claims asserted under the FCRA).

---

[4] There is no evidence that the "Loan Agreement" was embodied in a signed writing. Additionally, Ms. McNeill failed to appropriately plead essential details of this claim, and others, nor has she disclosed them. Thus, these claims are the subject of Head Kandy's Motion to Dismiss. [ECF 360]. As Head Kandy understands Ms. McNeill's shotgun pleading, she has waived her right to a jury on these claims.

In Counterclaim Nos. 18-20, Ms. McNeill alleges Head Kandy "did not have any policies on harassment or discrimination or any policies on how to report offensive conduct to [Head Kandy]. [Head Kandy] did not train *employees* on proper *workplace* conduct and did not inform *employees* that they would not be retaliated against for complaining against offensive conduct." [ECF 337 at p. 77-81] [emphasis added]. In Counterclaim No. 21, Ms. McNeill continues her invocation of the claim on the basis of her status as an employee by alleging "Head Kandy did not take reasonable steps to prevent sexual harassment in its *workplace*." [*Id*. at p. 83] [emphasis added]. Finally, in Counterclaim No. 22, Ms. McNeill alleges she suffered adverse "employment action" for making a discrimination complaint. [*Id*. at p. 85]. In each of these FCRA claims, Ms. McNeill bases her allegations on her status as an employee of Head Kandy, which status arose from, and was contemplated by, the Operating Agreement . For the above-stated reasons, Ms. McNeill waived her right to a jury trial for any actions arising out of or connection with her contemplated employment as a Head Kandy "Executive."

**Fiduciary Duty**.  Counterclaim Nos. 1, 4, 5, 6, 10, 11, and 17 are subject to the jury waiver provision of the Operating Agreement for Ms. McNeill's breach of her fiduciary duty.  The fiduciary duty imposed on Ms. McNeill cannot be segregated from the counterclaims asserted by Ms. McNeill because they form the basis of the relationship between Head Kandy and Ms. McNeill, and therefore, Ms. McNeill's standing to bring suit. Further, one of Head Kandy's defenses to these claims is that Ms. McNeill breached her fiduciary duties arising from the Operating Agreement

> <u>Counterclaim 1 (Breach of the Employment Agreement)</u>.  Ms. McNeill was not only an executive-level employee of Head Kandy, pursuant to the Operating Agreement she was a 20% member of it and had attendant fiduciary duties to Head

11

Kandy. Indeed, Ms. McNeill's allegation that she was "falsely terminat[ed] 'for cause'" by Head Kandy is refuted, in part, *because* she breached her fiduciary duty to the company.

Counterclaim 4 (Breach of Contract, Forklift Lease). While Ms. McNeill's counterclaim seems to suggest a formal contract was entered with respect to a forklift she claims she personally owned and leased to Head Kandy, no such agreement was ever reduced to a writing. Ms. McNeill had a fiduciary duty to act in accordance with Head Kandy's best interests. Ms. McNeill abused her authority and received monthly payments from Head Kandy which totaled nearly four times the value of the forklift itself. This claim lies "in connection" with the terms of Ms. McNeill's duties to Head Kandy under the Operating Agreement and is subject to its jury waiver provision.

Counterclaims 5, 6, 10, & 11 (Civil Theft (CO & FL), Conversion, & Unjust Enrichment). Although Ms. McNeill not only attempts to duplicate under the laws of two jurisdictions her claims for civil theft of her social media, her forklift, and her ownership interest in Head Kandy, she also impermissibly combines claims for four specific pieces of "property" into one. Head Kandy addresses the basis for the waiver of a jury with respect to the alleged forklift lease *supra*, and the social media accounts and content *infra* in Section IV. The remaining "property,"—Ms. McNeill's membership interest in Head Kandy, LLC—arises directly out of the Operating Agreement which created the interest she claims has been stolen. Thus,

12

Ms. McNeill's claims for civil theft of this alleged "property" are subject to the jury waiver of the Operating Agreement.

Counterclaim 17 (Defamation): In her claim for Defamation, Ms. McNeill makes specific reference to the types of statements she alleges Head Kandy made including, "business practices," "embezzling company funds," "unauthorized use of a company credit card," and "mishandling of corporate records." The Operating Agreement mandates the general business practices of Head Kandy, and the use, handling, and distribution of company funds. Further, the jury waiver in the Employment Agreement incorporates the "mishandling of corporate records" in § 6(a). The claim for Defamation made by Ms. McNeill directly incorporates language covered by the waivers in the Agreements and should not be submitted to a jury.

**IV.    By the APA, Ms. McNeill waived her right to a jury on her claims concerning the "Social Media Accounts" and her FCRA claims.**

The APA includes a jury waiver for "any action (whether based on contract, tort or otherwise) arising out of or relating to this Agreement or the transactions contemplated." (Ex. A at §10.15(c). The APA governs the purchase of certain assets, including intellectual property, owned by Ms. McNeill through her former corporation, Lashed Out, LLC.  By the APA, Head Kandy purchased all of the intellectual property owned by Lashed Out, LLC or any intellectual property "otherwise used by the Seller in the Business." APA at § 1.1(b).  This property included not only the website "www.headkandypro.com", but also any content or social media handles used to promote the business.

