UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC,

    Plaintiff/Counterclaim Defendant,

v.                                           CASE NO. 23-CV-60345-JB/JMS

KAYLA MARIE MCNEILL,

    Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC,

    Third-Party Defendant.

_____/

**HEAD KANDY AND MR. FALIC'S OPPOSITION TO MCNEILL'S
MOTION IN LIMINE PURSUANT TO FEDERAL RULE OF EVIDENCE 408**

Plaintiff/Counterclaim Defendant, Head Kandy, LLC ("**Head Kandy**") and Third-Party Defendant, Jerome Falic ("**Mr. Falic**") oppose Defendant/Counterclaimant/Third-Party Claimant Kayla Marie McNeill's ("**Ms. McNeill**") Motion in Limine Pursuant to Federal Rule of Evidence 408 (the "**Motion**") [ECF 532],[1] and in support state:

**Introduction and Relevant Background**

In the December 2, 2022, e-mail that is the subject of Ms. McNeill's Motion, Ms. McNeill admitted to Head Kandy's outside counsel and Mr. Falic that she engaged in "unethical" self-dealing in breach of her fiduciary duty to Head Kandy, including hiring and causing Head Kandy

---

[1] Ms. McNeill, in her ongoing disregard of this Court's rules and procedures, improperly filed the Motion under seal pursuant to the Court's June 26, 2023 Order granting Head Kandy's request for leave to file certain specified exhibits to the preliminary injunction proceeding under seal [ECF 71]. Because no Order actually permits either the Motion or this Opposition to be filed under seal, however, Head Kandy and Mr. Falic file this Opposition on the public docket in accordance with the Court's ordinary rules and procedures.

{00090238:2}

to pay individuals who performed personal services for Ms. McNeill and her family and friends. [ECF 446-2 at 1-2]. By her Motion, Ms. McNeill argues the e-mail was a "settlement communication" and should be excluded as such. The basis for her argument is that Ms. McNeill, during her deposition, opportunely testified that "she made such comments in hopes that [Head Kandy and Mr. Falic] would settle with her and end the dispute." [Mot. at 1-2].[2] The law, however, does not allow a party to transfigure any statement—particularly one, as here, that is clearly an admission against interest and central to Head Kandy's case—into an inadmissible settlement communication simply by claiming after the fact that she had hoped the statement would improve relations between the parties.

Moreover, the e-mail at issue in the Motion was sent by Ms. McNeill nearly two months prior to her termination and more than two and a half months before this litigation began. The e-mail contains no offer to compromise on any disputed claim, or even any indication that there was a genuine dispute at all. Rather, the e-mail in question was sent and received as part of the back-and-forth correspondence between Ms. McNeill and Head Kandy during Ms. McNeill's employment and after Head Kandy uncovered Ms. McNeill's self-dealing, confronted her about her breaches, and was in the process of getting to the bottom of what had happened and formulating the company's business plan moving forward. The e-mail contains only Ms. McNeill's admission of guilt, her attempts to explain and justify her wrongful actions, and her (now known to be empty)

---

[2] Ms. McNeill made that post hoc claim in a portion of her deposition testimony in which she conveniently attempts to walk back her characterization of her conduct as "unethical." [ECF 446-1 at 121:22-123:12]. Realizing her efforts were futile, Ms. McNeill eventually resorted—despite her immediately preceding admission that "I did write that e-mail" and "I wrote it, yes" [ECF 446-1 at 121:25, 122:25] and accompanying testimony about why she wrote the e-mail—to claiming that she was unsure whether she authored that e-mail at all. [ECF 446-1 at 123:13-20]. Ms. McNeill's testimony attempting to avoid her own admissions contained within the e-mail in question cannot be believed, and certainly provide no basis for exclusion of that evidence from trial.

apology for her admittedly unethical conduct; it does not contain, however, any offer to do anything to compensate Head Kandy for the damage caused by what she admits in the e-mail was action by her that "wasn't ethical from a business standpoint" and that her excuse "does not justify it." [ECF 446-2 at 1-2].

Because the e-mail at issue is not a settlement communication, the Court should reject Ms. McNeill's arguments and deny the Motion in its entirety.

## Argument

Federal Rule of Evidence 408 provides that evidence of (1) "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim" or (2) "conduct or a statement made during compromise negotiations about the claim" is inadmissible "to prove or disprove the validity or amount of a disputed claim." Ms. McNeill in her Motion relies solely on (and also misquotes) the second prong. [Mot. at 1].

