## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC,

      Plaintiff/Counterclaim Defendant,

v.                                   CASE NO. 23-CV-60345-JB/JMS

KAYLA MARIE MCNEILL,

      Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC,

      Third-Party Defendant.

_____/

### HEAD KANDY'S OPPOSITION TO MCNEILL'S
### MOTION TO STRIKE PLAINTIFF HEAD KANDY, LLC'S,
### LATE DISCLOSURES SERVED AS LATE AS NOVEMBER 26, 2024

Plaintiff/Counterclaim Defendant, Head Kandy, LLC ("**Head Kandy**") opposes Defendant/Counterclaimant/Third-Party Claimant Kayla Marie McNeill's ("**Ms. McNeill**") Motion to Strike Plaintiff, Head Kandy, LLC's, Late Disclosures Served as Late as November 26, 2024 (the "**Motion**") [ECF 534], and in support states:

### Introduction

By her Motion, Ms. McNeill belatedly complains about Head Kandy's various Supplemental Rule 26 Disclosures served at least two months, and as many as five months, ago. While she vaguely and broadly suggests that she was somehow deprived of some nebulous discovery by the timing and content of Head Kandy's disclosures, Ms. McNeill does not and cannot explain what additional discovery she would have hoped to accomplish, never actually attempted to do or seek leave to do any such discovery, and instead waited until the eve of trial to even raise this purported issue to the Court.  In any event, even a cursory review of the disclosures about

which Ms. McNeill now complains reveals that they were reasonable and timely and in any event consisted of information Ms. McNeill had long possessed through other avenues of discovery, merely reorganized in an attempt to facilitate the late-taken deposition of Head Kandy's corporate representative.[1]  In fact, Head Kandy's frequent supplemental disclosures as discovery progressed and the case evolved stand in stark contrast to Ms. McNeill's failure to supplement her (facially deficient) initial disclosures at all since they were served on March 1, 2024—six and a half months after Head Kandy served its initial disclosures.

At bottom, Ms. McNeill has waived the arguments she makes in this Motion by failing to assert them over the intervening months since the complained-of supplemental disclosures were served, and even if not waived, Ms. McNeill's arguments are without substantive merit.  For those reasons, and as explained in greater detail herein, the Court should deny the Motion in its entirety.

**Argument**

Fed. R. Civ. P. 26(e)(1)(A) requires supplementation of a party's initial disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  There is no universal rule governing the timeliness of a supplemental disclosure, but rather, "timeliness depends on the facts and circumstances of each case."  *L.A. v. Riverside Mil. Acad. Found., Inc.*, 2021 WL 8998914, at *3 (N.D. Ga. Sept. 30, 2021); *accord Howard v. Hartford Life & Accident Ins. Co.*,

---

[1] Ms. McNeill presents legal argument concerning only Head Kandy's Seventh, Eighth, and Ninth Supplemental Rule 26 Disclosures.  Consequently, Head Kandy does not respond to Ms. McNeill's baseless jabs contained within Ms. McNeill's "Preliminary Statement" that are related to other of Head Kandy's supplemental disclosures.

2011 WL 13295386, at *4 (M.D. Fla. Dec. 16, 2011) (explaining that there is no "bright-line rule" as to timeliness).

Even if a disclosure is found to be untimely under Rule 26, however, the information untimely disclosed may still be used at trial if "the failure [to provide such information earlier] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Relevant factors include "the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009).

Because Ms. McNeill waived the arguments in her Motion by her delay in asserting them, and because Head Kandy's disclosures were timely, or in the alternative, any tardiness in Head Kandy's disclosures was substantially justified or harmless, the Motion should be denied.

**I.      Ms. McNeill has waived her arguments concerning the sufficiency of Head Kandy's Rule 26 Disclosures.**

As an initial (and dispositive) matter, even if Head Kandy's Rule 26 Supplemental Disclosures were somehow deficient (they were not), Ms. McNeill's complaints, and particularly her request that Head Kandy be precluded under Rule 37 from presenting certain evidence and arguments at trial, come far too late in this case and therefore have been waived.

This Court and others have explained that a party waives arguments for exclusion of evidence based on the adequacy of the opposing party's Rule 26 disclosures when the moving party unnecessarily delays—particularly until the figurative eve of trial, when exclusion is the only feasible remedy—in raising such arguments for the first time. *See XTEC, Inc. v. Cardsmart Techs., Inc.*, 2014 WL 10250973, at *4 (S.D. Fla. Dec. 2, 2014) ("Defendants have not cited case law supporting the theory that a defendant is allowed to lull a plaintiff into thinking it is fully compliant with the rules, only to reveal the issue at a time where exclusion is the only remedy—essentially

