UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

HEAD KANDY, LLC,

    Plaintiff/Counterclaim Defendant,

v.                                                                       CASE NO. 23-CV-60345- JB/JMS

KAYLA MCNEILL,

    Defendant/Counterclaimant/Third-Party Claimant,

v.

JEROME FALIC,

    Third-Party Defendant.
_____/

**REPLY IN SUPPORT OF MS. MCNEILL'S MOTION IN LIMINE TO EXCLUDE
SOCIAL MEDIA COMMENTS BY NON-TESTIFYING WITNESSES**

    Defendant/Counterclaimant/Third Party Claimant Kayla McNeill ("Ms. McNeill"), by and through her undersigned counsel, hereby submits her Reply brief ("Reply") in support of her motion *in limine* seeking an order excluding the social media comments by *non-testifying* witnesses ("MIL") [ECF No. 535], replying to Plaintiff, Head Kandy, LLC ("Plaintiff" or "HK"), and Third-Party-Defendant, Jerome Falic's ("Mr. Falic") (collectively, "HK Parties") Response to the MIL ("Response") [ECF No. 559]. In support therefor, Ms. McNeill states as follows:

### I.    PRELIMINARY STATEMENT

    The HK Parties' Response misses the point of Ms. McNeill's MIL as to the HK Parties' clear intent to introduce unauthenticated, hearsay documents at trial. Ms. McNeill is not "ask[ing] the Court to prematurely exclude an entire category of evidence, social media comments." Response at 1. Instead, the MIL clearly limits the relief requested to *non-testifying*

*witnesses* whose comments HK Parties will attempt to introduce for purposes prohibited under the Federal Rules of Evidence.

Since the filing of the MIL, the HK Parties have filed their trial witness list. [ECF No. 544]. Notably, the HK Parties *still* did not list as a witness any customer they purportedly "lost" due to any action of Ms. McNeill. This further supports the substance and importance of Ms. McNeill's MIL regarding the exclusion of certain social media comments. The HK Parties clearly do not anticipate calling *any purported* customer of HK to establish causation or damages. Instead, it is clear from Section I of the HK Parties' Response [Response at 2-4], that the HK Parties intend to put someone other than the person who wrote the "social media comment" on the stand to prove that the "proffered evidence is what it purports to be" [*Id*. at 2]. Ms. McNeill addresses, at length in her MIL, the issues surrounding why postings on the internet cannot be taken at face value due to issues of "false authorship," as well as tendencies to "exaggerate." MIL at 11. Thus, a person other than the author of the comment is not going to be in a position to testify that the comment is what it purports to be, and, certainly, the HK Parties are not introducing the evidence simply for the limited purpose of showing comments were "generally available on the Internet," as suggested in their Response. Response at 3.

Next, the HK Parties appear to understand their blanket submission of voluminous pages of social media comments is not proper, and attempt to mask their true intent by now stating that comments *not made by Ms. McNeill* are also evidence of "Ms. McNeill's active participation in them" and thus "also show and prove Ms. McNeill's breach of the restrictive covenants contained in her Executive Employment Agreement." Response at 1-2. Ultimately, however, the HK Parties know that the summary of unauthenticated social media comments they submitted as part of the Preliminary Injunction Hearing [ECF Nos. 87, 131] will not each include

Ms. McNeill's allegedly "active participation" in them and will still be attempted to be introduced in summary form as was conducted at the PI Hearing.  Also, since the filing of Ms. McNeill's MIL, the HK Parties have had the opportunity to file their Exhibit List. [ECF No. 543].  To show the disingenuous nature of the HK Parties' argument that "while many of the comments to Ms. McNeill's social media pots evidence that Ms. McNeill's statements caused Head Kandy to suffer damages" [Response at 1], that somehow the HK Parties would be introducing it for a "limited purpose of proving that the postings had appeared on the world wide web" at a particular time [Response at 3], is clear from the social media summaries use in connection with the Preliminary Injunction Hearing and HK's heavy use and reliance on them in their submitted Proposed Preliminary Injunction [ECF No. 119] specifically to show causation as for why certain individuals "stopped purchasing HK Products as a result of Ms. McNeil's social media posts." [*Id.* at 8-9]; *see also Id.* at 14 ("HK presented sufficient evidence showing Ms. McNeill's comments on social media **reached** existing customers of HK—in the form of comments posted by customers in direct response to Ms. McNeill's posts….and **evidence that her comments had the intended effect, causing those customers to lessen or terminate their relationship with HK**…." (**emphasis added**).  This is in comparison to the HK Parties' claims in footnote 1 on P. 4 of its Response that "As HK explains in its contemporaneously filed Opposition to Ms. McNeill's Motion in Limine to Exclude Speculative Causation and Purported Damages Evidence at Trial [ECF 536], Head Kandy is not offering evidence of any social media comments to show any particular individual stopped purchasing Head Kandy products for any particular reason or to claim damages form that cessation in business…."  Ultimately, their prior submissions and representations to the Court betray them.

