## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 23-cv-60345-JB

HEAD KANDY, LLC,

      Plaintiff,

v.

KAYLA MARIE McNEILL,

      Defendant,

v.

JEROME FALIC,

      Third-Party Defendant.

_____/

### OMNIBUS ORDER ON HEAD KANDY'S AND
### JEROME FALIC'S MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** came before the Court on Plaintiff Head Kandy, LLC's ("HK")
Motion for Summary Judgment ("HK's Motion") and accompanying Statement of
Material Facts, as well as Third-Party Defendant Jerome Falic's ("Falic") Motion for
Summary Judgment ("Falic's Motion") and accompanying Statement of Material
Facts.  ECF Nos. [470], [471], [472], [473].  Defendant/Counterclaimant/Third Party
Claimant Kayla McNeill ("McNeill") filed responses in opposition to HK's Motion,

1

Falic's Motion, and the Statements of Material Facts corresponding to each.[1]  ECF Nos. [495], [501], [503], [505].  Further, HK and Falic each filed a reply in support of their respective motions and Statements of Material Facts. ECF Nos. [511], [512], [515], [516].  The Court held oral argument on HK's Motion and Falic's Motion on February 21, 2025 (the "Oral Argument").  Upon review of the parties' written submissions and arguments , the pertinent portions of the record, and the relevant authorities, it is hereby **ORDERED AND ADJUDGED** that HK's Motion is **GRANTED IN PART AND DENIED IN PART** and Falic's Motion is **GRANTED**.

## I.  FACTUAL BACKGROUND

In 2018, HK purchased the assets of Lashed Out, LLC, a Colorado limited liability company of which McNeill was the sole member.  ECF Nos. [187] at ¶¶ 8, 11–12; [470] at ¶ 2; [503] at ¶ 2.  As part of this transaction, McNeill received a twenty percent ownership interest in HK and agreed to serve as HK's creative director.  ECF Nos. [470] at ¶¶ 2, 6; [503] at ¶¶ 2, 6.  At all times pertinent hereto, Falic was HK's managing member.  ECF Nos. [503] at ¶ 79; [515] at ¶ 79.

"In July 2022, [HK] . . . retained Jon Rosenbaum as a consultant to review [HK's] . . . operations . . . ."  ECF No. [470] at ¶ 14; [503] at ¶ 14.  According to HK, "Rosenbaum discovered that . . . McNeill had extensively mismanaged [HK's] . . . operations, including by expending millions of dollars on social media marketing focusing primarily on herself rather than the brand, purchasing far too much product

---

[1] As noted herein, although McNeill's responses were untimely and otherwise noncompliant, the Court has nevertheless considered them in assessing HK's Motion and Falic's Motion.

inventory, and engaging in self-dealing to the detriment of the business."  ECF No. [470] at ¶ 15.

HK sent McNeill two letters, on November 28, 2022 and January 10, 2023, detailing her alleged violations of the Executive Employment Agreement between HK and McNeill (the "EEA") and HK's Amended and Restated Limited liability Company Operating Agreement (the "OA").  ECF Nos. [470] at ¶¶ 34–35; [187-2]; [187-4].  In the letters, HK provided McNeill an opportunity to cure her purported breaches. [187-2] at 3–4; [187-4] at 2–3.  But instead of doing so, as HK contends, McNeill continued the conduct in question, resulting in her termination on January 30, 2023. ECF Nos. [470] at ¶¶ 36–37; [503] at ¶¶ 36–37.

While HK maintains that McNeill's termination was due to "her misuse of company resources for the benefit of herself, her family, and her side businesses," McNeill insists that she "was terminated in retaliation for reporting harassment to Falic on November 20, 2022."  ECF Nos. [470] at ¶ 38; [503] at ¶ 38.  According to McNeill, she endured "severe and pervasive sexual harassment by . . . Rosenbaum," including sexual advances and abusive language.  ECF No. [505] at 1–2.  McNeill further claims that after reporting Rosenbaum to Falic, HK and Falic retaliated against her "as punishment and an attempt to cover up the harassment."  *Id.*

Plaintiff's suit against McNeill sets forth two counts, specifically: (1) Count One, Breach of Contract based on the EEA; and (2) Count Two, Breach of Fiduciary Duty. *See* ECF No. [187] at ¶¶ 125–151.[2]