Ms. McNeill makes several counterclaims alleging that Head Kandy improperly obtained and/or used Ms. McNeill's "Personal Social Media Accounts" and "Social Media Content." [ECF

13

337 at Counterclaim Nos. 6, 8, 9, 10, and 11]. Further, Ms. McNeill makes two claims alleging that Head Kandy appropriated her likeliness and invaded her privacy and right of publicity by using Ms. McNeill's name and likeness. [ECF 337 at Counterclaim Nos. 8 and 9]. These social media accounts and content—including branding of Head Kandy products which may have displayed Ms. McNeill's likeness—were properly obtained by Head Kandy, LLC through the APA.[5] Thus, any claims Ms. McNeill makes concerning the accounts and content are subject to that Agreement and its jury waiver.

Moreover, the Employment Agreement is incorporated by attachment as Exhibit D to the APA which contains the even broader jury waiver for "any and all" claims arising out of the APA. Execution of the Employment Agreement was a term of the APA and is, therefore, a "transaction[] contemplated" by the APA. [APA at § 10.15(c)]. Thus, the broad jury waiver contained within the APA for any actions arising from or relating to the APA or the transactions contemplated" by the APA applies to Ms. McNeill's employment claims. As stated previously, Ms. McNeill makes her claims under the FCRA by virtue of her status as an employee and her belief in Head Kandy's deficient workplace procedures. Therefore, Ms. McNeill has waived her right to a jury trial for her claims under the FCRA.

V.      **Ms. McNeill waived her right to a jury under the Employment Agreement.**

Ms. McNeill's executive employment role—in addition to being an owner of the company—was governed by the Employment Agreement. The Employment Agreement contained a third jury waiver for any claims that relate to or occur in connection with Ms. McNeill's breach

---

[5] In Counterclaim Nos. 8 and 9, Ms. McNeill failed to appropriately plead essential details of this claim, and others, nor has she disclosed them. Thus, these claims are the subject of Head Kandy's Motion to Dismiss. [ECF 360]. To the extent Head Kandy understands Ms. McNeill's shotgun pleading, she has waived her right to a jury on these claims.

or performance of the restrictive covenants contained in Section 5 of the Employment Agreement or the maintenance of trade secrets in Section 6.  In Counterclaim 1 (Breach of Contract, Employment Agreement), Ms. McNeill's allegations connect directly to the restrictive covenants. Ms. McNeill alleges that Head Kandy failed to timely determine or pay Ms. McNeill's bonuses and outstanding salary, demoted, and subsequently terminated her, failed to reimburse her for business expenses, and induced her breach of the covenants. [ECF 337 at p. 64-65]. By its claims, Head Kandy alleges Ms. McNeill's several violations of the restrictive covenants and her fiduciary duties to the company, formed the basis of Head Kandy's determination to terminate Ms. McNeill's employment and whether she was entitled to any further compensation.  [ECF 187 at ¶¶ 17-35]. The basis for Head Kandy's determination, and thereby the defense to Ms. McNeill's allegations, come directly from the Employment Agreement.  It would not be possible to untangle any portion of Counterclaim 1 from the Employment Agreement and therefore, this allegation is subject to the jury waiver.[6]

## **Conclusion**

For the above reasons, Head Kandy and Mr. Falic respectfully request that the Court strike Ms. McNeill's demand for a jury trial as to all of Head Kandy's claims and Ms. McNeill's Counterclaims and order such other and further relief the Court deems appropriate.

---

[6] Even if the Court found that portions of Counterclaim 1 are not controlled by the restrictive covenants and subject to the jury waiver under the Employment Agreement, Ms. McNeill never shed her fiduciary duty—created by the Operating Agreement—to Head Kandy.  Ms. McNeill's breach of her fiduciary duty forms the basis of Head Kandy's further defenses to Counterclaim 1 and is subject to the jury waiver in the Operating Agreement.

**CERTIFICATE OF CONFERRAL**

I HEREBY CERTIFY that on November 27, 2024, counsel for Head Kandy conferred via telephone conference with counsel for Ms. McNeill, and counsel for Ms. McNeill advised that Ms. McNeill opposes the relief requested herein.

/s/ *Edward Colin Thompson*
ETHAN J. LOEB
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
EDWARD COLIN THOMPSON
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
JALEN A. LARUBBIO
FL Bar No. 1039258
JalenL@blhtlaw.com
CARSON A. SADRO
FL Bar No. 1026159
carsons@blhtlaw.com
kerrir@blhtlaw.com
**BARTLETT LOEB HINDS THOMPSON & ANGELOS**
100 N. Tampa Street, Suite 2050
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Plaintiff Head Kandy LLC and Jerome Falic*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 27, 2024, I served the foregoing via electronic mail to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jennifer@lawfortcollins.com, jamie@lawfortcollins.com, Massey, Kelly & Priebe, PLLC, 125 S. Howes Street, Suite 1100, Fort Collins, CO 80521, *co-counsel for Defendant;* and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

*/s/ Edward Colin Thompson*