The party seeking exclusion (here, Ms. McNeill) has the burden to show exclusion is warranted. *See Peklun v. Tierra Del Mar Condo. Ass'n, Inc.*, 2016 WL 4250693, at *2 (S.D. Fla. June 1, 2016). To determine whether a communication falls within the ambit of Rule 408, the Court must consider "whether the statements or conduct were intended to be part of the negotiations toward compromise." *Blu-J, Inc. v. Kemper C.P.A. Grp.*, 916 F.2d 637, 642 (11th Cir. 1990) (quotation omitted). That test requires the Court to "look at the totality of the circumstances, carefully reviewing the contents of the [communication] and the timing of its delivery." *Deangelis v. Strayer Elec., LLC*, 2017 WL 3614273, at *3 (M.D. Fla. Aug. 22, 2017) (quotation omitted).

Here, the e-mail at issue on its face is not a settlement communication. Rather, Ms. McNeill sent the e-mail in response to Head Kandy's e-mail concerning its "plan moving forward,"

which included Head Kandy's termination of employees Ms. McNeill had hired who were serving no legitimate business purpose and instead were providing only personal services for Ms. McNeill and announcement to Head Kandy's remaining employees of Ms. McNeill's role in the company going forward.  [ECF 446-2 at 3-4].  Ms. McNeill then sent the e-mail in question, in her own words, "to explain" her reasons for hiring those individuals.  [ECF 446-2 at 1].  Ms. McNeill concluded the e-mail:

> I understand fully this doesn't look good, I just need you to know where my heart was in this.  I also understand that does not justify it.  It wasn't to be malicious or sneaky.  I am aware it wasn't ethical from a business standpoint but for me it's hard to not have a serving heart.
>
> … I just felt good that in a small way we were a blessing to a few people.  I am sorry and I understand the reason for their termination.

[ECF 446-2 at 2].  The e-mail is not part of a settlement communication or an offer to compromise a disputed claim.  Indeed, neither in the e-mail itself nor any time thereafter did Head Kandy demand or Ms. McNeill offer anything at all to make up for or compensate Head Kandy for any claim regarding Ms. McNeill causing Head Kandy to pay people to perform personal services for her.  Instead, the e-mail is simply an acknowledgement by Ms. McNeill to her employer and co-owners of the wrongful conduct in which she engaged to Head Kandy's detriment—along with assorted excuses and justifications—in the hope that the parties' business relationship would not sour further after the discovery and termination of individuals Ms. McNeill had hired solely or primarily to perform personal services for herself and her family.  That type of communication, on its face, does not fall within the protections of Rule 408.  *See Foster-Thompson, LLC v. Thompson*, 2006 WL 269979, at *5 (M.D. Fla. Feb. 3, 2006) (letters that "[did] not appear to fall under the scope of settlement or compromise negotiations," but rather "could more appropriately be

described as a catalyst for the instigation of the underlying litigation," were not excluded under Rule 408).

Moreover, "the undisputed acquiescence to a claim of liability"—as occurred in Ms. McNeill's e-mail—does not qualify as a "compromise" under Rule 408. *Bancor Grp. Inc. v. Rodriguez*, 2023 WL 6310233, at *16 (S.D. Fla. June 13, 2023). That is, when there is no dispute over liability at the time the communication is made, there is no "disputed claim" within the meaning of the rule. *See Taxinet Corp. v. Leon*, 2020 WL 4501735, at *1 (S.D. Fla. May 4, 2020) (denying motion in limine because the objecting party "has not demonstrated that the communications fall within Rule 408 by showing that at the time of the writings, there was an underlying dispute or claim"); *T.T. Int'l Co. v. BMP Int'l, Inc.*, 2022 WL 4125055, at *2 (M.D. Fla. Aug. 25, 2022) (e-mails evincing no dispute as to liability and arguably amounting only to an accounting or reconciliation of the harm admittedly caused by one party to the other were not "clearly inadmissible" as settlement communications); *Kancor Americas, Inc. v. ATC Ingredients, Inc.*, 2016 WL 11674071, at *2-3 (E.D. Va. Mar. 3, 2016) (various e-mails were not excluded when they "[did] not pertain to any offer or negotiations to settle any dispute," but rather, "concern[ed] reconciliation activity and a list of certain charges" and "la[id] out certain conditions" without any "evidence of a dispute between the parties at this point in time"); *see also* Wright & Miller, 23 Fed. Prac. & Proc. Evid. § 5303 (2d ed.) ("[A] mere pretense of a dispute should not suffice.") (citing, inter alia, *Bank of Am., N.A. v. Sea-Ya Enters.*, 872 F. Supp. 2d 359, 364 (D. Del. 2012) (letter in which one party acknowledged another party's rights, which it later contested in litigation, was not a protected settlement communication because it, in substance, did not actually "express[] actual dispute or disagreement over the underlying claim," but rather read as "more of a plea for mercy than a protest of the [opposing party's] right[s]")). Here, the e-mail Ms. McNeill seeks to exclude

is even further removed from a "settlement communication" than those at issue in the above cited cases in that neither the e-mail nor its surrounding communications contain a claim by Head Kandy, and an offer by Ms. McNeill to compensate, for any of the damage Head Kandy suffered as a result of Ms. McNeill (admittedly) causing Head Kandy to pay employees to perform personal services for Ms. McNeill, or even a request or offer for a reconciliation or accounting of those damages.