disposing of an entire case after the time to make dispositive motions.  Accordingly, to the extent that Defendants now seek to raise the wholesale failure to disclose under Rule 26 outside of the discovery period, this Court finds that such argument has been waived."); *Wyeth v. Apotex, Inc.*, 2009 WL 8626786, at *7 (S.D. Fla. Oct. 6, 2009) ("[T]his motion in limine is an untimely Rule 37 motion disguised as a motion in limine under Rule 702. … The failure to timely raise the matter at the appropriate time waives any right that [the movant] may have now to Rule 37 sanctions, such as the exclusion of the evidence."); *United States v. Stinson*, 2016 WL 8488241, at *4-5 (M.D. Fla. Nov. 22, 2016) (holding that the defendant "waived" his Rule 37 motion made as a motion in limine on the eve of trial because he "failed to utilize an available mechanism to cure the [plaintiff's] disclosure violation—a motion to compel" earlier in the case); *Celler L. Org., Inc. v. Sony Pictures Television Inc.*, 2014 WL 12580516, at *5 (S.D. Fla. Apr. 12, 2014) ("Celler had ample time to raise this discovery dispute during the course of discovery, but failed to do so until the eve of trial.  Accordingly, the Court views Celler's motion [in limine] not only as meritless, but also untimely.").

Here, rather than waiting to file her Motion at the (extended, by Ms. McNeill's request) pretrial motion deadline mere weeks before trial, Ms. McNeill could have raised her objections to Head Kandy's Seventh and Eighth Supplemental Disclosures (served August 15 and September 3, 2024, respectively) and/or sought additional time for discovery on the basis of those supplemental disclosures prior to the close of fact discovery (September 10, 2024), or at any time in the five months between when those disclosures were served on Ms. McNeill and when Ms. McNeill filed this Motion.  As to Head Kandy's Ninth Supplemental Disclosures (served on November 26, 2024 in advance of the rescheduled deposition of Head Kandy's corporate representative), Ms. McNeill could have voiced any objections and brought the issue to the Court's attention immediately, rather

than waiting an additional seven weeks until dispositive motions are fully briefed, trial is imminent, and exclusion would be the only practical remedy. Therefore, as to all of the supplemental disclosures of which she now complains, Ms. McNeill has waived her arguments by failing to raise them at the appropriate time. Thus, the Motion should be denied in its entirety.

## II.   Head Kandy's Seventh Supplemental Disclosures were not untimely, and even if they were, Ms. McNeill has suffered no harm from the timing of that disclosure.

Ms. McNeill contends that Head Kandy's Seventh Supplemental Disclosure should be stricken, and Head Kandy's outside counsel who handled Ms. McNeill's termination on behalf of Head Kandy, Jed Ferdinand ("**Mr. Ferdinand**"), should be precluded from testifying because (Ms. McNeill claims) Head Kandy's disclosure of Mr. Ferdinand was untimely. Ms. McNeill's argument is incorrect, and moreover, even if the disclosure was somehow tardy (it was not), the timing of the disclosure caused no harm whatsoever to Ms. McNeill.

First, Head Kandy disclosed Mr. Ferdinand on August 15, 2024, as a witness with

[k]nowledge regarding the December 13, 2022, meeting in New York City between Ms. and Mr. McNeill, Mr. Falic and Mr. Rosenbaum, regarding correspondence he sent to Ms. McNeill regarding breaches of her Executive Employment Agreement and breaches of fiduciary duties and Ms. McNeill's response, and regarding the non-existence of any accusations by Ms. McNeill of sexual harassment prior to the preliminary injunction hearing held in this action.

[ECF 537-7 at 1-2].[2] That disclosure was not untimely, because it was served only two months after Ms. McNeill filed her initial pleading injecting into the case new claims and defenses [ECF 268 (filed June 10, 2024)],[3] as briefing on motions to dismiss Ms. McNeill's initial pleading was still ongoing, and as it became clear in the depositions of Ms. McNeill (July 12, 2024), Dustin

---

[2] Ms. McNeill misquotes this disclosure in her Motion. [Mot. at 15]. Ms. McNeill also untimely filed the exhibits to her Motion. [ECF 537].

[3] In fact, Head Kandy's Seventh Supplemental Disclosure was filed two weeks ***before*** Ms. McNeill's currently operative pleading [ECF 337], which formally asserted sexual harassment claims for the first time.

McNeill (July 16, 2024), Bryan Feldman (July 31, 2024), Jonathan Rosenbaum (August 7, 2024), and Jerome Falic (August 15, 2024) that the circumstances of the December 13, 2022 meeting, the correspondence between the parties leading up to Ms. McNeill's termination that occurred through Mr. Ferdinand, and the lack of any mention of sexual harassment at any of those points were going to become crucial factual issues in this case such that Mr. Ferdinand's testimony may be necessary. *See Jett v. Toro*, 2023 WL 11761056, at *2 (N.D. Fla. Sept. 21, 2023) ("[A]s case preparation continues, a party must supplement its disclosures ***when it determines that it may use a witness or document that it did not previously intend to use***.") (quoting Advisory Committee Notes to 2000 Amendment to Fed. R. Civ. P. 26(e)) (emphasis supplied).  Moreover, the disclosure was served with sufficient time remaining in discovery for Ms. McNeill to depose Mr. Ferdinand, which she did not even attempt to do.  *See Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 2021 WL 12310887, at *4 (S.D. Fla. Dec. 6, 2021) (finding disclosure timely when plaintiff disclosed witness two weeks before the agreed upon deposition deadline:  "Defendant had nearly two weeks—well in excess of the seven days required under the Local Rule—in which it could have set the deposition, but it elected not to do so.").