The HK Parties have not even listed "each" social media comment they expect to offer at trial in their Exhibit List [ECF No. 543]; rather, as anticipated by Ms. McNeill, still list at least thirty-eight (38) social media comment **summaries** as exhibits. *See id.* at Exhibits 57 ("February 17, 2023 ExportComments.com Facebook Post Outline"); 77 ("Summary of comments…" (hereinafter "SOC"); 79 ("SOC…"); 91 ("SOC…"); 92 ("SOC…"); 113 ("SOC…"); 115 ("SOC…"); 117("SOC…"); 155 ("July 4, 2023 ExportComments.com Facebook Post Outline"); 236 ("SOC…"); 238 ("SOC…"); 240 ("SOC…"); 242 ("SOC…"); 244 ("SOC…"); 246 ("SOC…"); 249 ("SOC…"); 252 ("SOC…"); 254 ("SOC…"); 256 ("SOC…"); 260 ("SOC…"); 263 ("SOC…"); 264 ("SOC…"); 269 ("SOC…"); 271 ("SOC…"); 273 ("SOC…"); 275 ("SOC…"); 277 ("SOC…"); 279 ("SOC…"); 281 ("SOC…"); 282 ("SOC…"); 283 ("SOC…"); 284 ("SOC…"); 285 ("SOC…"); 286 ("SOC…"); 287 ("SOC…"); 288 ("SOC…"); 289 ("SOC…"); and 290 ("SOC…") (collectively, the "Summaries").

## II.   REPLY

**A.   A ruling on HK's ability to authenticate evidence is not premature.**

The HK Parties cite to Fed. R. Evid. 901 to state that the standard for authentication is to produce "evidence sufficient to support a finding that the item is what the proponent claims it is." *See* Response at 2. The HK Parties have offered no proponent to claim that the evidence is what the proponent claims it is. This is exactly what Ms. McNeill stated in the MIL when she wrote "None of [the HK Parties'] persons with knowledge listed in its disclosures can authenticate the social media comment summaries." MIL at 6. Now Ms. McNeill's concern and reason for submitting her MIL is further supported by the fact that it is now on the record that the HK Parties do not intend to present any purported HK Customer or *any individuals* from ExportComments.com or Facebook to state the comments are what the proponents state them to

be. [ECF No. 543]; [ECF No. 544]. The Witnesses listed by the HK Parties do not meet any of the examples that assist a proponent in authenticating the social media comments. Response at 2.

The HK Parties are **not** trying to introduce the social media comments to just show they "appeared on the world wide web" (Motion at 3); the HK Parties are *completely* relying upon these comments to *prove causation for HK's purported damages*. [ECF No. 119 at 8-9, 14]. There is no way for the HK Parties to get around this by stating the comments will be merely offered for a "limited purpose" and then claiming to exclude now would be "premature." The purpose of the comments has already been shown and it is not that the comments "appeared on the world wide web." As seen by the thirty-eight (38) summaries intended as exhibits, the HK Parties intend to submit pages upon pages of social media comments in bulk, and for asserting for truth of the matter that these alleged customers stopped purchasing. *Knit With v. Knitting Fever, Inc.*, 2012 WL 3235108, at *7 n.6(E.D. Pa. August 8, 2012) is *not* an Eleventh circuit case, but a case out of the United States District Court for the Eastern District of Pennsylvania. The case is inapposite anyway; the HK Parties have never produced an affidavit in connection with the Summaries despite the Exhibit Lists already being filed. Moreover, in *Saadi v. Maroun*, No. 8:07-cv-1976-T-24 MAP, 2009 U.S. Dist. LEXIS 102879, at *10 (M.D. Fla. Nov. 4, 2009), the individual actually testified—again going to the fact that it was never on HK Parties' disclosures that any of its witnesses on its witness list would be testifying to authenticate these Summaries. Regardless, the Court in *Saadi*, specifically stated "Importantly, Saadi did not offer the Internet postings to prove that Maroun wrote the postings, or even that the postings reflected the work of a specific website. Instead, Saadi offered the postings for the *limited purpose* of proving that the postings had appeared on the world wide web on the days that Saadi personally