In response, McNeill filed her Amended Answer, Counterclaims, Third-Party Complaint and Jury Demand (the "Counterclaims"), ECF No. [337], in which she asserts the following claims for relief:[3] (1) Count One, Breach of Contract against HK based on the EEA; (2) Count Two, Breach of Contract against HK based on the OA; (3) Count Three, Breach of Contract against HK based on the parties' loan agreement; (4) Count Four, Breach of Contract against HK based the parties' agreement for lease of a forklift (the "Forklift"); (5) Count Five, Colorado Civil Theft against HK and Falic; (6) Count Six, Florida Civil Theft against HK and Falic; (7) Count Seven, Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101, *et seq.*, against HK and Falic; (8) Count Eight, Invasion of Privacy by Appropriation against HK; (9) Count Nine, Invasion of Right of Publicity against HK; (10) Count Ten, Conversion against HK; (11) Count Eleven, Unjust Enrichment against HK; (12) Count Twelve, Intentional Infliction of Emotional Distress ("IIED") against HK and Falic; (13) Count Fourteen, Extreme and Outrageous Conduct against HK and Falic; (14) Count Seventeen, Defamation against HK; (15) Count Eighteen, Harassment/Hostile Work Environment on the

---

[2] HK has voluntarily dismissed Counts Three, Four, and Five of its Second Amended Complaint against McNeill. *See* ECF No. [586].

[3] McNeill also included third-party claims against Rosenbaum, who has since been dismissed, as have Counts Thirteen, Fifteen, and Sixteen of McNeill's Counterclaims. *See* ECF No. [425]. McNeill does not specify against which defendant she is bringing Counts Eighteen through Twenty-Two.

Basis of Sex, Florida Civil Rights Act; (16) Count Nineteen, Harassment/Hostile Work Environment on the Basis of Age, Florida Civil Rights Act; (17) Count Twenty, Harassment/Hostile Work Environment on the Basis of Religion, Florida Civil Rights Act; (18) Count Twenty-One, Sexual Harassment, Florida Civil Rights Act; and (19) Count Twenty-Two, Retaliation, Florida Civil Rights Act.

## II.      THE INSTANT MOTIONS

### A. HK's Motion.

HK has moved for summary judgment on the first two counts of its Complaint against McNeill, for Breach of Contract based on the EEA and Breach of Fiduciary Duty, respectively.  ECF No. [471] at 2.  Further, HK seeks summary judgment on McNeill's Counterclaims.  *Id.*  As to the former, HK argues that unrefuted evidence supports its claim for breach of fiduciary duty and breach of the restrictive covenants in the EEA.  *Id.* at 2–8.  Additionally, HK challenges each of McNeill's Counterclaims against HK.  *Id.*

In response, McNeill argues that questions of material fact preclude summary judgment on HK's claims in Counts One and Two.  ECF No. [505] at 2–11. Alternatively, she submits that Count Two for Breach of Fiduciary Duty fails because HK's alleged damages are conclusory and insufficient as a matter of law.  *Id.* at 2–3. As a final argument, McNeill contends that employment claims are "not appropriate to be determined on summary judgment."  *Id.* at 8.  However, as HK observes in its reply, McNeill raised no argument in defense of her Counterclaims in response to HK's Motion.  Thus, as to the Counterclaims, HK argues McNeill effectively conceded the appropriateness of summary judgment in HK's favor "inasmuch as she did not

respond at all to the arguments and evidence [HK] . . . presented, and did not identify any countervailing evidence to create a factual dispute, on those counterclaims." ECF No. [516] at 2.