In fact, the only evidence at all that Ms. McNeill's e-mail was intended as part of compromise negotiations is Ms. McNeill's own post hoc, self-serving testimony. But in truth, Ms. McNeill's testimony (which she provided before trying to disclaim any recollection of having written the e-mail in the first place) was only that she hoped that confessing to her wrongdoing would get Head Kandy off her back. [ECF 446-1 at 122:17-123:2 (Ms. McNeill admitting she wrote the e-mail and espousing her belief that "Bryan Feldman had g[i]ven [her] permission" to hire employees to perform personal services, explaining that she "was kind of waiting for Bryan Feldman to step up at some point and help me out" amidst Head Kandy's ongoing inquiry into her apparent wrongful conduct, and admitting that, given the ongoing inquiry and perceived lack of support from Mr. Feldman, Ms. McNeill "thought, maybe if I apologize, this will end")]. In other words, Ms. McNeill claims that she sent the e-mail in question hoping that Head Kandy would not engage in any further investigation of her conduct—which it did, eventually discovering additional self-dealing that, combined with the unethical conduct described in the e-mail, ultimately led to Ms. McNeill termination.

Ms. McNeill's own desire or now-alleged (but never before stated) reason for sending the e-mail, however, does not make the e-mail a settlement communication for purposes of Rule 408. Indeed, if a unilateral post hoc assertion that a communication was intended to potentially lead to

and make easier a possible future settlement or compromise was alone sufficient to mandate exclusion of that communication, any party could force any communication they previously made to be excluded at will. *See Taxinet Corp.*, 2020 WL 4501735, at *1 ("Though [Defendant] now characterizes the writings as evidence of an offer to compromise, a characterization Plaintiff disputes, the writings themselves do not evidence the existence of a dispute or an offer to compromise and no other evidence was advanced to support [Defendant's] argument."); *Deangelis*, 2017 WL 3614273, at *3 (explaining that one party's characterization of the communication is "not dispositive" and only crediting it because it was "consistent with the tone of the letters exchanged between both parties"); *see also Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987) ("Rule 408 should not be used to bar relevant evidence concerning the circumstances of the termination itself simply because one party calls its communication with the other party a 'settlement offer.'"); Wright & Miller, 23 Fed. Prac. & Proc. Evid. § 5310 (2d ed.) (observing difficulties in administering Rule 408, including that "[p]resumably, the party fighting for exclusion will always be happy to testify that she thought they were negotiating and her opponent will be just as eager to claim the contrary"). Here, the e-mail in question was not a protected settlement communication, and Ms. McNeill's after-the-fact, self-serving testimony does not negate that reality.

Accordingly, the e-mail in question is not a protected settlement communication, and the Court should deny the Motion in its entirety.

## Conclusion

For the above reasons, Head Kandy and Mr. Falic respectfully request that the Court deny the Motion and grant such other and further relief the Court deems appropriate.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 27, 2025, I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E. Burgess, Esquire, laura@leburgesslaw.com, L.E. Burgess, P.A., 5966 S. Dixie Highway, Suite 300, Miami, Florida 33143, *Counsel for Defendant*; Antonio L. Converse, Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire, jennifer@lawfortcollins.com, jamie@lawfortcollins.com, Massey, Kelly & Priebe, PLLC, 125 S. Howes Street, Suite 1100, Fort Collins, CO 80521, *co-counsel for Defendant;* and Jed Ferdinand, Esquire, jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

*/s/ Edward C. Thompson*
**ETHAN J. LOEB**
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
**EDWARD C. THOMPSON**
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
**JALEN A. LARUBBIO**
FL Bar No. 1039258
JalenL@blhtlaw.com
**CARSON A. SADRO**
FL Bar No. 1026159
CarsonS@blhtlaw.com
**BARTLETT LOEB HINDS THOMPSON & ANGELOS**
1001 Water St., Suite 475
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

*Counsel for Head Kandy LLC and Jerome Falic*