Additionally, even if Head Kandy's Seventh Supplemental Disclosure was untimely, the record (and indeed, Ms. McNeill's own Motion) makes clear that she suffered no harm or prejudice whatsoever by the timing of that disclosure.  That is, while conclusorily claiming that Head Kandy's disclosure of Mr. Ferdinand was an "unfair surprise," even Ms. McNeill admits that she has known of Mr. Ferdinand's involvement "since the case's inception" because of other filings (and because of her personal participation in the same underlying factual events involving Mr. Ferdinand).  [Mot. at 15].  Indeed, Mr. Ferdinand's name is all over the document discovery in this case, including on letters he sent to Ms. McNeill and her counsel that are attached to and referenced

within both iterations of Head Kandy's pleading [ECF Nos. 1, 25, 187], each served long before

the close of discovery.  In fact, though Mr. Ferdinand is not mentioned by name, Ms. McNeill's

**own** operative pleading is replete with references to her pre-termination communications with

"[Head Kandy's] outside legal counsel." [ECF 337 at ¶¶ A.103, A.106, B.87, B.195].  Ms. McNeill

even discussed Mr. Ferdinand's involvement at her own July 12, 2024, deposition [*see, e.g.*, ECF

446-1 at 26:4-6], to which various communications between Mr. Ferdinand and herself exchanged

prior to her termination were also exhibits.  All of these facts show a total lack of harm or unfair

surprise to Ms. McNeill.  *See, e.g.*, *Leeth v. Tyson Foods, Inc.*, 2008 WL 11343406, at *2 (N.D.

Ala. Dec. 30, 2008) (late disclosure of witnesses was harmless when opposing party already knew

of the witnesses either through discovery or through the events underlying the case, and therefore

could not have been unfairly surprised by their disclosure); *York v. Wells Fargo Bank, Nat'l Ass'n,*

*Inc.*, 2012 WL 3308988, at *1-2 (N.D. Ga. Aug. 10, 2012) (late disclosure of witness was harmless

when, inter alia, that witness had previously been identified in the complaint); *Cardinal Health,*

*Inc. v. Delivery Specialists, Inc.*, 2011 WL 845915, at *5 (S.D. Fla. Mar. 8, 2011) (late disclosure

of witness was harmless when his name "was listed multiple times" in crucial documents produced

earlier in discovery); *Matrix Health Grp. v. Sowersby*, 2019 WL 4929917, at *4 (S.D. Fla. Oct. 7,

2019) (late disclosure of witness was harmless when the witness had been repeatedly referenced

in depositions, including the movant's own deposition).[4]

Finally, Ms. McNeill's assertion that the timing of Head Kandy's Seventh Supplemental

Disclosure precluded her from obtaining discovery is unavailing, both because (as discussed with

---

[4] *See also* Advisory Committee Notes to 1993 Amendment to Fed. R. Civ. P. 26(e) ("There is …
no obligation to provide supplemental or corrective information that has been otherwise made
known to the parties in writing or during the discovery process, as when a witness not previously
disclosed is identified during the taking of a deposition.").

respect to Head Kandy's waiver arguments above) Ms. McNeill failed to even attempt to obtain such discovery (which she cannot identify or explain) or an extension of time to take such discovery, and because the timing of Head Kandy's disclosure (26 days before the close of fact discovery) still afforded Ms. McNeill sufficient time to depose Mr. Ferdinand (which she chose not to do). *See Hosea v. Langley*, 2006 WL 314454, at *5-6 (S.D. Ala. Feb. 8, 2006) (late disclosure of witnesses less than three weeks prior to the discovery deadline was harmless because, inter alia, "defendants failed to avail themselves of procedural and investigative tools reasonably available to them to arrange for [the witnesses'] deposition[s] prior to the close of discovery despite ample time for them to do so"); *Burden v. City of Opa Locka*, 2012 WL 4764592, at *7 (S.D. Fla. Oct. 7, 2012) (declining to exclude witnesses when plaintiff knew of them before the close of discovery and "[could not] credibly claim that they did not have an opportunity to depose these individuals"); *see also Havana Docks*, 2021 WL 12310887, at *4 (finding disclosure timely and not reaching harm issue when witness was disclosed two weeks prior to deposition deadline).[5]

For these reasons, the Court should deny the Motion, and should not strike Head Kandy's Seventh Supplemental Rule 26 Disclosures or exclude Mr. Ferdinand's testimony from trial.