saw the postings and printed them off the computer." *Id.* at 10-11. The HK Parties then *further omit* the findings of the Court in *Saadi* that "**The Court agrees that Rule 901 would have required Saadi to authenticate the Internet postings <u>by calling a website owner or webmaster if Saadi had offered the postings to prove that the postings came from a specific person or organization</u>**." *Id.* at 11 (**emphasis added**.)

B.     <u>It is not premature to find that the social media comments qualify as hearsay.</u>

The HK Plaintiffs have frequently relied on non-Eleventh circuit cases in this matter; *see e.g.* ECF 72, and even rely on a non-Eleventh circuit case in Section I of its Response. Ms. McNeill exhaustively researched the particular and unique issues at hand in her present matter in submission of her MIL and the lack of Eleventh Circuit cases cited by the HK Parties in opposition, aside from a general citation regarding "questions of foundation…." Response at 4, show that these cases discuss the matter in a well-taken manner. The only distinction cited by the HK Parties in opposition is that the HK Parties state that in those cases the parties "identified specific pieces of evidence it sought to exclude, not broad categories…." The HK Parties are the party submitting "broad categories" by its Summaries labeled as exhibits, listed at the beginning of this instant Reply, as a piece of evidence. Ms. McNeill anticipated this as for that reason filed her MIL. The application of the hearsay rules to the comments HK intends to present will not change between now and trial as the Summaries are the exhibits and HK has not put forth an individual who can authenticate the comments in the Summaries.

C.     <u>HK will not be able to show particular social media comments may be admitted at trial as stated in its Response, as the HK Parties are still attempting to introduce the comments to prove the truth of the matter asserted.</u>

The HK Parties try to state that they want to place into evidence comments by individuals other than Ms. McNeill as relates to products in order to prove Ms. McNeill violated her non-

6

compete. The HK Parties are conflating the posts by Ms. McNeill (in the images they submit in the Response) and the purpose of the *comments* made by the purported "customers" on the posts. The HK Parties are clearly submitting the *comments* (not the post by Ms. McNeill where the HK Parties are attempting to allege breach) to show the proof of the matter asserted.

### III.   CONCLUSION

For the reasons set forth herein and in the MIL, Ms. McNeill respectfully requests an order from the Court granting the MIL, in its entirety, and also granting her such further and/or additional relief which the Court deems just and proper.

**DATED** this 3rd day of February, 2025.

Respectfully Submitted,

By: /s/ *Laura Burgess*
Laura E. Burgess, Esq. Florida Bar No. 0105073
L.E. Burgess P.A.
5966 S Dixie Highway, Suite 300
Miami, FL 33143
Tel.: 305.942.8044
Alt. Tel.: 713.818.5055
laura@leburgesslaw.com

AND

By: /s/ *Antonio L. Converse*
Antonio L. Converse, Esq.
Admitted *Pro Hac Vice*
Converse Law Group, P.C.
600 17th Street, Suite 2800 South
Denver, CO 80202
Tel: 303.228.9471
anthony@converselawgroup.com

AND

By: /s/ *Jennifer A. Tiedeken*
Jennifer A. Tiedeken, Esq.
Admitted *Pro Hac Vice*

> 125 S. Howes Street, Suite 1100
> Fort Collins, CO 80521
> Tel: 970.482.5058
> jennifer@fortcollinslaw.com
>
> *COUNSEL FOR KAYLA MCNEILL*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2025 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and through that filing served all counsel of record.

> By: */s/ Laura Burgess*
> Laura Burgess