**B. Falic's Motion.**

Falic has moved for summary judgment in his favor on McNeill's third-party claims, which she asserted against him in his individual capacity. ECF No. [473] at 2. These causes of action, found within McNeill's Counterclaims, include (1) Counts Five and Six for Civil Theft under Colorado and Florida law, respectively; (2) Count Seven for wages allegedly owed under the CWCA for McNeill's employment with HK; and (3) Counts Twelve and Fourteen for IIED and "Extreme and Outrageous Conduct," respectively. ECF No. [473] at 2. The core of Falic's challenge to these claims is that they "are based only on the undisputed fact that . . . Falic is [HK's] . . . Managing Member" rather than any of his own actions or inactions. *Id.* Falic maintains that "McNeill has not asserted any allegations of, and cannot come forward with any record evidence to prove, wrongful conduct by . . . Falic separate and apart from . . . [HK's] alleged acts." *Id.*

In opposition, McNeill argues that her claims for IIED and Extreme and Outrageous Conduct are premised upon Falic's alleged retaliation against her after she reported Rosenbaum's harassment to Falic. ECF No. [501] at 2. As for her remaining claims, McNeill argues that Falic is personally liable because he "refused to pay [her] . . . earned and outstanding compensation . . . and stole certain personal property belonging to [her] . . . , giving rise to [her] . . . claims for civil theft and

violation of the" CWCA. *Id.* Thus, McNeill submits that her claims are adequately pled and supported by undisputed facts. *Id.*

## III.   LEGAL STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is one with "'a real basis in the record,'" such that "a reasonable jury could return a verdict for the nonmoving party." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). To determine whether the movant satisfied this burden, courts view the movant's evidence and all factual inferences arising therefrom in the light most favorable to the non-movant. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999)). As to issues on which the non-moving party would bear the burden of proof at trial, it is sufficient for the movant to highlight a failure of proof concerning an essential element of the non-movant's case. *Celotex*, 477 U.S. at 322–23.

Once the movant carries its burden, the non-movant must offer specific evidence showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-movant, there is no genuine issue for trial, and summary judgment is proper. *Matsushita*, 475 U.S. at 587.

## IV.   ANALYSIS

### A. HK's Motion

The Court begins with McNeill's Counterclaims against HK, including Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Fourteen, Seventeen, Eighteen, Nineteen, Twenty, Twenty-One, and Twenty-Two.   In HK's Motion, it advanced arguments challenging each of these claims.   ECF No. [471] at 8–21.  In opposition, McNeill submitted a response which was untimely and over the page limit dictated by the Local Rules.  *See* ECF Nos. [503]; [505]; [579].  Despite the fact that McNeill's opposition was untimely, the Court considered it.  The Response, however, is entirely devoid of *any* argument in defense of McNeill's Counterclaims against HK.  McNeill did not move to supplement the noncompliant response, and the time to do so has long passed.

Based on well-settled Eleventh Circuit caselaw, the Court finds McNeill has abandoned her Counterclaims against HK.  *See, e.g.*, *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citing *Road Sprinkler Fitters Loc.*

8

*Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994)) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Ryan v. Int'l Union of Operating Eng'rs, Loc. 675*, 794 F.2d 641, 643 (11th Cir. 1986) (explaining that in opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him"); *Schwarz v. Bd. of Supervisors on Behalf of Vills. Cmty. Dev. Dists.*, 672 F. App'x 981, 982–83 (11th Cir. 2017) (affirming entry of summary judgment against plaintiff on claims which the defendant challenged on summary judgment but which plaintiff failed to address in response, finding that those claims had been "waived").

However, as to Counts One and Two of HK's claims against McNeill, the Court finds that HK has not met its burden and is not entitled to judgment in its favor.  To make a claim for breach of contract under Florida law, a plaintiff must "plead and establish (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).  Because Count One is a claim for breach of restrictive covenants in the EEA, HK must also prove three extra elements:

> (1) the restrictive covenant must be "set forth in a writing signed by the person against whom enforcement is sought"; (2) the party seeking to enforce the restrictive covenant "***shall plead and prove*** the existence of one or more legitimate business interests justifying the restrictive covenant"; and (3) the party seeking to enforce the restrictive covenant "***shall plead and prove*** that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction."

*Rauch, Weaver, Norfleet, Kurtz & Co. v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 630 (Fla. 4th DCA 2021) (alterations in original) (quoting Fla. Stat.§ 542.335). Here, HK claims that the EEA is a valid contract between HK and McNeill, and that McNeill breached the restrictive covenants within the EEA.  ECF Nos. [471] at 4–6; [187-1] at 6–10.