## III. Head Kandy's Eighth Supplemental Disclosures were not untimely.

Next, Ms. McNeill contends that Head Kandy's Eighth Supplemental Disclosure should be stricken inasmuch as witness Harmony Hartranft ("**Ms. Hartranft**"), who was newly identified as

---

[5] Moreover, Ms. McNeill can hardly complain about receiving documents and information too near the discovery deadline, because she promulgated her only discovery requests such that responses would not be due until what was at the time the last day of fact discovery, and production of responsive documents would not occur until that date or a "reasonable time" thereafter under Fed. R. Civ. P. 34(b)(2)(B). That is, Ms. McNeill served her only discovery requests in this case on April 10, 2024 (30 days before the original May 10, 2024 discovery deadline prior to its extension) and August 8 and 11, 2024 (around 30 days prior to the newly set and now operative September 10, 2024 fact discovery deadline), in neither case affording herself leeway to conduct any follow-up discovery. Thus, her arguments now ring hollow.

a potential witness therein, should be precluded from testifying, and the "evidence as to damages" produced in connection therewith (it is unclear exactly which particular documents Ms. McNeill contends ought to be stricken) should be excluded from trial. Ms. McNeill's argument, however, is without merit, as Head Kandy's Eighth Supplemental Disclosure was timely. That is, Head Kandy was entirely unaware of Ms. Hartranft and her knowledge relevant to this case until August 2024, when Ms. Hartranft approached Head Kandy. Head Kandy thereafter received documents from Ms. Hartranft, and disclosed Ms. Hartranft and the relevant documents on September 3, 2024, after it had the opportunity to investigate Ms. Hartranft's knowledge and claims, review the documentary evidence Ms. Hartranft provided, and determine whether it might use Ms. Hartranft or the evidence she provided in this case. *See, e.g.*, *Harrison v. Burlage*, 2009 WL 3048687, at *3 (S.D. Fla. Sept. 18, 2009) (untimely disclosure was substantially justified when the disclosing party "had no knowledge of the relevancy of those witness, or even their existence" prior to disclosing them); *see also Jett*, 2023 WL 11761056, at *2. Of course, Ms. McNeill had long been aware of Ms. Hartranft and knowledge she may have regarding Ms. McNeill's post-termination actions that may constitute violations of the post-termination restrictive covenants contained in her Executive Employment Agreement with Head Kandy inasmuch as until approximately August 2024, Ms. Hartranft had been working for Ms. McNeill in her new business, WhipiCo.[6] For those reasons, even if Ms. McNeill had timely made her arguments about Head Kandy's disclosure of Ms. Hartranft (she did not, and instead improperly waited until weeks before trial to raise the issue

---

[6] Ms. Hartranft's knowledge relevant to this case, along with the documentary evidence she provided, pertains to happenings at WhipiCo, specifically Ms. McNeill's management of that company and Ms. McNeill's hiring at WhipiCo of former Head Kandy employees, in direct violation of the restrictive covenants at issue in this lawsuit. Indeed, Ms. McNeill is a party to many of the communications Ms. Hartranft provided and Head Kandy disclosed. Ms. McNeill cannot credibly claim she did not know of this information or that she was somehow harmed by the timing of Head Kandy's disclosure thereof.

for the first time), Head Kandy's disclosure of Ms. Hartranft was not untimely, and exclusion of her testimony and the evidence she provided is not warranted.

**IV.**    **Head Kandy's Ninth Supplemental Disclosures were not untimely, and even if they were, the timing of that disclosure was substantially justified and Ms. McNeill has suffered no harm therefrom.**

Finally, Ms. McNeill argues that various portions of Head Kandy's Ninth Supplemental Rule 26 Disclosure should be stricken and Head Kandy's various claims for damages included therein should be excluded from trial. Once again, Ms. McNeill's argument is without merit.

Head Kandy served its Ninth Supplemental Rule 26 Disclosure in November 2024 in advance of the late-taken deposition of its corporate representative.[7] The final of the 56 topics Ms. McNeill noticed for the deposition was "All damages HK claims it sustained as a result of or caused by allegedly improper actions or inactions by Ms. McNeill." [ECF 404-1 at ¶ 56]. By its Ninth Supplemental Disclosure Head Kandy sought to organize its previously disclosed damages and the bases therefore into one document to facilitate the deposition, particularly given that the deposition had been delayed and postponed repeatedly and given the extensive list of 56 topics Ms. McNeill provided for the deposition.

The information contained in Head Kandy's Ninth Supplemental Rule 26 Disclosure, however, was not new to Ms. McNeill and could not have been surprising. Rather, Head Kandy's

---

[7] As an initial matter, supplemental disclosures provided after the discovery deadline are not per se untimely. *See, e.g.*, *Howard*, 2011 WL 13295386, at *4 ("Whether supplemental disclosures are provided after the discovery deadline is a factor to consider, but it is not the only factor that determines untimeliness."). Therefore, Ms. McNeill's repeated suggestion that Head Kandy's Ninth Supplemental Rule 26 Disclosure must be stricken because it was served after the close of discovery is neither correct nor dispositive. Additionally, Ms. McNeill's claim that Head Kandy's Ninth Supplemental Rule 26 Disclosure was served "a mere two (2) business days before the dispositive motion deadline" is disingenuous because Ms. McNeill neither filed a dispositive motion at all nor sought an extension of time to do so based on the supposedly late disclosure. Therefore, the proximity of the disclosure to the dispositive motion deadline is immaterial.