In particular, HK claims McNeill violated the EEA's restrictive covenants "by promoting hair-related products on her social media pages, soliciting [HK's] . . . customers to buy competing hair-related products, and brazenly disparaging [HK] . . . and its affiliated individuals and entities to her thousands of online followers . . . after her termination."  ECF No. [471] at 5.  Further, HK contends that McNeill "has . . . violated the restrictive covenants by soliciting and hiring former [HK] . . . employees to work for her competing business within a year of their employment with" HK.  *Id.*  HK argues that in issuing the preliminary injunction in this case, the Court has already found that these breaches occurred.  *Id.*

As for damages, HK admits that "factual disputes remain as to the precise amount of . . . [HK]'s damages" but argues that Florida law allows the Court to automatically presume such damages if it finds an enforceable restrictive covenant was violated.  *Id.* (citing *Vital Pharms., Inc. v. Alfieri*, No. 20-61307-CIV, 2022 WL 1450042, at *7 (S.D. Fla. May 9, 2022)).  Lastly, HK argues it has met the additional elements required for breach of restrictive covenant claims.  *Id.*  HK asserts that there is no dispute that the restrictive covenants are in a writing signed by McNeill, in Section 5 of the EEA.  *Id.* at 5–6.  Further, HK claims the Court has already found,

10

in issuing a preliminary injunction, that (1) HK has legitimate business interests justifying these provisions, including maintaining customer goodwill in the haircare space and substantial relationships with existing and prospective customers; and (2) the covenants are reasonably necessary to protect said business interests.  *Id.*

As an initial matter, the Court's findings related to the preliminary injunction in this case do not conclusively end the summary judgment inquiry, regarding whether there are genuine disputes of material fact as to the elements of HK's claims such that it is entitled to judgment as a matter of law.  Indeed, the preliminary injunction findings were made "before [the] record was fully developed," based on a different standard, and using procedures that are less formal than those that bind the Court at this juncture.  *See Monster Energy Co. v. Consol. Distrib., Inc.*, No. 6:11-cv-329-Orl-22DAB, 2013 WL 12155822, at *8–9 (M.D. Fla. Jan. 3, 2013) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)) (explaining that even where an extensive record is developed during the preliminary injunction stage as to essential elements of a party's claim, that party "bears the burden of proof and must meet a completely different standard" at summary judgment).

Here, to carry its burden of proving that a legitimate business interest justifies its restrictive covenants and that these covenants are reasonably necessary to protect said interest, HK relies solely on the Court's findings from the preliminary injunction in this case.  *See* ECF No. [471] at 5–6.  HK did not address these elements in its Statement of Material Facts, such that the Court cannot ascertain whether they remain disputed for purposes of summary judgment, and if so, on what basis.

This flaw is fatal to HK's Motion as to Count One.  Indeed, "both the Florida courts and the federal courts have found that the issues of whether a business has a legitimate business interest justifying restrictions, and whether the restrictions are reasonable in time, area, and line of business are questions of fact, and not of law." *LT's Benjamin Recs., Inc. v. Machete Music*, No. 09–23770–CIV, 2010 WL 2573961, at *5 (S.D. Fla. June 24, 2010) (citing *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1237–38 (11th Cir. 2009); *Whitby v. Infinity Radio*, 951 So. 2d 890, 897 (Fla. 4th DCA 2007); *Am. Standard, Inc. v. Humphrey*, No. 3:06-cv-893-J-32MCR, 2007 WL 2852362, at *3 (M.D. Fla. Oct. 2, 2007)).

As explained herein, the Court's preliminary injunction determinations were made under a different standard, are not controlling at this stage, and did not relieve Plaintiff of its burden of establishing all elements of this claim in its motion, which it has failed to do.  To close this gap now would require the Court to step into the role of the factfinder, review record evidence not directly cited in support of HK's Motion, and resolve any associated questions of credibility, which it is not permitted to do for summary judgment.  *See, e.g.*, *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."); *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (citing *Tolan v. Cotton*, 572 U.S. 650, 655–57 (2014)) ("Summary judgment is not a time for fact-finding; that task is reserved for trial.").  Accordingly, the Court finds HK has not shown it is entitled to judgment as a matter of law on Count One of its Complaint for Breach of Contract.