Ninth Supplemental Rule 26 Disclosure amounted to an aggregation of information Ms. McNeill had long possessed through discovery and prior disclosures,[8] along with updated figures representing damages that continue to accrue during this litigation. Accordingly, because the information included in Head Kandy's Ninth Supplemental Rule 26 Disclosure was not new and had previously been provided to (or at least available to) Ms. McNeill, Head Kandy's Ninth Supplemental Rule 26 Disclosure was not untimely at all. Even if Head Kandy's Ninth Supplemental Rule 26 Disclosure was somehow untimely, moreover, any tardiness in Head Kandy's disclosure was substantially justified (because Head Kandy "re-disclosed" the information the way it did simply to streamline and put in writing testimony Ms. McNeill would or could have elicited from Head Kandy's corporate representative anyway) and harmless (because Ms. McNeill had long possessed all of the relevant information).

A. <u>Head Kandy's lost profits from sales diverted by Ms. McNeill to Bo Stegall.</u>[9]

Although damages for breaches of restrictive covenants are usually difficult to quantify, Head Kandy intends at trial to quantify a small portion of its lost profits as a result of Ms. McNeill's promotion of competitor Bo Stegall in violation of the restrictive covenants to which she agreed. Ms. McNeill argues that Head Kandy's disclosure of its computation of its lost profits was untimely and should be excluded.

---

[8] At the very least, to the extent Ms. McNeill lacked any such information, Ms. McNeill could have had all of the relevant documents long before the discovery deadline, but for her own dilatory conduct in waiting nearly a year to enter a confidentiality stipulation Head Kandy had been proposing and reminding Ms. McNeill of for nearly a year.

[9] Head Kandy and Mr. Falic recognize that this argument mirrors part of the argument set forth in Head Kandy and Mr. Falic's contemporaneously filed Opposition to Ms. McNeill's Motion in Limine to Exclude Speculative Causation and Purported Damages Evidence at Trial [ECF 536]. However, so that this Opposition stands on its own, and to allow the Court to address this Motion and Opposition without reference to incorporated portions of other filings, Head Kandy and Mr. Falic include this argument herein as well.

As to timeliness, although Head Kandy aggregated and provided more fulsome narrative descriptions of its claimed damages in its Ninth Supplemental Rule 26 Disclosure, that disclosure is not untimely because it merely collects information that had previously been disclosed and had "been made known to [Ms. McNeill] during the discovery process."  Fed. R. Civ. P. 26(e)(1)(A). Specifically with respect to the calculation of Head Kandy's lost profits resulting from sales Ms. McNeill diverted to Bo Stegall at issue in Ms. McNeill's Motion, in its April 12, 2024 First Supplemental Rule 26 Disclosure, Head Kandy disclosed that it would be relying on Bo Stegall's customer list notating Head Kandy customers during the period in which Ms. McNeill was promoting Bo Stegall as evidence to support its claims.  Thereafter, on April 19, 2024, Head Kandy disclosed that it was seeking damages related to sales of a specified amount ($177,377.87) diverted by Ms. McNeill to Bo Stegall in its Third Supplemental Rule 26 Disclosures.

As early as October 2023, Head Kandy had attempted to enter into a confidentiality stipulation with Ms. McNeill governing the production of confidential financial information and documents, including Head Kandy's up-to-date Income Statement and Bo Stegall's aforementioned sales data, both of which Head Kandy informed Ms. McNeill it possessed and would produce upon execution of a confidentiality agreement, a form of which Head Kandy (repeatedly) provided to Ms. McNeill.  Although Head Kandy repeatedly prompted Ms. McNeill to engage on the issue over the following months, Ms. McNeill effectively ignored that she had not yet received the confidential documents Head Kandy informed her it possessed and ignored the need for a confidentiality stipulation governing the production of such sensitive documents until after the close of discovery, when she raised the issue to the Court for the first time.  [ECF 364 at ¶ 2(a)].  After the parties came to an agreement in September 2024—nearly a whole year after Head Kandy first raised the issue and sought Ms. McNeill's cooperation—Ms. McNeill then

represented to the Court that the dispute had been "resolved." [ECF 376 at 3 (¶ 2(a)); ECF 388 at 2 (¶ 2(a))]. Thereafter, Head Kandy produced the documents it had not yet produced on confidentiality grounds, including its Income Statements and Bo Stegall's sales data for the relevant period.

At bottom, any perceived tardiness in the production of this evidence was of Ms. McNeill's own making, but in any event, Ms. McNeill had all of the underlying disclosures and documents well before the Ninth Supplemental Rule 26 Disclosures of which she now complains—and could have had them months before the close of discovery, and more than a year before the filing of the Motion, if not for her own delay. In any event, all Head Kandy did in its Ninth Supplemental Rule 26 Disclosure was apply the average percent cost of sales derived from the face of Head Kandy's Income Statement to the total sales revenue Bo Stegall realized from sales to former Head Kandy customers over the period of time Ms. McNeill was promoting his products—a calculation even Ms. McNeill admits in another filing was "elementary." [ECF 536 at 8]. Because all of the information underlying that disclosure had been previously made known to Ms. McNeill during discovery, the disclosure of which Ms. McNeill now complains was not untimely.