With respect to Count Two, Breach of Fiduciary Duty, there are disputed issues of fact that preclude entry of summary judgment in Plaintiff's favor. To prevail on a claim for breach of fiduciary duty, a plaintiff must establish "the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002); *see also York Lingings v. Roach*, No. 16622-NC, 1999 WL 608850, at *2 (Del. Ch. July 28, 1999).[4]

HK claims McNeill breached her fiduciary duty to HK by (1) causing HK to hire and pay individuals under the false pretense that they were engaged in legitimate HK business when they were in fact performing personal services for McNeill or work related to her other business interests; (2) falsely claiming personal expenses and charges as HK business expenses on the HK credit card and "directing and allowing [HK] . . . funds to pay for those expenses" without reimbursement; and (3) "leasing to [HK] . . . a forklift, barn, and dumpster she owned, and overcharging for those items even though some of those items had no business use." *See* ECF No. [471] at 3–4 (citing ECF No. [470] at ¶¶ 16–18, 20–22, 24–33).

McNeill disputes the facts cited in support of the element of breach. *See* ECF No. [503] at ¶¶ 16–18, 20–22, 24–33. For example, she maintains that the individuals HK allegedly paid under the false pretense that they were performing services for HK *were*, in fact, performing services for HK and did no work for McNeill personally while they were on the clock. *See* ECF Nos. [470] at ¶ 17; [503] at ¶ 17. Further, she

---

[4] HK claims McNeill's fiduciary duties arise from both Delaware and Florida law. ECF No. [471] at 3 n.2. Thus, both sources of law are cited.

contends that she did not utilize HK employees or resources to promote her other businesses, and that "[t]o the extent HK paid for any of her personal expenses, . . . McNeill has reimbursed HK." *See, e.g.*, ECF Nos. [470] at ¶¶ 20–22; [503] at ¶¶ 20–22. Indeed, while HK argues it is entitled to "damages, in an amount to be determined at trial, but at least in the amount of [HK] . . . funds used not for a business purpose," there is a genuine dispute as to what damages, if any, HK incurred as a result of McNeill's alleged breach. *See* ECF Nos. [471] at 4; [470] at ¶¶ 25–27; [503] at ¶¶ 25–27. Viewing the evidence in the light most favorable to McNeill, as the Court must do, these disputes preclude the entry of summary judgment on Count Two. Thus, although entry of summary judgment is **GRANTED** in HK's favor as to McNeill's Counterclaims against HK, it is **DENIED** as to Counts One and Two of HK's Complaint.

### B. Falic's Motion

Falic has moved for summary judgment on McNeill's claims against him: Counts Five, Six, Seven, Twelve, and Fourteen of the Counterclaims. ECF No. [473] at 2. The Court shall evaluate these counts in turn.

### i. Counts Five and Six

Counts Five and Six assert claims of Civil Theft under Colorado and Florida law. Under Colorado law, "a person commits civil theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception, and acts intentionally or knowingly in ways that deprive the other person of the property permanently," with "the specific intent to permanently deprive the owner of the benefit of the property." *DTC Energy Grp.,*

*Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1179 (D. Colo. 2019) (internal citations and quotation marks omitted) (quoting *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016)).

To establish civil theft under Florida law, a plaintiff must show that the defendant "obtained or used, or endeavored to obtain or to use" the plaintiff's property "with the intent to, either temporarily or permanently, deprive [the plaintiff] of a right to the property or a benefit from the property, or appropriate the property to [the defendant's] own use or to the use of any person not entitled to [its] use . . . ." *Palmer v. Gotta Have it Golf Collectibles, Inc.*, 106 F. Supp. 2d 1289, 1303 (S.D. Fla. June 22, 2000) (citing Fla. Stat. § 812.014(1)). Further, the plaintiff must show the defendant did so with "'felonious intent to commit theft.'" *Id.* (quoting *Ames v. Provident Life and Accident Ins. Co.*, 942 F. Supp. 551, 560 (S.D. Fla. 1994)).

In Count Five, McNeill identifies the property Falic allegedly stole, namely, the Forklift, her ownership interest in HK, her personal Facebook page, and her personal TikTok account (the "Personal Social Media Accounts"), as well as the content posted on these accounts (the "Social Media Content"). ECF No. [337] at ¶¶ 77–78, 84, 114–16. McNeill argues that HK and Falic, "through deception and fraud, obtained exclusive control over" these assets "with the felonious intent to deprive . . . McNeill of their use and value." *Id.* at ¶ 117. Count Six mirrors these allegations and further accuses Falic of stealing, with felonious intent and without legal basis, McNeill's ownership interest in HK. *Id.* at ¶¶ 119–24.