For largely the same reasons, even if Head Kandy's Ninth Supplemental Rule 26 Disclosures were untimely, that untimeliness is substantially justified and harmless. Head Kandy provided its Ninth Supplemental Rule 26 Disclosures in advance of the deposition of Head Kandy's corporate representative—which was ultimately taken well outside of the discovery deadline because of Ms. McNeill's own failure to properly notice it and provide deposition topics sooner, and her subsequent delay in even attempting to reschedule the deposition after the already once rescheduled deposition had to be cancelled for a hurricane [ECF 379-1; ECF 478 at 2-4]—in an effort to streamline those already delayed proceedings by laying out in one document Head

Kandy's damages that had already been set out in disclosures made, documents produced, and testimony provided long before.   Thereafter, Ms. McNeill took Head Kandy's corporate representative deposition—with one of the noticed topics being "All damages HK claims it sustained as a result of or caused by allegedly improper actions or inactions by Ms. McNeill" [ECF 404-1 at ¶ 56]—and had the opportunity to question that witness about the disclosures of which she now complains. *See Lamonica v. Hartford Ins. Co. of the Midwest*, 336 F.R.D. 682, 687 (N.D. Fla. 2020) (late disclosure harmless when the opposing party was able to depose the relevant witness after the disclosure was served).   Ms. McNeill's counsel, however, did not take that opportunity to question the corporate representative on the damages disclosure or ask any more than a few cursory questions regarding the "damages [Head Kandy] claims it sustained as a result of or caused by allegedly improper actions or inactions by Ms. McNeill," which the witness was prepared to answer.

Moreover, as discussed above, there was nothing new or surprising in Head Kandy's disclosure, but rather, only additional narrative explanation of disclosures made months previously and evidence long in the record. *See Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*, 663 F. Supp. 3d 1294, 1307 (M.D. Fla. 2023) (prejudice from late disclosure was "relatively minimal" because, inter alia, "Defendant had some notice of the bases for Plaintiff's damages requests even without the underlying calculations and documents, and the damages calculations are only one aspect of Plaintiff's claim" and "Defendant does not identify any concrete prejudice it has suffered"); *Lamonica*, 336 F.R.D. at 686 (no prejudice when "Defendant … cannot credibly claim that it was completely blindsided or terribly surprised by Plaintiff's dilatory disclosure" because Defendant "was provided some knowledge of the relevant information" previously and "Plaintiff's tardy disclosure also did not interject an additional, and considerably complex, legal theory into

the case, nor did it substantially change the character of the case and render obsolete much of the parties' trial preparation.") (quotations omitted).  In fact, Ms. McNeill's aforementioned admission that the calculation of which she now complains (i.e., the only even arguably "new" portion of the disclosure) is "elementary" [Mot. at 8], wholly undermines any notion of prejudice.  *See XTEC, Inc.*, 2014 WL 10250973, at *4 (failure to disclose was "harmless because it has been no secret what damages Plaintiff seeks and the damages do not require complex calculations").

Additionally, even if Ms. McNeill was somehow prejudiced, it is largely of her own making.  That is, Head Kandy served its Ninth Supplemental Rule 26 disclosures on November 26, 2024—now two months ago prior to Head Kandy's corporate representative deposition.  Ms. McNeill did not ask the corporate representative a single question about the disclosed damages she now seeks to exclude.  And, although Ms. McNeill argues generally in her Motion that she has been precluded from conducting additional discovery on what she now claims is an untimely disclosure, she does not identify what specific additional discovery she would need.  Moreover, in the two months since Head Kandy's Ninth Disclosures and the corporate representative deposition, Ms. McNeill did not raise to Head Kandy or the Court any concerns about those disclosures, or particularly about Head Kandy's disclosure of lost profits related to Bo Stegall, until now, in pretrial motions mere weeks before trial is scheduled to begin.  That too shows a lack of prejudice to Ms. McNeill.  *See Bowers v. Am. Heart Ass'n, Inc.*, 2008 WL 11407360, at *3 (N.D. Ga. Dec. 2, 2008) ("[T]o the extent that Defendants have suffered or will suffer any prejudice at all in connection with Plaintiff's damages evidence, the prejudice is at least partially the result of Defendants' own failure to bring the issue … before the Court at an earlier time."); *Go Mobile Flooring*, 663 F. Supp. 3d at 1306-07 (defendant's failure to bring issue to court's attention earlier "significantly contributed to any resulting delay").

For all of these reasons, Head Kandy's evidence and computation of its lost profits as a result of sales lost to Bo Stegall because of Ms. McNeill's promotional activities is not due to be excluded as untimely disclosed.