HK is a Delaware limited liability company.  *See* ECF No. [337] at ¶ 1.  Under the laws of that state, "the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the . . . company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability . . . solely by reason of being a member or acting as a manager of the limited liability company."  *See* 6 Del. C. § 18-303(a); *see also Wais v. Thompson*, No. N22A-08-003 CLS, 2023 WL 2641489, at *4 (Del. Super. Mar. 24, 2023) ("Delaware law generally shields individual members of a limited liability company from liabilities of the limited liability company . . . ."); *SDF Funding LLC v. Fry*, No. 2017-0732-KSJM, 2022 WL 1511594, at *9 (Del. Ch. May 13, 2022) ("Delaware LLCs operate as a corporate shield against the liability of its members for the activities of the LLC.").

McNeill has not shown a basis to disregard HK's limited liability company form to hold Falic personally liable for Counts Five and Six, and Falic affirmatively avers that any actions he took with respect to McNeill were in his official capacity.  *See* ECF No. [467-28] at ¶ 2 (reflecting Falic's testimony that any actions he took with respect to McNeill's "employment with and membership interest in [HK] . . . were taken in [his] capacity as Managing Member of [HK]. . . , not in [his] individual, personal capacity").  However, even if the Court assumes that HK does not act as a shield against Falic's personal liability, McNeill still cannot prevail on Counts Five and Six because she has presented insufficient evidence to indicate Falic was involved in the alleged theft of her property.

By contrast, Falic has submitted sworn testimony refuting the claim that he ever possessed or personally received the Personal Social Media Accounts, the Social Media Content, the Forklift, or McNeill's HK membership interest. *See id.* at ¶¶ 3–5. In fact, beyond a passing reference to Falic in Counts Five and Six, there are no factual allegations in the Counterclaims tying him, in any capacity, to the Forklift or Social Media Content. In response to Falic's Statement of Material Facts, McNeill averred that "Falic instructed HK employees to prevent . . . McNeill from removing the Forklift from HK's warehouse upon her termination." ECF No. [495] at ¶ 7. But the record evidence McNeill cites does not support this assertion. *Id.* Moreover, it remains unclear how these assertions, even if true, would implicate Falic in his personal capacity.

With respect to McNeill's HK membership interest and Personal Social Media Accounts, her civil theft claims are similarly unavailing. Although she alleges that "Falic has used, or instructed others to use on his behalf," the Personal Social Media Accounts "to promote an unrelated business owned by . . . Falic, Hard Kandy, LLC," the evidence she relies upon does not support this proposition. *See* ECF No. [495] at ¶ 6 (citing ECF No. [439-1] at 169:23-171:7, 172:11–12, 18–19, 173:2–3, 112:12–13, 114:12-115:5). Rather, the cited deposition testimony references different services that *McNeill* was asked to provide *during her employment with HK*, including promotion of various products. *See, e.g.*, ECF No. [439-1] at 169:23-171:7 (discussing whether "McNeill [was] ever asked to provide any services for Hard [K]andy during her employment with" HK).

And even if the record substantiated this allegation, McNeill cites no authority that finds such conduct (i.e., being asked to promote businesses or products on her Personal Social Media Accounts) sufficient to constitute (1) unauthorized control, threat, or deception under Colorado law, or (2) the felonious intent to deprive required under Florida law. *See* ECF No. [337] at ¶¶ 114–24; *DTC Energy Corp., Inc.*, 420 F. Supp. 3d at 1179; *Palmer*, 106 F. Supp. 2d at 1303 (citing Fla. Stat. § 812.014(1)). McNeill points to no other evidence that Falic obtained, retained, used, endeavored to use, or exercised control over the Personal Social Media Accounts at all. *See* ECF No. [467-28] at ¶ 3 (reflecting Falic's testimony that he has not ever possessed and did not personally receive the Personal Social Media Accounts). This alone is fatal to McNeill's civil theft claims as to these assets.