B. Head Kandy's costs paid to Alpha OES to rehabilitate its business after Ms. McNeill's damaging actions.

Because Ms. McNeill's constant disparagement of Head Kandy and her direction of Head Kandy's customers to competitor products, Head Kandy's business has been extensively damaged. Indeed, as Mr. Falic and others have testified, Ms. McNeill's conduct has completely destroyed the value of Head Kandy as a business.  While lost profits and damage to reputation are often difficult to quantify or prove, the funds Head Kandy has been forced to pay to Alpha OES, LLC ("**Alpha OES**") to help Head Kandy restore its sales and reputation damaged by Ms. McNeill are readily ascertainable and are a direct result of Ms. McNeill's conduct underlying Head Kandy's claims.[10]  Consequently, Head Kandy disclosed on June 5, 2024:  (1) its agreement with Alpha OES that contains the terms of Head Kandy's payments to Alpha OES,[11] and (2) that it was claiming "damages to restore its reputation and sales damaged by Ms. McNeill's actions in violation of her Executive Employment Agreement and in breach of her fiduciary duties …

---

[10]  Ms. McNeill in her Motion again misunderstands Head Kandy's theories of damages.  It is not "contradictory" [Mot. at 10] to claim damages for costs incurred to restore sales and reputation, and also to claim lost profits from specific sales, and neither of those claims are inconsistent with the notion that Head Kandy has no enterprise value as a business.  Indeed, that is the whole point— Ms. McNeill has destroyed Head Kandy's value, and Head Kandy has suffered both that loss and costs to restore its business.  Also, because there is no expert issue involved with these damages, Ms. McNeill's reference to the expert disclosure deadline [Mot. at 10] is wholly misplaced.

[11]  In that disclosure, Head Kandy stated the relevant agreement "[w]ill be provided upon execution of a stipulation to protect confidential and trade secret information."  [ECF 537-4 at 4].  As discussed above and in other filings, Head Kandy began trying to enter into such an agreement with Ms. McNeill in October 2023, continued to do so throughout 2024, and reminded Ms. McNeill about the need for a confidentiality stipulation repeatedly throughout that time until Ms. McNeill finally addressed the issue in September 2024.  At that time, Head Kandy immediately produced the Alpha OES agreement referenced in its June 5, 2024 disclosure.

includ[ing] the amount Head Kandy must pay to Alpha OES LLC."   [ECF 537-4 at 4-5]. Importantly, those damages continue to accrue to this day, as Head Kandy's relationship with Alpha OES is ongoing.

In its Ninth Supplemental Rule 26 Disclosure, Head Kandy simply provided the to-date (as of October 2024) and projected future dollar amounts it has paid and will have to pay to Alpha OES based on the calculation set forth in the agreement between Head Kandy and Alpha OES that was produced to Ms. McNeill.  That is, there is no "new" information—the "computation" of which Ms. McNeill now complains was set forth in the agreement disclosed on June 5, 2024.  And even if, as Ms. McNeill complains, the June 5, 2024, disclosure was too late, Ms. McNeill has suffered no harm from the timing of that disclosure, and particularly no harm that is not of her own doing.  Finally, any "new" information reflects updated expenditures as months pass and Head Kandy's damages continue to mount.  *Cf. K3 Enterprises, Inc. v. Sasowski*, 2022 WL 3306725, at *5 (S.D. Fla. Aug. 11, 2022) (disclosure of ongoing damages was insufficient when "Plaintiff has not made any meaningful attempt to estimate the overall damages, to calculate them at least for a fixed period of time, or to provide documents in support of a damages figure" and did not "provide[] Defendants with any numerical figures, supportive documentation, or even a clear understanding of what Plaintiff's testimony [as to damages] will cover"—all of which Head Kandy has done here).

For these reasons, the Court should not exclude evidence of damages Head Kandy has incurred in the form of payments to Alpha OES for services related to restoring Head Kandy's business after Ms. McNeill's damaging actions, and should not be precluded from recovering those damages at trial.

C.  <u>Wages paid by Head Kandy at Ms. McNeill's behest to pay employees to perform personal services for her and her family.</u>

Head Kandy has long sought to recover from Ms. McNeill wages Head Kandy paid to employees who, at Ms. McNeill's behest, performed personal services for Ms. McNeill and her family while they were being paid by Head Kandy.  Of course, such individuals did not clock in or out, or otherwise formally log, the time they spent performing such tasks for Ms. McNeill such that there is some documentary record distinguishing time performing those tasks from time spent performing legitimate Head Kandy business functions.  Consequently, Head Kandy has no choice but to rely on those individuals' trial testimony as to the approximate hours they spent performing personal services for Ms. McNeill, and to allow the factfinder to assess that testimony as it may. That is, there is no other evidence or amount Head Kandy could disclose to Ms. McNeill beyond those individuals' identities and rates of pay, which have been long made available to Ms. McNeill in prior disclosures and discovery.

At bottom, nothing requires Head Kandy to prove its claim for wages paid to Ms. McNeill's personal services employees with documentary (as opposed to testimonial) evidence, and in any event, Ms. McNeill should not be allowed to force Head Kandy employees to perform non-Head Kandy work during times they are clocked in for Head Kandy without creating any record of that time, then later demand specific documentation and computations.  *See Pro Video Instruments, LLC v. Thor Fiber, Inc.*, 2019 WL 5294943, at *3 (M.D. Fla. July 24, 2019) ("A court cannot compel a party to produce what does not exist.").   In fact, given that Ms. McNeill contemporaneously concealed her misuse of Head Kandy employees, she has been in a better position than Head Kandy to have the documentation she now demands.  *See Doe v. City of Miami Gardens*, 2019 WL 3312535, at *2 (S.D. Fla. Mar. 29, 2019) (even complete non-disclosure would be substantially justified when "the material is equally available to the other party from another

source"). Finally, if Ms. McNeill wanted something more concrete, she could have deposed the individual employees in question. *See Garcia v. Delta Air Lines*, 2019 WL 201255, at *2 (S.D. Fla. Jan. 15, 2019) (finding alleged failure to disclose harmless when the movant failed to depose witnesses revealed in discovery). Accordingly, damages for wages paid by Head Kandy to employees performing personal services for Ms. McNeill should not be excluded.