Regarding her twenty-percent ownership interest in HK, McNeill alleges that Falic unilaterally decided to execute a corporate resolution on February 17, 2023 (the "Resolution") which purported to repurchase McNeill's stake in HK. ECF No. [337] at 55–57. In so doing, McNeill argues, Falic attempted to have McNeill's units dissolved, "bestowing upon him the same benefit as if he had received his *pro rata* share of" the same, "i.e. increasing his personal ownership interest in HK from 20% to 25%." ECF No. [495] at ¶¶ 12–13. Yet there can be no real dispute that it was HK, not Falic, who acquired McNeill's units before they were dissolved. *See* ECF No. [472] at ¶ 13.

Moreover, as Falic notes, McNeill's civil theft claims appears to rest upon a theory that he "engaged in a 'scheme' to retaliate against her for her supposed reporting of harassment by . . . Rosenbaum." ECF No. [511] at 5. But aside from

18

McNeill's own allegations and deposition testimony, no proof of such a scheme has been presented.[5]  ECF No. [511] at 5.  Instead, the evidence shows that Falic, in his capacity as HK's managing member, passed a resolution citing Section 8.5 of the OA to reacquire McNeill's ownership interest in HK.  ECF Nos. [187-6]; [360-3] at ¶ 8.5 ("[U]pon the termination of employment of any Executive, the Company may elect to purchase all or any portion of the Units held by such Executive . . . .").  Falic maintains that he executed the Resolution "on behalf of a majority of [HK's] . . . membership interests."  ECF Nos. [472] at ¶ 12; [439-1] at 204:13–23.

To be sure, it is McNeill's position that HK held no option to repurchase her units because she was not an Executive as defined in the OA at the time of her termination.  ECF No. [337] at 48.  However, this merely highlights the parties' different interpretations of the pertinent OA provisions.  Even if the Resolution and corresponding transaction did not comply with the OA, it would not, on this record, convert it into the type of conduct that constitutes civil theft under Florida or Colorado law.  *See Woods v. Brian Gaines & Lrmp Corp.*, No. 2018-CA-0225, 2022 Fla. Cir. LEXIS 3186, *20 (Fla. Cir. Ct. 2022) (citing *Gersh v. Cofinan*, 769 So. 2d 407 (Fla. 4th DCA 2000) ("Where the property at issue is also the subject of a contract

---

[5] As part of McNeill's untimely response to HK's Motion and Falic's Motion, she filed a Notice of Filing Exhibits, which includes a Declaration by Brandi J. Schaffran-Webb, who was an employee of HK.  ECF No. [510-8].  In the declaration, Schaffran-Webb discusses text messages exchanged between herself and Mindy McDermaid, another employee of HK, about McNeill, stating, "He wants to push her out. That's why it's just going to get worse."  *Id.* at ¶¶ 6–7.  McNeill does not cite to this declaration in her responses to the Motions or otherwise provide any explanation as to the significance of the messages.  Indeed, the identity of the "he" referenced in the messages is entirely unclear, as well as what the messages are being offered to prove.

between the parties, a civil theft claim requires additional *proof* of 'an intricate sophisticated scheme of deceit and theft.'") (emphasis added); *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("This is not to say that there can never be a claim for civil theft or conversion if there is a contractual relationship between the parties, but rather that the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract."). Accordingly, McNeill has not shown that a reasonable jury could return a verdict in her favor on Counts Five and Six.

### ii. Count Seven

Likewise, on this record, McNeill's claim in Count Seven for unpaid wages and other compensation under the CWCA falls short because she has not established that the CWCA applies to this case. The Colorado Wage Claim Act applies only to workers in Colorado. *See Ewton v. Matrix Analytics, Inc.*, No. 21-cv-03374-PAB-STV, 2022 WL 4536231, at *2 (D. Colo. Sept. 28, 2022) (holding that "the CWCA only applies to employees in Colorado"); *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) ("[T]he Wage Claim Act applies only to workers *in Colorado*."); *see also Sanchez v. Q'Max Sols., Inc.*, No. 17-cv-01382-CMA-KLM, 2018 WL 1071133, at *3 (D. Colo. Feb. 27, 2018).