D.  Funds paid by Head Kandy to Ms. McNeill for unreasonable and unnecessary rental of her barn, dumpster, and forklift.

Finally, Ms. McNeill argues that Head Kandy belatedly disclosed a "computation" of the damages associated with her improper rentals of a barn, dumpster, and forklift to Head Kandy at exorbitant rates and despite a lack of any legitimate business purpose. As discussed before, Head Kandy in its Ninth Supplemental Rule 26 Disclosures was simply trying to aggregate its prior disclosures and discovery for the benefit of its corporate representative, and ultimately for Ms. McNeill in taking that eleventh hour deposition. Head Kandy had previously produced invoices, records, and summaries of payments covering the barn, dumpster and forklift, and there had been extensive testimony on the matter. For example, on August 7, 2024, Mr. Rosenbaum (who discovered and eventually terminated these payments to Ms. McNeill) testified extensively about the barn, forklift, and dumpster payments, including the amounts and duration of those payments. [*See* ECF 435-1 at 181:21-185:23, 187:9-193:22, 194:2-17].

Despite Ms. McNeill's protestations, there is no new "computation," much less anything not previously disclosed, in Head Kandy's Ninth Supplemental Rule 26 Disclosures; rather, Head Kandy's damages related to the barn, forklift, and dumpster are calculated simply by adding up the monthly rate for each month Ms. McNeill charged Head Kandy for those purported services, evidence supporting which Ms. McNeill has long had. Even if Head Kandy should have disclosed that supposed "computation" earlier, there is no harm to Ms. McNeill by the failure to do so,

because Ms. McNeill could have performed the simple addition herself.  *See, e.g.*, *XTEC, Inc.*, 2014 WL 10250973, at *4 (failure to disclose was "harmless because it has been no secret what damages Plaintiff seeks and the damages do not require complex calculations").  Finally, the remainder of Ms. McNeill's arguments concern the sufficiency of the evidence in the record to prove Head Kandy's claims and criticisms of the ways Head Kandy may choose to present its case, which arguments are inappropriate at this stage.  *See Soliday v. 7-Eleven, Inc.*, 2011 WL 1837807, at *1 (M.D. Fla. Apr. 20, 2011) ("A motion in limine seeks to exclude anticipated prejudicial evidence before it is actually offered, not to determine the sufficiency of the evidence or merits of an issue.") (citation omitted).

For these reasons, Head Kandy's damages arising out of its payments to Ms. McNeill for barn, forklift, and dumpster rentals should not be excluded.

### Conclusion

For the above reasons, Head Kandy and Mr. Falic respectfully request that the Court deny the Motion in its entirety and grant such other and further relief the Court deems appropriate.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 27, 2025, I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of this filing to: Laura E.  Burgess, Esquire, laura@leburgesslaw.com, L.E.  Burgess, P.A., 5966 S.  Dixie Highway, Suite 300, Miami, Florida   33143,   *Counsel   for   Defendant*;   Antonio   L.   Converse,   Esquire, anthony@converselawgroup.com, Converse Law Group, P.C., 600 17th Street, Denver, Colorado 80202, *Counsel for Defendant;* Jennifer Tiedeken, Esquire,  jennifer@lawfortcollins.com, jamie@lawfortcollins.com, Massey, Kelly & Priebe, PLLC, 125 S. Howes Street, Suite 1100, Fort Collins,   CO   80521*,   co-counsel   for   Defendant;*   and   Jed   Ferdinand,   Esquire,

jferdinand@fiplawgroup.com, Kathleen B. Moore, Esquire, kmoore@fiplawgroup.com, Ferdinand IP Law Group, 450 Seventh Avenue, Suite 2300, New York, New York 10123, *Counsel for Plaintiff*.

*/s/ Edward Colin Thompson*

**ETHAN J. LOEB**
FL Bar No. 668338
ethanl@blhtlaw.com
KerriR@blhtlaw.com
eservice@blhtlaw.com
**EDWARD C. THOMPSON**
FL Bar No. 684929
colint@blhtlaw.com
heatherw@blhtlaw.com
**JALEN A. LARUBBIO**
FL Bar No. 1039258
JalenL@blhtlaw.com
**CARSON A. SADRO**
FL Bar No. 1026159
CarsonS@blhtlaw.com
**BARTLETT LOEB HINDS**
**THOMPSON & ANGELOS**
1001 Water St., Suite 475
Tampa, FL 33602
Telephone: 813-223-3888
Facsimile: 813-228-6422

***Counsel for Head Kandy LLC***
***and Jerome Falic***