Although McNeill alleges in the Counterclaims that she "is, and for all times relevant to her claims has been, a resident of the State of Colorado," her remaining factual allegations reveal that she worked out of HK's offices in North Carolina, where Rosenbaum allegedly harassed her. ECF Nos. [337] at 16; *Id.* at 76 ("The

majority of . . . Rosenbaum's conduct occur[ed] at HK's offices in North Carolina."). McNeill's claim that she "did not work exclusively from North Carolina beginning in May 2021" is unaccompanied by a citation, nor does it indicate that she worked for HK in Colorado. *See* ECF No. [503] at ¶ 12. In short, McNeill has proffered no evidence that she resided in Colorado at the time of the claims giving rise to this suit. Moreover, she has not cited authority to suggest that her claim can fall within the scope of the CWCA simply because she used to reside in Colorado.

Nor can McNeill show that she was a worker in Colorado by virtue of HK or Falic. It is undisputed that HK is a Delaware entity, and there is no evidence of any ties between HK and Colorado during the pertinent time. *See* ECF No. [337] at 1 ("McNeill admits that [HK] . . . is a Delaware limited liability company."). Further, according to McNeill's allegations, Falic is a resident of Florida, not Colorado, even assuming he can be considered an "employer" for purposes of the CWCA. *Id.* at 16. Finally, the conduct underlying McNeill's claims is not alleged to have occurred in Colorado. *See generally id.* at 68–69. In sum, McNeill has failed to show that the CWCA applies to this case. For this reason, Count Seven fails.

### iii. Counts Twelve and Fourteen

Finally, McNeill's claims in Counts Twelve and Fourteen, for IIED and Extreme and Outrageous Conduct, respectively, cannot survive summary judgment. First, McNeill has not demonstrated that "Extreme and Outrageous Conduct" is a cognizable cause of action as opposed to one of the elements of IIED. Indeed, to state a cause of action for IIED, a plaintiff must show that "(1) the defendant's conduct was

intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015).

"[E]ven tortious or criminal intent, or intent to inflict emotional distress, standing alone, is not enough." *Id.; see also Williams v. Worldwide Flight SVCS., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (explaining that even conduct that is "reprehensible, objectionable, and offensive" does not, on its own, support a cause of action for IIED). To be actionable, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985) (citations and quotation marks omitted).

Here, Falic's alleged conduct upon falls woefully short of the high threshold to establish IIED. In both counts, McNeill accuses Falic of "failure to protect . . . McNeill from severe and grotesque sexual harassment, failure to respond to [her] . . . complaints and other intentional and deliberate actions meant to degrade [her] . . . and deprive her of her livelihood." ECF No. [337] at 71; *see also id.* at 74. These allegations, as one of the cases Plaintiff cites clearly demonstrates, cannot support an intentional tort such as IIED. *See Vernon v. Med. Mgmt. Assocs.*, 912 F. Supp. 1549, 1560–61 (S.D. Fla. 1996) (finding that a plaintiff's claim that her supervisor knew about and failed to take corrective action with respect to another employee's "pattern of persistent verbal and physical abuse that culminated in [the plaintiff's]

constructive discharge" did not "rise to the level of outrageousness required to state a cause of action" for IIED).

Beyond these isolated allegations discussing Falic, McNeill's IIED claim against Falic largely relies upon Rosenbaum's purported acts of harassment. *See, e.g.*, ECF No. [501] at 10–11. Even if McNeill's allegations regarding Rosenbaum were true and there was record evidence to support them, she provides no evidence that Falic himself engaged in behavior "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metro. Life Ins.*, 467 So. 2d at 279 (citations omitted). Moreover, she cites no legal authority under which a reasonable juror can find Falic liable for Rosenbaum's actions. Given the high bar for conduct that can sustain an IIED claim and the dearth of supporting record evidence, Counts Twelve and Fourteen fail, and Falic is entitled to summary judgment in his favor.

## V.      CONCLUSION

For the reasons set forth herein, HK's Motion, ECF No. [471], is **GRANTED IN PART AND DENIED IN PART**, and Falic's Motion, ECF No. [473], is **GRANTED**.

**DONE AND ORDERED** in Miami, Florida, this 18th day of March, 2025.

_____
**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**